SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:      (617) 994-5801

*Attorneys for Plaintiffs Carolina Bernal Strifling and Willow Wren Turkal, on behalf of themselves and all others similarly situated*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CAROLINA BERNAL STRIFLING and WILLOW WREN TURKAL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC.<br><br>Defendant | Case No. 3:22-cv-07739<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>1. DISCRIMINATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.*<br>2. DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, Gov. Code § 12900, *et seq.*<br>3. DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201-02 |

I. **INTRODUCTION**

1. Plaintiffs Carolina Bernal Strifling and Willow Wren Turkal file this Class Action Complaint against Defendant Twitter, Inc. ("Twitter"), on their own behalf and on behalf of other female Twitter employees across the country who have been discharged or constructively discharged from their jobs during the chaotic weeks since multi-billionaire Elon Musk purchased the company.

2. Plaintiffs bring claims of discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.*, and (for employees who worked out of California) California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.*, challenging the company's termination, or constructive discharge, of female employees since Elon Musk's acquisition of the company.

3. As described further below, shortly after Elon Musk completed his purchase of Twitter, he immediately began laying off more than half of its workforce.

4. The mass termination of employees at Twitter has impacted female employees to a much greater extent than male employees – and to a highly statistically significant degree. Moreover, Elon Musk has made a number of publicly discriminatory remarks about women, further confirming that the mass termination's greater impact on female employees resulted from discrimination. Musk also quickly implemented new policies at Twitter that would have a disparate impact on women, thus forcing more women to leave the company.

5. Twitter has stated that it will be sending severance agreements to certain terminated or constructively discharged employees shortly. Plaintiffs are very concerned that employees will be asked to sign away their rights without notice that they have legal claims of discrimination and that these legal claims have already been filed on their behalf.

6. Indeed, another company owned by Elon Musk, Tesla, recently engaged in mass layoffs without notice. That company attempted to obtain releases from laid off employees without informing them of their rights under the federal or California WARN Acts. A federal

court subsequently ordered the company to provide employees notice of the claims that had been filed on their behalf.  See Lynch v. Tesla, Inc., 2022 WL 42952953, at *6 (W.D. Tex. Sept. 16, 2022).

7. Plaintiffs file this action, bringing claims of sex discrimination, under federal and California law, and seek to ensure that Twitter not solicit releases of claims of any female employees without informing them of the pendency of this action and their right to pursue these claims.

8. Plaintiffs seeks immediate injunctive relief, as well as a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, on behalf of themselves and all similarly situated employees.

## II.   PARTIES

9. Plaintiff Carolina Bernal Strifling is an adult resident of Miami, Florida, where she worked for Twitter from June 2015 until November 2022.

10. Plaintiff Willow Wren Turkal is an adult resident of San Jose, California, where she worked for Twitter from June 2021 until November 2022.

11. Plaintiffs bring this lawsuit as a Rule 23 class action on behalf of all female Twitter employees across the United States whose jobs have been affected by the company's layoffs, terminations, and constructive discharges since Elon Musk acquired the company.

12. Defendant Twitter, Inc. ("Twitter") is a Delaware corporation, headquartered in San Francisco, California.

## III.   JURISDICTION

13. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

14. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims, because those claims derive from a common nucleus of operative facts with Plaintiffs' federal claims.

15. This Court has personal jurisdiction over Twitter, as it is headquartered in this District and conducts substantial business operations in this District.

## IV. STATEMENT OF FACTS

16. Twitter is a social media company that employs thousands of people across the United States.

17. In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company.

18. After the purchase was completed in late October 2022, Musk began a mass layoff that has affected more than half of Twitter's workforce. See Kate Conger, Ryan Mac, and Mike Isaac, Confusion and Frustration Reign as Elon Musk Cuts Half of Twitter's Staff, NEW YORK TIMES (November 4, 2022), https://www.nytimes.com/2022/11/04/technology/elon-musk-twitter-layoffs.html.

19. The decisions regarding which employees would be laid off were made under extremely hurried circumstances, with little if any regard given to employees' job performance, qualifications, experience, and abilities. Indeed, decisions regarding laying off thousands of employees were made in a period of just days after Musk's acquisition of the company.

20. Most laid off employees were notified on November 4, 2022 (although many of these employees were aware they had been laid off the night before, when their access to Twitter's systems was cut off).

21. Reportedly, the layoff decisions were made quickly by a small group of managers, under close supervision by Musk. Some of these managers were brought in from other companies owned by Musk (such as Tesla), who did not have much, if any, knowledge about

4
CLASS ACTION COMPLAINT

Twitter's operations.  See Lora Kolodny, Elon Musk has pulled more than 50 Tesla employees into his Twitter takeover, CNBC (November 1, 2022), Elon Musk has pulled more than 50 Tesla employees into Twitter (cnbc.com).

22. Elon Musk has been widely criticized for sexist, demeaning, and hostile comments he has made against women, showing his discriminatory animus against women.

23. For example, Musk posted tweets on Twitter in which he joked about naming a school using the acronym "TITS" and making other jokes about women's breasts.  See Chandra Steele, Elon Musk is a Misogynist and It Matters, PCMag (December 13, 2021), Elon Musk Is a Misogynist and It Matters | PCMag (quoting Musk's tweet: "Am thinking of starting new university: Texas Institute of Technology & Science"); Jon Christian, Elon Musk Deletes Sexist Tweets, The Byte (October 31, 2021), Elon Musk Deletes Sexist Tweets (futurism.com); Stock Joker on Twitter: "@ZJAyres @PhilKoopman Now deleted, but only D cups need apply https://t.co/40NBcDTonb" / Twitter); Ananya Bhattacharya, In one tweet, Elon Musk captures the everyday sexism faced by women in STEM, Quarz (November 1, 2021), Elon Musk's tweet captures everyday sexism faced by women in STEM (qz.com).

24. Just this week, Musk tweeted: "Testosterone rocks ngl".  Twitter (December 4, 2022), https://twitter.com/elonmusk/status/1599345615443746817.

25. Shortly before acquiring Twitter, Musk, who has been vocal about promoting women having a lot of babies (presumably disseminating the message that is more important than keeping their jobs), tweeted: "Being a Mom is just as important as any career." Twitter (August 17, 2022), https://twitter.com/elonmusk/status/1559823434028400640.

26. Thus, not surprisingly, women were significantly affected more than men in Twitter's mass layoff under Musk.

27. Indeed, widely circulated pictures of Twitter employees before and after the layoff raised observations about the stark contrast in the number of women who appeared to be

5
CLASS ACTION COMPLAINT

employed at the company before and after Musk's acquisition. Rachna Manojkumar Dhanrajani, Curious case of Twitter's missing women: Before and after pictures shock the internet, Business Today (November 21, 2022), Curious case of Twitter's missing women: Before and after pictures of Twitter office shock the internet - BusinessToday; Kanishka Sarkar, Where have all the women gone from Elon Musk's Twitter? 'Before & after' office photos shock internet, CNBC (November 21, 2022), Where Have All The Women Gone From Elon Musk'S Twitter? 'Before & After' Office Photos Shock Internet (cnbctv18.com).

28. The data from these layoffs bear out these observations.

29. According to a spreadsheet showing which Twitter employees in the United States were retained and which were laid off on November 4, 2022, approximately 2,621 out of 5,134 employees were notified that day they were being laid off.[1]

30. Prior to the layoffs that day, Twitter employed approximately 2,234 female employees and 2,900 male employees in the United States. Of those employees, approximately 1,271 females and 1,350 males were notified that day they were being laid off.

31. Thus, 57% of female employees were laid off on November 4, 2022, while 47% of male employees were laid off.

32. Not only is this a large percentage difference, but it is also extremely statistically significant.

33. According to Dr. Mark Killingsworth, a professor in the Department of Economics at Rutgers University,[2] a chi square statistical analysis reveals that this distribution in

---

[1] The figures throughout this complaint are described as "approximate" because employees for whom their gender was not immediately clear were not included in these calculations.

[2] A federal court has described Dr. Killingsworth's qualifications as follows:

Dr. Killingsworth is a labor economist with more than 40 years of experience and has a

layoffs by sex is 7.3491 standard deviations away from a normal distribution.  In other words, the odds that this disparity between women and men being laid off is due only to chance is .00000000000001 (or, put another way, 9.977 out of 100 trillion).

34. Further, the disparity between women and men being laid off cannot be explained based upon a justification that Musk intended to retain more employees in engineering-related roles.

35. According to the spreadsheet, prior to the layoffs of November 4, 2022, Twitter employed approximately 1,003 female and 2,150 male employees in engineering-related roles in the United States.  Of those employees, approximately 630 females and 1,037 males were notified that day they were being laid off.  Thus, 63% of females in engineering-related roles were laid off on November 4, 2022, while 48% of male employees in engineering-related were laid off.

36. This disparity is also extremely statistically significant.  According to Dr. Killingsworth, a chi square test reveals that this distribution in layoffs by sex is 7.6380 standard deviations away from a normal distribution.  The odds that this disparity between women and

---

substantial record as an expert witness in federal and state litigation. He is the author of *Labor Supply* and *The Economics of Comparable Worth*, and has also authored numerous publications in the areas of comparable worth, pay equity, employment discrimination, and wage differentials. Also, Dr. Killingsworth has testified in front of United States Congressional Committees and the General Assembly of Pennsylvania. In addition, he has been a consultant to United States District Judge Robert L. Carter, the Canadian Department of Justice, and the United States Departments of Justice and Labor. Dr. Killingsworth graduated from the University of Michigan and received M.Phil. and D.Phil. degrees from the University of Oxford, where he was a Rhodes Scholar.

Artunduaga v. Uni. Of Chicago Med. Ctr., 2016 WL 7384432, at *2-3 (N.D. Ill. Dec. 21, 2016) (citing cases).

men in engineering-related roles being laid off is due only to chance is .00000000000001 (or, put another way, 1.103 out of 100 trillion).

37. There is also a great disparity in the layoff rates between women and men in non-engineering roles. Prior to the layoffs that day, Twitter employed approximately 1,062 female and 748 male employees in non-engineering-related roles in the United States. Of those employees, approximately 545 females and 312 males were notified that day they were being laid off. Thus, 51% of females in non-engineering-related roles were laid off on November 4, 2022, while 42% of male employees in non-engineering-related were laid off. A chi square test performed by Dr. Killingsworth revealed that this distribution in layoffs by sex is 4.0309 standard deviations away from a normal distribution. The odds that this disparity between women and men in non-engineering-related roles being laid off is due only to chance is .00001 (or, put another way, 2.778 out of 100 thousand).

38. These results are summarized in the following chart:

| | | Laid off | Not laid off | Total | % laid off | Standard deviations from normal | Probability of this distribution being based on chance |
|---|---|---|---|---|---|---|---|
| ALL EMPLOYEES | Female | 1271 | 963 | 2234 | 0.57 | 7.3491 | $9.977 \times 10^{-14}$ |
| | Male | 1350 | 1550 | 2900 | 0.47 | | (9.977 chances out of 100 trillion) |
| | TOTAL | 2621 | 2513 | 5134 | | | |
| EMPLOYEES IN ENGINEERING-RELATED POSITIONS | Female | 630 | 373 | 1003 | 0.63 | 7.638 | $1.103 \times 10^{-14}$ |
| | Male | 1037 | 1113 | 2150 | 0.48 | | (1.103 chances out of 100 trillion) |
| EMPLOYEES IN NON-ENGINEERING-RELATED POSITIONS | Female | 545 | 517 | 1062 | 0.51 | 4.0309 | $2.778 \times 10^{-5}$ |
| | Male | 312 | 436 | 748 | 0.42 | | (2.778 chances out of 100 thousand) |

39. Thus, it is clear that women were far more likely than men to be laid off from Twitter, and those differences are highly statistically significant.

40. In addition to laying off a statistically significantly higher proportion of women than men in his initial layoffs at Twitter in early November, Elon Musk also implemented a number of policies at the company that would clearly have a disproportionate impact on women.

41. These policies included expectations that employees would work an unreasonable number of hours and that employees would be required to work out of physical offices (despite Twitter having freely allowed remote work throughout the pandemic and even before that).

42. Following his acquisition of the company, it was widely reported that Musk was requiring some employees to work 12 hour shifts, 7 days a week. Some employees were told: "The expectation is literally to work 24/7 to get this out." Some employees slept in Twitter offices while being required to work around the clock. Grace Dean, BUSINESS INSIDER, <u>Twitter staff have been told to work 84-hour weeks and managers slept at the office over the weekend as they scramble to meet Elon Musk's Tight deadlines, reports say</u>, (Nov. 1, 2022), <u>https://www.businessinsider.com/elon-musk-twitter-staff-layoffs-long-hours-shifts-work-jobs-2022-11</u>.

43. Elon Musk would certainly have known that these policy changes and expectations would have a disproportionate impact on women, who are more often caregivers for children and other family members, and thus not able to comply with such demands.

44. Musk used these demands as a way to force more employees out of their jobs. On November 16, 2022, Musk encouraged many more employees to leave Twitter (as a furtherance of the layoffs he had planned for the company). That day, he sent a message to the remaining Twitter employees giving them until the following day to inform the company (by clicking "yes" on a link) whether they agreed to work under the new conditions, which he said would require being "extremely hardcore" and "working long hours at high intensity".

45. This ultimatum was expected to, and did, result in further layoffs. And it resulted in more women leaving the company than men. Indeed, approximately 36% of remaining women left the company after this ultimatum, while approximately 28% of men did.

46. Plaintiffs and other women who have been laid off from Twitter (or terminated or constructively discharged) since Elon Musk took control of the company have been injured due to this discrimination. On behalf of themselves and the proposed class of women who have lost their jobs with the company, Plaintiffs seek lost back pay, front pay, lost benefits, bonuses, and equity, as well as emotional distress damages, punitive damages, interest, and any other appropriate relief.

47. However, Plaintiffs are concerned that, absent court intervention, Twitter will seek releases from laid off female employees without informing them of their rights, including the claim of sex discrimination that has been filed on their behalf in this case. Twitter initially stated that it would distribute severance agreements containing releases to laid off employees beginning the week of November 7, 2022. While it has agreed, and been ordered by a court, not to distribute the releases yet, Plaintiffs are concerned that Twitter may distribute the releases without the claims asserted in this case being made known to these employees on their behalf.

48. Plaintiff therefore seeks immediate relief to ensure that Twitter does not violate the law and then seek to obtain releases from thousands of employees who do not have notice of their rights or the pendency of the claims brought here on their behalf.

49. Indeed, Elon Musk engaged in similar behavior with respect to mass layoffs conducted earlier this year at another company he owns, Tesla. In the summer of 2022, Tesla engaged in mass layoffs without providing advanced written notice as required by the federal and California WARN Acts. Former Tesla employees brought a suit against Tesla for these violations. See Lynch et al. v. Tesla, Inc., Civ. Act. No., 1:22-cv-00597-RP (W.D. Tex.). Tesla sought to obtain full releases of all federal and California WARN Act claims in exchange for

small severance payments for less than the employees were legally entitled to, as alleged in the federal lawsuit.  (Tesla offered one or two weeks' severance pay, rather than the 60 days pay required to satisfy the federal and California WARN Acts). See Lynch, 2022 WL 4295295, at *1-4.)  A federal court ruled that Tesla's conduct was "misleading because [the separation agreements] fail to inform potential class members of this lawsuit and the rights that they are potentially giving up under the WARN Act." Id. at *4.

50. With respect to employees who were laid off by Twitter following Musk's purchase of the company, Twitter stated that it would begin distributing severance agreements, including releases of claims, beginning the week of November 7, 2022.  However, after employees filed a class action lawsuit and emergency motion seeking to block the distribution of releases without employees being informed of their claims and the pendency of the case (which concern claims primarily related to severance pay and WARN Act violations), see Cornet et al v. Twitter, Inc., C.A. No. 3:22-cv-06857-JD (N.D. Cal.) (Dkts. 6 and 7), Twitter agreed and was also ordered not to distribute releases until after the plaintiffs' motion could be heard.

51. In this case as well, Plaintiffs seek immediate relief to ensure that Twitter does not violate the law and then seek to obtain releases from the thousands of female Twitter employees who do not have notice of their rights or the pendency of the claims brought here on their behalf.

## COUNT I

### Title VII of The Civil Rights Act of 1964
### 42 U.S.C. § 2000e, *et seq.*

Plaintiffs and other female employees have been entitled to the protections of Title VII, 42 U.S.C. § 2000e, *et seq.*, which prohibits discrimination on the basis of sex. Twitter's conduct in conducting mass layoffs of women disproportionately to men, as well as Twitter's other policies described herein that have resulted in more women exiting the company then men,

constitute unlawful discrimination against Plaintiffs and other similarly situated female Twitter employees on the basis of sex in violation of Title VII.

## COUNT II

### California Fair Employment and Housing Act, Gov. Code § 12900, *et seq.*

Plaintiffs and other female employees who have worked in California have been entitled to the protections of the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.* Twitter's conduct in conducting mass layoffs of women disproportionately to men, as well as Twitter's other policies described herein that have resulted in more women exiting the company then men, constitute unlawful discrimination against Plaintiffs and other similarly situated female Twitter employees on the basis of sex in violation of the FEHA.

## COUNT III

### Declaratory Judgment Act, 28 U.S.C. §§ 2201-02

Plaintiffs seek a declaratory judgment and an injunction prohibiting Twitter from soliciting Plaintiffs and similarly situated individuals to sign separation agreements that release their discrimination claims asserted herein, without first informing them of their rights under these statutes, the pendency of this case filed on their behalf, and Plaintiffs' counsel's contact information.

## JURY DEMAND

Plaintiffs request a trial by jury on the claims asserted here.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

a. Declare and find that Twitter is liable to Plaintiffs and other similarly situated female employees under Title VII, 42 U.S.C. § 2000e, *et seq.*, and, with respect to employees who have worked out of California, the Fair Employment and Housing Act, Gov. Code § 12900, *et seq.*;

b. Certify this case as a class action;

c. Enter declaratory relief and an injunction enjoining Twitter from seeking releases of claims asserted herein from employees without first informing them of their rights under the law, the pendency of this lawsuit, and contact information for Plaintiffs' counsel;

d. Reinstate female employees who wish to return to their jobs;

e. Award compensatory and any other appropriate damages, including emotional distress and punitive damages;

f. Award pre- and post-judgment interest;

g. Award reasonable attorneys' fees, costs, and expenses; and

h. Award any other relief to which Plaintiffs and other similarly situated Twitter employees may be entitled.

Respectfully submitted,

CAROLINA BERNAL STRIFLING and WILLOW WREN TURKAL, on behalf of themselves and all others similarly situated,

By their attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000

Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; tfowler@llrlaw.com

Dated:           December 7, 2022