1  MORGAN, LEWIS & BOCKIUS LLP
2  Eric Meckley, Bar No. 168181
   eric.meckley@morganlewis.com
3  Brian D. Berry, Bar No. 229893
   brian.berry@morganlewis.com
4  Kassia Stephenson, Bar No. 336175
   kassia.stephenson@morganlewis.com
5  One Market, Spear Street Tower
   San Francisco, CA  94105-1596
6  Tel:    +1.415.442.1000
7  Fax:    +1.415.442.1001

8  MORGAN, LEWIS & BOCKIUS LLP
   Ashlee N. Cherry, Bar No. 312731
9  ashlee.cherry@morganlewis.com
10 1400 Page Mill Road
   Palo Alto, CA  94304
11 Tel:    +1.650.843.4000
   Fax:    +1.650.843.4001
12
13 MORGAN, LEWIS & BOCKIUS LLP
   Joseph A. Govea, Bar No. 319683
14 joseph.govea@morganlewis.com
   300 South Grand Avenue
15 Twenty-Second Floor
   Los Angeles, CA  90071-3132
16 Tel:    +1.213.612.2500
   Fax:    +1.213.612.2501
17
18 Attorneys for Defendant
   TWITTER, INC.
19                  UNITED STATES DISTRICT COURT
20                 NORTHERN DISTRICT OF CALIFORNIA
21
   CAROLINA BERNAL STRIFLING and          Case No. 4:22-cv-07739-JST
22 WILLOW WREN TURKAL, on behalf of
   themselves and all others similarly situated,   **DEFENDANT TWITTER, INC.'S**
23                                          **NOTICE OF MOTION AND MOTION**
                    Plaintiffs,             **TO DISMISS THE COMPLAINT AND**
24                                          **STRIKE THE CLASS CLAIMS;**
                v.                          **MEMORANDUM OF POINTS AND**
25                                          **AUTHORITIES**
   TWITTER, INC.,
26                                          Date:  April 6, 2023
                    Defendant.             Time: 2:00 p.m.
27                                          Judge: Hon. Jon. S. Tigar
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 6, 2023 at 2:00 p.m. or as soon thereafter as may be heard in Courtroom 6 on the 2nd Floor of the United States Courthouse, located at 1301 Clay Street, Oakland, California 94612, Defendant Twitter, Inc. ("Twitter"), will, and hereby does, move this Court pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(f) for an order dismissing the Complaint for failure to state a claim upon which relief can be granted and striking the class claims, on the following grounds:

1. Plaintiffs' first and second causes of action for discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* and the California Fair Employment and Housing Act, Gov. Code § 12900, *et seq.* fail to state a claim because Plaintiffs do not allege that they exhausted their administrative remedies pursuant to 42 U.S.C. § 2000e-5(f)(1).

2. Plaintiffs' first and second causes of action for discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* and the California Fair Employment and Housing Act, Gov. Code § 12900, *et seq.* fail to state a claim because Plaintiffs do not allege facts sufficient to support a plausible disparate treatment claim.

3. Plaintiffs' first and second causes of action for discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* and the California Fair Employment and Housing Act, Gov. Code § 12900, *et seq.* fail to state a claim because Plaintiffs do not allege facts sufficient to support a plausible disparate impact claim.

4. Plaintiffs' first and second causes of action for discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* and the California Fair Employment and Housing Act, Gov. Code § 12900, *et seq.* fail to allege facts plausibly suggesting that Plaintiffs have standing to pursue claims for alleged injuries arising from policies purportedly implemented after the November 4 RIF.

5. Plaintiffs' second cause of action for discrimination in violation of the California Fair Employment and Housing Act, Gov. Code § 12900, *et seq.* fails to state a claim on behalf of Plaintiff Strifling because the Complaint does not allege facts plausibly suggesting that she has

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1   standing to invoke the protections of California law.

2       6.      Plaintiffs' third cause of action for relief pursuant to the Declaratory Judgment

3   Act, 28 U.S.C. §§ 2201-02 fails to state a claim because there is no viable "case or controversy"

4   between the parties.

5       7.      Plaintiffs' putative class claims should be dismissed and/or stricken because

6   Plaintiffs did not suffer the same alleged injury as class members who separated from Twitter

7   after the November 4 RIF.  Specifically, the Court should strike paragraphs 1, 2, 7, 8, 11, 46, 51,

8   and Prayer for Relief, (a)–(d).

9       8.      Plaintiffs' putative class claims should be dismissed and/or stricken because

10  Plaintiffs do not define an ascertainable class.  Specifically, the Court should strike paragraphs 1,

11  2, 7, 8, 11, 46, 51, and Prayer for Relief, (a)–(d).

12      The Motion is based on this Notice of Motion, the Memorandum of Points and

13  Authorities, the pleadings on file herein, and such arguments and admissible evidence as may be

14  presented at the time of hearing.

15  Dated: January 26, 2023                    MORGAN, LEWIS & BOCKIUS LLP

16

17                                             By   /s/ *Brian D. Berry*

18                                                 Eric Meckley
                                                   Brian D. Berry
19                                                 Ashlee N. Cherry
                                                   Joseph A. Govea
20                                                 Kassia Stephenson
                                                   Attorneys for Defendant
21                                                 TWITTER, INC.

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................. 1

II.     THE COMPLAINT'S MATERIAL ALLEGATIONS........................................... 2

        A.      The Plaintiffs ............................................................................................ 2

        B.      The November 4 Reduction in Force ........................................................ 2

        C.      The Allegedly Discriminatory Post-RIF Policies ..................................... 4

        D.      The Allegations Regarding Discriminatory Animus.................................. 4

        E.      Plaintiffs' Putative Class Claims............................................................... 5

III.    LEGAL STANDARD .......................................................................................... 6

IV.     ARGUMENT ....................................................................................................... 7

        A.      Plaintiffs Failed to Exhaust Their Administrative Remedies..................... 7

        B.      Plaintiffs Fail to State a Claim for Intentional Discrimination. ................ 9

                1.      Plaintiffs' Claim Fails Under *McDonnell Douglas*....................... 9

                2.      Plaintiffs' Claim Fails Under *Teamsters*..................................... 10

        C.      The Complaint Is Insufficient to Support a Plausible Disparate Impact
                Claim. ...................................................................................................... 12

                1.      Plaintiffs' RIF-Related Disparate Impact Claim Fails Because they
                        Allege the RIF Was the Product of Intentional Discrimination............... 13

                2.      The Disparate Impact Claim Fails Because The Complaint Does
                        Not Isolate and Identify a Specific Employment Practice
                        Responsible for the Alleged Disparities.................................................... 14

                        a.      The allegations related to the RIF fail........................................... 15

                        b.      The allegations related to the Post-RIF Policies fail..................... 15

                3.      Because Plaintiffs Were Laid Off in the RIF, They Lack Standing
                        to State a Claim Related to the Allegedly Discriminatory Post-RIF
                        Policies........................................................................................................ 18

        D.      The Complaint Fails to Plead a FEHA Claim on Behalf of Florida-Based
                Plaintiff Strifling. .................................................................................... 18

        E.      The Court Should Dismiss Plaintiffs' Derivative Claim for Relief Under
                the Declaratory Judgment Act................................................................ 20

        F.      The Court Should Dismiss or Strike Plaintiffs' Putative Class Claims. ... 21

                1.      Plaintiffs Cannot Represent Employees Who Were Allegedly
                        Injured by the Post-RIF Policies Because Plaintiffs Were Not
                        Subject to Those Policies. ............................................................. 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

**TABLE OF CONTENTS**
(continued)

**Page**

2.    The Court Should Dismiss or Strike Plaintiffs' Putative Class Claims Because The Complaint Pleads No Ascertainable Class. ............. 21

V.    CONCLUSION ............................................................................................. 22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4

*Aetna Life Ins. Co. v. Haworth*
  300 U.S. 227 (1937) ............................................................................................... 20

*Ali v. Paypal, Inc.*
  2019 WL 11691425 (N.D. Cal. Mar. 26, 2019) ...................................................... 8

*Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO (AFSCME) v. State of Wash.*
  770 F.2d 1401 (9th Cir. 1985) .......................................................................... 11, 13

*Apple Inc. v. VoIP-Pal.com, Inc.*
  506 F. Supp. 3d 947 (N.D. Cal. 2020) ................................................................... 20

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................................................. 6

*Barrett v. Forest Lab'ys, Inc.*
  39 F. Supp. 3d 407 (S.D.N.Y. 2014) ................................................................ 13, 14

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ............................................................................................ 6, 17

*Bradley v. Cnty. of Sacramento Dep't of Hum. Assistance of N. California Welfare Div.,*
  749 F. App'x 539 (9th Cir. 2018) ........................................................................... 8

*Brooks v. City of San Mateo*
  229 F.3d 917 (9th Cir. 2000) ................................................................................. 17

*Califano v. Yamasaki*
  442 U.S. 682 (1979) ............................................................................................... 21

*Cornwell v. Electra Cent. Credit Union*
  439 F.3d 1018 (9th Cir. 2006) ................................................................................. 9

*Cotter v. Lyft, Inc.,*
  60 F. Supp. 3d 1059 (N.D. Cal. 2014) .................................................................. 18

*Davis v. D.C.*
  925 F.3d 1240 (D.C. Cir. 20019) .......................................................................... 14

*Dinh Nguy v. Cnty. of Yolo*
  2014 WL 4446829 (E.D. Cal. Sept. 9, 2014) ........................................................ 20

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

*Durante v. Qualcomm, Inc.*
   144 F. App'x. 603 (9th Cir. 2005) .................................................................... 13

*East Tex. Motor Freight System, Inc. v. Rodriguez*
   431 U.S. 395 (1977) ........................................................................................ 21

*Edwards v. Oportun, Inc.*
   193 F. Supp. 3d 1096 (N.D. Cal. 2016) ............................................................ 7

*EEOC v. Bloomberg L.P.*
   778 F. Supp. 2d 458 (S.D.N.Y. 2011) ........................................................ 12, 16

*EEOC v. Farmer Bros. Co.*
   31 F.3d 891 (9th Cir. 1994) .............................................................................. 7

*Enoh v. Hewlett Packard Enter. Co.*
   2018 WL 3377547 (N.D. Cal. July 11, 2018) ............................................ 15, 16

*Fantasy, Inc. v. Fogerty,*
   984 F.2d 1524 (9th Cir. 1993) .......................................................................... 7

*Freyd v. Univ. of Oregon*
   990 F.3d 1211 (9th Cir. 2021) .................................................................... 15, 16

*Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*
   694 F.2d 531 (9th Cir. 1982) .......................................................................... 11

*Gilbreath v. Brookshire Grocery Co.*
   400 F. Supp. 3d 580 (E.D. Tex. Aug. 21, 2019) ............................................ 14

*Gonsalves v. Infosys Techs., LTD.*
   2010 WL 1854146 (N.D. Cal. May 6, 2010) .................................................. 19

*Gray v. Golden Gate Nat. Recreational Area*
   279 F.R.D. 501 (N.D. Cal. 2011) .................................................................... 21

*Harris v. Cnty. of Orange*
   682 F.3d 1126 (9th Cir. 2012) .......................................................................... 7

*Holloway v. Best Buy Co.*
   2009 WL 1533668 (N.D. Cal. May 28, 2009) .................................................. 8

*Hovsepian v. Apple, Inc.*
   2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) .................................................. 7

*In re Adobe Sys., Inc. Priv. Litig.*
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ............................................................ 20

*In re Stac Elecs. Sec. Litig.*
   89 F.3d 1399 (9th Cir. 1996) ............................................................................ 6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

*Int'l Bhd. of Teamsters v. U.S.*
    431 U.S. 324 (1977) ............................................................................... 9, 10, 11, 12

*Jones v. Lewis*
    2020 WL 6149693 (N.D. Cal. Oct. 20, 2020) .................................................... 12

*Loza v. Intel Americas, Inc.*
    2020 WL 7625480 (N.D. Cal. Dec. 22, 2020) ................................................... 19

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................................ 18

*Maresco v. Evans Chematics, Div. of W.R. Grace & Co.*
    964 F.2d 106 (2d Cir. 1992) ............................................................................... 13

*McDonnell Douglas Corp. v. Green*
    411 U.S. 792 (1973) ...................................................................................... 9, 10

*Meacham v. Knolls Atomic Power Lab.*
    554 U.S. 84 (2008) ............................................................................................. 13

*MedImmune, Inc. v. Genentech, Inc.*
    549 U.S. 118 (2007) ........................................................................................... 20

*Mendiondo v. Centinela Hosp. Med. Ctr.*
    521 F.3d 1097 (9th Cir. 2008) .............................................................................. 6

*Minor v. Fedex Off. & Print Servs., Inc.*
    182 F. Supp. 3d 966 (N.D. Cal. 2016) ................................................................. 8

*Mish v. TForce Freight, Inc.*
    2021 WL 4592124 (N.D. Cal. Oct. 6, 2021) ........................................................ 6

*Moss v. U.S. Secret Serv.*
    572 F.3d 962 (9th Cir. 2009) ............................................................................... 6

*Oinonen v. TRX, Inc.*
    2010 WL 396112 (N.D. Tex. Feb. 3, 2010) ....................................................... 10

*Paparella v. Plume Design, Inc.*
    2022 WL 2915706 (N.D. Cal. July 25, 2022) .................................................... 18

*Penn. State Police v. Suders,*
    542 U.S. 129, 141 (2004) ................................................................................... 17

*Poland v. Chertoff*
    494 F.3d 1174 (9th Cir. 2007) ........................................................................... 17

*Pottenger v. Potlach Corp.*
    329 F.3d 740 (9th Cir. 2003) ............................................................................. 18

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

*Rasmussen v. Apple Inc.*
    27 F. Supp. 3d 1027 (N.D. Cal. 2014) ...................................................................... 7

*Rivera v. United States Postal Service*
    830 F.2d 1037 (9th Cir. 1987)................................................................................... 9

*Sanders v. Apple Inc.*
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................................... 7

*Sengupta v. Morrison-Knudsen Co.*
    804 F.2d 1072 (9th Cir. 1986)................................................................................... 9

*Senne v. Kansas City Royals Baseball Corp.*
    315 F.R.D. 523 (N.D. Cal. 2016) ........................................................................... 21

*Shell Gulf of Mexico Inc. v. Center for Biological Diversity, Inc.*
    771 F.3d 632 (9th Cir. 2014)................................................................................... 20

*Sidney-Vinstein v. A.H. Robins Co.,*
    697 F.2d 880 (9th Cir. 1983)..................................................................................... 7

*Smith v. City of Jackson*
    544 U.S. 228 (2005) ............................................................................................... 12

*Sommatino v. U.S.*
    255 F.3d 704 (9th Cir. 2001)..................................................................................... 8

*Spokeo, Inc. v. Robins*
    578 U.S. 330 (2016) ............................................................................................... 18

*Starr v. Baca*
    652 F.3d 1202 (9th Cir. 2011)................................................................................... 6

*Stockwell v. City & Cnty. Of San Francisco*
    749 F.3d 1107 (9th Cir. 2014)................................................................................. 13

*Stout v. Potter*
    276 F.3d 1118 (9th Cir. 2002)................................................................... 12, 13, 15, 16

*Tex. Dept. of Hous. & Cmty. Affairs v. Inclusive Community Project, Inc.*
    576 U.S. 519, 542 (2015) ....................................................................................... 14

*Tolbert v. U.S.*
    916 F.2d 245 (5th Cir. 1990)..................................................................................... 8

*Trazo v. Nestle USA, Inc.*
    2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) .......................................................... 7

*W. Mining Council v. Watt*
    643 F.2d 618 (9th Cir. 1981)..................................................................................... 6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

*Wards Cove Packing Co. v. Atonio*
    490 U.S. 642 (1989) ................................................................................. 12, 16

*Warth v. Seldin*
    422 U.S. 490 (1975) ........................................................................................ 18

*Washington v. Lowe's HIW Inc.*
    75 F. Supp. 3d 1240 (N.D. Cal. 2014) ............................................................. 8

*Wood v. City of San Diego*
    678 F.3d 1075 (9th Cir. 2012) ........................................................................ 12

*Xavier v. Philip Morris USA Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) .......................................................... 21

*Zamora v. Penske Truck Leasing Co., L.P.*
    2021 WL 809403 (C.D. Cal. Mar. 3, 2021) ...................................................... 6

*Zawacki v. Realogy Corp.*
    628 F. Supp. 2d 274 (D. Conn. 2009) ............................................................ 13

**CALIFORNIA CASES**

*Mahler v. Jud. Council of Cal.*
    67 Cal. App. 5th 82 (2021) ............................................................................. 12

**FEDERAL STATUTES**

42 U.S.C. § 2000e ............................................................................... 7, 9, 13

**CALIFORNIA STATUTES**

California Fair Employment and Housing Act ("FEHA") .............................. 5, 7, 8, 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12 ............................................................................. 5, 6, 7, 12

Fed. R. Civ. P. 23 ................................................................................................ 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    I.    **INTRODUCTION**

2            Plaintiffs are two former Twitter employees who allege Twitter discriminated against

3    them and other female employees when it implemented a reduction in force ("RIF") on

4    November 4, 2022 that "affected more than half" of Twitter's U.S. workforce and then, less than

5    two weeks later, asked the remaining employees to decide if they wanted to continue working for

6    Twitter under new alleged "policies" that required them to "work long hours at high intensity" at

7    a Twitter office rather than at home.  Compl. ¶¶ 18, 44.  Against that background—and without

8    exhausting their administrative remedies—Plaintiffs filed this action alleging putative class

9    claims for sex discrimination under Title VII and FEHA and a derivative claim under the

10   Declaratory Judgment Act.

11           Plaintiffs purport to have access to data that reflects the gender demographics of the

12   employees who were subject to the RIF and the employees who subsequently decided to resign

13   from Twitter rather than work under the new alleged policies.  Other than alleging significant

14   statistical disparities based on the purported demographic data, however, the Complaint barely

15   even tries to support its disparate treatment claim.  It does nothing but quote a few stray tweets

16   from Elon Musk that have no tie to the RIF or any employment policy or practice at Twitter.  The

17   Complaint hopes to plead a pattern or practice of discrimination but fails to allege any meaningful

18   anecdotal evidence that might support Plaintiffs' theory.  Not only does the Complaint fail to

19   identify a single manager who made a RIF-related decision or describe any criteria that Twitter

20   used to select employees for the RIF, it also fails to allege any statements or other conduct that

21   suggest the unidentified managers harbored discriminatory animus toward female employees.

22           The Complaint's disparate impact theory fares no better.  The Complaint improperly

23   invokes bottom-line statistics without isolating and identifying an employment practice that is

24   responsible for the alleged demographic imbalances.  Also, the separations that arose from the

25   requirement to work long hours in a Twitter office were voluntary employee decisions that cannot

26   support a disparate impact claim.  Plaintiffs' attempt to recast those employee decisions as

27   "constructive terminations" does not survive scrutiny, especially when the Complaint concedes

28   that thousands of employees elected to remain employed at Twitter.  In any event, Plaintiffs were

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1  laid off in the November 4 RIF and thus lack standing to challenge those post-RIF policies.  And,

2  at a more basic level, the disparate impact claim is fundamentally misguided because courts reject

3  the "disparate impact" label where, as here, a complaint contends the challenged conduct was

4  intentional.

5       Other infirmities plague the Complaint.  It purports to allege a FEHA claim on behalf of a

6  Florida resident without alleging any facts that suggest she has standing to invoke the protections

7  of California law.  In addition, the Complaint's class definition is overbroad and fails to define an

8  ascertainable class.

9       The Court should dismiss the Complaint in its entirety and strike the class claims.

10  **II.**     **THE COMPLAINT'S MATERIAL ALLEGATIONS**

11       **A.**     <u>**The Plaintiffs**</u>

12       According to the Complaint, Plaintiff Carolina Bernal Strifling is a female resident of

13  Miami, Florida, where she worked as a Twitter employee from June 2015 until November 2022,

14  and Plaintiff Willow Wren Turkal is a female resident of San Jose, California, where she worked

15  for Twitter from June 2021 until November 2022.  Compl. ¶¶ 1, 9, 10.  The Complaint alleges

16  nothing else about Plaintiffs except that they were part of a "mass layoff" that "affected more

17  than half of Twitter's workforce"  *Id.* ¶ 18, 46.  For example, the Complaint does not allege

18  Plaintiffs' job positions, responsibilities, or qualifications.  Nor does the Complaint allege

19  whether they were performing their jobs adequately before their separation from Twitter.

20       **B.**     <u>**The November 4 Reduction in Force**</u>

21       In April 2022, an announcement was made that Elon Musk would be purchasing Twitter.

22  *Id.* ¶ 17.  After Musk completed the purchase in October 2022, Twitter initiated a mass layoff that

23  affected half of Twitter's workforce, as announced by various press outlets on November 4, 2022.

24  *Id.* ¶¶ 3, 18.  "Most laid off employees were notified on November 4."  *Id.* ¶ 20.  Although the

25  Complaint alleges no details about Plaintiffs' separation from Twitter, it does allege they were

26  among the employees who were "laid off" as opposed to terminated or constructively discharged.

27  *Id.* ¶ 46.

28       The Complaint alleges that the "[d]ecisions regarding which employees would be laid off

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1    were made under extremely hurried circumstances, with little if any regard to employees' job

2    performance, qualifications, experience, and abilities." *Id.* ¶ 19.  "Reportedly, the layoff

3    decisions were made quickly by a small group of managers under close supervision by Musk,"

4    including by managers from Tesla and other companies owned by Musk who allegedly "did not

5    have much, if any, knowledge about Twitter's operations." *Id.* ¶ 21.  The complaint does not

6    identify any layoff-related policy, process, or selection criteria that applied to them or any other

7    employee.  Nor does it identify any manager or group of managers who selected them or others

8    for layoff, state the location of any decision, or provide any information about the decision-

9    making process, including what Musk's alleged "supervision" of the selection process involved.

10        The Complaint provides data and statistics based on a spreadsheet that purportedly shows

11   "which Twitter employees in the United States were retained and which were laid off." *Id.* ¶ 29.

12   The Complaint says nothing about the origin or creator of the spreadsheet, nor does it provide any

13   other factual allegation that suggests that the spreadsheet is genuine or accurate.  According to the

14   spreadsheet, Twitter laid off approximately 2,621 of its 5,134 U.S. employees as part of  the

15   November 4 RIF.  *Id.* ¶ 29.  Prior to the RIF, Twitter employed approximately 2,234 female

16   employees and 2,900 male employees across its U.S. offices.  *Id.* ¶ 30.  The RIF allegedly

17   included approximately 1,271 females and 1,350 males, which allegedly constituted 57% of the

18   female employees and 47% of the male employees.  *Id.* ¶¶ 30, 31.  A labor economist, Dr.

19   Killingsworth, allegedly performed a chi-squared test that shows 7.3491 standard deviations for

20   this demographic distribution and concluded the odds that this disparity is due to chance is 9.9997

21   out of 100 trillion.  *Id.* ¶¶ 33, 38.  According to the Complaint, this alleged disparity "cannot be

22   explained based upon a justification that Musk intended to retain more employees in engineering-

23   related roles" because, according to the spreadsheet, 63% of female engineers were laid off, while

24   48% of male engineers were laid off.  *Id.* ¶ 35.  Dr. Killingsworth concludes that the odds that this

25   disparity among engineers is due to chance is 1.103 out of 100 trillion.  *Id.* ¶¶ 36, 38.  The

26   Complaint also includes a link to a news article containing purported "before and after" photos of

27   a few dozen employees in a conference room that allegedly illustrates the disproportionate decline

28   in the number of female employees at Twitter.  *Id.* ¶ 27.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

C.    **The Allegedly Discriminatory Post-RIF Policies**

After the November 4 RIF, Twitter allegedly implemented two policies that allegedly discriminated against women: (i) an expectation that all employees work long hours at high intensity, and (ii) an expectation that all employees work from Twitter's offices rather than working remotely under  Twitter's previous work-from-home policy (collectively, "Post-RIF Policies").  *Id.* ¶¶ 41, 42, 44.

On November 16, Musk sent a message to the remaining Twitter employees "giving them until the following day to inform the company (by clicking 'yes' on a link) whether they agreed to work under the new conditions. . . ."  *Id.* ¶ 44.  The Complaint alleges that this "ultimatum" resulted in approximately 36% of the remaining women and 28% of the remaining men leaving the company.  *Id.* ¶ 45.

The Complaint does not allege that Plaintiffs were affected by the Post-RIF Policies or the "ultimatum," which stands to reason because Plaintiffs already had been laid off as part of the November 4 RIF.  *See id.* ¶ 46

D.    **The Allegations Regarding Discriminatory Animus**

The Complaint alleges that the November 4 RIF "resulted from" discrimination as allegedly demonstrated by a "number of publicly discriminatory remarks about women" by Musk.  *Id.* ¶ 4.  Based on Musk's alleged discriminatory animus toward women, the Complaint alleges that it is "not surprising" that women were significantly affected more than men by the "mass layoff."  *Id.* ¶ 26.

The Complaint also alleges Musk implemented the Post-RIF Policies understanding that they "would clearly have a disproportionate impact on women."  *Id.* ¶ 40.  According to the Complaint, Musk "would certainly have known that these policy changes and expectations would have a disproportionate impact on women, who are more often caregivers for children and other family members, and thus not able to comply with such demands."  *Id.* ¶ 43.  Plaintiffs allege Musk "used these demands as a way to force more employees out of their jobs."  *Id.* ¶ 44.

According to the Complaint, Musk has been "widely criticized for sexist, demeaning, and hostile comments against women, showing his discriminatory animus."  *Id.* ¶ 22.  Plaintiffs

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

stretch to construe several of Musk's Twitter posts ("tweets") as reflecting gender animus, including a joke he made over a year ago (i.e., long before acquiring Twitter) about breasts, a tweet that "Testosterone rocks [not going to lie]," and a tweet praising the value of motherhood. *Id.* ¶¶ 23-25.

Plaintiffs do not allege any gender-based animus directed specifically towards them or any other Twitter employee, or any alleged comments by Musk or any Twitter manager tied to the RIF or the Post-RIF Policies. Nor do Plaintiffs allege that any of the unidentified decisionmakers harbored any gender animus toward them or other women.

### E.      Plaintiffs' Putative Class Claims

The Complaint does not articulate a formal class definition. At one point, the Complaint states Plaintiffs purport to proceed on behalf of "other female Twitter employees across the country who have been discharged or constructively discharged." *Id.* ¶ 1. At another point, the Complaint states Plaintiffs represent "a proposed class of women who have lost their jobs with the company" without any clarifying remark or time limitation. *Id.* ¶ 46.

Plaintiffs assert claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the California Fair Employment and Housing Act ("FEHA") based on "Twitter's conduct in conducting mass layoffs of women disproportionately to men as well as Twitter's other policies described herein" resulting in "more women exiting" Twitter than men. Compl. pp. 11-12. Although the Complaint uses the term "disparate impact" or "disproportionate impact" a few times in passing, Compl. ¶¶ 4, 43, it does not isolate and identify any employment practice to challenge with a disparate impact claim, and otherwise alleges repeatedly that the RIF and Post-RIF Policies intentionally discriminated against women. *See supra* § II.D.

Plaintiffs also seek a declaratory judgment and an injunction under the Declaratory Judgment Act (Count III) to prohibit the company from "soliciting Plaintiffs and similarly situated individuals to sign separate agreements that release their discrimination claims" without informing them of their rights under the statutes, the pendency of this case, and Plaintiffs' counsel's contact information. Compl. p. 12.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

### III.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint's allegations.  A court must dismiss a claim unless the complaint articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  The "plausibility standard is not akin to a 'probability requirement,' but rather, it asks for more than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556-57).  A complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[B]are assertions . . . amounting to nothing more than a 'formulaic recitation of the elements'" of a claim "are not entitled to an assumption of truth") (quoting *Iqbal*, 556 U.S. at 681). Therefore, the Court may not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (holding that "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

The Court considers whether the pleading's "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," such that "it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Dismissal is required when a complaint lacks a cognizable legal theory or fails to allege facts sufficient to support a cognizable legal theory. *Twombly*, 550 U.S. at 555; *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); Fed. R. Civ. P. 12(b)(6).

In a putative class action, the plausibility standard under *Twombly* applies not only to the named plaintiff's individual claims, but also to the class claims. *See, e.g., Mish v. TForce Freight, Inc.*, 2021 WL 4592124, at *8 (N.D. Cal. Oct. 6, 2021) (dismissing class claims under *Twombly* standard); *Zamora v. Penske Truck Leasing Co., L.P.*, 2021 WL 809403, at *3 (C.D.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1   Cal. Mar. 3, 2021) (dismissing class claims because "Plaintiffs do not assert any factual support

2   for their class allegations . . . Plaintiffs cannot point to a fish in the surf to force Defendant on a

3   deep-sea charter [of class discovery]").

4          Class allegations also are the proper subject of a motion to strike.  Under Rule 12(f), "the

5   court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter."

6   Fed R. Civ. P. 12(f).  The purpose of such a motion is "to avoid the expenditure of time and

7   money that must arise from litigating spurious issues by dispensing with those issues prior to

8   trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *overruled on other grounds*,

9   510 U.S. 517 (1994) (quoting *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.

10  1983)).

11         Class allegations "must at least be plausible" or else a court may strike them.  *Edwards v.*

12  *Oportun, Inc.*, 193 F. Supp. 3d 1096, 1100 (N.D. Cal. 2016); *Sanders v. Apple Inc.*, 672 F. Supp.

13  2d 978, 990 (N.D. Cal. 2009) (holding that "[w]here the complaint demonstrates that a class

14  action cannot be maintained on the facts alleged, a defendant may move to strike class allegations

15  prior to discovery."); *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1045-46 (N.D. Cal. 2014)

16  (granting motion to strike class definition on the ground it included class members who did not

17  experience the alleged legal violations).  Under "Rules 23(c)(1)(A) and 23(d)(1)(D), as well as

18  pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the

19  complaint demonstrates that a class action cannot be maintained." *Hovsepian v. Apple, Inc.*, 2009

20  WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009).  For "class action allegations to survive [a motion

21  to strike], the complaint must make a prima facie showing that Fed. R. Civ. P. 23(a) and 23(b) can

22  be satisfied." *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *11 (N.D. Cal. Aug. 9, 2013).

23  **IV.     ARGUMENT**

24         **A.     Plaintiffs Failed to Exhaust Their Administrative Remedies.**

25         Prior to filing a lawsuit alleging violations of Title VII or FEHA, plaintiffs must first

26  exhaust their administrative remedies by filing an administrative complaint with the appropriate

27  administrative agency and obtaining a right-to-sue notice.  42 U.S.C. § 2000e-5(f)(1); Cal. Gov.

28  Code § 12960; *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (explaining that a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1   plaintiff is "required to exhaust her EEOC administrative remedies before seeking federal

2   adjudication of her claims."); *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012) ("A

3   plaintiff asserting claims of discrimination pursuant to the FEHA must exhaust the statute's

4   administrative remedies before filing a lawsuit.").  This requirement applies equally to individual

5   and class action claims.  Cal. Gov. Code § 12961; *Holloway v. Best Buy Co.*, WL 1533668, at *4,

6   8 (N.D. Cal. May 28, 2009).  When a plaintiff fails to allege the exhaustion of administrative

7   remedies, dismissal is appropriate.  *See, e.g., Bradley v. Cnty. of Sacramento Dep't of Hum.*

8   *Assistance of N. California Welfare Div.*, 749 F. App'x 539, 540 (9th Cir. 2018); *Sommatino v.*

9   *U.S.*, 255 F.3d 704, 707 (9th Cir. 2001); *Ali v. Paypal, Inc.*, 2019 WL 11691425, at *4-5 (N.D.

10   Cal. Mar. 26, 2019); *Minor v. Fedex Off. & Print Servs., Inc.*, 182  F. Supp. 3d 966, 983 (N.D.

11   Cal. 2016); *Washington v. Lowe's HIW Inc.*, 75 F. Supp. 3d 1240, 1248 (N.D. Cal. 2014).

12        Here, the Complaint lacks any allegations about Plaintiffs' compliance with Title VII or

13   FEHA's administrative exhaustion requirements, which is not surprising because Plaintiffs rushed

14   to file this lawsuit without first filing any administrative charges.  By failing to exhaust their

15   administrative remedies, Plaintiffs cannot state a claim under Title VII or FEHA.

16        Plaintiffs also cannot cure their failure to exhaust their administrative remedies by

17   belatedly filing the requisite administrative complaints after having already filed this suit.  *Tolbert*

18   *v. U.S.* is instructive.  916 F.2d 245 (5th Cir. 1990).  In *Tolbert*, for instance, the plaintiff filed an

19   appeal with the EEOC and subsequently filed a lawsuit in federal court 10 days later, prior to the

20   EEOC issuing a decision on the appeal and prior to the expiration of the 180-day deadline for the

21   EEOC to issue a decision.  *Id.* at 247.  The defendants filed a motion for summary judgment

22   arguing, in part, that the plaintiff had failed to exhaust her administrative remedies.  *Id.*  The

23   EEOC issued its decision on the plaintiff's appeal prior to the hearing on defendants' motion.  *Id.*

24   The court nonetheless held that "the defect was not cured" "when the EEOC issued its decision

25   before [the plaintiff's] claim was dismissed by the district court."  *Id.* at 249.  The court stated:

26 
27 
28 

> To hold otherwise would allow a plaintiff to file an action and begin civil
> proceedings—discovery, motions to dismiss and for summary judgment, and so
> on—before completing the course of administrative review. A plaintiff could
> thereby largely circumvent the rule that she must exhaust her administrative
> remedies.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1   *Id.*  The court further held that "[s]uch a strict construction . . . is necessary if the aims of the

2   exhaustion requirement are to be served."  *Id.*; *see also Rivera v. U.S. Postal Serv.*, 830 F.2d

3   1037, 1039 (9th Cir. 1987) (holding that an employee "was not free to file in the district court

4   until the EEOC ruled" on his appeal despite the employee withdrawing his appeal prior to its

5   adjudication and filing suit after his withdrawal).  As a result, the Court should dismiss Plaintiffs'

6   claims without leave to amend because any attempt to belatedly comply with the administrative

7   exhaustion requirements would run contrary to the law and the policy underlying those

8   requirements.

9        **B.**    <u>**Plaintiffs Fail to State a Claim for Intentional Discrimination.**</u>

10        Title VII makes it unlawful for a covered employee to " . . . discharge any individual . . .

11   because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  FEHA proscribes the same

12   conduct.  Cal. Gov't Code § 12940.  A plaintiff can state a claim for intentional discrimination

13   under either the *McDonnell Douglas* standard or the *Teamsters* standard.  Here, the Complaint

14   fails to state a claim under either standard.

15        **1.**    **Plaintiffs' Claim Fails Under *McDonnell Douglas*.**

16        Under the *McDonnell Douglas* paradigm, the plaintiff bears the initial burden of

17   establishing a prima facie case of discrimination.  "To establish a prima facie case under Title

18   VII, a plaintiff must offer proof: (1) that the plaintiff belongs to a class of persons protected by

19   Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered

20   an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff

21   differently than a similarly situated employee who does not belong to the same protected class as

22   the plaintiff."  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006)

23   (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Sengupta v.*

24   *Morrison-Knudsen Co.*, 804 F.2d 1072, 1075 (9th Cir. 1986) ("*McDonnell Douglas* does not

25   proscribe discharges because of an absolute or relative performance failure or a reduction in the

26   labor force.")

27        Here, Plaintiffs do not state a claim for relief under the *McDonnell Douglas* standard

28   because the Complaint fails to allege either that they were performing their jobs satisfactorily or

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1   that they were treated differently than similarly situated male employees.  The Complaint says

2   nothing about Plaintiffs' qualifications, experience, prior job performance, or abilities.  Nor does

3   the Complaint allege anything about the comparative qualifications, experience, job performance,

4   of abilities of any other employees, male or female, who worked in substantially similar positions.

5   Thus, the allegations do not state a claim for disparate treatment under the *McDonnell Douglas*

6   standard.

7   **2.   Plaintiffs' Claim Fails Under *Teamsters*.**

8   Under the *Teamsters* framework, to make out a prima facie case of intentional

9   discrimination, a plaintiff claiming that an employer engaged in a "pattern or practice" of

10  discrimination must show "more than mere occurrence of isolated, accidental or sporadic

11  discriminatory acts." *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 336 (1977).  Instead, the

12  plaintiff must show that discrimination "was the company's ***standard operating procedure***"

13  meaning "the regular rather than the unusual practice." *Id.* (emphasis added).  A pattern or

14  practice exists "only where the denial of rights … is repeated, routine, or of a generalized nature."

15  *Id.* at 336, n.16 (quoting 110 Cong. Rec. 14270 (1964).  This is typically shown by evidence of

16  significant statistical disparities coupled with anecdotal evidence that bring "the cold numbers

17  convincingly to life." *Id.* at 338-39.

18  Even assuming for purposes of this pleading motion only that Plaintiffs' statistics are

19  accurate, the Complaint does not state a "pattern or practice" claim because its allegations do not

20  plausibly suggest that discrimination is Twitter's "standard operating procedure." *See Teamsters*,

21  431 U.S. at 336.  Indeed, Plaintiffs allege that the purported discriminatory RIF and Post-RIF

22  Policies were formulated and implemented within a few weeks following Musk's purchase of

23  Twitter, *see* Compl. ¶¶ 18-21, 41-44, and the RIF was the product of decisions "made in a period

24  of just a few days" after Musk acquired Twitter. *Id.* ¶ 19.  That compressed timeframe alone

25  defies any plausible conclusion that discrimination is Twitter's standard operating procedure. *See*

26  *Oinonen v. TRX, Inc.*, 2010 WL 396112, at *4 (N.D. Tex. Feb. 3, 2010) (granting defendant's

27  motion to dismiss because "plaintiffs have provided only statistics and conclusory allegations"

28  about a single layoff, and such a "one-shot event cannot constitute a pattern or practice of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1   discrimination.")  In addition, the Complaint alleges the RIF decisions "were made under

2   extremely hurried circumstances."  Compl. ¶ 19.  Those decisions were therefore the kind of

3   "isolated, accidental, or sporadic" acts that are the antithesis of a standard operating procedure.

4   *See Teamsters*, 431 U.S. at 336.

5           Further, the Complaint alleges that Twitter laid off thousands of men in the RIF and that

6   hundreds of men separated from Twitter as a result of the Post-RIF Policies.  Compl. ¶ 30

7   (alleging 1,350 men were subject to the RIF); *id.* ¶ 45 (alleging 28% of male employees

8   subsequently separated from Twitter).  Because these alleged employment actions affected a

9   substantial number of male employees—even more male employees than female employees (*see*

10  Compl. ¶ 30)—Plaintiffs need robust anecdotal allegations to support a plausible inference of

11  intentional discrimination.  *See Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*, 694

12  F.2d 531, 552 (9th Cir. 1982) (explaining that "[r]egardless of how devastating or reliable the

13  statistics may look, the issue remains in [disparate treatment] cases whether a particular isolated

14  historical event was discriminatory . . . The question whether the facts proved are sufficient to

15  permit a legal inference of discriminatory intent cannot properly be reduced into a mere battle of

16  statistics.")  But the Complaint contains virtually no anecdotal allegations.  It does not allege any

17  gender-based animus directed towards Plaintiffs or any other Twitter employee.  Nor does it

18  identify the managers who made the RIF decisions, state the genders of those managers, or allege

19  that any of these unidentified managers harbored any gender animus toward Plaintiffs or other

20  women.  Compl. ¶¶ 19, 21.  The Complaint offers nothing but a few stray tweets from Musk that

21  have no tie to the RIF, the Post-RIF Policies, or any other decision or policy at Twitter.  *Id.* ¶¶

22  22-25.  Without substantial anecdotal allegations that plausibly suggest gender animus informed

23  Twitter's decisions, Plaintiffs' pattern or practice claim fails because there is nothing to "bring the

24  cold numbers convincingly to life."  *See Teamsters*, 431 U.S. at 336; *Gay*, 694 F.2d at 552-53.

25          Finally, a company's purported knowledge or expectation that a policy would have a

26  disparate impact on female employees does not support an inference of intentional discrimination.

27  *See Gay*, 694 F.2d at 552; *Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO (AFSCME) v.*

28  *State of Wash.*, 770 F.2d 1401, 1405 (9th Cir. 1985) ("discriminatory intent implies selection of a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1   particular course of action at least in part because of, not merely in spite of, its adverse effects

2   upon an identifiable group") (internal quotes omitted); *Wood v. City of San Diego,* 678 F.3d 1075,

3   1081-82 (9th Cir. 2012) (affirming dismissal because "[w]here, as here, a plaintiff is challenging

4   a facially neutral policy, there must be a specific allegation of discriminatory intent. We agree

5   with the district court that [plaintiff]'s disparate treatment claim must be dismissed under Rule

6   12(b)(6)."); *Jones v. Lewis,* 2020 WL 6149693, at *3 (N.D. Cal. Oct. 20, 2020) (dismissing

7   disparate treatment claim based on a facially neutral policy because the complaint lacked "a

8   specific allegation of discriminatory intent"); *see also EEOC v. Bloomberg L.P.*, 778 F. Supp. 2d

9   458, 485 (S.D.N.Y. 2011) ("At bottom, the EEOC's theory of this case is about so-called 'work-

10  life balance.' Absent evidence of a pattern of discriminatory conduct—i.e., a pattern that women

11  or mothers were discriminated against because of their pregnancy as compared with others who

12  worked similar schedules—the EEOC's pattern or practice claim does not demonstrate a policy of

13  discrimination at Bloomberg.")  Thus, Plaintiffs get no mileage from their conclusory assertion

14  that Musk "certainly would have known" that the Post-RIF Policies "would have a

15  disproportionate impact on women, who are more often the caregivers for children other family

16  members."  Compl. ¶ 44.  For this reason, too, the Complaint fails to state a claim for intentional

17  discrimination.

18       **C.**    **The Complaint Is Insufficient to Support a Plausible Disparate Impact Claim.**

19       Disparate impact claims "involve employment practices that are facially neutral in their

20  treatment of different groups but that in fact fall more harshly on one group than another."

21  *Teamsters*, 431 U.S. at 335.  Under Title VII and FEHA, "[a] plaintiff establishes a prima facie

22  case of disparate impact by showing a significant disparate impact on a protected class caused by

23  a specific, identified, employment practice or selection criterion."  *Stout v. Potter*, 276 F.3d 1118,

24  1121 (9th Cir. 2002); *Mahler v. Jud. Council of Cal.*, 67 Cal. App. 5th 82, 113 (2021).  As the

25  Supreme Court has explained, "it is not enough to simply allege that there is a disparate impact on

26  workers, or point to a generalized policy that leads to such an impact.  Rather, the employee is

27  'responsible for isolating and identifying the specific employment practices that are allegedly

28  responsible for any observed statistical disparities.'"  *Smith v. City of Jackson*, 544 U.S. 228, 241

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

(2005) (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)); *see Stout*, 276 F.3d at 1124.  The Ninth Circuit has stressed that "'[i]dentifying a specific practice is not a trivial burden' in [] discrimination cases alleging disparate impact."  *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014) (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101 (2008)).

As a result, "[p]laintiffs generally cannot attack an overall decisionmaking process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact."  *Durante v. Qualcomm, Inc.*, 144 F. App'x. 603, 606 (9th Cir. 2005) (quoting *Stout*, 276 F.3d at 1124); *Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO (AFSCME)*, 770 F.2d at 1405 ("Disparate impact analysis is confined to cases that challenge a specific, clearly delineated employment practice applied at a single point in the job selection process.").  A "decisionmaking process may be analyzed as a single employment practice if 'the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis.'"  *Stout*, 276 F.3d at 1124 (quoting 42 U.S.C. § 2000e–2(k)(1)(B)(i)).

Here, Plaintiffs fail to allege a plausible disparate impact claim for several reasons.

> **1.    Plaintiffs' RIF-Related Disparate Impact Claim Fails Because they Allege the RIF Was the Product of Intentional Discrimination.**

A plaintiff cannot recast a claim for intentional discrimination as a disparate impact claim when the "premise for disparate impact liability coalesces with the discharge which [the plaintiff] claims to have constituted disparate treatment."  *Maresco v. Evans Chematics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 115 (2d Cir. 1992).  If this were not so, disparate impact law would simply "provide a means to circumvent the subjective intent requirement in any disparate treatment case."  *Id.*  In *Zawacki v. Realogy Corp.*, for instance, the court rejected the disparate impact "label" on the plaintiff's age-based discrimination claims because the complaint alleged "the Defendant's procedures in conducting the RIFs were nothing more than a cover for behind-the-scenes, intentional discrimination against its older employees." 628 F. Supp. 2d 274, 281 (D. Conn. 2009).  Similarly, in *Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 438 (S.D.N.Y.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

2014), the court explained that although the complaint characterized the defendants' policy of giving weight to discriminatory assessments as the source of discrimination, "the real source of the disparity [wa]s the managers' allegedly discriminatory reviews and probation decisions." Thus, the allegations in *Barrett* were "not a situation where Defendants followed a facially-neutral practice that created a disparity," but rather "a situation in which managers intentionally treated male and female employees differently. That is a disparate treatment claim." *Id.*

The gravamen of Plaintiffs' RIF-related allegations is that Twitter intentionally targeted female employees for termination.  That is the only way to understand the assertion that "Musk has been widely criticized for sexist, demeaning and hostile comments he has made against women, showing his discriminatory animus against women . . . Thus, not surprisingly, women were significantly affected more than men in Twitter's mass layoff."  Compl. ¶¶ 22, 26; *see also id.* at ¶ 4 (alleging that a greater proportion of women were subject to the RIF and that this disparity "resulted from" sex discrimination as "confirm[ed]" by a "number of Musk's "publicly discriminatory remarks about women" by Musk).  In light of these allegations, Plaintiffs cannot circumvent the proof requirements of a disparate treatment claim in connection with the RIF through the expedient of placing the "disparate impact" label on their discrimination allegations.

## 2. The Disparate Impact Claim Fails Because The Complaint Does Not Isolate and Identify a Specific Employment Practice Responsible for the Alleged Disparities.

To state a viable disparate impact claim in a RIF case, the complaint must "go beyond the general concept of a 'RIF' to identify actionable practices" that informed the RIF.  *See Davis v. D.C.*, 925 F.3d 1240, 1250 (D.C. Cir. 20019); *see also Gilbreath v. Brookshire Grocery Co.*, 400 F. Supp. 3d 580, 591 (E.D. Tex. Aug. 21, 2019) (collecting cases and explaining that "plaintiffs terminated in a RIF or layoff must identify a specific test, requirement, or practice in the layoff selection process that is allegedly responsible for the purported statistical disparities.")  In addition, "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity. A robust causality requirement ensures that '[r]acial imbalance ... does not, without more, establish a prima facie case of disparate impact' . . . ." *Tex. Dept. of Hous. & Cmty. Affairs v. Inclusive Communities*

1   *Project, Inc.*, 576 U.S. 519, 542 (2015) (citing *Wards Cove*, 490 U.S. at 653); *Mahler*, 67 Cal.

2   App. 5th at 114.

3                              a.    <u>The allegations related to the RIF fail.</u>

4          The Complaint does not come close to identifying a specific RIF-related employment

5   practice to challenge with a disparate impact claim.  The Complaint offers only bottom-line

6   statistics on the RIF, Compl. ¶¶ 29-38, but it does not allege any specific practice, test, or

7   standard that was responsible for some or all of the alleged disparities.  *See id.* ¶¶ 19, 21.

8   The Complaint does nothing but assert that an unidentified "small group of managers" made RIF

9   decisions "under extremely hurried circumstances, with little if any regard given to employees'

10  job performance, qualification, experience, and abilities."  *Id.*  But those allegations address only

11  what factors Twitter allegedly did *not* consider; they do not address what factors Twitter *did*

12  consider that are responsible for the purported disparities.  Thus, the Complaint lacks allegations

13  sufficient to support a disparate impact claim based on the RIF.  *See Stout*, 276 F.3d at 1121-22

14  (in a pay and promotion case, observing that the proper unit of analysis for the disparate impact

15  claim was not the entire promotion process or the overall promotion rate after the final stage of

16  the process, but rather the selection rate at an "intermediate stage" where a screening panel

17  selected which candidates would proceed to an interview stage.)*; Enoh v. Hewlett Packard Enter.*

18  *Co.*, 2018 WL 3377547, at *14 (N.D. Cal. July 11, 2018) (allegation that the defendant "'allowed

19  an overwhelmingly Caucasian group of selectors to use a 'hazy' selection process for its

20  employment decisions,' is too vague to support Plaintiffs' disparate impact claims."); *see also*

21  *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021) (recognizing disparate impact

22  claim where the plaintiff challenged a specific practice pay practice but "d[id] not challenge the

23  general practice of awarding retention bonuses.").

24                              b.    <u>The allegations related to the Post-RIF Policies fail.</u>

25         The Complaint also fails to adequately plead a disparate impact claim predicated on the

26  alleged Post-RIF Policies.  According to the Complaint, Twitter implemented two Post-RIF

27  Policies:  (i) employees were expected to work "long hours at high intensity," and (ii) employees

28  were required to work from a Twitter office rather at home.  Compl. ¶¶ 41, 44.  After allegedly

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

15

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1    implementing these policies, Musk "sent a message to the remaining Twitter employees giving

2    them until the following day to inform the company (by clicking 'yes' on a link) whether they

3    agreed to work under the new conditions." *Id.* ¶ 44.  The Complaint alleges that this "ultimatum"

4    resulted in "approximately 36% of the remaining women" and "approximately 28% of the men"

5    leaving the company. *Id.* ¶ 45.

6         As an initial matter, the alleged policy that required long and hard work is too vague and

7    generic to constitute a discernible employment practice for disparate impact purposes.  *See Stout*,

8    276 F.3d at 1121-22; *Enoh*, 2018 WL 3377547, at *14; *Freyd*, 990 F.3d at 1224.  In addition, the

9    two percentages that the Complaint reports (i.e., 36% of female employees and 28% of male

10   employees left the company in response to the Post-RIF Policies) are simply bottom-line figures

11   that the Complaint does not tie to either of the Post-RIF Policies.  For instance, the Complaint

12   does not identify the percentages of male and female employees who left the company because

13   they did not want to work long hours at high intensity, the percentages who left because they

14   wanted to work remotely rather than at a Twitter office, the percentages who left for both reasons,

15   the percentages who left due to reasons completely unrelated to the Post-RIF Policies, or the

16   percentages who were "terminated" after the RIF for reasons unrelated to those policies.  Compl.

17   ¶ 45.  The Complaint therefore fails to allege that either of the Post-RIF Policies caused a

18   disparate impact on female employees.  *See Wards Cove*, 490 U.S. at 657 (A plaintiff cannot

19   demonstrate disparate impact "simply by showing that at the bottom line there is racial imbalance

20   in the work force."); *Stout*, 276 F.3d at 1121-22 ("Whether disparate impact was shown must

21   address the results of the interview screening decisions, not simply the bottom line promotion

22   decisions.")

23        What is more, the disparate impact claim fails for the fundamental reason that the

24   separations that arose from the Post-RIF Policies were *voluntary*.  Comp. ¶ 44 (alleging that

25   Musk asked employees whether they "agreed" to continue to work at Twitter "under the new

26   conditions).  Those percentages necessarily reflect countless individualized decisions by

27   employees about whether they wanted to continue to work for Twitter under the alleged Post-RIF

28   Policies.  *See E.E.O.C. v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 486 (S.D.N.Y. 2011) (affirming

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

summary judgment against the EEOC and explaining that "[w]hether an individual in any family wishes to make that commitment is an intensely personal decision that must account for the tradeoffs involved, and it is not the role of the courts to dictate a healthy balance for all.") Because the employees chose whether to stay or leave Twitter, any purported causal chain between the Complaint's bottom-line percentages and the Post-RIF Policies is broken.

Recognizing this problem with their disparate impact theory, Plaintiffs adopt two rhetorical strategies.

First, Plaintiffs characterize each employee's decision to leave the company as a "layoff." Compl. ¶ 45. But that is a gratuitous characterization because nothing in the complaint plausibly suggests that either of the Post-RIF Policies constituted a layoff. *See Twombly*, 550 U.S. at 555 ("labels" insufficient).

Second, Plaintiffs assert the Post-RIF Policies amounted to a "constructive discharge" of the hundreds of employees who decided to leave Twitter. Compl. ¶ 46. But a constructive discharge requires conditions that are "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job and earn a livelihood . . ." *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000); *see also Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (explaining that the constructive discharge doctrine sets a "high bar" that is met only when "working conditions become so intolerable that a reasonable person in the employee's positions would have felt compelled to resign") (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)). The Complaint is woefully insufficient to support an inference of a mass constructive discharge. It alleges only that Twitter's expectation was that employees would be "extremely hardcore" and "work[] long hours at high intensity" in the office and not from home, *see* Compl. ¶ 41, 44,[1] which does not come close to supporting an inference of "intolerable" or "extraordinary and egregious" working conditions. Lest there be any doubt, the Complaint itself admits that thousands of Twitter

---

[1] Although "some" employees were allegedly told they needed to "literally work 24/7" to meet imminent deadlines, the Complaint does not allege that working around the clock every day was a new policy for the entire workforce. Compl. ¶ 42.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1   employees decided to continue their employment under the Post-RIF Policies, which undermines

2   any plausible suggestion that the Post-RIF Policies constituted a constructive discharge of each

3   and every employee who decided to separate from the company after Twitter implemented the

4   alleged policies.

5           **3.      Because Plaintiffs Were Laid Off in the RIF, They Lack Standing to
                State a Claim Related to the Allegedly Discriminatory Post-RIF
6               Policies.**

7           Article III requires Plaintiffs to "clearly … allege facts demonstrating each element" of

8   standing at the pleading stage.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal

9   quotations omitted).  A plaintiff has standing only if she suffered an injury in fact, which is an

10  invasion of a legally protected interest that is "concrete and particularized."  *Id.* (citing *Lujan v.*

11  *Defenders of Wildlife*, 504 U.S. 555, 560 (1992).)  An injury is "particularized" only if it affects a

12  plaintiff "in a personal and individual way."  *Id.* at 339.  Consequently, a plaintiff may assert a

13  claim that arises only from her own injuries—a plaintiff cannot state a claim arising from

14  purported injuries "suffered by other, unidentified members" of a purported class.  *See Warth v.*

15  *Seldin*, 422 U.S. 490, 502 (1975) (dismissing putative class action for lack of standing by the

16  named plaintiffs).  In disparate impact cases, a plaintiff must show she was "subject to the

17  particular employment practice" that caused the demographic disparity.  *Pottenger v. Potlach*

18  *Corp.*, 329 F.3d 740, 750 (9th Cir. 2003) (affirming summary judgment on disparate impact claim

19  because the plaintiff was not subject to the RIF he challenged).

20          Here, Plaintiffs try to state a disparate impact claim arising from the Post-RIF Policies.

21  Compl. ¶¶ 2, 40-46.  But Plaintiffs had already been laid off in the RIF before Twitter

22  implemented the Post-RIF Policies.  *See id.* ¶¶ 20, 46.  Because Plaintiffs could not have been

23  injured by the Post-RIF Policies, they lack standing to assert a disparate impact claim arising

24  from the alleged injuries of others who were subject to those policies.

25      **D.      The Complaint Fails to Plead a FEHA Claim on Behalf of Florida-Based
                Plaintiff Strifling.**
26

27          A non-California citizen who does not work in California cannot state a FEHA claim

28  unless the alleged discriminatory conduct occurred in California.  State statutes are "presumed not

18

1   to have extraterritorial effect." *See Paparella v. Plume Design, Inc.*, 2022 WL 2915706, at *3

2   (N.D. Cal. July 25, 2022) (citing *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1061 (N.D. Cal. 2014).

3   Because FEHA was not intended to apply to non-residents where the alleged wrongful conduct

4   took place outside of California, an out-of-state plaintiff like Strifling is "required to plead at a

5   minimum that [she] was either employed in California or that the discriminatory conduct occurred

6   in California for the claim to fall within FEHA's scope." *Id.*; *Gonsalves v. Infosys Techs., LTD.*,

7   2010 WL 1854146, at *6 (N.D. Cal. May 6, 2010) ("If California-based employees participated in

8   or ratified the alleged tortious conduct, the complaint must so state with specificity so that the

9   Court can determine if these actions are sufficient to state a claim under FEHA.")  If a complaint

10  alleges participation by California-based actors only "at the most general level," it is insufficient

11  to state a claim.  *See Loza v. Intel Americas, Inc.*, 2020 WL 7625480, at *4 (N.D. Cal. Dec. 22,

12  2020) (granting defendant's motion to dismiss plaintiff's FEHA claim "pursuant to the

13  presumption against extraterritoriality" because there were no substantive allegations to show that

14  the tortious conduct relating to plaintiff's termination occurred in California).

15          According to the Complaint, Plaintiff Strifling resides in Miami, Florida, where she

16  worked for Twitter until she was laid off.  Compl. ¶¶ 9, 46.  The Complaint does not allege that

17  Twitter ever employed her in California or that she experienced discriminatory conduct in

18  California.  Nor does the Complaint identify which manager or group of managers made the

19  decision to lay her off as part of the RIF.  *See* Compl. ¶ 21.  Although the Complaint does allege

20  that Twitter is headquartered in San Francisco, that allegation is insufficient to establish that the

21  RIF decision related to Strifling occurred in California.  *See Loza*, 2020 WL 7625480, at *4.

22  Moreover, the Complaint alleges that managers of "other companies owned by Musk" that are not

23  headquartered in California, including Texas-based Tesla, made some of the RIF decisions.

24  Compl. ¶ 21.  The only Twitter leader that the Complaint identifies is Musk.  But it contains no

25  non-conclusory allegations about his role in the RIF, including whether he made or ratified any

26  RIF-related decision that affected Strifling, let alone where Musk was located (e.g., California,

27  Texas, or elsewhere) at the time.  Strifling therefore does not plead facts sufficient to establish her

28  standing to state a claim under FEHA.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1  **E.**     **The Court Should Dismiss Plaintiffs' Derivative Claim for Relief Under the Declaratory Judgment Act.**

2

3      The Declaratory Judgment Act is a procedural device; it does not create any substantive

4  rights.  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-241 (1937); *see also Shell Gulf of*

5  *Mexico Inc. v. Center for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) ("This

6  statute does not create new substantive rights, but merely expands the remedies available in

7  federal courts"); *Dinh Nguy v. Cnty. of Yolo*, 2014 WL 4446829, at *8 (E.D. Cal. Sept. 9, 2014)

8  ("Declaratory relief is a remedy, not an independent cause of action").  A claim for relief pursuant

9  to the Declaratory Judgment Act requires a dispute that is: (1) "definite and concrete, touching the

10  legal relations of parties having adverse legal interests;" (2) "real and substantial;" and (3)

11  "admit[ting] of specific relief through a decree of a conclusive character, as distinguished from an

12  opinion advising what the law would be upon a hypothetical state of facts."  *MedImmune, Inc. v.*

13  *Genentech, Inc.*, 549 U.S. 118, 127 (2007).  "The central question [] is whether the facts alleged,

14  under all the circumstances, show that there is a substantial controversy, between parties having

15  adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a

16  declaratory judgment."  *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1221 (N.D. Cal.

17  2014) (quoting *MedImmune, Inc.*, 549 U.S. at 127).  "[W]ithout a case or controversy, there

18  cannot be a claim for declaratory relief."  *Apple Inc. v. VoIP-Pal.com, Inc.*, 506 F. Supp. 3d 947,

19  967 (N.D. Cal. 2020).

20      Here, Plaintiffs request a declaratory judgment "prohibiting Twitter from soliciting

21  Plaintiffs and similarly situated individuals to sign separation agreements that release their

22  discrimination claims asserted herein, without first informing them of their rights under these

23  statutes, the pendency of this case filed on their behalf, and Plaintiffs' counsel's contact

24  information."  *See* Compl. at p. 12.  Plaintiffs' request is predicated upon Plaintiffs' ability to

25  assert viable sex discrimination claims under Title VII and/or FEHA.  As set forth herein,

26  Plaintiffs fail to state a claim for relief under either Title VII or FEHA.  *See supra* § IV.A-D.

27  Plaintiffs' request for declaratory relief therefore fails because there is no viable "case or

28  controversy" between the Parties.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

F.      **The Court Should Dismiss or Strike Plaintiffs' Putative Class Claims.**

1.      **Plaintiffs Cannot Represent Employees Who Were Allegedly Injured by the Post-RIF Policies Because Plaintiffs Were Not Subject to Those Policies.**

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979).  To justify such an exception, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).  Where a named plaintiff has suffered no injury as the result of an allegedly discriminatory practice, they "simply [are] not eligible to represent a class of persons who did allegedly suffer injury." *Id.* at 403-04.

The Complaint seeks class-wide relief to redress purported injuries that Plaintiffs never suffered.  As explained above, Plaintiffs cannot represent employees who allegedly suffered injuries arising from Twitter's post-RIF policies because Plaintiffs were not subject to those policies.  Compl. ¶¶ 20, 46.  In addition, Florida-based Plaintiff Strifling lacks standing to pursue a FEHA claim.  *See supra* § IV.D.  The Complaint therefore fails to plead that Plaintiffs have suffered the same injury as putative class members such that they may serve as class representatives.

2.      **The Court Should Dismiss or Strike Plaintiffs' Putative Class Claims Because The Complaint Pleads No Ascertainable Class.**

"A class definition should be precise, objective, and presently ascertainable." *Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 508 (N.D. Cal. 2011) (citations omitted); *see also* Manual for Complex Litigation, § 21.222, p. 290 (4th ed. 2004) ("An identifiable class exists if its members can be ascertained by reference to objective criteria").  "[C]ourts look to whether the class definition establishes objective, rather than subjective, criteria for determining membership." *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 563 (N.D. Cal. 2016) (citing *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011)).

The Complaint does not plead a precise and ascertainable class definition.  Plaintiffs purport to represent "other female Twitter employees across the country who have been

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1    discharged or constructively discharged from their jobs during the chaotic weeks" after Musk

2    acquired Twitter.  Compl. ¶ 2.  But that definition does not identify the "other" female employees

3    who are part of Plaintiffs' proposed class, nor does it identify the "chaotic" weeks that are

4    included in the class definition's temporal scope.  *See id.*   Elsewhere in the Complaint, Plaintiffs

5    say they represent women who have "lost their jobs" with the company, which appears to refer

6    back to the prior sentence that mentions women who were "laid off . . . or terminated or

7    constructively discharged" (i.e., excluding women who quit for reasons unrelated to the

8    allegations in the Complaint) as part of the RIF or in response to the Post-RIF Policies.  *Id.* ¶ 46.

9    But those allegations do not supply the missing precision.  For instance, surely Plaintiffs do not

10   purport to represent all women who were terminated or discharged for cause following Musk's

11   acquisition of Twitter, when the substantive allegations in the Complaint address only the RIF

12   and the two Post-RIF Policies.  Yet their informal class definition would sweep those female

13   employees under its terms.  Thus, the Court should dismiss or strike the class claims.

14   **V.    <u>CONCLUSION</u>**

15          For the reasons stated above, the Complaint fails to state a disparate impact claim or a

16   disparate treatment claim, and its class allegations are both too vague and too overbroad to satisfy

17   Plaintiffs' pleading burden.  Twitter therefore respectfully requests an order dismissing the

18   Compliant in its entirety and striking the class claims.

19

20   Dated: January 26, 2023                          MORGAN, LEWIS & BOCKIUS LLP

21

22                                                    By  /s/ *Brian D. Berry*
                                                          Eric Meckley
23                                                        Brian D. Berry
                                                          Ashlee N. Cherry
24                                                        Joseph A. Govea
                                                          Kassia Stephenson
25                                                        Attorneys for Defendant
                                                          TWITTER, INC.
26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

TWITTER'S NOTICE OF MOTION AND
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST