SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiffs Carolina Bernal Strifling
and Willow Wren Turkal, on behalf of themselves
and all others similarly situated*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| CAROLINA BERNAL STRIFLING and WILLOW WREN TURKAL, on behalf of themselves and all others similarly situated, | Case No. 4:22-cv-07739-JST |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT AND STRIKE THE CLASS CLAIMS** |
| v. | |
| TWITTER, INC. | Date:     April 6, 2023 |
| Defendant | Time:     2:00 PM, PST |
| | Judge:   Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL AND FACTUAL BACKGROUND ........................................ 4

III.  ARGUMENT .................................................................................................... 6

    A.   Legal Standard for Motion to Dismiss Under Rule 12(b)(6) ................. 6

    B.   Legal Standard for Motion to Strike Under Rule 12(f) .......................... 7

    C.   Plaintiffs Have Stated a Claim for Discrimination Under Title VII and FEHA ........................................................................................................ 8

        1.   Prior exhaustion of administrative remedies is not a jurisdictional prerequisite and should be excused here .................................... 8

        2.   Plaintiffs have pleaded facts sufficient to support a plausible claim of intentional discrimination .................................................. 12

        3.   Plaintiffs have pleaded facts sufficient to support a plausible disparate impact claim ............................................................. 16

        4.   Twitter's argument regarding standing should be rejected ..................... 21

        5.   The FEHA claim was brought on behalf of Plaintiff Turkal, who worked in California ................................................................. 22

        6.   The Court should not dismiss Plaintiffs' Declaratory Judgment Act Claim ....................................................................................... 22

    D.   The Court Should Deny Twitter's Motion to Strike Plaintiffs' Class Action Claims ....................................................................................... 22

IV.   CONCLUSION .............................................................................................. 25

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

# TABLE OF AUTHORITIES

**Cases**

Ali v. Paypal, Inc.,
    2019 WL 11691425 (N.D. Cal. Mar. 26, 2019)................................................................ 12

Allen v. Highlands Hosp. Corp.,
    545. F.3d 387 (6th Cir. 2008) .......................................................................................... 9

Allen v. INC Research,
    2018 WL 113551568 (C.D. Cal. Nov. 29, 2018)........................................................ 1, 9

Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO (AFSCME) v. State of Wash.,
    770 F.2d 1401 (9th Cir. 1985) ...................................................................................... 16

Amey v. Cinemark USA, Inc.,
    2014 WL 4417717 (N.D. Cal. Sept. 5, 2014) ............................................................... 23

Anton v. San Antonio Community Hosp.,
    19 Cal. 3d 802 (1977) .................................................................................................. 10

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)........................................................................................................ 7

Barrett v. Forest Lab'ys, Inc.,
    39 F. Supp. 3d 407 (S.D.N.Y. 2014)......................................................................... 3, 17

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)..................................................................................................... 6, 7

Bradley v. Cnty. of Sacramento Dep't of Hum. Assistance of N. California Welfare Div.,
    749 F. App'x 539 (9th Cir. 2018) ................................................................................ 12

Buchanan v. Tata Consultancy Services, Ltd.,
    2017 WL 6611653 (N.D. Cal. Dec. 27, 2017) ............................................................. 14

Califano v. Yamasaki,
    442 U.S. 682 (1979)...................................................................................................... 24

California Dep't of Toxic Substances Control v. Alco Pac., Inc.,
    217 F. Supp. 2d 1028 (C.D. Cal. 2002) ...................................................................... 7, 8

Campbell v. Hawaii Dep't of Educ.,
    892 F.3d 1005 (9th Cir. 2018) .................................................................................. 2, 13

Chaidez v. Ford Motor Company,
    937 F.3d 998 (7th Cir. 2019) ........................................................................................ 20

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

City of San Jose v. Operating Engineers Local Union No. 3,
    49 Cal. 4th 597 (2010) ....................................................................................... 10

Cornet, et al., v. Twitter, Inc.,
    Civ. Act No. 3:22-cv-06857-JD, Joint Response to Order Re: Notice, Dkt. 43-1
    (N.D. Cal. Dec. 19, 2022) ..................................................................................... 4

Cornet, et al., v. Twitter, Inc.,
    Civ. Act No. 3:22-cv-06857-JD, Order Re Litigation Notice, Dkt. 42 (N.D. Cal.
    Dec. 14, 2022).............................................................................................. 4, 11

Cruz v. Sky Chefs, Inc.,
    2013 WL 1892337 (N.D. Cal. May 6, 2013) ...................................................... 23

Daly-Murphy v. Winston,
    837 F.2d 348 (9th Cir. 1987) ........................................................................ 1, 10

Davis v. D.C.,
    925 F.3d 1240 (D.C. Cir. 2019) .......................................................................... 18

Diaz v. United Agr. Employee Welfare Benefit Plan Trust,
    50 F.3d 1478 (9th Cir. 1995) ............................................................................. 11

Dietary Supplemental Coalition, Inc. v. Sullivan,
    978 F.2d 560 (9th Cir. 1992) ............................................................................. 11

Doninger v. Pac. Nw. Bell, Inc.,
    564 F.2d 1304 (9th Cir. 1977) ........................................................................... 23

East Texas Motor Freight Sys., Inc. v. Rodriguez,
    431 U.S. 395 (1977)............................................................................................ 24

EEOC v. Bloomberg L.P.,
    778 F. Supp. 2d 458 (S.D.N.Y. 2011).................................................................. 16

Enoh v. Hewlett Packard Enterprise Co.,
    2018 WL 3377547 (N.D. Cal. July 11, 2018)..................................................... 19

Francis v. City of New York,
    235 F.3d 763 (2d Cir. 2000)................................................................................. 9

Freeman v. Cty. of Sacramento Dep't of Human Assistance,
    2020 WL 2539268 (E.D. Cal. May 19, 2020) ..................................................... 16

Freyd v. University or Oregon,
    990 F.3d 1211 (9th Cir. 2021) ........................................................................... 20

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

Galvan v. Bexar Cty.,
    785 F.2d 1298 (5th Cir. 1986) .................................................................... 8

Gay v. Waters' and Dairy Lunchmen's Union, Local No. 30,
    694 F.2d 531 (9th Cir. 1982) ....................................................... 2, 15, 16

Gilbreath v. Brookshire Grocery Co.,
    400 F. Supp. 3d 580 (E.D. Tex. Aug. 21, 2019) ...................................... 18

Godwin v. Hunt Wesson, Inc.,
    150 F.3d 1217 (9th Cir. 1998) ................................................................. 13

Green v. City of Oceanside,
    194 Cal. App. 3d 212 (1987) .................................................................. 10

Hemmings v. Tidyman's Inc.,
    285 F.3d 1174 (9th Cir. 2002) ................................................................. 16

Henderson v. J.M. Smucker Co.,
    2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) ........................................ 25

Herrera v. Service Employees International Union Local 87,
    2013 WL 12324535 (N.D. Cal. Sept. 13, 2013) ...................................... 15

Hibbs-Rines v. Seagate Technologies, LLC,
    2009 WL 513496 (N.D. Cal. March 2, 2009) .......................................... 22

Holland v. Union Pac. RR Co.,
    154 Cal. App. 4th 940 (2007) ................................................................... 9

Horn v. Cusman & Wakefield Western,
    72 Cal. App. 4th 798 (1999) ................................................................... 16

In re Wal-Mart Stores, Inc. Wage and Hour Litig.,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) .................................................... 23

International Broth. of Teamsters v. United States,
    431 U.S. 324 (1977) ................................................................................ 14

Jensen v. Knowles,
    621 F. Supp. 2d 921 (E.D. Cal. 2008) .................................................... 12

Johnson v. City of Loma Linda,
    24 Cal. App. 4th 61 (2000) ....................................................................... 9

Kaiser Foundation Hospitals v. Superior Court,
    128 Cal. App. 4th 85 (2005) ................................................................... 10

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

_Karpe v. Chao_,
    416 F. Supp. 3d 1021 (S.D. Cal. 2019) ........................................................ 20

_Keiffer v. Bechtel Corp._,
    65 Cal. App. 4th 893 (1998) ...................................................................... 9

_Keys v. Humana, Inc._,
    684 F.3d 605 (6th Cir. 2012) .................................................................... 14

_Kick v. Alibab.com, Inc._,
    2018 4181955 (N.D. Cal. Aug. 30, 2018) ................................................ 23

_Kim v. Konad USA Distribution, Inc._,
    226 Cal. App. 4th 1336 (2014) .............................................................. 1, 9

_King v. National General Insurance Co._,
    2021 WL 2400899 (N.D. Cal. June 11, 2021) ...................................... 3, 22

_Klein v. Sullivan_,
    978 F.2d 520 (9th Cir. 1992) .................................................................... 11

_League of United Latin Am. Citizens v. Wheeler_,
    899 F.3d 814 (9th Cir. 2018) ...................................................................... 9

_Lopez v. Pacific Maritime Association_,
    2009 WL 10680881 (C.D. Cal. April 3, 2009) ..................................... 3, 16

_Lowe v. City of Monrovia_,
    775 F.2d 998 (9th Cir. 1985) .................................................................... 15

_Luna v. Universal Studio City Productions LLP_,
    2013 WL 12308198 (C.D. Cal., Aug. 27, 2013) ...................................... 23

_Lyons v. England_,
    307 F.3d 1092 (9th Cir. 2002) ............................................................ 12, 13

_Maresco v. Evans Chematics, Div. of W.R. Grace & Co._,
    964 F.2d 106 (2d Cir. 1992) ..................................................................... 17

_Marshall v. Burlington Northern, Inc._,
    595 F.2d 511 (9th Cir. 1979) .................................................................... 10

_McAllister v. Monterey_,
    147 Cal. App. 4th 253 (2007) ................................................................... 10

_McDonnell Douglas Corp. v. Green_,
    411 U.S. 792 (1973) ...................................................................... 13, 14, 15

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

McGinest v. GTE Service Corp.,
    360 F.3d 1103 (9th Cir. 2004) ..................................................................... 13

Merrick v. Farmers Ins. Group,
    892 F.2d 1434 (9th Cir. 1990) ..................................................................... 16

Minor v. Fedex Off. & Print Servs., Inc.,
    182 F. Supp. 3d 966 (N.D. Cal. 2016) ......................................................... 12

Morales v. Laborers' Union 304,
    2012 U.S. Dist. LEXIS 2234 (N.D. Cal. Jan. 9, 2012) ................................... 7

Moussouris v. Microsoft Corp.,
    2016 WL 6037978 (W.D. Wash. Oct. 14, 2016) ........................................... 16

Moussouris v. Microsoft Corp.,
    2018 WL 63584701 (W.D. Wash. July 11, 2018) .......................................... 17

Navarro v. Block,
    250 F.3d 729 (9th Cir. 2001) ......................................................................... 7

O'Donnell v. U.S. Bancorp Equip. Fin., Inc.,
    2010 WL 2198203 (N.D. Cal. May 28, 2010) ..................................... 7, 13, 16

Ogo Associates v. City of Torrance,
    37 Cal. App. 3d 830 (1974) .......................................................................... 10

Ogola v. Chevron Corp.,
    2014 WL 4145408 (N.D. Cal. Aug. 21, 2014) ......................................... 3, 23

Paine v. IKEA Holding US, Inc.,
    2020 WL 374581 (E.D. Pa. Jan. 23, 2020) ................................................... 17

Parducci v. Overland Sols, Inc.,
    2019 WL 3220282 (N.D. Cal. July 17, 2019) ............................................... 23

Pedreiera v. Ky. Baptist Homes for Children, Inc.,
    579 F.3d 722 (6th Cir. 2009) ........................................................................ 14

Penn. State Police v. Suders,
    542 U.S. 129 (2004)...................................................................................... 21

Pottenger v. Potlach Corp.,
    329 F.3d 740 (9th Cir. 2003) ..................................................................... 3, 18

Prince v. CLS Transp., Inc.,
    118 Cal. App. 4th 1320 (2004) ..................................................................... 25

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

Public Employment Relations Bd. v. Superior Court,
	13 Cal. App. 4th 1816 (1993) ......................................................................... 10

Reese v. Source 4 Teachers,
	2018 WL 3572987 (E.D. Pa. Aug. 8, 2018) ...................................................... 18

Rhoades v. Progressive Cas. Ins. Co.,
	2011 WL 397657 (E.D. Cal. Feb. 3, 2011)......................................................... 25

Rivera v. U.S. Postal Service,
	830 F.2d 1037 (9th Cir. 1987) .......................................................................... 11

Rose v. Wells Fargo & Co.,
	902 F.2d 1417 (9th Cir. 1990) ..................................................................... 3, 19

Sablan v. A.B. Won Pat Int'l Airport Auth., Guam,
	2010 WL 5148202 (D. Guam Dec. 9, 2010)........................................................ 7

Sanchez-Velazquez v. Autonomous Municipality of Carolina,
	2012 WL 6552789 (D.P.R. Dec. 14, 2012) ......................................................... 8

Santiago-Rodriguez v. Puerto Rico,
	546 F. Supp. 3d 155 (D.P.R. 2021)..................................................................... 8

Scotch v. Art Inst. Of Cal.-Orange Cnty., Inc., 173 Cal. App. 4th 986 (2009) ........... 21

Seifi v. Mercedes-Benz USA, LLC,
	2013 WL 2285339 (N.D. Cal. May 23, 2013) ................................................... 25

Serrano v. Cintas Corp.,
	699 F.3d 884 (6th Cir. 2012) ........................................................................... 14

SJBC, LLC v. Horwedel,
	201 Cal. App. 4th 339 (2011) ....................................................................... 2, 10

Sommatino v. U.S.,
	255 F.3d 704 (9th Cir. 2001) ........................................................................... 12

Sommatino v. United States,
	255 F.3d 704 (9th Cir. 2001) ............................................................................. 9

Sperling v. Hoffman-La Roche, Inc.,
	924 F. Supp. 1346 (D.N.J. April 30, 1996)....................................................... 14

Stout v. Potter,
	276 F.3d 1118 (2d Cir. 2002)........................................................................... 20

Surrell v. Cal Water Serv. Co.,
	518 F.3d 1097 (9th Cir. 2008) ........................................................................... 9

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

Swierkiewicz v. Sorema N. A.,
   534 U.S. 506 (2002) ............................................................................ 16

Swierkiewicz v. Sorema N.A.,
   534 U.S. 506 (2002) ............................................................................ 14

Tichenor v. BAE Systems Technology Solutions & Services, Inc.,
   2021 WL 2559704 (S.D. Cal. April 16, 2021) ................................. 21

Tolbert v. U.S.,
   916 F.2d 245 (5th Cir. 1990) ............................................................. 11

TopDevz, LLC v. LinkedIn Corp.,
   2021 WL 3373914 (N.D. Cal. Aug. 3, 2021) ................................... 25

Tsur v. Intel Corp.,
   --- F. Supp. 3d ---, 2022 WL 17985573 (D. Or. Dec. 29, 2022) ...... 18

United Farm Workers v. Arizona Agr. Employment,
   669 F.2d 1249 (9th Cir. 1982) ........................................................... 10

Unnamed Physician v. Board of Trustees,
   93 Cal. App. 4th 607 (2001) ............................................................. 10

Usher v. O'Reilly Automotive, Inc.,
   2014 WL 12597587 (C.D. Cal. May 27, 2014) ................................ 16

Vinole v. Countrywide Home Loan, Inc.,
   571 F.3d 935 (9th Cir. 2009) ....................................................... 3, 23

Ward Cove Packing Co., Inc. v. Atonio,
   490 U.S. 642 (1989) ........................................................................... 17

Washington v. Lowe's HIW Inc.,
   75 F. Supp. 3d 1240 (N.D. Cal. 2014) ............................................. 12

Watson v. Fort Worth Bank & Trust,
   487 U.S. 977 (1988) ........................................................................... 16

Whittlestone, Inc. v. Handi–Craft Co.,
   618 F.3d 970 (9th Cir. 2010) ............................................................... 7

Wilburn v. Dial Corp.,
   724 F. Supp. 530 (W.D. Tenn. 1989) .................................................. 8

Williams v. Washington Metro. Area Transit Auth.,
   721 F.2d 1412 (D.C. Cir. 1983) ........................................................... 8

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

Wilson v. MVM, Inc.,
     475 F.3d 166 (3d Cir. 2007) .......................................................................... 9

Wood v. City of San Diego,
     678 F.3d 1075 (9th Cir. 2012) ............................................................. 2, 12, 16

Wyatt v. Terhune,
     315 F.3d 1108 (9th Cir. 2003) .................................................................... 12

Zawacki v. Realogy Corp.,
     628 F. Supp. 2d 274 (D. Conn. 2009) ........................................................ 17

Zipes v. Trans World Airlines, Inc.,
     455 U.S. 385 (1982) ..................................................................................... 9

**Statutes**

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ................................... *passim*

California Fair Employment and Housing Act, Cal. Gov. Code § 12900, *et seq* ......…………*passim*

**Rules**

Fed. R. Civ. P. 12 ............................................................................................ 3, 7

Fed. R. Civ. P. 8 .................................................................................................. 6

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

## I.    INTRODUCTION

This case was brought by Plaintiffs Carolina Strifling and Willow Wren Turkal on behalf of female Twitter employees who have been laid off (or constructively discharged) in the wake of the purchase of the company by multi-billionaire Elon Musk. See Class Action Complaint (Dkt. 1). Plaintiffs allege that Twitter has engaged in unlawful discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and (for employees who worked in California) the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900, *et seq.*[1]

In its Motion to Dismiss the Complaint and Strike the Class Claims (Dkt. 20), Twitter argues first that the Court should dismiss Plaintiffs' discrimination claims because Plaintiffs failed to exhaust their administrative remedies by declining to wait for the Equal Employment Opportunity Commission ("EEOC") and/or the Department of Fair Employment and Housing ("DFEH") to issue a notice of right to sue before filing his individual and class claims in court, and because they have failed to state a claim under either a disparate impact or disparate treatment theory of discrimination. Twitter's motion to dismiss on these grounds should be denied. First, the administrative exhaustion requirement under both Title VII and FEHA is non-jurisdictional (i.e. it does not implicate a court's subject matter jurisdiction) and is subject to equitable doctrines such as waiver, estoppel, and equitable tolling. See Allen v. INC Research, 2018 WL 113551568, at *3 (C.D. Cal. Nov. 29, 2018); Kim v. Konad USA Distribution, Inc., 226 Cal. App. 4th 1336, 1347 (2014). Further, the Ninth Circuit has long recognized that plaintiffs may be excused from exhausting their administrative remedies under certain circumstances, including where the remedies offered by the administrative agency are inadequate or inefficacious, or when the pursuit of administrative remedies to exhaustion would cause irreparable harm. See, e.g., Daly-Murphy v. Winston, 837 F.2d 348, 354 (9th Cir. 1987); see also

---

[1]    As Twitter notes, Plaintiff Strifling worked for Twitter in Florida. (Compl. ¶ 9, Dkt. 1.) As such, the FEHA claim is brought by Plaintiff Turkal, who worked in California. (Compl. ¶ 10, Dkt. 1.)

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

SJBC, LLC v. Horwedel, 201 Cal. App. 4th 339, 346 (2011). Here, Plaintiffs should be excused from exhausting their administrative remedies before filing suit because the EEOC and DFEH are not empowered to order the emergency injunctive relief that Plaintiffs sought, and Plaintiffs would have suffered irreparable harm if they had waited for the issuance of a notice of right to sue before seeking to enjoin Twitter from distributing a severance package and release of claims to laid-off employees without them having notice of their rights or the claims filed in this case on their behalf. Second, as discussed at length below, Plaintiffs have met their burden of pleading that Twitter's conduct discriminated against female employees under either a disparate impact or disparate treatment theory.

Indeed, Twitter's arguments regarding the sufficiency of Plaintiffs' discrimination allegations fall flat. As discussed at length below, Plaintiffs have provided extensive detail demonstrating sex discrimination in Twitter's recent mass layoffs, that amply satisfy the pleading requirements of a disparate treatment claim, including allegations of statistical analyses of Twitter's layoffs undertaken by an expert economist and statistician. Plaintiffs have alleged that Twitter's layoffs targeted women in a manner that was highly statistically significant and that Musk furthered these layoffs (and further targeted women) by instituting new draconian policies eliminating the option to work remotely and requiring employees to commit to working extremely demanding hours.  Further, Plaintiffs have bolstered their allegations by citing public statements by Musk, which evidence his discriminatory animus toward women in the workplace, which color the actions taken by Twitter when it laid off a significantly higher proportion of women than it did men. These allegations easily suffice to state a claim of disparate treatment. See Campbell v. Hawaii Dep't of Educ., 892 F.3d 1005, 1012 (9th Cir. 2018); Wood v. City of San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012); Gay v. Waters' and Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 550 (9th Cir. 1982).

Likewise, Plaintiffs plausibly allege a disparate impact theory of liability because Twitter's layoff, even if it is considered to be facially neutral, had a significantly disproportionate impact on women. Lopez v. Pacific Maritime Association, 2009 WL 10680881,

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

at *5 (C.D. Cal. April 3, 2009). Twitter argues this claim fails because Plaintiff has not alleged a particular employment practice that resulted in the disparate impact. Contrary to Twitter's insistence, the allegations regarding Twitter's mass layoff alone are sufficient to establish a challenge to a particular employment practice as is necessary in a disparate impact claim. See Pottenger v. Potlach Corp., 329 F.3d 740, 749 (9th Cir. 2003). Further, Plaintiffs' allegations that Musk's decision to commit layoff selections to a small group of employees, directing them to make the decisions at a break-neck pace, as well as his policy changes with regard to remote work and hours, constitute particular employment practices that support a disparate impact challenge. See Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990). Likewise, the Court should reject the argument that Plaintiffs cannot allege a disparate impact claim while also alleging disparate treatment, as even the cases Twitter cites reject that assertion. See, e.g., Barrett v. Forest Lab'ys, Inc., 39 F. Supp. 3d 407, 438 (S.D.N.Y. 2014).

Finally, Twitter argues that Plaintiffs' class action allegations should be stricken. This argument is premature and unsupported by law. Courts in the Ninth Circuit have taken an "overwhelmingly negative" view of motions challenging the sufficiency of class allegations at the Rule 12 stage. King v. National General Insurance Co., 2021 WL 2400899, at *15 (N.D. Cal. June 11, 2021). As the Ninth Circuit has explained, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable." Vinole v. Countrywide Home Loan, Inc., 571 F.3d 935, 942 (9th Cir. 2009) (internal quotation omitted). Thus, courts only dismiss or strike class action allegations at the Rule 12 stage where they are "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." Ogola v. Chevron Corp., 2014 WL 4145408, at *2 (N.D. Cal. Aug. 21, 2014). Such is not the case here. Plaintiffs have plausibly alleged that Twitter is liable to its female employees who were laid off on a classwide basis, and Twitter cannot misuse Rule 12 to launch a preemptive effort to defeat class certification.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.     PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed this class action lawsuit on December 7, 2022, asserting class claims for discrimination on the basis of sex in violation of Title VII and, for employees who worked in California, FEHA. (Compl., Counts I-II, Dkt. 1.)[2]

As Plaintiffs alleged, Elon Musk recently purchased Twitter, which was completed in late October 2022, and immediately began laying off more than half of its workforce, including Plaintiffs. (Compl. ¶¶ 2-3, 9-10, 17-18, Dkt. 1.) The decisions regarding which employees would be laid off were made under extremely hurried circumstances, and for thousands of employees, in a period just in a few days. (Compl. ¶ 19, Dkt. 1.) In selecting employees for layoff, little attention (if any) was given to employees' job performance, qualifications, experience, and abilities. (Compl. ¶ 19, Dkt. 1.) Most of the employees whom Twitter laid off were notified of their layoff on November 4, 2022. (Compl. ¶ 20, Dkt. 1.) Plaintiffs have alleged that the layoff decisions were made quickly by a small group of managers under close supervision by Musk. (Compl. ¶ 21, Dkt. 1.) Some of these managers were brought in from other companies owned by Musk (such as Tesla), who did not have much, if any, knowledge about Twitter's operations. (Compl. ¶ 21, Dkt. 1.)

Plaintiffs allege that Twitter's mass layoff affected women significantly more than men. (Compl. ¶ 26, Dkt. 26.) In the midst of the layoff, the media reported on widely circulated pictures of Twitter employees before and after the layoff, raising observations about the stark contrast in the number of women who appeared to be employed at the company before and after Musk's acquisition. (Compl. ¶ 27, Dkt. 1.) Spreadsheets showing which Twitter employees in

---

[2]     Plaintiffs also brought a third claim under the Declaratory Judgment Act, 28 U.S.C. 2201-02, which Plaintiffs effectively prevailed on, when Twitter included a notice of this case in the severance agreements sent to laid off employees, following the plaintiffs' success on obtaining an order requiring such notice in the case of Cornet, et al., v. Twitter, Inc., Civ. Act No. 3:22-cv-06857-JD (who are also represented by the undersigned counsel). See Cornet, Order Re Litigation Notice, Dkt. 42 (N.D. Cal. Dec. 14, 2022); Joint Response to Order Re: Notice, Dkt. 43-1 (N.D. Cal. Dec. 19, 2022).

4

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

the United States were retained and which were laid off on November 4, 2022, reveal that Twitter laid off approximately 57% of its female employees, while only 47% of its male employees were laid off. Compl. ¶¶ 29-30, Dkt. 1.) Dr. Mark Killingsworth, a professor in the Department of Economics at Rutgers University, performed a chi square analysis on this data and determined that the odds that this disparity between women and men being laid off was due only to chance is .00000000000001 (or, put another way, the odds were about 9.977 out of 100 trillion). (Compl. ¶ 33, Dkt. 1.)

Likewise, Plaintiffs allege that this disparity cannot be explained based on a justification that Musk intended to retain more employees in engineering-related roles. (Compl. ¶ 34, Dkt. 1.) Twitter's spreadsheet showed that the sex-based disparity was even starker for engineers - 63% of females in engineering-related roles were laid off on November 4, 2022, compared to 48% of males. (Compl. ¶ 35, Dkt. 1.) Dr. Killingsworth determined that this disparity was also significantly significant and that the odds that this disparity being due only to chance was .00000000000001 (or, put another way, 1.103 chances out of 100 trillion). (Compl. ¶ 36, Dkt. 1.) Similarly, Plaintiffs allege that there is also a great disparity in the layoff rates between women and men in non-engineering roles. (Compl. ¶ 37, Dkt. 1.)  The spreadsheet showing the layoffs reveals that 51% of females in non-engineering-related roles were laid off on November 4, 2022, while only 42% of males in non-engineering-related roles were laid off. (Compl. ¶ 37, Dkt. 1.) According to Dr. Killingsworth, the odds that this disparity was due only to chance was .00001 (or, put another way, 2.778 chances out of 100 thousand).

Plaintiffs have alleged further that Twitter's discriminatory conduct in the layoffs is unsurprising in light of the sexist, demeaning, and hostile comments that Elon Musk has made against women. (Compl. ¶ 22, Dkt. 1.) For example, it was widely publicized that Musk joked about naming a school using the acronym "TITS"; he also joked about women's breasts on Twitter, tweeted "Testosterone rocks ng", and made clear his belief that it was more important that women have a lot of babies rather than pursuing careers. (Compl. ¶¶ 23-25, Dkt. 1.)

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

In addition to laying off a highly statistically greater proportion of women than men in Twitter's initial layoffs, Plaintiffs allege that Musk implemented a number of policies at the company that had a disproportionate negative impact on women. (Compl. ¶ 40, Dkt. 1.) Such policy change included, for example, ending Twitter's remote work policy and instead requiring that employees would be required to work at Twitter's offices and requiring that employees work an unreasonable number of hours. (Compl. ¶¶ 41-42, Dkt. 1.) Musk would have known that these policy changes would have a disproportionate impact on women, who are more often caregivers for children and other family members, and thus not able to comply with such demands. (Compl. ¶ 43, Dkt. 1.) Musk used these demands as a way to force more employees out of their jobs, as he sent out an email to Twitter's employees on November 17, 2022 (just two weeks after the initial layoffs), giving them until the following day to inform the company (by clicking "yes" on a link) whether they agreed to work under the new conditions, which he said would require being "extremely hardcore" and "working long hours at high intensity." (Compl. ¶ 44, Dkt. 1.) This ultimatum was intended as and ultimately did result in further layoffs. (Compl. ¶ 45, Dkt. 1.) Approximately 36% of the remaining women left the company after this ultimatum, while approximately 28% of the remaining men did. (Compl. ¶ 45, Dkt. 1.)

## III.   ARGUMENT

### A.   Legal Standard for Motion to Dismiss Under Rule 12(b)(6)

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (internal citations omitted); see also Fed R. Civ. P. 8(a)(2) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claims is and the grounds upon which it rests."). Thus, Plaintiff need only "state a claim to relief that is plausible on its face" in order to survive a motion to dismiss." Twombly, 550 U.S. at 555. "A claim that is facially plausible when there are sufficient factual allegations to draw a reasonable

inference that the defendants liable for the misconduct alleged." Morales v. Laborers' Union 304, 2012 U.S. Dist. LEXIS 2234, *3 (N.D. Cal. Jan. 9, 2012).

Courts follow "a two-step process for determining whether a motion to dismiss should be granted." Sablan v. A.B. Won Pat Int'l Airport Auth., Guam, 2010 WL 5148202, at *2 (D. Guam Dec. 9, 2010). At the first step, the court parses out legal conclusions from factual statements. Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)). "[T]he second step is to take any remaining well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. at 664)). At the motion to dismiss stage, the court must assume "that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. "[I]t would be improper to dismiss a complaint 'for failing to allege certain additional facts that [Plaintiff] would need at the trial stage to support his claim in the absence of direct evidence of discrimination." O'Donnell v. U.S. Bancorp Equip. Fin., Inc., 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010) (quoting Twombly, 550 U.S. at 569-70). Rather, "[d]ismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

### B.   Legal Standard for Motion to Strike Under Rule 12(f)

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi–Craft Co., 618 F.3d 970, 973 (9th Cir. 2010). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." California Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). Additionally, "[g]iven their disfavored status, courts often require a showing of prejudice by the moving party before granting the requested relief." Alco Pac., 217 F.Supp.2d at 1033 (internal

citations omitted). "The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw 'unwarranted' inferences at trial is the type of prejudice that is sufficient to support the granting of a motion to strike." Id.

**C.** **Plaintiffs Have Stated a Claim for Discrimination Under Title VII and FEHA**

    **1.** **Prior exhaustion of administrative remedies is not a jurisdictional prerequisite and should be excused here**

Contrary to Twitter's claim that Plaintiffs "never filed any administrative charges", Twitter's Motion to Dismiss and/or Strike at 7 (Dkt. 20), Plaintiffs Strifling and Turkal in fact filed charges with the EEOC on December 8, 2022, nearly simultaneously with filing their initial complaint. See Strifling EEOC Charge Form, attached as Exhibit A; Turkal EEOC Charge Form, attached as Exhibit B. As discussed at length below, Plaintiffs filed EEOC charges (with Plaintiff Turkal's charge cross-filed with the California DFEH) requesting a right to sue letter at the same time they filed their initial complaints because they were seeking emergency declaratory and injunctive relief that those administrative agencies are not empowered to award. Plaintiffs successfully obtained that relief, which they would not have been able to obtain from the EEOC alone.  See supra note 2.  Given that Plaintiffs have requested right to sue notices, and expect to receive them shortly, before further substantive proceedings in this case, the Court should permit Plaintiffs' discrimination claims under Title VII and FEHA to proceed, rather than dismissing the case and requiring that the case be refiled after the notices are issued.  See Wilburn v. Dial Corp., 724 F. Supp. 530, 536 (W.D. Tenn. 1989) ("[W]here a Title VII plaintiff files his action first and then subsequently receives a right to sue notice while that action is pending, the requirement of a right to sue letter is satisfied.") (citing Williams v. Washington Metro. Area Transit Auth., 721 F.2d 1412, 1418 n.12 (D.C. Cir. 1983); Galvan v. Bexar Cty., 785 F.2d 1298, 1305-06 (5th Cir. 1986)); see also Santiago-Rodriguez v. Puerto Rico, 546 F. Supp. 3d 155, 161-62 (D.P.R. 2021) (granting plaintiff's motion to amend complaint after initially failing to exhaust administrative remedies) (citing Sanchez-Velazquez v. Autonomous Municipality of Carolina, 2012 WL 6552789, *4 (D.P.R. Dec. 14, 2012) (denying defendant's motion to dismiss plaintiff's Title VII

claim for failure to exhaust administrative requirement where "the filing of the Third Amended Complaint after having received the right-to-sue letter from the U.S. Department of Justice cured any defect that the first and second amended complaint may have had")).

Importantly, the administrative exhaustion requirement for filing a discrimination claim is not jurisdictional under either Title VII or FEHA, contrary to Twitter's assertions. See Allen, 2018 WL 113551568 at *3 ("Defendant has not demonstrated that the exhaustion requirements of FEHA, the ADA or Title VII are *jurisdictional* in the sense that they deprive the Court of *subject matter jurisdiction*.") (citing League of United Latin Am. Citizens v. Wheeler, 899 F.3d 814, 821-22 (9th Cir. 2018) ("'[T]hreshold requirements claimants must complete, or exhaust, before filing a lawsuit' are typically 'treated as nonjurisdictional.'") (citations omitted); Surrell v. Cal Water Serv. Co., 518 F.3d 1097, 1104 (9th Cir. 2008) ("Failure to obtain a federal right-to-sue letter does not preclude federal jurisdiction.")). Rather, in federal actions, the administrative exhaustion requirement is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); see also Sommatino v. United States, 255 F.3d 704, 708 (9th Cir. 2001); Francis v. City of New York, 235 F.3d 763, 767 (2d Cir. 2000); Wilson v. MVM, Inc., 475 F.3d 166, 174 (3d Cir. 2007); Allen v. Highlands Hosp. Corp., 545. F.3d 387, 401 (6th Cir. 2008) (failure to exhaust administrative remedy does not affect federal court's subject matter jurisdiction). Similarly, while California state courts have historically referred to FEHA's administrative exhaustion requirement as "a jurisdictional prerequisite to resort to the court," Johnson v. City of Loma Linda, 24 Cal. App. 4th 61, 70 (2000), recent decisions have clarified that the administrative exhaustion requirement is "'jurisdictional' in the sense only that a court's failure to apply the rule is judicial error and can be corrected by issuance of a writ of prohibition[,]" Kim, 226 Cal. App. 4th at 1347 ("[T]he administrative exhaustion requirement does not implicate the court's subject matter jurisdiction."); see also Holland v. Union Pac. RR Co., 154 Cal. App. 4th 940, 946 (2007) (failure to exhaust administrative remedy does not divest court of subject matter jurisdiction); Keiffer v. Bechtel Corp., 65 Cal. App. 4th 893, 897-98 (1998). Consequently, a

9

plaintiff's failure to exhaust his administrative remedies under FEHA prior to filing suit for a claim arising under California state law is similarly subject to equitable considerations.

In other contexts, the Ninth Circuit has long recognized the existence of equitable exceptions to federal administrative exhaustion requirements. "'Exhaustion of administrative remedies is not required where the remedies are inadequate, inefficacious, or futile, where pursuit of them would irreparably injure the plaintiff, or where the administrative proceedings themselves are void[.]'" <u>Daly-Murphy</u>, 837 F.2d at 354 (quoting <u>United Farm Workers v. Arizona Agr. Employment</u>, 669 F.2d 1249, 1253 (9th Cir. 1982)). Similarly, under California state law, the doctrine of exhaustion of judicial remedies "'has not hardened into inflexible dogma.'" <u>SJBC, LLC</u>, 201 Cal. App. 4th at 346 (quoting <u>Ogo Associates v. City of Torrance</u>, 37 Cal. App. 3d 830, 834 (1974)). California courts recognize exceptions to administrative exhaustion requirements "for example, 'when the administrative remedy is unavailable, when it is inadequate, or when it is futile to pursue it. … Other exceptions include 'situations where the agency indulges in unreasonable delay …, when the subject matter lies outside the administrative agency's jurisdiction, [or] when pursuit of an administrative remedy would result in irreparable harm …'" <u>Id.</u> (citing <u>McAllister v. Monterey</u>, 147 Cal. App. 4th 253, 275 (2007); <u>City of San Jose v. Operating Engineers Local Union No. 3</u>, 49 Cal. 4th 597, 609 (2010); <u>Anton v. San Antonio Community Hosp.</u>, 19 Cal. 3d 802, 829 (1977); <u>Kaiser Foundation Hospitals v. Superior Court</u>, 128 Cal. App. 4th 85, 105 (2005); <u>Unnamed Physician v. Board of Trustees</u>, 93 Cal. App. 4th 607, 620 (2001); <u>Public Employment Relations Bd. v. Superior Court</u>, 13 Cal. App. 4th 1816, 1827 (1993); <u>Green v. City of Oceanside</u>, 194 Cal. App. 3d 212, 222 (1987)).

Here, Plaintiffs should be excused from exhausting their administrative remedies before filing suit because the remedies that the EEOC and DFEH offer would have been inadequate to their emergency request for relief, and irreparable harm would have resulted to the putative class had Plaintiffs been required to wait for the issuance of a notice of right to sue before bringing their complaint in court. As discussed above, Plaintiffs filed a Declaratory Judgment Act claim, so that they could seek immediate court intervention in order to prevent Twitter from seeking

and obtaining releases of discrimination claims from employees who were laid off, without them knowing of their rights or the pendency of this case. This claim was successful, as it led to Twitter agreeing to include this notice, upon the granting of a similar request in the <u>Cornet</u> case. <u>See</u> <u>supra</u> note 2. The EEOC and DFEH are not empowered to order such emergency injunctive relief and therefore did not offer the remedy that Plaintiffs sought. <u>See</u> <u>Diaz v. United Agr. Employee Welfare Benefit Plan Trust</u>, 50 F.3d 1478 (9th Cir. 1995) (inadequacy of remedy is an exception to the exhaustion requirement); <u>Dietary Supplemental Coalition, Inc. v. Sullivan</u>, 978 F.2d 560, 564 (9th Cir. 1992) (exhaustion will not be required if administrative remedies are inadequate or not efficacious). Plaintiffs would have risked irreparable harm by waiting for those agencies to issue a notice of right to sue before seeking emergency injunctive relief before this Court, given Twitter's express intention of offering severance packages and Musk's past practice of seeking full releases from his laid-off employees, (Compl. ¶¶ 47-51, Dkt. 1). <u>See</u> <u>Klein v. Sullivan</u>, 978 F.2d 520 (9th Cir. 1992) (court may excuse exhaustion requirement where claimant interest in having particular issue resolved promptly is so great that deference to agency judgment of lack of finality is inappropriate). For these reasons, Plaintiffs should be excused from exhausting their administrative remedies before filing suit, under the particular circumstances of this case.

Defendant's reliance on <u>Tolbert v. U.S.</u>, 916 F.2d 245 (5th Cir. 1990), is unavailing. In <u>Tolbert</u>, the plaintiff asserted no urgency or pressing need to bring her claim in court prior to the EEOC's issuance of a final decision on her appeal. Indeed, Tolbert sought redress for an instance of alleged sexual harassment that occurred *more than five years* prior to the date she filed her claim with the EEOC. <u>See</u> <u>Tolbert</u>, 916 F.2d at 147. As a result, there were no grounds upon which the court could have possibly found that Tolbert's failure to exhaust her administrative remedies was excused. Similarly, in <u>Rivera v. U.S. Postal Service</u>, 830 F.2d 1037, 1038-39 (9th Cir. 1987), which also concerned a plaintiff's failure to wait out the EEOC's internal appeal process, there was no harm to the plaintiff in waiting for the EEOC to rule on his appeal where he alleged discrimination as early as four years prior to filing the complaint. In contrast, there

was good reason for Plaintiffs to file suit here quickly, prior to their inevitable receipt of right to sue notices (which are expected to be issued shortly), so that they could seek immediate relief, in the form of a notice to putative class members of their rights and notice of the pendency of this case, when being asked by Twitter to release those claims in a severance agreement.[3]

In the event the Court disagrees with this argument, the proper remedy would be to dismiss this case now without prejudice and allow it be refiled once the EEOC has issued the notice of right to sue. See Jensen v. Knowles, 621 F. Supp. 2d 921 (E.D. Cal. 2008) ("If a court finds that a plaintiff has failed to exhaust [nonjudicial remedies], 'the proper remedy is dismissal of the claim without prejudice.'") (quoting Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003)).  However, given that Plaintiffs expect to receive this notice shortly, such a process appears unnecessary and would only delay this case proceeding.

### 2. Plaintiffs have pleaded facts sufficient to support a plausible claim of intentional discrimination

The Ninth Circuit has held that to establish a case of disparate treatment, "a plaintiff must provide evidence that 'give[s] rise to an inference of unlawful discrimination.'" Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002) (internal citations omitted). To state a disparate treatment claim under Title VII, a plaintiff must plead enough facts to allege that "an employer has treated [her] less favorably than others because of a protected trait." Wood, 678 F.3d at 1081. To establish a prima facie disparate treatment case, a plaintiff must plead facts showing that: (1) she belongs to a protected class; (2) she was qualified for the position in question; (3) she was

---

[3]     The other cases that Twitter cites are similarly inapposite, as they do not concern the kind of risk of irreparable harm that Plaintiffs faced here. See Bradley v. Cnty. of Sacramento Dep't of Hum. Assistance of N. California Welfare Div., 749 F. App'x 539, 540 (9th Cir. 2018) (affirming dismissal of claims that were not raised in the plaintiff's EEOC charge); Sommatino v. U.S., 255 F.3d 704, 707 (9th Cir. 2001) (affirming dismissal of case where plaintiff never filed an EEOC charge); Ali v. Paypal, Inc., 2019 WL 11691425, at *4-5 (N.D. Cal. Mar. 26, 2019) (dismissing discrimination claims that were not raised in the plaintiff's EEOC charge); Minor v. Fedex Off. & Print Servs., Inc., 182 F. Supp. 3d 966, 983 (N.D. Cal. 2016) (dismissing discrimination claims against two defendants where plaintiff had not made a charge against one of the defendants, and, with respect to the defendant, had not initiated suit within the limitations period following the issuance of a notice of right to sue); Washington v. Lowe's HIW Inc., 75 F. Supp. 3d 1240, 1248 (N.D. Cal. 2014) (dismissing discrimination claim against defendants who were not named in the plaintiff's administrative charge).

subjected to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. See Campbell v. Hawaii Dep't of Educ., 892 F.3d 1005, 1012 (9th Cir. 2018).  This standard is the same under the FEHA. See Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (noting that "California law under the FEHA mirrors federal law under Title VII). A plaintiff may establish disparate treatment either through direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, see McGinest v. GTE Service Corp., 360 F.3d 1103, 1121-22 (9th Cir. 2004), or "through circumstantial evidence, following the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Lyons, 307 F.3d at 1112.

Here, even though Plaintiffs are not required to plead every element of disparate treatment in order to state a plausible claim, Plaintiffs have pled facts that "raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." O'Donnell v. U.S. Bancorp Equip. Fin., Inc., 2010 WL 2198203, at *3 (N.D. Cal. May 8, 2010). Plaintiffs have alleged that they were discriminated against by Twitter on the basis of their sex, meaning that they as women were members of a protected class. (Compl. ¶ 4, Dkt. 1.) Likewise, Plaintiffs alleged that they and more than 1,200 other women were laid off.[4] (Compl. ¶¶ 19, 45-46.) Further, Plaintiffs set forth a statistical analysis based on a spreadsheet from Twitter tracking its layoffs; that analysis showed the layoffs impacted women at a highly disproportionate rate to men, a disparate that is extremely statistically significant. (Compl. ¶¶ 29-39, Dkt. 1.) Plaintiffs also alleged that Twitter implemented additional policy changes to lay off more employees that would clearly be expected to have (and did have) a disproportionate impact on women, including elimination of the ability to work remotely and the expectation to work an extreme ("hardcore") numbers of hours. (Compl. ¶¶ 40-46, Dkt. 1.) Finally, Plaintiffs alleged several examples of overtly sexist statements made by Musk, which support their claim that the decisionmakers who were working closely with him understood their boss' hostility to women in the workplace.  (Compl. ¶¶ 22-25,

---

[4]     Given that they were laid off, rather than terminated for cause, implies that their job performance was satisfactory.

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

Dkt. 1.) For its part, Twitter argues that Plaintiffs failed to allege that they were performing their jobs satisfactorily and that they were treated different than similarly situated male employees. In light of the allegations recited above, Twitter is just wrong.

Twitter also argues that Plaintiffs' allegations cannot demonstrate that Twitter engaged in a "pattern or practice" of discrimination. "Class action plaintiffs may bring a claim for disparate treatment by alleging that the employer's conduct was part of a 'pattern or practice' of discriminatory treatment toward members of a protected class." Buchanan v. Tata Consultancy Services, Ltd., 2017 WL 6611653, at *11 (N.D. Cal. Dec. 27, 2017) (quoting International Broth. of Teamsters v. United States, 431 U.S. 324, 325 (1977)). However, "not all class actions alleging employment discrimination are pattern-or-practice cases," as the pattern-or-practice theory of the case alleges that "*unlawful discrimination* has been a *regular* procedure or policy followed by an employer . . . proven by demonstrating a consistent history of discriminatory decisionmaking or by demonstrating that discrimination was the declared policy of the employer." Sperling v. Hoffman-La Roche, Inc., 924 F. Supp. 1346, 1361 (D.N.J. April 30, 1996) (emphasis in original). [5] Here, Plaintiffs have adequately alleged a pattern or practice of discriminatory conduct by Musk, and since Musk took over Twitter, first in disproportionately laying off more than 1,200 women (a greater proportion of female employees than male employees) and then continuing to lay women off disproportionally through his policy changes. See Keys v. Humana, Inc., 684 F.3d 605 (6th Cir. 2012) (holding a pattern or practice claim was alleged plausibly where the complaint "details several specific events in each of those

---

[5]    Plaintiffs are not required to plead their intent to pursue a disparate treatment claim under the Teamsters pattern or practice framework or the McDonnell Douglas framework in their Complaint. See Serrano v. Cintas Corp., 699 F.3d 884, 897 (6th Cir. 2012) ("*Swierkiewicz* compels the conclusion that a plaintiff is not required to plead whether she intends to employ the *McDonnell Douglas* or the *Teamsters* burden-shifting evidentiary framework.") (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508-12 (2002)). Moreover, disagreement over the evidentiary framework under which to proceed is "premature" at the pleadings stage. Pedreiera v. Ky. Baptist Homes for Children, Inc., 579 F.3d 722, 728 (6th Cir. 2009). Indeed, plaintiffs are "not required to commit to one methodology of evidentiary proof to substantiate [an inference of discrimination] in their complaint," and requiring otherwise would impose too rigid a pleading requirement. Serrano, 699 F.3d at 898 (citing Swierkiewicz, 534 U.S. at 511-12).

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

employment-action categories where [plaintiff] alleges she was treated differently than her Caucasian management counterparts; it identifies the key supervisors and other relevant persons by race and either name or company title; and it alleges that [plaintiff] and other African Americans received specific adverse employment actions notwithstanding satisfactory employment performances.").

Moreover, while Twitter attempts to make hay of the distinction between pattern or practice cases and non-pattern or practice cases, it does so in order to distract the Court from the damning statistical evidence alleged in the Complaint. As the Court explained in <u>Herrera v. Service Employees International Union Local 87</u>, 2013 WL 12324535, at *3 (N.D. Cal. Sept. 13, 2013), "[a] pattern or practice case is not a separate and free-standing cause of action, . . . but is really merely another method by which disparate treatment can be shown.") (internal citation omitted). Indeed, the Ninth Circuit has consistently held that "generalized statistical data is relevant and admissible at the prima facie case stage of a disparate treatment employment discrimination lawsuit." <u>Gay</u>, 694 F.2d at 550; <u>see also</u> <u>Lowe v. City of Monrovia</u>, 775 F.2d 998, (9th Cir. 1985) ("A disparate treatment plaintiff may rely on statistical evidence to establish a *prima facie* case . . . or to show that a defendant's articulated nondiscriminatory reason for the employment decision in question is pretextual.") (internal quotation omitted). Whether under the <u>McDonnell Douglas</u> framework or a pattern or practice framework, statistical data can be highly probative as a means of demonstrating an employer's discriminatory intent. <u>See</u> <u>Gay</u>, 694 at 550. Here, the statistical evidence that Plaintiffs have alleged demonstrate a disparate treatment claim, regardless of whether the Court considers it to be under the <u>McDonnell Douglas</u> framework or a pattern or practice framework.

Twitter also seeks to lessen the importance of the statistical evidence allegations here by pointing out that Plaintiffs' Complaint is lacking in anecdotal evidence.  The inclusion of several of Musk's public statements belittling women and questioning their role in the workplace belie this point. Twitter attempts to dismiss these statements as stray remarks, but at this stage, Plaintiffs need not prove their entire case. <u>See</u> <u>Usher v. O'Reilly Automotive, Inc.</u>, 2014 WL

12597587, at *5 (C.D. Cal. May 27, 2014) (denying a motion to dismiss where employer argued that certain comments were "stray remarks," explaining that "while the factual allegations may not show that the comments made to Plaintiff were 'directly tied' to Plaintiff's termination, '[comments suggesting that the employer may have considered impermissible factors are clearly relevant to a disparate treatment claim.") (quoting <u>Horn v. Cusman & Wakefield Western</u>, 72 Cal. App. 4th 798, 809-10 (1999); <u>Merrick v. Farmers Ins. Group</u>, 892 F.2d 1434, 1438 (9th Cir. 1990)). Furthermore, Twitter cites a series of cases for the proposition that a disparate treatment claim based on a facially neutral policy cannot succeed absent a specific allegation of discriminatory intent. Plaintiffs' Complaint is rife with statements of discriminatory intent.[6] These remarks, combined with the statistical evidence Plaintiffs have offered, are more than enough to establish the plausibility of their claims.

### 3. Plaintiffs have pleaded facts sufficient to support a plausible disparate impact claim

Under both the Title VII and the FEHA, to establish discrimination through disparate impact, a plaintiff must: "(1) identify a specific practice of the Defendant, (2) show a disparate impact on a protected class, and (3) establish a causal relationship between the practice(s)." <u>Lopez v. Pacific Maritime Association</u>, 2009 WL 10680881, at *5 (C.D. Cal. April 3, 2009) (citing <u>Watson v. Fort Worth Bank & Trust</u>, 487 U.S. 977, 994-95 (1988); <u>Hemmings v. Tidyman's Inc.</u>, 285 F.3d 1174, 1190 (9th Cir. 2002)). However, a plausible pleading of disparate impact is "not onerous." <u>Moussouris v. Microsoft Corp.</u>, 2016 WL 6037978, at *3, 6 (W.D. Wash. Oct. 14, 2016). "The plaintiff must only make allegations sufficient to raise an inference or presumption of discrimination." <u>Id.</u> Importantly, to state a plausible claim, "a plaintiff need not plead each element of a prima facie discrimination case." <u>Freeman v. Cty. of Sacramento Dep't of Human Assistance</u>, 2020 WL 2539268, at *2 (E.D. Cal. May 19, 2020) (citing <u>Swierkiewicz</u>, 534 U.S. at 514-15 ); <u>see also</u> <u>O'Donnell</u>, 2010 WL 2198203 at *3 ("[A]

---

[6]    <u>See, e.g.</u>, <u>Gay</u>, 694 F.2d at 552; <u>Wood</u>, 678 F.3d at 1081-82; <u>Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO (AFSCME) v. State of Wash.</u>, 770 F.2d 1401, 1405 (9th Cir. 1985); <u>EEOC v. Bloomberg L.P.</u>, 778 F. Supp. 2d 458, 485 (S.D.N.Y. 2011).

plaintiff is not required to establish a prima facie case in the complaint. The Supreme Court has explicitly held that the prima facie case in the discrimination context is an evidentiary standard, not a pleading requirement.").

To begin, Twitter argues that Plaintiffs' Complaint cannot state a claim for disparate impact, because they have also alleged that the layoff was the product of intentional discrimination. Complaints alleging discrimination can, and routinely do, proceed under both disparate treatment and disparate impact theories of liability. See, e.g., Ward Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 648 (1989) ("All of respondents' claims were advanced under both the disparate-treatment and disparate-impact theories of Title VII liability"); Moussouris v. Microsoft Corp., 2018 WL 63584701, at *12-18 (W.D. Wash. July 11, 2018) (permitting both claims of disparate treatment and disparate impact to proceed); Paine v. IKEA Holding US, Inc., 2020 WL 374581, at *4 (E.D. Pa. Jan. 23, 2020) (denying motion to dismiss on disparate treatment and disparate impact claims, explaining "in this case, Paine argues that facially neutral policies were either pretext for intentional discrimination or mechanisms of unintentional discrimination", and "[b]ecause the policies Paine identifies are facially neutral, he has properly alleged in the alternative that the policies are mechanisms of either disparate treatment or disparate impact."). At this early stage, there is no reason that both theories cannot proceed.[7]

In any event, Plaintiffs have plainly met their burden insofar as they have plausibly alleged each element of a prima facie disparate impact case, even though they do not need to do

---

[7] The cases that Twitter relies on do little advance its argument. For example, in Barrett, 39 F. Supp. 3d at 438, the court **denied** the defendant's motion to dismiss the disparate impact claim and explained that "[n]or is it problematic that the [complaint] identifies one practice in support of both a pattern-or-practice disparate treatment claim and a disparate impact claim." While the theory would need to be refined at trial, it was appropriate for the plaintiffs to plead both theories at the pleading stage. See id. Twitter also relies on Zawacki v. Realogy Corp., 628 F. Supp. 2d 274, 281 (D. Conn. 2009), but in that case, the court held that the EEOC was not sufficiently on notice of a disparate impact claim to satisfy administrative exhaustion, and noted in dicta that there was no allegation that a facially neutral policy fell more harshly on the protected group. That is not the case here, as will be explained below. Lastly, Twitter cites Maresco v. Evans Chematics, Div. of W.R. Grace & Co., 964 F.2d 106, 115 (2d Cir. 1992), but that case concerned the summary judgment stage, after discovery on the theories of liability had been completed.

so. They have alleged that Twitter engaged in the specific practices of: (1) doing away with Twitter's policy freely allowing remote work throughout the pandemic and even before that (Compl. ¶ 41, Dkt. 1); (2) delivering an ultimatum to employees that they "work[] long hours at high intensity", in some cases "literally [] work 24/7", and "be extremely hardcore" or else be laid off (Compl. ¶¶ 42-44, Dkt. 1); and (3) actually conducting mass layoffs of Twitter employees who did not agree to comply with these requirements or otherwise meet the company's demanding standards. See supra § II. Plaintiffs have also alleged that these practices, individually and collectively, a significant discriminatory impact on female employees, who were disproportionately laid off, and who were more significantly impacted than men by the elimination of remote work and requirement that employees work unreasonable hours, resulting in a significantly higher rate of constructive dismissal for women. (Compl. ¶¶ 41-44, Dkt. 1.)

Nevertheless, Twitter alleges that these allegations do not suffice to establish a plausible disparate impact claim. With respect to the mass layoffs that Twitter conducted, Twitter faults Plaintiffs for not identifying a "particular employment practice" that resulted in the disparity. However, "[t]he Ninth Circuit has concluded that a reduction in force can be a specific employment practice that supports a disparate impact claim." Tsur v. Intel Corp., --- F. Supp. 3d ---, 2022 WL 17985573, at *13 (D. Or. Dec. 29, 2022) (citing Pottenger v. Potlach Corp., 329 F.3d 740, 749 (9th Cir. 2003)).[8] Moreover, it is especially clear that the type of particularity that Twitter demands is unnecessary at the pleadings stage. See Reese v. Source 4 Teachers, 2018 WL 3572987, at *3 (E.D. Pa. Aug. 8, 2018) ("At the pleading stage, however, a plaintiff need

---

[8]    Relying on out-of-circuit cases including Davis v. D.C., 925 F.3d 1240, 1250 (D.C. Cir. 20019), and Gilbreath v. Brookshire Grocery Co., 400 F. Supp. 3d 580, 591 (E.D. Tex. Aug. 21, 2019), Twitter asserts that the complaint must go beyond the general concept of a reduction-in-force to identify an actionable employment practice. These cases are at odds with the Ninth Circuit in Pottenger, which stated unequivocally that a "disparate impact claim must challenge a specific business practice," and an "RIF would constitute such a practice." Pottenger, 329 F.3d at 740.  Moreover, the cases that Twitter relied on were decided at the summary judgment stage rather than the motion to dismiss stage. In Davis, the D.C. Circuit remanded the case to the district court to determine whether the way in which the employer implemented a layoff led to a disparate impact. See Davis, 925 F.3d at 1244. Likewise, in Gilbreath, it was only after discovery, on summary judgment, that the court had determined that plaintiffs had not identified an employment practice beyond the reduction in force to cut costs.

only plead that a facially neutral practice's adverse effects fall disproportionately on a group protected by Title VII to which the plaintiff belongs.").

Furthermore, Twitter is simply incorrect that Plaintiffs did not plead allegations that go beyond the mere existence of the mass layoff. For example, Plaintiffs allege that "[t]he decisions regarding which employees would be laid off were made under extremely hurried circumstances, with little if any regard given to employees' job performance, qualification, experience, and ability," and that "the layoff decisions were made quickly by a small group of managers, under close supervision of Musk." (Compl. ¶¶ 19, 21, Dkt. 1.) Twitter argues that these allegations do not suffice, because they address only what factors Twitter did not consider. However, the Ninth Circuit has held that "an employer's facially neutral practice of committing employment decisions to the subjective discretion of supervisory employees [is] a specific employment practice properly subject to a disparate impact analysis." Rose, 902 F.2d at 1424.

Additionally, Twitter's efforts to parse myopically Plaintiffs' allegations regarding Twitter's layoffs must be rejected at this stage. More specifically, Plaintiffs have also alleged that Twitter's mass layoffs were effectuated not just through the formal layoff that took place on November 4, 2022, but also through the implementation of Musk's policies regarding the elimination of remote work and requiring employees to commit to working extreme hours, which were intended to further sweep out employees from the company and which disproportionately impacted women. (Compl. ¶¶ 42-45, Dkt. 1.) Thus, these allegations also suffice to identify a more specific employment practice than a generalized reduction in force.

Twitter also contends that Plaintiffs' allegations regarding these policies are not sufficiently specific. Twitter, for example, compares this case to Enoh v. Hewlett Packard Enterprise Co., 2018 WL 3377547, at *14 (N.D. Cal. July 11, 2018), where the court dismissed a disparate impact claim where the complaint alleged that "HP allowed an overwhelmingly Caucasian group of selectors to use a 'hazy' selection process for its employment decisions." The allegations in Plaintiffs' Complaint here are more exacting than in Enoh. Again, they allege that Musk brought in a small group of managers to make layoff selections at a breakneck pace,

19

ignoring coherent layoff criteria such as job performance, qualifications, experience, and abilities, and then expanded on those layoffs by implementing policies regarding remote work and unreasonable hours. (Compl. ¶¶ 19-21, 42-45, Dkt. 1.) Twitter also relies on <u>Freyd v. University or Oregon</u>, 990 F.3d 1211, 1224 (9th Cir. 2021), but that case actually supports Plaintiffs' argument. In <u>Freyd</u>, the Ninth Circuit acknowledged that the plaintiff in fact **had** challenged a specific employment practice, where she challenged the university's practice of providing retention raises without analyzing relevant factors like merit and seniority, to determine whether other comparable faculty also deserved raises. <u>Id.</u> Plaintiffs have likewise alleged that Twitter declined to consider relevant factors in making layoff selections like experience and abilities. (Compl. ¶¶ 19-21, Dkt. 1.) Similarly, Twitter's reliance on <u>Stout v. Potter</u>, 276 F.3d 1118, 1121-22 (2d Cir. 2002), is unavailing. <u>Stout</u> has nothing to say about the specificity of pleadings – it was decided at the summary judgment stage. <u>See id.</u> Moreover, the <u>Stout</u> court considered the validity of the statistical analysis and its focus, which would be inappropriate at the motion to dismiss stage.[9]

Finally, Twitter argues that the allegations regarding Musk's policy changes should be disregarded, because the employees who exited the company as the (predictable) result of those policies chose to leave voluntarily. Whether the exit from the company was voluntary is a disputed of question of fact that cannot be decided at the pleading stage. Plaintiffs' allegations state that the Twitter's employees were laid off as their result of their inability to meet Musk's expectations with respect to remote work and unreasonable hours. (Compl. ¶¶ 44-45, Dkt. 1.)

Moreover, Plaintiffs alleged that the implementation of these policies in a manner that forced Twitter's employees to leave amounted to constructive discharge. (Compl. ¶¶ 1-2, 46, Dkt. 1.) Constructive discharge occurs when working conditions become "so intolerable that a

---

[9]     <u>See, e.g.</u>, <u>Chaidez v. Ford Motor Company</u>, 937 F.3d 998, 1007 (7th Cir. 2019) (The plaintiff "for [his] part, will need to utilize the discovery process to support [his] allegations with statistical and comparative evidence."); <u>Karpe v. Chao</u>, 416 F. Supp. 3d 1021, 1029 (S.D. Cal. 2019) ("Indeed, Plaintiff 'is not required at the pleading stage to produce statistical evidence proving a disparate impact [because] . . . all that is required is fair notice of the claims and the grounds upon which they rest, sufficient to raise a right to relief above the speculative level.'").

reasonable person in the employee's position would have felt compelled to resign." <u>Tichenor v.</u> <u>BAE Systems Technology Solutions & Services, Inc.</u>, 2021 WL 2559704, at *6 (S.D. Cal. April 16, 2021) (quoting <u>Penn. State Police v. Suders</u>, 542 U.S. 129, 141 (2004)). The "employee's resignation must be employer-coerced, not caused by the employee's voluntary action or by matters beyond the employer's reasonable control." <u>Id.</u> Whether a constructive discharge has occurred is "usually a question of fact." <u>Id.</u> (citing <u>Scotch v. Art Inst. Of Cal.-Orange Cnty., Inc.</u>, 173 Cal. App. 4th 986, 1022 (2009). Here, Plaintiffs have alleged that Musk implemented the policies in question specifically as a strategy to expand on his layoffs, and that this strategy resulted in literally hundreds more employees leaving the company (36% of the remaining female employees and 28% of the remaining male employees). (Compl. ¶ 44-45, Dkt. 1.) At this stage, those allegations are enough to plead constructive discharge. <u>See</u> <u>Tichenor</u> ,2021 WL 2559704, at *6-7 (denying defendant's motion for summary judgment on the issue of constructive discharge, because it presented a question of fact appropriate for trial).

### 4.    Twitter's argument regarding standing should be rejected

As stated previously, Twitter urges the Court to take a myopic view of this matter, carving up Plaintiffs' allegations into distinct adverse actions (i.e., formal layoff versus the implementation of Twitter's policies), rather than looking at the big picture. However, Plaintiffs' allegations are that the implementation of the remote work policy and the "hardcore" unreasonable hour requirements were part and parcel of the mass layoff. These policies were simply tools Musk used to identify additional employees who should be exited from the company.  (Compl. ¶¶ 45-46, Dkt. 1.) Thus, the fact that Plaintiffs were laid off on November 4, 2022, does not prohibit them from alleging that the mass layoff **<u>as a whole</u>** was discriminatory.

Moreover, Twitter's argument at its heart is really an inappropriate attempt to limit the scope of Plaintiffs' class claims at the motion to dismiss stage (i.e., contending that Plaintiffs cannot represent class members who were exited from Twitter because of Twitter's post-November 4 policies). As is explained more thoroughly in Section III.D <u>infra</u>, such attacks on class claims are strongly disfavored prior to discovery and a motion for class certification. <u>In re</u>

Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d at 615-16; see also King, 2021 WL 2400899, at *15.

### 5. The FEHA claim was brought on behalf of Plaintiff Turkal, who worked in California

Twitter also alleges that the FEHA claim in the Complaint must be dismissed as to Plaintiff Strifling, because she worked in Florida rather than California. The FEHA claim is only asserted on behalf of Plaintiff Turkal, who worked in California, as Twitter does not dispute. Indeed, Paragraph 2 of the Complaint makes clear that the FEHA claim is asserted for "employees who worked out of California." Thus, because the California claim is not asserted by Plaintiff Strifling, there is no need for the Court to dismiss it as to her.

### 6. The Court should not dismiss Plaintiffs' Declaratory Judgment Act Claim

Finally, Twitter suggests that Plaintiffs' Declaratory Judgment Act claim should be dismissed, because it is derivative of Plaintiffs' purportedly insufficient discrimination allegations. As explained previously, Plaintiffs' allegations are more than sufficient. More importantly, however, the claim has been effectively adjudicated through the Cornet case, as explained in note 2, supra.

### D. The Court Should Deny Twitter's Motion to Strike Plaintiffs' Class Action Claims

Motions to strike class allegations that are brought prematurely (e.g., prior to discovery, or even the filing of an answer) are widely disfavored by courts in the Ninth Circuit. See In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (denying motion to strike class allegations as premature where defendant "ha[d] not answered in this case, discovery ha[d] not yet commenced, and no motion for class certification ha[d] been filed" and noting that "dismissal of class allegations at the pleading stage should be done rarely. . . .") (internal citations omitted); Hibbs-Rines v. Seagate Technologies, LLC, 2009 WL 513496, at *3 (N.D. Cal. March 2, 2009) (denying motion to strike class allegations as premature and reserving determination on the propriety of class allegations for class certification briefing

stage); see also Kick v. Alibab.com, Inc., 2018 4181955, *2 (N.D. Cal. Aug. 30, 2018); Luna v. Universal Studio City Productions LLP, 2013 WL 12308198, at *9 (C.D. Cal., Aug. 27, 2013) (collecting cases).

Indeed, "many courts have recognized that the sufficiency of class allegations are better addressed through a class certification motion, after the parties have had an opportunity to conduct some discovery." Cruz v. Sky Chefs, Inc., 2013 WL 1892337, at *5 (N.D. Cal. May 6, 2013). Courts only dismiss or strike class action allegations at the Rule 12 stage where they are "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." Ogola, 2014 WL 4145408 at *2; see also Parducci v. Overland Sols, Inc., 2019 WL 3220282, at *4 (N.D. Cal. July 17, 2019) (same). "[T]he better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable." Vinole, 571 F.3d at 942 (quoting Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir. 1977)); see also In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d 609, 615-16 (N.D. Cal. 2007) ("[D]ismissal of class allegations at the pleading stage should be done rarely and [] the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery"). Courts have gone so far as to decline to address class allegations at the Rule 12 stage, even when the class allegations "are suspicious and may in fact be improper," because "plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery . . . ." In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d at 615-16; see also King, 2021 WL 2400899, at *15 (describing the attitude of courts within this District toward motions to strike class allegations at the Rule 12 stage as "overwhelmingly negative").

Twitter begins by asserting that Plaintiffs cannot represent anybody who was affected by Musk's policy changes after Plaintiffs were terminated on November 4, 2022, including the elimination of remote work and the "extremely hardcore" ultimatum requiring unreasonable hours of work, announced just two weeks later (and which Plaintiffs contend were a continuation

of the same mass layoff that resulted in many employees being terminated on November 4, 2022) because Plaintiffs themselves were not impacted by those policies. Again, Plaintiffs have alleged that these policies were used to continue laying people off, and that these policies disproportionately targeted women. (Compl. ¶¶ 44-45, Dkt. 1.) Twitter does not cite any case law suggesting that an individual whose employment is terminated in a mass layoff cannot represent other individuals with effective separation dates that post-date her own, where they allege the terminations were part of the same mass layoff.[10] It is doubtful that such case law exists, as it would make no sense in circumstances such as those at issue here, where an employer conducts a mass layoff with rolling terminations over a period of days, weeks, or months that affect a large portion of its workforce. As alleged in Plaintiffs' Complaint, Twitter began conducting layoffs in early November 2022 and continued to cull its workforce via layoffs and constructive dismissals at least through November 17, 2022, the deadline for responding to Musk's ultimatum. (Compl. ¶¶ 44-45, Dkt. 1.). Plaintiffs were laid off within that timeline and are thus appropriate class representatives for those who similarly suffered loss of employment during that time.

Second, Twitter argues that Plaintiffs' allegations fail to plead a precise and ascertainable class definition. To the contrary, with respect to the absent class members, Plaintiffs have alleged that a specific set of policies and practices that Twitter engaged in during early to mid-November (at least)—including demanding that employees report to the office, delivering an ultimatum to employees that they "work[] long hours at high intensity" and "be extremely hardcore", and actually exiting employees who did not comply with these requirements—had a discriminatory

---

[10]     The cases that Twitter cites are easily distinguishable. First, Twitter cites East Texas Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 404 (1977). In that case, the plaintiffs never moved for class certification, tried the case individually, and then the Fifth Circuit certified a class in the first instance. See id. There, the district court had held that the named plaintiffs were not qualified truck line drivers, and therefore, the Supreme Court held that they could not represent a class of qualified truck line drivers who had been discriminated against in hiring. See id. at 403-04. That case had been all the way through trial before the Supreme Court held that class certification was inappropriate, which is in stark contrast to this matter, which is at the Rule 12 stage. Second, Twitter cites Califano v. Yamasaki, 442 U.S. 682, 701 (1979), but that case has nothing to do with the issue at hand. In that case, the Supreme Court held that it had discretion to certify a class under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), despite that provision speaking in terms of an individual plaintiff.

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS

and disparate impact on female employees. (Compl. ¶¶ 18-46, Dkt. 1.) Plaintiffs assert that the class consists of women who have lost their jobs at Twitter as the result of these discriminatory actions. (Compl. ¶ 46, Dkt. 1.)  These allegations are necessarily broad because plaintiffs are afforded discovery prior to class certification to determine the scope of the class. It is premature to require Plaintiffs to determine said scope at this stage. See, e.g., Prince v. CLS Transp., Inc., 118 Cal. App. 4th 1320, 1329 (2004) ("[C]lass action suitability should not have been decided at the pleading stage"); Seifi v. Mercedes-Benz USA, LLC, 2013 WL 2285339, *8 (N.D. Cal. May 23, 2013) ("Because the shape and form of a class action evolves only through the process of discovery, courts rarely dismiss class allegations before discovery has commenced.") (internal citation omitted); Henderson v. J.M. Smucker Co., 2011 WL 1050637, *2 (C.D. Cal. Mar. 17, 2011) ("We will not conduct a premature [] inquiry before the Parties have had an opportunity to fully ventilate all of the relevant issues with the benefit of discovery"); Rhoades v. Progressive Cas. Ins. Co., 2011 WL 397657, *4 (E.D. Cal. Feb. 3, 2011) ("Defendant has not shown that its challenge to Plaintiffs' class allegations, including the class definition, should be addressed at this stage of the proceeding"). These allegations suffice to define the class at this stage. Twitter's demand for greater specificity is unsupported by law. Indeed, as one court explained, a defendant's argument regarding "ascertainability is best decided at the class certification stage with the benefit of more complete briefing and development of the record." TopDevz, LLC v. LinkedIn Corp., 2021 WL 3373914, at *12 (N.D. Cal. Aug. 3, 2021).

At bottom, at this stage, Plaintiffs' class action claims are amply sufficient, and it would be premature to strike them at this early stage. Instead, the appropriateness of a class should be determined through a class certification motion following discovery.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Twitter's Motion to Dismiss. The Court should also reject Twitter's bid to strike Plaintiffs' class claims. Discovery will determine whether similar individuals indeed exist for whom Plaintiffs may seek to have this Court certify a class.

Respectfully submitted,

CAROLINA BERNAL STRIFLING and WILLOW WREN TURKAL, on behalf of themselves and all others similarly situated,

By their attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; tfowler@llrlaw.com

Dated:         February 17, 2023

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT AND STRIKE THE CLASS CLAIMS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendant Twitter, Inc. via the CM/ECF system on February 17, 2023.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE COMPLAINT
AND STRIKE THE CLASS CLAIMS