1  MORGAN, LEWIS & BOCKIUS LLP
   Eric Meckley, Bar No. 168181
2  eric.meckley@morganlewis.com
   Brian D. Berry, Bar No. 229893
3  brian.berry@morganlewis.com
   Kassia Stephenson, Bar No. 336175
4  kassia.stephenson@morganlewis.com
   One Market, Spear Street Tower
5  San Francisco, CA  94105-1596
   Tel:    +1.415.442.1000
6  Fax:    +1.415.442.1001

7  MORGAN, LEWIS & BOCKIUS LLP
   Jonathan D. Lotsoff, admitted *pro hac vice*
8  jonathan.lotsoff@morganlewis.com
   110 North Wacker Drive
9  Chicago, IL 60606-1511
   Tel:    +1.312.324.1000
10 Fax:    +1.312.324.1001

11 Attorneys for Defendant
   TWITTER, INC.
12

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

MORGAN, LEWIS & BOCKIUS LLP
Joseph A. Govea, Bar No. 319683
joseph.govea@morganlewis.com
300 South Grand Avenue
Los Angeles, CA 90071-3132
Tel:    +1.714.830.0600
Fax:    +1.714.830.0700

MORGAN, LEWIS & BOCKIUS LLP
Carolyn M. Corcoran, admitted *pro hac vice*
carolyn.corcoran@morganlewis.com
101 Park Avenue
New York, NY 10178-0060
Tel:    +1.212.309.6000
Fax:    +1.212.309.6001

Attorneys for Defendant
TWITTER, INC.

13

14

15

16              UNITED STATES DISTRICT COURT

17             NORTHERN DISTRICT OF CALIFORNIA

18 CAROLINA BERNAL STRIFLING and          Case No. 4:22-cv-07739-JST
   WILLOW WREN TURKAL, on behalf of
19 themselves and all others similarly situated,    **DEFENDANT TWITTER, INC.'S
                                                    REPLY IN SUPPORT OF ITS MOTION
20              Plaintiffs,                         TO DISMISS AND STRIKE**

21         v.                                       Date:  April 6, 2023
                                                    Time: 2:00 p.m.
22 TWITTER, INC.,                                   Judge: Hon. Jon. S. Tigar

23              Defendant.

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739-JST

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................... 1

II. ARGUMENT .......................................................................................................... 2

    A. Plaintiffs Fail to State a Claim for Intentional Discrimination. ........................... 2

        1. Plaintiffs Fail to State a Claim Under *McDonnell Douglas*....................... 2

        2. Plaintiffs Fail to State a Claim Under *Teamsters.* .................................... 3

    B. Plaintiffs Fail to State a Disparate Impact Claim. .............................................. 6

        1. The Complaint Fails to Isolate and Identify a Facially Neutral Policy or Practice Related to the RIF. ......................................................... 6

        2. Plaintiffs Cannot State a Disparate Impact Claim Related to the RIF by Simply Re-Labelling Their (Failed) Disparate Treatment Claim. ......... 9

        3. Plaintiffs' Disparate Impact Claim Cannot Target the RIF and the Post-RIF Policies "As a Whole." ............................................................. 11

    C. Plaintiffs Lack Standing to State a Claim Arising from the Post-RIF Policies. ............................................................................................................. 12

    D. The Court Should Dismiss Strifling's FEHA Claim. ......................................... 13

    E. Plaintiffs Concede They Failed to Exhaust Administrative Remedies. .............. 13

    F. The Court Should Dismiss Their Claim Under the Declaratory Judgment Act. ................................................................................................................... 14

    G. The Court Should Strike Plaintiffs' Class Claims Under Rule 12(f). ................. 14

III. CONCLUSION ...................................................................................................... 15

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO (AFSCME) v. State of Wash.*
  770 F.2d 1401 (9th Cir. 1985) ................................................................... 5

*Barrett v. Forest Lab'ys, Inc.*
  39 F. Supp. 3d 407 (S.D.N.Y. 2014) ....................................................... 9, 10

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ................................................................................ 2, 7

*Brooks v. City of San Mateo*
  229 F.3d 917 (9th Cir. 2000) ................................................................... 12

*Bush v. Vaco Tech. Servs., LLC*
  2018 WL 2047807 (N.D. Cal. May 2, 2018) ........................................... 15

*Coleman v. Quaker Oats Co.*
  232 F.3d 1271 (9th Cir. 2000) ................................................................... 3

*Cornwell v. Electra Cent. Credit Union*
  439 F.3d 1018 (9th Cir. 2006) ................................................................... 2

*Dang v. Solar Turbines, Inc.*
  452 F. App'x 804 (9th Cir. 2011) ............................................................. 13

*Davis v. D.C.*
  925 F.3d 1240 (D.C. Cir. 2019) ............................................................. 8, 9

*Diaz v. Eagle Produce Ltd. P'ship*
  521 F.3d 1201 (9th Cir. 2008) ................................................................... 3

*Dixon v. Monterey Fin. Servs., Inc.*
  2016 WL 4426908 (N.D. Cal. Aug. 22, 2016) ......................................... 15

*EEOC v. Bloomberg L.P.*
  778 F. Supp. 2d 458 (S.D.N.Y. Aug. 16, 2011) ........................................ 5

*Enoh v. Hewlett Packard Enter. Co.*
  2018 WL 3377547 (N.D. Cal. July 11, 2018) ............................................ 7

*Freeman v. Cty. of Sacramento Dep't of Hum. Assistance*
  2020 WL 2539268 (E.D. Cal. May 19, 2020) ............................................ 6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

*Frenzel v. AliphCom*
   76 F. Supp. 3d 999 (N.D. Cal. Dec. 29, 2014) ................................................................. 2, 9

*Freyd v. Univ. of Oregon*
   990 F.3d 1211 (9th Cir. 2021) ..................................................................................... 6, 7

*Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*
   694 F.2d 531 (9th Cir. 1982) ....................................................................................... 4, 5

*Gilbreath v. Brookshire Grocery Co.*
   400 F. Supp. 3d 580 (E.D. Tex. Aug. 21, 2019) ........................................................... 8, 9

*Hudson v. Int'l Bus. Machines Corp.*
   620 F.2d 351 (2d Cir. 1980) ............................................................................................... 2

*Jones v. Lewis*
   2020 WL 6149693 (N.D. Cal. Oct. 20, 2020) ................................................................... 5

*Jue v. Costco Wholesale Corp.*
   2010 WL 889284 (N.D. Cal. Mar. 11, 2010) ................................................................. 15

*Keys v. Humana, Inc.*
   684 F.3d 605 (6th Cir. 2012) ............................................................................................. 4

*Lee v. City of Los Angeles*
   250 F.3d 668 (9th Cir. 2001) ....................................................................................... 2, 9

*Maresco v. Evans Chematics, Civ. Of W.R. Grace & Co.*
   964 F.2d 106 (2d Cir. 1992) ............................................................................................... 9

*McDonell Douglas Corp. v. Green*
   411 U.S. 792 (1973) ............................................................................................... 1, 2, 3

*Meacham v. Knolls Atomic Power Lab.*
   554 U.S. 84 (2008) ............................................................................................................. 6

*Merrick v. Farmers Ins. Grp.*
   892 F.2d 1434 (9th Cir. 1990) .......................................................................................... 5

*Moussouris v. Microsoft Corp.*
   2018 WL 3584701 (W.D. Wash. July 11, 2018) ............................................................ 10

*Oinonen v. TRX, Inc.*
   2010 WL 396112 (N.D. Tex. Feb. 3, 2010) ...................................................................... 3

*Paine v. IKEA Holding US, Inc.*
   2020 WL 374581 (E.D. Pa. Jan. 23, 2020) .................................................................... 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Poland v. Chertoff*
  494 F.3d 1174 (9th Cir. 2007)...................................................................................... 12

*Pottenger v. Potlach Corp.*
  329 F.3d 740 (9th Cir. 2003)............................................................................... 8, 9, 13

*Reynolds v. Barrett*
  685 F.3d 193 (2d Cir. 2012)........................................................................................... 2

*Rivera v. U.S. Postal Serv.*
  830 F.2d 1037 (9th Cir. 1987).................................................................................... 13

*Spokeo, Inc. v. Robins*
  578 U.S. 330 (2016).................................................................................................... 13

*Stockwell v. City & Cnty. of San Francisco*
  749 F.3d 1107 (9th Cir. 2014).......................................................................... 6, 11, 12

*Stout v. Potter*
  276 F.3d 1118 (9th Cir. 2002).............................................................................. passim

*Teamsters v. United States*
  431 U.S. 324 (1977)................................................................................................ 1, 3

*Tichenor v. BAE Sys. Tech. Sols. & Servs., Inc.*
  2021 WL 2559704 (S.D. Cal. Apr. 16, 2021) ........................................................... 12

*Tolbert v. U.S.*
  916 F.2d 245 (5th Cir. 1990)..................................................................................... 13

*Tsur v. Intel Corp.*
  2022 WL 17985573 (D. Or. Dec. 29, 2022) ............................................................ 8, 9

*Usher v. O'Reilly Automotive, Inc.*
  2014 WL 12597587 (C.D. Cal. May 27, 2014) .......................................................... 5

*Villamizar v. Senior Care Pharmacy Services, Inc.*
  2022 WL 755218 (E.D. Cal. Feb. 7, 2022) ............................................................... 14

*Wards Cove Packing Co. v. Atonio*
  490 U.S. 642 (1989).................................................................................................. 11

*Williams v. Am. Airlines, Inc.*
  2020 WL 1330388 (N.D. Cal. Mar. 23, 2020) .......................................................... 13

*Wood v. City of San Diego*
  678 F.3d 1075 (9th Cir. 2012)..................................................................................... 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

*Zawacki v. Realogy Corp.*
    628 F. Supp. 2d 274 (D. Conn. 2009) .................................................................. 9, 10

**CALIFORNIA CASES**

*Johnson v. City of Loma Linda*
    24 Cal. 4th 61 (2000) ......................................................................................... 13

*Mahler v. Jud. Council of Cal.*
    67 Cal. App. 5th 82 (2021)................................................................................... 6

**FEDERAL STATUTES**

Title VII of the Civil Rights Act of 1964 ....................................................................... 6

**CALIFORNIA STATUTES**

California Fair Employment and Housing Act ("FEHA")......................................... 6, 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12 .................................................................................................... 2, 14

Fed. R. Civ. P. 23 ......................................................................................................... 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

I.      **INTRODUCTION**

Plaintiffs' Opposition does not explain away the defects in their Complaint.  They fail to state a disparate treatment claim under *McDonell Douglas* because their Complaint is devoid of allegations that they were performing their jobs satisfactorily or that Twitter treated them differently than similarly situated male employees.  Plaintiffs also fail to state a pattern-or-practice claim for disparate treatment under *Teamsters* because the Complaint alleges a range of unidentified managers made the RIF decisions in a helter-skelter fashion over a matter of days, which is anything but a standard operating procedure.  What is more, the Complaint contains no anecdotal allegations other than a smattering of tweets by Musk that have no plausible nexus with the RIF, the Post-RIF policies, or any other operations at Twitter.

In addition, Plaintiffs' disparate impact claims related to the RIF fail because they purport to challenge the RIF in the abstract without isolating and identifying any facially neutral selection criteria.  Plaintiffs' failure to identity a neutral RIF-related practice is not surprising, however, because the Complaint targets only putatively intentional conduct, which is another reason why their RIF-related disparate impact claim fails.  As for the Post-RIF Policies related to working long hours at the office, Plaintiffs fail to plead causation and, in any event, they lack standing to challenge those policies because Plaintiffs were laid off in the RIF.  Finally, there is no merit to Plaintiffs' assertion that they may plausibly treat the RIF and the Post-RIF Policies as a unified whole for disparate impact purposes (and thus solve their standing problem), nor is there merit to Plaintiffs' attempt to solve the causation problem by implausibly characterizing hundreds of resignations as a mass constructive discharge.

Finally, Plaintiffs' purported excuse for failing to exhaust administrative remedies is a red herring because the "emergency" that purportedly prompted them to prematurely file their Complaint was dispelled before they filed it.  Yet Plaintiffs proceeded to file their Complaint, and they did so alleging clams on behalf of an overboard and unascertainable putative class.

The Court should dismiss Plaintiffs' individual claims and strike their class claims.

///

///

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

## II.   ARGUMENT

### A.   Plaintiffs Fail to State a Claim for Intentional Discrimination.

#### 1.   Plaintiffs Fail to State a Claim Under *McDonnell Douglas*.

Plaintiffs fail to allege facts to satisfy two essential elements under the *McDonnell Douglas* standard: (i) that they were performing their jobs satisfactorily, and (ii) that they were treated differently than similarly situated male employees. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). In response, Plaintiffs summarize the Complaint's allegations that Plaintiffs are women, that Twitter laid off more than 1,200 women, that Plaintiffs' statistics suggest Twitter laid off a disproportionate number of women, and that Musk has authored some allegedly sexist tweets. Opp. at 13:16-26.[1] But those allegations—taken together and considered for all they are worth—do not plausibly suggest that Plaintiffs were performing their jobs satisfactorily or that Twitter treated *them* differently than similarly situated male employees. *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) ("Statistics alone do not suffice to establish an individual disparate treatment claim for a very good reason: the particular plaintiff must establish *he* was the victim of racial discrimination.") (emphasis in original); *Hudson v. Int'l Bus. Machines Corp.*, 620 F.2d 351, 355 (2d Cir. 1980). Indeed, the Complaint says nothing about Plaintiffs' qualifications, experience, prior job performance, or abilities. *See* Compl. ¶¶ 9, 10. The Complaint does not even allege that Twitter employed men who performed similar jobs as Plaintiffs, let alone that one or more similarly situated men were not selected for the RIF.

Plaintiffs make the cursory assertion in a footnote that the Court may infer they were performing their jobs satisfactorily because they were "were laid off, rather than terminated for

---

[1] Plaintiffs try to augment the Complaint by asserting that the unidentified managers who made the RIF selections somehow all "understood their boss' hostility to women in the workplace" and thus presumably targeted women for termination at Musk's implicit behest. Opp. at 13:25-26. As an initial matter, the Court must disregard that new assertion because "it is axiomatic that the complaint may not be amended by the briefs in opposition to motion to dismiss." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. Dec. 29, 2014) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint.")) (additional citation omitted). In addition, the new assertion is pure speculation that the Court would disregard under *Twombly* even if Plaintiffs had alleged it in the Complaint.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1   cause." Opp. at 13, n.4. Plaintiffs cite no authority to support this specious inference. In RIF cases

2   in the Ninth Circuit, one of the elements of a claim under the *McDonnell Douglas* standard is that

3   the plaintiff performed her job satisfactorily, which would be a pointless element if it were

4   presumed to be satisfied in a RIF case. *See, e.g., Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201,

5   1207-08 (9th Cir. 2008) (in a RIF case involving seasonal farm workers, considered whether the

6   plaintiff was "performing his job satisfactorily" in establishing a prima facie case); *Coleman v.*

7   *Quaker Oats Co*., 232 F.3d 1271, 1281 (9th Cir. 2000) (same in a nationwide RIF case).

8              **2.    Plaintiffs Fail to State a Claim Under *Teamsters*.**

9              Plaintiffs also fail to state a "pattern or practice claim" claim using the *Teamsters* framework

10  because the Complaint does not plausibly suggest that discrimination is Twitter's "standard

11  operating procedure," meaning "the regular rather than the unusual practice" at Twitter. *See*

12  *Teamsters*, 431 U.S. at 336.[2]  As explained in Twitter's opening brief, the Complaint itself reveals

13  that the "extremely hurried" RIF decisions were the kind of "isolated, accidental, or sporadic" acts

14  that are the antithesis of a "regular" procedure, *see* Mot. at 11:1-4 (quoting *Teamsters*, 431 U.S. at

15  336), and the compressed timeframe further defies any plausible conclusion that discrimination is

16  Twitter's standard operating procedure. *Id.* at 10:24-11:1 (citing *Oinonen v. TRX, Inc*., 2010 WL

17  396112, at *4 (N.D. Tex. Feb. 3, 2010).

18             Tellingly, Plaintiffs do not directly respond to either point. *See* Opp. at 14:4-15:23. Instead,

19  they say they have "adequately alleged a pattern or practice of discriminatory conduct ***by Musk***."

20  Opp. at 14:16-17 (emphasis added). But even if the handful of Musk tweets were sufficient to

21  suggest pervasive gender animus by Twitter's then-new owner, which they are not,[3] those

22  allegations would still miss their mark because the Complaint alleges no plausible nexus between

23  Musk's putative gender animus and the RIF decisions made by others. *See* Compl. ¶¶ 23-25, 27.

24

---

25  [2] In a lengthy footnote, Plaintiffs explain that they are not required to pick the *McDonnell Douglas*
    or *Teamsters* framework at the pleading stage. Opp. at 14:15, n.5. But that argument is a red
26  herring because they must plead a plausible discrimination claim under *some* cognizable legal
27  standard, which they have not done.

    [3] The tweets consist of a joke Musk made over a year ago (*i.e.*, long before acquiring Twitter)
28  about breasts, a tweet that "Testosterone rocks [not going to lie]," and a tweet praising the value
    of motherhood. *See* Compl. ¶¶ 23-25.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1        Plaintiffs appear to suggest that the Sixth Circuit's opinion in *Keys* supports their theory.

2 *See* Opp. at 14:20-15:6.  It does not.  The complaint in *Keys* "detail[ed] several specific events in

3 each of th[e] employment-action categories [*i.e.*, hiring, compensation, promotion, discipline, and

4 termination] where [plaintiff] allege[d] she was treated differently than her Caucasian management

5 counterparts; it identifie[d] the key supervisors and other relevant persons by race and either name

6 or company title; and it allege[d] that [plaintiff] and other African Americans received specific

7 adverse employment actions notwithstanding satisfactory employment performances."  *Keys v.*

8 *Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012).  By contrast, the Complaint here does not identify

9 a single decision-maker by name, title, department, gender, or otherwise; it does not state a single

10 criteria used by any (unidentified) manager for a single decision within any department, role, or

11 location; and it does not allege any non-conclusory fact that suggests any of those (unidentified)

12 managers—much less many or all of them—somehow channeled Musk's purported gender animus

13 when making thousands of RIF decisions within a matter of a few days.

14        Plaintiffs' Opposition has little else to say in defense of their theory.  They correctly observe

15 that a pattern-or-practice theory is "another method" of establishing a disparate treatment claim.

16 Opp. at 15:6-12.  But that does not solve Plaintiffs' problem because they must allege a plausible

17 claim under one of the recognized standards, which they have not done.  Plaintiffs then note that a

18 plaintiff may use statistics to support a prima facie case of intentional discrimination.  *See* Opp. at

19 15:12-18.  That is true but it misses the point.  Their pattern-or-practice theory fails notwithstanding

20 their putative statistics because they lack sufficient allegations to plausibly suggest that gender

21 discrimination is Twitter's standard operating procedure.

22        Given that the alleged employment actions affected a substantial number of male

23 employees—even more male employees than female employees (*see* Compl. ¶ 30)—Plaintiffs need

24 robust anecdotal allegations to support a plausible inference of intentional discrimination for a

25 pattern-or-practice claim.  *See Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*, 694 F.2d

26 531, 552 (9th Cir. 1982).  Yet the Complaint contains virtually no anecdotal allegations.  Indeed,

27 ***Plaintiffs themselves barely even make a cameo appearance in their own Complaint***,  and no

28 other employee or manager takes the stage at all.  *See* Compl. ¶¶ 9-10.  In response, Plaintiffs revert

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1  to the Musk tweets and assert the non-sequitur that "at this stage, Plaintiffs need not prove their

2  entire case." *See* Opp. at 15:27-28.

3      Plaintiffs say their allegations about Musk's tweets are akin to the allegations in *Usher v.*

4  *O'Reilly Automotive, Inc.* and *Merrick v. Farmers Ins. Group*. *See* Opp. at 15:25-16:12.  In *Usher*,

5  however, the plaintiff alleged his own supervisors and managers "repeatedly" made disparaging

6  age-related comments to him, that "age-related harassment . . . became an everyday occurrence"

7  for him, and that a manager told him that leadership intentionally changed his schedule "in hopes

8  that [he] would quit voluntarily due to his age."  *Usher v. O'Reilly Automotive, Inc.,* 2014 WL

9  12597587, at *1 (C.D. Cal. May 27, 2014).  Similarly, in *Merrick*, another age-discrimination case,

10  the plaintiff alleged that the sole executive responsible for making promotion decisions stated that

11  he selected another candidate over plaintiff in part because the other candidate was a "young man."

12  *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990).  Thus, the allegations in *Usher*

13  and *Merrick* are a far cry from the Musk tweets.

14      Finally, regarding the alleged Post-RIF policies (*i.e.*, the policy that required long hours and

15  the policy that required work from a Twitter office), the Complaint alleges that Musk knew or

16  expected those policies would disproportionately effect women.  Compl. ¶¶ 40, 43.  But even if the

17  Court credited those conclusory assertions for pleading purposes, they still would not support an

18  inference of intentional discrimination because a company's purported knowledge or expectation

19  that a policy would have a disproportionate effect does not support an inference of intentional

20  discrimination.  *See* Mot. at 11:25-12:17 (citing *Gay*, 694 F.2d at 552; *Am. Fed'n of State, Cnty.,*

21  *& Mun. Emps., AFL-CIO (AFSCME) v. State of Wash.*, 770 F.2d 1401, 1405 (9th Cir. 1985); *Wood*

22  *v. City of San Diego,* 678 F.3d 1075, 1081-82 (9th Cir. 2012); *Jones v. Lewis*, 2020 WL 6149693,

23  at *3 (N.D. Cal. Oct. 20, 2020); *EEOC v. Bloomberg L.P.*, 778 F. Supp. 2d 458, 485 (S.D.N.Y.

24  Aug. 16, 2011)).  In response, Plaintiffs make the empty assertion that their Complaint is "rife was

25  statements of discriminatory intent."  Opp. at 16:7-9.  That presumably refers the same Musk tweets

26  and does nothing to identify factual allegations in the complaint (because there are none) that

27  suggest gender animus motivated Twitter's adoption of the Post-RIF Policies.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

## B.   Plaintiffs Fail to State a Disparate Impact Claim.

Under Title VII and FEHA, "[a] plaintiff establishes a prima facie case of disparate impact by showing a significant disparate impact on a protected class caused by a specific, identified, employment practice or selection criterion." *Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002) (additional citations omitted); *Mahler v. Jud. Council of Cal.*, 67 Cal. App. 5th 82, 113 (2021). The Ninth Circuit has stressed that "'[i]dentifying a specific practice is not a trivial burden' in [] discrimination cases alleging disparate impact." *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014) (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101 (2008)).

While Plaintiffs note that their Complaint need not present a prima facie case (*see* Opp. at 16:22-17:3), there is no question that the elements of a disparate impact claim are the lens through which the Court views the adequacy of their allegations under the plausibility standard. *See, e.g., Freeman v. Cty. of Sacramento Dep't of Hum. Assistance*, 2020 WL 2539268, at *2 (E.D. Cal. May 19, 2020) (explaining that "courts look to the prima facie elements [of a claim] to analyze a motion to dismiss" under the plausibility standard). Here, their Complaint falls well short.

### 1.   The Complaint Fails to Isolate and Identify a Facially Neutral Policy or Practice Related to the RIF.

The Complaint does not come close to identifying a specific RIF-related employment practice to challenge with a disparate impact claim. The Complaint offers only bottom-line statistics on the RIF, Compl. ¶¶ 29-38, but it does not allege any specific practice, test, or standard that was responsible for some or all of the alleged disparities. *See id*. ¶¶ 19, 21. The Complaint does nothing but assert that an unidentified "small group of managers" made RIF decisions "under extremely hurried circumstances, with little if any regard given to employees' job performance, qualification, experience, and abilities." *Id.* But those generic allegations address only what factors Twitter allegedly did not consider; they do not address what factors Twitter did consider that are responsible for the purported disparities. Thus, the Complaint lacks allegations sufficient to support a disparate impact claim based on the RIF. *See* Mot. at 15:3-23 (citing *Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021); *Stout*, 276 F.3d at 1121-22; *Enoh v. Hewlett Packard Enter.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1    *Co.*, 2018 WL 3377547, at *14 (N.D. Cal. July 11, 2018)).

2           In response, Plaintiffs' assert that their allegations are "more exacting" than the allegedly

3    "hazy" process that failed to state a disparate impact claim in *Enoh.*  Opp. at 19:23-20:3.  Tellingly,

4    Plaintiffs do not discuss the allegations in *Enoh*, nor do they identify any "exacting" allegations in

5    their Complaint*.  Id.*  In *Enoh*, the plaintiff alleged "an overwhelmingly Caucasian group of

6    selectors" used "subjectivity and favoritism" to make decisions and deviated from the employer's

7    own hiring policies "by not posting all open positions and instead relying on a 'tap on the shoulder'

8    procedure to award higher paying and more prestigious jobs to Caucasian employees." *Enoh*, 2018

9    WL 3377547, at *4.  Here, Plaintiffs' Complaint is far more generic than the failed complaint in

10   *Enoh* because Plaintiffs allege no facts whatsoever about any criteria used in the RIF, the identity

11   of the decision-makers, their genders, or anything else. *See* Compl. ¶¶ 19, 21.

12          Plaintiffs' comparison to *Freyd* also fails for several reasons. *See* Opp. at 20:5-10.  First,

13   Plaintiffs are wrong to suggest that *Freyd* involved the *absence* of a specific practice.  It involved

14   a specific *affirmative* practice that was alleged to *cause* a specific and material gender-based

15   disparity in total pay—*i.e.,* using retention bonuses for certain professors who receive competing

16   offers (predominantly men) without granting increases to other professors of comparable merit and

17   seniority. *Freyd*, 990 F.3d at 1215, 1224.  Plaintiffs identify no such "practice"—i.e., one or more

18   selection criteria for the RIF—much less one that might be responsible for any observed disparities.

19   Second, the Ninth Circuit in *Freyd* clarified that the plaintiff could proceed on a disparate impact

20   theory only because she "d[id] not challenge the general practice of awarding retention bonuses,"

21   but instead targeted how a specific department at the university awarded retention raises. *Id.* at

22   1224.  By contrast, Plaintiffs here generically attack each and every decision involving the RIF

23   across the entire U.S. workforce.  Finally, Plaintiffs assert that they, like the plaintiff in *Freyd,*

24   allege their employer declined to consider relevant factors like experience and abilities. *See* Opp.

25   at 20:5-10.  But, again, *Freyd* did not turn on the mere absence of certain criteria. *Freyd*, 990 F.3d

26   at 1215, 1224.  Moreover, Plaintiffs' Complaint contains only the sweeping assertion that Twitter

27   made RIF decisions "with little if any regard to employees' job performance, qualifications,

28   experience, and abilities," which is nothing but a string of conclusions that do not pass muster under

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

1    *Twombly*.  *See* Compl. ¶ 19.

2           Plaintiffs also fail to reckon with the Ninth Circuit's opinion in *Stout*.[4]  They simply note

3    that it was a summary judgment case.  But *Stout* is one in a long line of cases that recognize a

4    disparate impact claim must target "a specific, identified, employment practice or selection

5    criterion," which Plaintiffs here have not done.  *See Stout*, 276 F.3d at 1121.

6           Turning to Plaintiffs' authorities, Plaintiffs observe that a RIF "can be" a specific

7    employment practice that supports a disparate impact claim.  Opp. at 18:13-19 (citing *Tsur v. Intel*

8    *Corp.*, 2022 WL 17985573, at *13 (D. Or. Dec. 29, 2022); *Pottenger v. Potlach Corp.*, 329 F.3d

9    740, 749 (9th Cir. 2003)).  But the mere possibility that a RIF may be subject to a disparate impact

10   claim is beside the point.  What matters are a complaint's factual allegations, and Plaintiffs'

11   Complaint is not in the same ballpark as *Tsur* or *Pottenger*.

12          For starters, *Tsur* itself recognized that "a plaintiff's reliance on a statistical disparity alone,

13   without pointing to a defendant's conduct or policy causing that disparity, is fatal to a disparate

14   impact claim."  *Tsur*, 2022 WL 17985573, at *13; *see also Davis v. D.C.*, 925 F.3d 1240, 1250

15   (D.C. Cir. 2019) (explaining that a disparate impact complaint must "go beyond the general concept

16   of a 'RIF' to identify actionable practices" that informed the RIF); *Gilbreath v. Brookshire Grocery*

17   *Co.*, 400 F. Supp. 3d 580, 591 (E.D. Tex. Aug. 21, 2019) (collecting cases).  In *Tsur*, an age

18   discrimination case, a RIF was the proper subject of a disparate impact claim because the plaintiff

19   targeted the RIF's "layoff criteria"—specifically, a "methodology" that included consideration of

20   employees' "SSL [Stock Share Level] awards," which disproportionately affected older workers

21   because "SSL awards were not performance-based and were directed more to junior grade

22   employees."  *Id.*  Similarly, the disparate impact claim in *Pottenger* targeted an "objective, four-

23   step evaluation process used to identify employees to be terminated."  *Pottenger*, 329 F.3d at 749.[5]

24   Thus, if anything, *Stout* and *Pottenger* illustrate the poor condition of Plaintiffs' disparate impact

25

26   _____

     [4] The Opposition erroneously attributes *Stout* to the Second Circuit.  *See* Opp. at 20:10-12.

27   [5] The Court had no occasion to discuss or analyze this process under disparate impact law because

28   it concluded "Pottenger was not terminated as part of the RIF" and rejected his claim on that basis.
     *Id*.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1    allegations by comparison to the claims in those cases.  *See* Opp. at 18, n.8.[6]

2        As a fallback position, Plaintiffs argue that their claim targets subjective decision-making.

3    *See* Opp. at 19:3-13.  But that allegation is nowhere in the Complaint.  The Complaint alleges no

4    criteria whatsoever, whether objective, subjective, or a combination of both.  It alleges (in

5    conclusory terms) only various factors that decisionmakers purportedly did not consider.  Compl.

6    ¶¶ 19, 21.  And Plaintiffs cannot use their Opposition as a vehicle to modify or supplement the

7    allegations in their Complaint.  *See Frenzel*, 76 F. Supp. 3d at 1009 (N.D. Cal. 2014); *Lee*, 250 F.3d

8    at 688.

9           **2.      Plaintiffs Cannot State a Disparate Impact Claim Related to the RIF
                    by Simply Re-Labelling Their (Failed) Disparate Treatment Claim.**
10

11       Plaintiffs cannot circumvent the proof requirements of a disparate treatment claim in

12   connection with the RIF through the expedient of placing the "disparate impact" label on their

13   discrimination allegations.  *See* Mot. at 13:19-14:6 (citing *Maresco v. Evans Chematics, Civ. Of*

14   *W.R. Grace & Co*., 964 F.2d 106, 115 (2d Cir. 1992); *Zawacki v. Realogy Corp*., 628 F. Supp. 2d

15   274, 281 (D. Conn. 2009); *Barrett v. Forest Lab'ys, Inc*., 39 F. Supp. 3d 407, 438 (S.D.N.Y. 2014)).

16       Plaintiffs respond to *Maresco* by noting that it was a summary judgment case.  *See* Opp. at

17   17, n.7.  But that is a dodge.  Plaintiffs fail to reckon with *Maresco*'s explanation that a plaintiff

18   cannot pursue a disparate impact claim when the complaint targets only intentional conduct.  964

19   F.2d. at 108, 113.  Similarly, Plaintiffs have no response to *Zawacki* except to assert that the court's

20   analysis of the disparate impact issue was mere "dicta" because the court separately concluded the

21   plaintiff failed to exhaust administrative remedies.  *See* Opp. at 17, n.7.   But Plaintiffs

22   mischaracterize *Zawacki*.  The court expressly stated that the failure to exhaust was one of two

23   independent grounds for the dismissal.  *Zawacki*, 628 F. Supp. 2d at 281.  It held, "even if the

24   Plaintiff's disparate impact claims were properly before the administrative agencies, the motion to

25

26   ───────────────────
     [6] Plaintiffs assert that *Davis* and *Gilbreath* are "at odds" with Ninth Circuit law.  *See* Opp. at 18,
27   n.8.  But both cases are in harmony with *Tsur* and *Pottenger*, as explained above.  What is "at odds"
     with the law—in the Ninth Circuit and elsewhere—is Plaintiffs' suggestion that the general concept
28   of a RIF, without any elaboration of the target criteria informing the RIF, is the proper target of a
     disparate impact claim.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1    dismiss those claims must still be granted" for failure to state a claim.  *Id.*

2           Plaintiffs' response to *Barrett* is equally unavailing.  Plaintiffs note that the court denied the

3    motion to dismiss on one of the plaintiffs' several disparate impact theories.  *See* Opp. at 17, n.7.

4    That observation obviously does not help Plaintiffs.   In *Barrett*, the court concluded that the

5    plaintiffs' various theories related to "manager-supplied performance assessments" could not

6    proceed on a disparate impact basis because the complaint alleged they were the product of

7    intentional discrimination. 39 F. Supp. 3d at 437.  The court went on to conclude that the complaint

8    successfully stated a disparate impact claim related to a separate "policy of refusing to pay earned

9    bonuses to employees on leave for six weeks or more" because that was a neutral policy that

10   allegedly precluded plaintiffs from receiving their bonuses due to their maternity leaves.  *Id.* at 439.

11   By contrast, Plaintiffs here have not identified any neutral practice whatsoever related to the RIF.

12   They allege only that Twitter intentionally targeted female employees for termination.  *See* Compl.

13   ¶¶ 22, 26; *see also id.* at ¶ 4.

14          Finally, Plaintiffs note that they are entitled to plead causes of action in the alternative and

15   that plaintiffs in discrimination cases often proceed under both disparate impact and disparate

16   treatment theories of discrimination.  *See* Opp. at 7:4-18.  A plaintiff can plead in the alternative

17   only if she sets forth facts plausibly pleading each alternative claim.  Plaintiffs fail to do so here.

18   Rather, the Complaint alleges the RIF was intentionally discriminatory without identifying any

19   facially neutral practice, thus trying to repackage a disparate treatment claim with a "disparate

20   impact" label.

21          Plaintiffs' own cases illustrate the point.  Plaintiffs cite *Moussouris v. Microsoft Corp.*, 2018

22   WL 3584701, at *1 (W.D. Wash. July 11, 2018).  But the plaintiffs in that case challenged the

23   employer's facially neutral "Calibration Process . . . where managers compare[d] and

24   standardize[d] employees' performance ratings across a cohort of similarly-leveled colleagues,"

25   during management-level "calibration meetings" that assigned numerical "performance ratings" to

26   each employee based on three separate "aspects of the employee's performance," including "work

27   results," "how the employee accomplished those results," and the employee's "proven capability"

28   based on past performance.  *Id.*  Those allegations, which targeted a specific neutral employment

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

practice, stand in stark contrast to the Complaint here, which alleges only intentional conduct without identifying any facially neutral policy.[7]

Plaintiffs' reliance on *Paine v. IKEA Holding US, Inc.*, 2020 WL 374581, at *4 (E.D. Pa. Jan. 23, 2020) fares no better. *Paine* involved facially neutral policies (*i.e.*, a "Potential Policy" and a "Relocation Policy") that the plaintiff alleged were pretext for intentional discrimination. *Id.* By contrast, Plaintiffs here have not identified any facially neutral policy.

### 3. Plaintiffs' Disparate Impact Claim Cannot Target the RIF and the Post-RIF Policies "As a Whole."

Twitter's opening brief explained (i) that the alleged Post-RIF policy of requiring long and hard work is too vague and generic to constitute a discernible employment practice, (ii) that Plaintiffs fail to plead causation for either of the Post-RIF policies because the two percentages that the Complaint reports (*i.e.*, female vs. male departures) are simply bottom-line figures that the Complaint does not tie to either policy, and (iii) that Plaintiffs' disparate impact claim targeting the Post-RIF policies fails for want of causation because the resulting separations were voluntary, and the Complaint does not plausibly plead a "mass constructive discharge."  Mot. at 15:25-18:4.

In response, Plaintiffs assert that Twitter is being "myopic" by considering the alleged policies individually. *See* Opp. at 19:13-14.  But considering individual practices is precisely what the law requires in a disparate impact case.  *See Stout*, 276 F.3d at 1121 (disparate impact claims must identify a "specific, identified, employment practice or selection criterion"); *Stockwell*, 749 F.3d at 1114 ("not a trivial burden").  In addition, Plaintiffs themselves describe the alleged Post-RIF policies separately, and they articulate no basis for impermissibly trying to amalgamate them.

Plaintiffs go on to explain that their disparate impact claim purports to treat the RIF and the Post-RIF Policies as "part and parcel" of a single "mass layoff."  Opp. at 19:14-16, 21:15-23.  As explained at length above, however, Plaintiffs' allegations related to the RIF fall well short of

---

[7] *Wards Cove* does not help Plaintiffs for the same reason.  In *Wards Cove*, the plaintiffs targeted a "variety" of "hiring/promotion practices—e.g., nepotism, a rehire preference, a lack of objective hiring criteria, separate hiring channels, a practice of not promoting from within."  *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 674 (1989).  Here, by contrast, the Complaint alleges only that Twitter intentionally discriminated against women in conducting the RIF without identifying any employment practice to challenge with a disparate impact claim.

1   stating a disparate impact claim. *See supra* §§ II.B.1-2. Those shortcomings are obviously

2   multiplied when Plaintiffs add even more policies (*i.e.*, the Post-RIF Policies) and more decisions

3   (*i.e.*, the hundreds of individual decisions to quit in response to these policies) into the mix.[8] In

4   short, Plaintiffs are moving in the wrong direction. They have taken their generic disparate impact

5   claim related to the RIF and pitched it at an even more abstract level by saying their Complaint

6   targets not only the RIF, but the "mass layoff **as a whole**," including the separations that resulted

7   from the Post-RIF Policies. Opp. at 21:22-23 (emphasis in original). That is not how a disparate

8   impact claim works. *See Stout*, 276 F.3d at 1121; *Stockwell*, 749 F.3d at 1114.

9        Nor is there any merit to Plaintiffs' assertion that they have plausibly alleged that the Post-

10  RIF Policies amounted to a "constructive discharge" of hundreds of employees. *See* Opp. at 21:10-

11  11. A constructive discharge occurs only when working conditions are so "extraordinary and

12  egregious" or "intolerable" that a reasonable employee is compelled to quit. *Brooks v. City of San*

13  *Mateo*, 229 F.3d 917, 930 (9th Cir. 2000); *see also Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th

14  Cir. 2007) (explaining that the constructive discharge doctrine sets "the bar high"). Plaintiffs do

15  not explain why a policy requiring long hours and a policy requiring work from the office are

16  "extraordinary and egregious" or "intolerable." They simply note that the Complaint alleges that

17  the Post-RIF policies were part of a strategy to reduce headcount and that hundreds of employees

18  quit in response (although thousands did not). *See* Opp. at 20:15-21-14. In support, Plaintiffs cite

19  only *Tichenor v. BAE Sys. Tech. Sols. & Servs., Inc.*, 2021 WL 2559704, at *6 (S.D. Cal. Apr. 16,

20  2021). But *Tichenor* involved allegations of repeated "harass[ment]", "threats" by an HR

21  representative, retaliatory "target[ing]" of plaintiff, "tolerat[ion of] hostility" against the plaintiff,

22  and re-assignment of the plaintiff to a less desirable position. *Id.* at *1, 4-5. Plaintiffs' allegations

23  of long hours at the office are nowhere near the severity of the allegations in *Tichenor*.

24        **C.    Plaintiffs Lack Standing to State a Claim Arising from the Post-RIF Policies.**

25        Plaintiffs cannot state a claim arising from the Post-RIF policies because they were laid off

26  in the RIF. Compl. ¶¶ 20, 46; *Pottenger*, 329 F.3d at 749 (affirming summary judgment on

---

[8] One can only wonder what Plaintiffs mean when they say that combining the RIF and the Post-RIF policies creates "a more specific employment practice than a generalized reduction in force." Opp. at 19:20-21.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739-JST

1   disparate impact claim because the plaintiff was not subject to the RIF he challenged).  Plaintiffs

2   argue that the Court should "look at the big picture" and consider all the allegedly discriminatory

3   employment actions "as a whole."  *See* Opp. at 21:15-23.  But Plaintiffs cannot solve their standing

4   problem by conflating the RIF and the Post-RIF policies, and the Complaint certainly lacks

5   plausible allegations to suggest that the RIF and the Post-RIF policies are an undifferentiated whole.

6   *See supra* § II.B.3.  Plainly, the Post-RIF policies could not have injured Plaintiffs because they

7   were not subject to those policies, which negates their standing.  *Spokeo, Inc. v. Robins*, 578 U.S.

8   330, 338 (2016).

9           **D.        The Court Should Dismiss Strifling's FEHA Claim.**

10          Plaintiffs concede that out-of-state Plaintiff Strifling lacks standing to assert a FEHA claim,

11  but they assert Strifling does not assert a FEHA claim.  *See* Opp. at 22:4-10.  That is incorrect.  The

12  Complaint unequivocally asserts a FEHA claim on behalf of both "Plaintiffs" (plural).  *See* Compl.

13  at p. 12.  Thus, the Court should dismiss Strifling's FEHA claim.

14          **E.        Plaintiffs Concede They Failed to Exhaust Administrative Remedies.**

15          Plaintiffs jumped the proverbial gun twice over by filing their Complaint without exhausting

16  their administrative remedies with the EEOC or the California Civil Rights Department (CRD)

17  (f/k/a DFEH).  *See* Opp. at 8:6-19.  Plaintiffs recently received a right-to-sue letter from the EEOC,

18  but Twitter is unaware of a right-to-sue letter from the CRD.[9]  In any event, the belated issuance of

19  a right-to-sue notice from the EEOC does not cure a Plaintiffs' failure to comply with the

20  exhaustion requirement in the first instance.  *Tolbert v. U.S.*,  916 F.2d 245, 249 (5th Cir. 1990);

21  *Rivera v. U.S. Postal Serv.*, 830 F.2d 1037, 1039 (9th Cir. 1987), cert. denied, 486 U.S. 1009 (1988).

22  The same is true under FEHA.  Indeed, courts consistently find administrative exhaustion with the

23  state agency is "a jurisdictional prerequisite to resort to the courts."  *Williams v. Am. Airlines, Inc.*,

24  2020 WL 1330388, at *5 (N.D. Cal. Mar. 23, 2020), aff'd, 846 F. App'x 560 (9th Cir. 2021)

25  (quoting *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 70 (2000)); *Villamizar v. Senior Care*

26  *Pharmacy Services, Inc.*, 2022 WL 755218, at *4 (E.D. Cal. Feb. 7, 2022).

27

28  [9] Plaintiffs need a separate right-to-sue letter from the CRD in order to exhaust their administrative
    remedies with the state agency. *See Dang v. Solar Turbines, Inc.*, 452 F. App'x 804 (9th Cir. 2011).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1    Plaintiffs assert that the Court should excuse their premature filing because the agencies'

2    remedies would have been inadequate for Plaintiffs' "emergency request for relief" under the

3    Declaratory Judgment Act (DJA) and absent members of the putative class would suffer

4    "irreparable harm" if Twitter had issued releases to laid off employees that did not include "notice

5    of their rights or the pendency of this case." *See* Opp. at 10:23-11:1.  Plaintiffs' argument lacks

6    merit because, as they note, their lawyers sought and obtained this emergency relief in another case.

7    *See* Opp. at 11:2-3.  On November 9, 2022—nearly a month before Plaintiffs filed this action—the

8    plaintiffs in *Cornet v. Twitter, Inc.* (Northern District Case No. 3:22-cv-06857-JD) sought this

9    emergency relief before Judge Donato.  *See* Cornet, ECF No. 7.  Then, on November 16, 2022,

10   Twitter agreed not to seek any general releases pending the adjudication of the issue.  *See Cornet*,

11   ECF No. 14.  Plaintiffs nevertheless filed this Complaint on December 7, 2022, *after* the purported

12   "emergency" had been dispelled.   Those facts explain why Plaintiffs have not sought any

13   emergency relief in this action, and they also explain why Plaintiffs' failure to exhaust their

14   administrative remedies is unexcused.

15       F.       **The Court Should Dismiss Their Claim Under the Declaratory Judgment Act.**

16   Plaintiffs do not dispute that their DJA claim stands or falls with their discrimination claims.

17   Opp. at 22:13-15.  Because their discrimination claims fail, *see supra* §§ II.A-E, so too does their

18   DJA claim.   In addition, Plaintiffs acknowledge that the DJA claim is now moot in light of

19   proceedings in *Cornet*.  Opp. at 22:16-17.

20       G.       **The Court Should Strike Plaintiffs' Class Claims Under Rule 12(f).**

21   Plaintiffs do not dispute that they must be a member of any class that they purport to

22   represent.  *See* Opp. at 23:25-24:8, n.10.  As explained above, Plaintiffs were terminated as part of

23   the RIF, so they cannot represent putative class members whose purported injuries arose from the

24   Post-RIF Policies.  *See supra* § II.C.  Plaintiffs say they should be entitled to take discovery in order

25   to figure out the scope of their class at the Rule 23 phase.  Opp. at 23:4-24.  But they cannot unlock

26   the doors to class discovery about the Post-RIF policies where, as here, the Complaint leaves no

27   doubt that they were never subject to those policies.  *See, e.g.*,  *Bush v. Vaco Tech. Servs., LLC*,

28   2018 WL 2047807, at *6 (N.D. Cal. May 2, 2018) (dismissing class claims because the complaint

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

was "completely devoid of any allegations tying [the plaintiff's] experience to the thousands of individuals" in the putative class); *Jue v. Costco Wholesale Corp.*, 2010 WL 889284, at *6 (N.D. Cal. Mar. 11, 2010).   And the Opposition's assertion that the RIF and the Post-RIF policies somehow constituted a single "mass layoff" is no substitute for plausible factual allegations in the Complaint, which are absent.  *See supra* §§ II.A-B.

Moreover, Plaintiffs fail to plead an ascertainable class.  *See* Mot. at 21:20-26 (collecting authorities).  Plaintiffs purport to represent "other female Twitter employees across the country who have been discharged or constructively discharged from their jobs during the chaotic weeks" after Musk acquired Twitter.  Compl. ¶ 2.  But that definition does not identify the "other" female employees who are part of Plaintiffs' proposed class, nor does it identify the "chaotic" weeks that are included in the class definition's temporal scope.  *See id*.  Plaintiffs also say they represent women who have "lost their jobs" with the company, but it is unclear whether the class definition includes *all* women who separated from the company, even those fired for cause, when the substantive allegations address only the RIF and the Post-RIF Policies.

In response, Plaintiffs say the class consists of "women who have lost their jobs at Twitter as the result of [the RIF and Post-RIF Policies]." Opp. at 24:20-25:3.  But their explanation makes matters worse for them, at least as the definition relates to the female employees who separated in response to the Post-RIF policies, because class membership can be determined only after probing each female employee's reasons for quitting.  Such fail-safe classes are not ascertainable.  *See, e.g.*, *Dixon v. Monterey Fin. Servs., Inc.*, 2016 WL 4426908, at *2 (N.D. Cal. Aug. 22, 2016) (concluding that a proposed class constituted an impermissible fail-safe class because "whether a person is a member of the class is dependent on whether he/she prevails on the merits of the [] claim.").

**III.     CONCLUSION**

The Court should grant Twitter's Motion to Dismiss and strike the class claims.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST

1    Dated: March 1, 2023                          MORGAN, LEWIS & BOCKIUS LLP

2

3                                            By   */s/ Brian D. Berry*
                                                 Eric Meckley
4                                                Brian D. Berry
                                                 Jonathan D. Lotsoff
5                                                Ashlee N. Cherry
                                                 Joseph A. Govea
6                                                Kassia Stephenson
                                                 Carolyn M. Corcoran
7                                                Attorneys for Defendant
                                                 TWITTER, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
  BOCKIUS LLP
 ATTORNEYS AT LAW
  SAN FRANCISCO

TWITTER'S REPLY IN SUPPORT OF
MOTION TO DISMISS AND STRIKE
CASE NO. 4:22-CV-07739- JST