1

2

3

4                    UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    CAROLINA BERNAL STRIFLING, et al.,          Case No. 22-cv-07739-JST

8                        Plaintiffs,

9              v.                                 **ORDER GRANTING MOTION TO DISMISS**

10   TWITTER INC.,                                Re: ECF No. 20

11                       Defendant.

12

13          Before the Court is Twitter, Inc.'s ("Twitter") motion to dismiss.  ECF No. 20.  The Court

14   will grant the motion.

15   **I.     BACKGROUND**

16          For the purpose of ruling on the instant motion, the Court accepts all the following facts as

17   true.  Plaintiff Carolina Bernal Strifling is a resident of Miami, Florida and was employed by

18   Twitter from June 2015 to November 2022.  ECF No. 1 ¶ 9.  Plaintiff Willow Wren Turkal is a

19   resident of San Jose, California and was employed by Twitter from June 2021 to November 2022.

20   *Id*. ¶ 10.

21          Elon Musk acquired Twitter in October 2022.  *Id*. ¶ 18.  Musk has been criticized for

22   making "sexist, demeaning, and hostile comments" against women.  *Id*. ¶¶ 22-25.  Soon after the

23   acquisition, Twitter initiated a Reduction-in-Force ("RIF") that affected approximately 2,621 out

24   of its 5,134 employees, most of whom were notified of their layoff on November 4, 2022.  *Id*. ¶¶

25   18, 20, 29.  Musk brought in a small group of managers who made the layoff decisions under his

26   supervision.  *Id*. ¶ 21.  Plaintiffs were laid off during the RIF.  *Id*. ¶ 46.[1]

27   _____

28   [1] Plaintiffs do not explicitly state whether they themselves were laid off during the November 4, 2022 RIF, although the parties appear to accept this fact as true in their arguments.  The Court will

United States District Court
Northern District of California

1    Following the RIF, Musk implemented a policy that required employees to work more

2  hours and in physical offices, rather than remotely as was previously permitted ("Post-RIF

3  Policy").  *Id*. ¶ 41.  On November 16, 2022, Musk sent a message to the remaining Twitter

4  employees asking whether they agreed to work under new conditions that would be "extremely

5  hardcore" and require "working long hours at high intensity." *Id*. ¶ 44.  The message instructed

6  those who wished to remain employed by Twitter to respond "yes" by the following day.  *Id*.  As a

7  result of the "ultimatum," more employees chose to leave Twitter.  *Id*. ¶ 45.  Plaintiffs allege that

8  the RIF and Post-RIF Policy forced a disproportionate number of women to leave Twitter and

9  were the products of sex-based discrimination.  *Id.* ¶¶ 26, 43, 45.

10    On December 7, 2022, Plaintiffs filed a complaint on behalf of themselves and other

11  female Twitter employees whose jobs were affected by the "layoffs, terminations, and constructive

12  discharges since Elon Musk acquired the company." *Id.* at 12.  They bring claims under Title VII

13  of the Civil Rights Act of 1964 ("Title VII") for sex-based discrimination.  Plaintiffs also seek a

14  declaratory judgement and injunction under 28 U.S.C. §§ 2201 & 2202 prohibiting Twitter from

15  seeking the release of employees' claims without providing notice of their rights and this pending

16  case. *Id.*  Turkal brings an additional claim under the California Fair Employment and Housing

17  Act ("FEHA") Cal. Gov. Code § 12900, *et seq*. *Id.*; ECF No. 27 at 32.[2]  On December 8, 2022,

18  Plaintiffs filed complaints with the Equal Employment Opportunity Commission ("EEOC"), and

19  Turkal additionally filed with the California Department of Fair Employment and Housing

20  ("DFEH").   ECF No. 27 at 18.

21    Twitter filed the instant motion on January 26, 2023, and the Court took the motion under

22  submission without a hearing on March 27, 2023.  ECF No. 32.

23

24  accept this as true for the sake of its analysis, however, Plaintiffs should allege the date that they
   were laid off if they amend their complaint.
25

26  [2] Plaintiffs concede that Turkal, not Strifling, is permitted to bring a FEHA claim, ECF No. 27 at
   32, however, their complaint states Twitter's actions "constitute unlawful discrimination against
27  *Plaintiffs* and other similarly situated female Twitter employees on the basis of sex in violation of
   the FEHA." ECF No. 1 at 12 (emphasis added).  Because the Court is dismissing all of Plaintiffs'
28  claims, Twitter's request to dismiss Strifling's FEHA claim is moot.  However, Plaintiffs should,
   on amendment, correct their complaint to reflect that Turkal alone brings a FEHA claim.

United States District Court
Northern District of California

1    **II.    JURISDICTION**

2    The Court has jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

3    **III.    LEGAL STANDARD**

4    To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a

5    complaint must contain "a short and plain statement of the claim showing that the pleader is

6    entitled to relief." Fed. R. Civ. P. 8(a)(2).  Dismissal "is appropriate only where the complaint

7    lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

8    *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "[A] complaint

9    must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

10   on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

11   550 U.S. 544, 570 (2007)).  Factual allegations need not be detailed, but facts must be "enough to

12   raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

13   "A claim has facial plausibility when the plaintiff pleads factual content that allows the

14   court to draw the reasonable inference that the defendant is liable for the misconduct

15   alleged." *Iqbal*, 556 U.S. at 678.  While this standard is not "akin to a 'probability requirement' . .

16   . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting

17   *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

18   defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to

19   relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  In determining whether a plaintiff has met the

20   plausibility requirement, a court must "accept all factual allegations in the complaint as true and

21   construe the pleadings in the light most favorable" to the plaintiff.  *Knievel v. ESPN*, 393 F.3d

22   1068, 1072 (9th Cir. 2005).  A plaintiff may "plead[] facts alleged upon information and belief

23   where the facts are peculiarly within the possession and control of the defendant or where the

24   belief is based on factual information that makes the inference of culpability plausible." *Soo Park*

25   *v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 603 F.3d

26   110, 120 (2d Cir. 2010)).

27

28

United States District Court
Northern District of California

1    **IV.    DISCUSSION**

2        **A.    Exhaustion of Administrative Remedies**

3        To bring a claim under Title VII, a plaintiff is required to first "exhaust her administrative

4    remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby

5    affording the agency an opportunity to investigate the charge" and obtain a right-to-sue notice

6    before filing suit in federal court. *BKB v. Maui Police Dep't.*, 276 F.3d 1091, 1099 (9th Cir.

7    2002).  A plaintiff who brings a claim under FEHA must do the same with the DFEH. *Harris v.*

8    *Cnty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012).  However, the Ninth Circuit recognizes

9    equitable exceptions to the administrative exhaustion requirement "where the remedies are

10   inadequate, inefficacious, or futile, where pursuit of them would irreparably injure the plaintiff, or

11   where the administrative proceedings themselves are void." *United Farm Workers of Am., AFL-*

12   *CIO v. Ariz. Agric. Emp't Rels. Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1987); *see SJCBC, LLC v.*

13   *Horwedel*, 201 Cal. App. 4th 339, 346 (2011).  Thus, filing a timely complaint with the EEOC "is

14   not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of

15   limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines,*

16   *Inc.*, 455 U.S. 385, 393 (1982).  Similarly, the California Supreme Court has explained that

17   although "[e]xhaustion of *administrative* remedies is 'a jurisdictional prerequisite to resort to the

18   courts,'" *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 70 (2000) (emphasis in original) (quoting

19   *Abelleira v. Dist. Court of Appeal,* 17 Cal. 2d 280, 293 (1941)), "'jurisdictional prerequisite' does

20   not mean subject matter jurisdiction in the context of exhaustion of administrative remedies." *Kim*

21   *v. Konad USA Distrib., Inc.*, 226 Cal. App. 4th 1336, 1347 (2014).

22       Twitter argues that Plaintiffs failed to exhaust their administrative remedies because they

23   filed charges with the EEOC and DFEH only after they filed their suit in this Court.[3]  ECF No. 20

24   at 17-18.  Twitter further contends that Plaintiffs cannot cure this error by belatedly obtaining

25   right-to-sue notices from the EEOC and DFEH.  ECF No. 28 at 19.  Plaintiffs concede that they

26

27   _____

     [3] The Court will not consider Plaintiffs' notices at ECF No. 29 and ECF No. 30 because they were
28   filed after Twitter's reply without leave of the Court.  *See* Civil L.R. 7-4(d).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    filed suit before filing charges with the EEOC and DFEH and receiving right-to-sue notices.  ECF

2    No. 27 at 18.  However, they argue that the Court should permit their claims to proceed, rather

3    than requiring them to refile after they receive the right-to-sue notices, because they filed the

4    charges "nearly simultaneously with filing their initial complaint" and expect to receive the

5    notices shortly.  *Id.*  They further argue that the administrative exhaustion requirement is non-

6    jurisdictional such that the Court can and should excuse Plaintiffs from this requirement.

7    Plaintiffs also argue that the EEOC's and DFEH's inability to enjoin Twitter from seeking

8    terminated employees' release of claims without proper notice would irreparably harm the putative

9    class.  *Id.* at 20.  Twitter replies that there is no such risk of irreparable harm because it already

10   agreed to not seek any releases of claims, without notification of the instant suit, in another

11   pending action.  ECF No. 28 at 20.  Thus, in Twitter's view, Plaintiffs' "purported emergency"

12   was already "dispelled."  *Id*.

13          The Court declines to excuse Plaintiffs' failure to exhaust their administrative remedies

14   because they have not demonstrated that compliance with the requirement would irreparably harm

15   the putative class.  At the time Plaintiffs filed suit, Twitter had agreed to not seek the general

16   releases of claims until a motion for a protective order in *Cornet v. Twitter, Inc.* was to be decided.

17   Order Adopting Proposed Briefing Schedule, *Cornet v. Twitter., Inc*, No. 3:22-cv-06857-JD (N.D.

18   Cal. Nov. 18, 2022), ECF No. 15.  On December 14, 2022, the court granted the plaintiff's motion

19   and ordered Twitter to "provide notice of the pendency of [the *Cornet*] case before asking an

20   employee to release his or her legal claims."  Order Re Litigation Notice, *Cornet v. Twitter, Inc.*,

21   No. 3:22-cv-06857-JD (N.D. Cal. Dec. 14, 2022), ECF No. 42 at 3.  The court approved a joint

22   proposed notice that included information, not only on the *Cornet* case, but on the instant suit as

23   well.  Order Adopting Approving Joint Proposed Notice, *Cornet v. Twitter, Inc.*, No. 3:22-cv-

24   06857-JD (N.D. Cal. Dec. 20, 2022), ECF No. 43-1 at 2; ECF No. 44.

25          However, even if Plaintiffs had exhausted their administrative remedies, the following

26   deficiencies exist with the remaining claims.

27          **B.      Disparate Treatment**

28          A plaintiff may bring a Title VII or FEHA claim on a theory of disparate treatment.

5

*Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).[4]  Disparate

treatment occurs "where an employer 'treat[s] [a] particular person less favorably than others

because of' a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Watson v.*

*Forth Worth Bank & Tr.*, 487 U.S. 977, 985-86 (1988)).  To state a disparate treatment claim, a

plaintiff must allege that "the defendant had a discriminatory intent or motive" in taking some

employment-related action against them.  *Watson*, 487 U.S. at 986.  Thus, "[i]t is insufficient for a

plaintiff alleging discrimination under the disparate treatment theory to show the employer was

merely aware of the adverse consequences the policy would have on a protected group." *Wood v.*

*City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Am. Fed'n of State, Cnty., &*

*Mun. Emps. v. Washington*, 770 F.2d 1401, 1405 (9th Cir. 1985)).

Twitter argues that Plaintiffs fail to establish a prima facie case of intentional

discrimination either under the *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973)

("*McDonnell Douglas*") or *International Brotherhood of Teamsters v. United States*, 431 U.S. 324

(1977) ("*Teamsters*") framework.  ECF No. 20 at 19.  Plaintiffs argue that that the statistics

demonstrating that women were impacted at a "highly disproportionate rate" during the RIF and

Post-RIF Policy – coupled with "overtly sexist statements" from Musk – support their allegations

of disparate treatment under either the *McDonnell Douglas* or *Teamsters* framework.  ECF No. 27

at 23.

As an initial matter, neither *McDonnell Douglas* nor *Teamsters* framework applies at the

pleading stage.  *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019); *Serrano v. Cintas*

*Corp.*, 699 F.3d 884, 897-898 (6th Cir. 2012).  Both frameworks employ "burden-shifting"

analyses, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366-67 (2011); *Young v. Buttigieg*, No.

19-cv-01411-JCS, 2021 WL 981305, at *6 (N.D. Cal. Mar. 16, 2021), that are "plainly

inapplicable" at the pleading stage.  *Young*, 2021 WL 981305, at *6.  The Supreme Court in

---

[4] The Court analyzes Plaintiffs' Title VII and FEHA claims together because "California courts
have relied upon federal interpretations of Title VII to interpret analogous provisions of the
California Fair Employment and Housing Act (FEHA)."  *Bradley v. Harcourt, Brace & Co.*, 104
F.3d 267, 270 (9th Cir. 1996).  Thus, "[d]iscrimination under FEHA and Title VII is proven using
the same factors."  *Wynes v. Kaiser Permanente Hosps.*, 936 F. Supp. 2d 1171, 1192 (E.D. Cal.
2013).

United States District Court
Northern District of California

1   *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002), held that because the *McDonnell*

2   *Douglas* framework is "an evidentiary standard, not a pleading requirement," "the requirements

3   for establishing a prima facie case under *McDonnell Douglas*" do not "apply to the pleading

4   standard that plaintiffs must satisfy in order to survive a motion to dismiss."  The Ninth Circuit in

5   *Austin*, 925 F.3d at 1137, clarified that, rather than making a prima facie showing under either

6   framework, a plaintiff who brings a Title VII claim must abide by the *Twombly* and *Iqbal* pleading

7   standards.  Thus, a plaintiff must provide "sufficient, nonconclusory allegations plausibly linking"

8   the discriminatory conduct to the fact that the plaintiff is of a protected class to state a Title VII or

9   FEHA claim.  *Austin*, 925 F.3d at 1138; *accord Serrano* 699 F.3d at 897 ("*Swierkiewicz* compels

10   the conclusion that a plaintiff is not required to plead whether she intends to employ the

11   *McDonnell Douglas* or the *Teamsters* burden-shifting evidentiary framework.")

12          The Court finds that, although Plaintiffs are not required to make a prima facie showing

13   under the *McDonnell Douglas* or *Teamsters* framework, they nonetheless fail to allege a plausible

14   link between their layoff during the RIF and the fact that they are women, for two reasons.[5]

15          First, Plaintiffs' complaint is devoid of basic information:  they do not describe their

16   positions prior to the RIF or allege that they were performing satisfactorily in those positions.[6]

17   Thus, they are unable to allege that similarly situated men were not laid off during the RIF.

18

---

19   [5] Plaintiffs also allege that the Post-RIF Policy was an act of intentional discrimination that
20   "would clearly be expected to have (and did have) a disproportionate impact on women."  ECF
     No. 27 at 23.  A plaintiff must allege that "she was subject to an adverse employment action" to
21   plead a disparate treatment claim. *Campbell v. Haw.  Dep't of Educ.*, 892 F.3d 1005, 1012 (9th
     Cir. 2018).  However, Plaintiffs were not subject to the Post-RIF Policy because they were no
22   longer working at Twitter when it was enacted. Thus, the Court will not consider whether the
     Post-RIF Policy was an act of intentional discrimination against Plaintiffs.

23   [6] Plaintiffs argue that because "they were laid off, rather than terminated for cause" it is "impli[ed]
24   that their job performance was satisfactory."  ECF No. 27 at 23 n.4.  However, when a plaintiff is
     laid off during an RIF, the Ninth Circuit nonetheless considers if the plaintiff has sufficiently
25   alleged their job performance was satisfactory. *Cf. Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d
     1201, 1208 (9th Cir. 2008) (holding that there was a triable issue of fact whether the plaintiff,
26   terminated as a part of an RIF, was performing his job satisfactorily).  A plaintiff must ultimately
     allege facts – whether that includes allegations of their job performance – to establish a plausible
27   link between the discriminatory conduct and the fact that the plaintiff is of a protected class.  Thus,
     the Court addresses Plaintiffs' allegations of their job performance not because it is a required
28   component of every pleading, but rather because Plaintiffs rely on it to speak to the plausibility of
     their claims.

1    *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (describing those who "have

2    similar jobs and display similar conduct" to the plaintiff as being "similarly situated").  Nor do

3    they identify the "small group of managers" who acted "under the close supervision of Musk" in

4    making the layoff decisions.  Courts have consistently relied on this information to find a plausible

5    link between the discriminatory conduct and the fact that the plaintiff is of a protected class.

6          For example, in *Hilber v. International Lining Technology*, No. C 12-00003 LB, 2012 WL

7    3542421, at *5 (N.D. Cal. Jul. 24, 2012), the court held that the plaintiff properly pleaded a claim

8    for disparate treatment because he identified his position and further alleged that he "was not told

9    of any problems with his job performance," had to "do less important and more menial tasks"

10   while "Hispanic laborers hired from Laborers Local 139 Hall got to participate in seaming

11   material and leak testing," and "was sent home early one day and was not given work on another

12   day even though other laborers did work those days."

13         Similarly, in *Williams v. Wolf*, No. 19-cv-00652-JCS, 2020 WL 1245369, at *10 (N.D.

14   Cal. Mar. 16, 2020), the court adopted "a broader view of causation" in light of the Ninth Circuit's

15   "disavowal of applying the *McDonnell Douglas* prima facie case elements to a plaintiff's

16   allegations at the pleading stage" and held that the plaintiff had sufficiently pleaded a claim for

17   disparate treatment.  The plaintiff alleged that her supervisor had stated that she would never

18   support the plaintiff's promotion because the plaintiff had filed a grievance against her supervisor,

19   "she ha[d] been singled out for criticism or discipline on a number of occasions for conduct that is

20   common in her office by non-African American employees," and "her work performance was as

21   good or better than that of her peers." *Id.*

22         Second, Plaintiffs also fail to allege that Twitter engaged in a pattern or practice of

23   discrimination.  When a plaintiff "allege[s] a systemwide pattern or practice of resistance to the

24   full enjoyment of Title VII rights, [they] ultimately ha[ve] to prove 'more than the mere

25   occurrence of isolated or accidental or sporadic discriminatory acts.'"  *Obrey v. Johnson*, 400 F.3d

26   691, 694 (9th Cir. 2005) (quoting *Teamsters*, 431 F.3d at 336); *see also Teamsters*, 400 F.3d at

27   336 ("[A] pattern or practice would be present only where the denial of rights consists of

28   something more than an isolated, sporadic incident, but is repeated, routine, or of a generalized

United States District Court
Northern District of California

8

1    nature.") (quoting 110 Cong. Rec. 14270 (1964)).  The Ninth Circuit made clear that a pattern or

2    practice is "discriminatory conduct that is widespread throughout a company or that is a routine

3    and regular part of the workplace." *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003).

4         Plaintiffs do not allege that discrimination was widespread throughout Twitter.  Instead,

5    they allege that Musk, not Twitter, engaged in a pattern or practice of discrimination by

6    implementing the RIF followed by the Post-RIF Policy.  ECF No. 27 at 24.  However, setting

7    aside the issue of whether conduct solely attributed to Musk can be imputed to Twitter, the RIF

8    and Post-RIF Policy are two discrete acts insufficient to support the allegation that discriminatory

9    conduct was "a routine and regular part" of Twitter's workplace.  *See e.g.*, *Sperling v. Hoffmann-*

10   *La Roche, Inc.*, 924 F. Supp. 1346, 1364 (D.N.J. 1996) ("Another reason that plaintiffs' claim

11   does not fall within the framework of a pattern-or-practice case is that the employment practice

12   which plaintiffs assert was [the defendant's] standard operating procedure was used only once,

13   i.e., the Guidelines were used only during [the RIF].").

14        Further, even if the Court did hold that the RIF and Post-RIF Policy constitute a "pattern or

15   practice," Plaintiffs' remaining allegations, namely their statistics and Musk's statements, fail to

16   support that Twitter knew that granting discretion to the managers would result in that discretion

17   being used in a discriminatory manner.  It is true that, "[w]here gross statistical disparities can be

18   shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of

19   discrimination." *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307-08 (1977).  However,

20   the Supreme Court "ha[s] not suggested that any particular number of 'standard deviations' can

21   determine whether a plaintiff has made out a prima facie case in the complex area of employment

22   discrimination." *Watson*, 487 U.S. at 995 n.3.[7]  Rather, courts are required to assess "the

23   'significance' or 'substantiality' of numerical disparities on a case-by-case basis" which reflects

24   _____

25   [7] While *Watson* discussed the evaluation of statistics in the context of a disparate impact claim, its
     reasoning is nonetheless applicable to a "pattern or practice" claim because *Watson* relied on

26   *Teamsters*, in which the court examined a "pattern or practice" claim.  *See e.g., Gay v. Waiters'
     and Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 552 (9th Cir. 1982) (relying on the

27   admonition in *Teamsters* that the usefulness of statistical evidence "depends on all of the
     surrounding facts and circumstances" in its decision to reject the proposition that standard

28   deviations of 1.3 and 2.46 supported an inference of intentional discrimination as effectuated
     through a pattern or practice) (quoting *Teamsters*, 431 U.S. at 340).

United States District Court
Northern District of California

1    the recognition that "statistics 'come in infinite variety and . . . their usefulness depends on all of

2    the surrounding facts and circumstances.'"  *Id.* (quoting *Teamsters*, 431 U.S. at 340).  Absent the

3    "facts and circumstances" discussed previously and which are commonly relied upon at the

4    pleading stage – such as Plaintiffs' positions at Twitter, whether they were performing

5    satisfactorily, the treatment of similarly situated men, and the identity of the managers – Plaintiffs

6    fail to allege disparate treatment.

7         Plaintiffs' inclusion of "several of Musk's public statements belittling women and

8    questioning their role in the workplace" do not cure this deficiency.  ECF No. 27 at 25.  "[T]he

9    cold numbers" of statistics can be brought "convincingly to life" by personal experiences.

10   *Teamsters*, 431 U.S. at 339 (1977).  Plaintiffs argue that Musk's public statements are "anecdotal

11   evidence" that serve this purpose.  ECF No. 27 at 25.  While "comments suggesting that the

12   employer may have considered impermissible factors are clearly relevant to a disparate treatment

13   claim . . . 'stray' remarks are insufficient to establish discrimination."  *Merrick v. Farmers Ins.*

14   *Grp.*, 892 F.2d 1434, 1438-39 (9thf Cir. 1990).  Isolated remarks, unrelated to the discriminatory

15   employment decision, are generally insufficient to establish discriminatory intent.  *See id.*; *Nesbit*

16   *v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (holding that a comment "uttered in an

17   ambivalent manner" and "not tied directly to" the plaintiff's termination was "at best weak

18   circumstantial evidence of discriminatory animus"); *cf. Lowe v. City of Monrovia*, 775 F.2d 998,

19   1009 (9th Cir. 1985) (finding the defendant's statements that the "police force had no women and

20   no Blacks" and encouraging plaintiff to apply for a department that was "literally begging for

21   minorities and especially females" created a triable issue of fact despite plaintiff being unable to

22   provide a "proper statistical record.").

23        Here, Musk's statements that Plaintiffs offer to demonstrate animus toward women,

24   although more than isolated incidents, were not tied directly to the RIF, as Musk made them prior

25   to his acquisition of Twitter.  ECF No. 1 ¶¶ 22-25.  Further, Plaintiffs do not allege that Musk

26   made the layoff decisions, but rather that a group of managers did so under his supervision.  *Id.* ¶

27   21.  Plaintiffs attempt to analogize this case to *Usher v. O'Reilly Automotive Inc.*, No. 14-cv-189

28   PA (FFMx), 2014 WL 12597587, at *5 (C.D. Cal. May 27, 2014), which is readily

United States District Court
Northern District of California

1   distinguishable.  There, the court held that the plaintiff sufficiently stated a claim under FEHA,

2   despite its acknowledgment that that "actual allegations may not show that the comments made to

3   Plaintiff were 'directly tied' to Plaintiff's termination." *Id.*  However, in *Usher*, the plaintiff had

4   been directly subjected to discriminatory comments that increased in 2011 and "became an

5   everyday occurrence by 2012." *Id.* at 1.  At one point, the plaintiff's supervisor stated that the

6   defendant had made undesirable changes in the plaintiff's schedule "in hopes that Plaintiff would

7   quit voluntarily due to his age." *Id.*  Musk's comments do not rise to the level of those in *Usher* so

8   as to constitute sufficient, nonconclusory allegations plausibly linking the RIF to discrimination on

9   the basis of Plaintiffs' sex.

10          Thus, Plaintiffs fail to establish a plausible link between their layoff during the RIF and

11  their sex and fail to state a claim for disparate treatment.

12          **C.      Disparate Impact**

13          A plaintiff may also bring a Title VII or FEHA claim on the theory that a facially neutral,

14  employment practice created a disparate impact upon a protected class.  *Stout v. Potter*, 276 F.3d

15  1118, 1121 (9th Cir. 2002); *Mahler v. Judicial Council of Cal.*, 67 Cal. App. 5th 82, 113 (2021).

16  In order to state a disparate impact claim, a plaintiff must allege the existence of a "significant

17  disparate impact on a protected class caused by a specific, identified, employment practice or

18  selection criterion." *Stout*, 276 F.3d at 1121.  As discussed above, "an employment discrimination

19  plaintiff need not plead a prima facie case of discrimination" to survive a motion to dismiss.

20  *Swierkiewicz*, 534 U.S. at 515.

21          Twitter first argues that Plaintiffs cannot state a disparate impact claim because they

22  improperly "recast a claim for intentional discrimination as a disparate impact claim."  ECF

23  No. 20 at 23.  Plaintiffs argue that cases "can, and routinely do, proceed under both disparate

24  treatment and disparate impact theories of liability."  ECF No. 27 at 27.

25          "[A] person may not be sure in advance upon which legal theory she will succeed, and so

26  [parties are permitted] to 'set forth two or more statements of a claim or defense alternately or

27  hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of

28  consistency.'"  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) (quoting Fed. R.

United States District Court
Northern District of California

1    Civ. P. 8(e)(2) (2006)); *accord PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th

2    Cir. 2007).  Thus, Plaintiffs can plead that the RIF was either an act of intentional discrimination

3    or a facially neutral policy that had a disparate impact.  *See Barrett v. Forest Lab'ys, Inc.*, 39 F.

4    Supp. 3d 407, 436 (S.D.N.Y. 2014) ("Nor is it problematic that the [complaint] identifies one

5    practice in support of both a pattern-or-practice disparate treatment claim and a disparate impact

6    claim."); *City of Oakland v. Wells Fargo Bank, N.A.*, Case No. 15-cv-04321-EMC, 2018 WL

7    3008538, at *15 (N.D. Cal. June 15, 2018) (holding that, although the plaintiff's allegations

8    "suggested intentional discrimination," there was nonetheless a valid disparate impact claim),

9    *rev'd in part on other grounds* 14 F.4th 1030 (9th Cir. 2021).

10          Twitter does not contest that Plaintiffs can plead in the alternative, but rather argues that

11   "[a] plaintiff can plead in the alternative only if she sets forth facts plausibly pleading each

12   alternative claim."  ECF No. 28 at 16.  As discussed above, Plaintiffs have not set forth facts that

13   plausibly plead a theory of disparate treatment.  Therefore, the remaining question, and the heart

14   of the parties' dispute, is whether Plaintiffs have set forth facts so as to plausibly plead a theory of

15   disparate impact.

16                    **a.      Identification of a Specific Employment Practice**

17          To state a claim on a theory of disparate impact, Plaintiffs must first allege "the occurrence

18   of certain outwardly neutral employment practices."  *Katz v. Regents of the Univ. of Cal.*, 229 F.3d

19   831, 835 (9th Cir. 2000) (quoting *Palmer v. United States*, 794 F.2d 534, 538 (9th Cir. 1986)).[8]  A

20   plaintiff "generally cannot attack an overall decisionmaking process in the disparate impact

21   context, but must instead identify the particular element or practice within the process that causes

22   an adverse impact."  *Stout*, 276 F.3d at 1124.

23          Here, Plaintiffs attack the RIF.[9]  They allege that layoff decisions "were made under

24

---

25   [8] Although the plaintiff in *Katz* brought a claim under the Age Discrimination in Employment Act
     (ADEA), its holding applies to the instant suit because "[t]he criteria applied to a Title VII

26   discrimination claim also apply to claims arising under the ADEA," *Palmer v. United States*, 794
     F.2d 534, 537 (9th Cir. 1986), and that "same analytical framework [applies] to claims brought

27   under FEHA."  *Katz v. Regents of the Univ. of Cal.*, 229 F.3d 831, 835 (9th Cir. 2000).

28   [9] Plaintiffs also allege that the Post-RIF Policy effectuated the mass layoff and "suffice[s] to
     identify a more specific employment practice."  ECF No. 27 at 19.  However, the Court will not

United States District Court
Northern District of California

1    extremely hurried circumstances, with little if any regard given to employees' job performance,

2    qualifications, experience, and abilities" by "a small group of managers," some of which were

3    brought in from other Musk-owned companies who "did not have much, if any, knowledge about

4    Twitter's operations."  ECF No. 1 ¶¶ 19, 21.  Twitter argues that Plaintiffs fail to identify a

5    "specific practice, test, or standard" so as to constitute "a specific RIF-related employment

6    practice."  ECF No. 20 at 24.  Plaintiffs contend that they "plead allegations that go beyond the

7    mere existence of the mass layoff."  ECF No. 27 at 29.

8         A plaintiff can identify a subjective or objective practice used to make the layoff decisions.

9    *Pottenger v. Potlach Corp.*, 329 F.3d 740, 749 (9th Cir. 2003) (holding that an RIF can constitute

10   a specific employment practice because the Ninth Circuit had previously found a "policy of

11   committing employment decisions in an RIF to the subjective discretion of its managers

12   constituted a specific employment practice subject to disparate impact analysis"); *Watson*, 487

13   U.S. at 991 ("[A] disparate impact analysis may in principle be applied to subjective as well as to

14   objective practices").  Therefore, an RIF can constitute such a practice insofar as the plaintiff

15   alleges that "an employer[] [had a] facially neutral practice of committing employment decisions

16   to the subjective discretion of supervisory employees" because that is "an employment practice

17   properly subject to a disparate impact analysis."  *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424

18   (9th Cir. 1990).

19        Plaintiffs sufficiently allege the existence of a facially neutral, employment practice:

20   Twitter's delegation of layoff decisions to a small group of managers, which largely did not

21   consider objective criteria – such as "job performance, qualifications, experience, and abilities" –

22   in making its decisions.  ECF No. 1 ¶¶ 19, 21.  Twitter is incorrect that Plaintiffs need to allege

23   "the factors Twitter did consider that are responsible for the purported disparities" at the pleading

24   stage.  ECF No. 28 at 12.  Courts have consistently accepted allegations that employment

25

26   consider whether the Post-RIF Policy constitutes an employment practice because Plaintiffs were
     not working at Twitter when the Post-RIF Policy was enacted.  *Pottenger v. Potlach Corp.*, 329
27   F.3d 740, 750 (9th Cir. 2003) ("To bring a disparate impact claim, [a plaintiff] must show that
     [they were] subject to the particular employment practice with the alleged disparate impact.").
28   Regardless of whether the Post-RIF Policy is a "constructive discharge" or not, it was not a
     discharge to which Plaintiffs were subjected.  ECF No. 27 at 30.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    decisions were delegated to the subjective discretion of supervisors, and thus devoid of objective

2    criteria, as sufficient so as to constitute an identifiable employment practice.

3         For example, in *Rose*, the Ninth Circuit held that the plaintiff sufficiently identified an

4    employment practice by alleging that "[e]mployment decisions as to which jobs would be

5    eliminated" and the question of "who would fill the remaining positions" were "essentially left to

6    the discretion of the managers" during an RIF.  902 F.2d at 1420, 1424-25.  The Ninth Circuit did

7    not require the plaintiff to identify the criteria managers relied upon in exercising their discretion.

8         Similarly, in *National Fair Housing Alliance v. Federal National Mortgage Association*,

9    294 F. Supp. 3d 940, 948 (N.D. Cal. 2018), the plaintiff identified the delegation of discretion and

10   failure to consider objective factors as the specific employment practices.  The court held that the

11   policies identified by plaintiff – "delegation of discretion [to lower-level Fannie Mae employees]

12   or failure to supervise and differential maintenance based on the properties' age and value"– were

13   "sufficient as a matter of law" to allege that Fannie Mae's upkeep of Real Estate Owned properties

14   had a disparate impact on communities of color.  *Id.*  The court in *Ramirez v. GreenPoint

15   Mortgage Funding, Inc.*, 633 F. Supp. 2d 922, 928 (N.D. Cal. 2008), similarly held that a policy

16   which "allegedly allowed [the defendant's] loan officers and brokers to charge additional fees

17   based on subjective criteria rather than objective criteria related to creditworthiness" was a

18   sufficient employment practice.

19        Thus, Plaintiffs sufficiently allege a specific employment practice.

20                          **b.      Causation**

21        Plaintiffs must also allege that the identified employment practice caused "a significant

22   disparate impact on a protected class."  *Stout*, 276 F.3d at 1121.  Such allegations largely include

23   "statistical evidence of a kind and degree sufficient to show that the practice in question has

24   caused" caused the disparate impact.  *Watson*, 487 U.S. at 994.

25        Plaintiffs have not sufficiently alleged that the managers' ability to exercise their discretion

26   caused the gender disparity in the layoffs overall, and critically, Plaintiffs' own layoffs.  They rely

27   upon statistics and Musk's statements to demonstrate that "women were far more likely than men

28   to be laid off from Twitter."  ECF No. 1 ¶ 39.  However, as discussed previously, Plaintiffs fail to

                                            14

1    allege basic facts that would situate them within the statistics.  Plaintiffs allege almost nothing

2    about themselves – including their positions prior the RIF or their qualifications and performance

3    history – that place the statistics in context.

4        Although "contentions regarding whether the Plaintiffs' methodology is flawed are best

5    reserved for resolution at summary judgment phase," *Nat'l Fair Hous. All.*, 294 F. Supp. 3d at

6    948, Plaintiffs must nonetheless show that their statistics analyze the correct group, or does not

7    otherwise "use[] the wrong denominator" to plausibly plead causation between the employment

8    practice and the disparate impact.  *Liu v. Uber Techs. Inc.*, No. 20-cv-07499-VC, 2022 WL

9    1613285, at *1 (N.D. Cal. May 23, 2022).  The Court cannot determine whether Plaintiffs

10   sufficiently alleged causation without allegations as to which group Plaintiffs belonged to at

11   Twitter.  Thus, they have failed to allege causation.  Accordingly, Plaintiffs have also failed to

12   state a disparate impact claim.

13       **D.    Declaratory Judgment Act**

14       As discussed above, Plaintiffs' counsel has already obtained agreement from Twitter that

15   they will not seek the general releases of claims from Twitter employees without notice of the

16   instant suit and associated rights.  Therefore, Plaintiffs' claim under the Declaratory Judgment

17   Act, seeking such an injunction, is moot.  *Nome Eskimo Cmty. v. Babbitt*, 67 F.3d 813, 815 (9th

18   Cir. 1995).  The Court dismisses this claim without prejudice.  If Plaintiffs wish to amend their

19   complaint with a request for injunctive relief, they must identify how the relief they now seek

20   differs from that already obtained in *Cornet.*

21       **E.    Motion to Strike Class Claims**

22       Twitter also asks that the Court strike the class action claims, arguing that "[b]ecause

23   Plaintiffs could not have been injured by the Post-RIF Policies, they lack standing to assert a

24   disparate impact claim arising from the alleged injuries of others who were subject to those

25   policies."  ECF No. 20 at 28.  Twitter further argues that Plaintiffs fail to "plead a precise and

26   ascertainable class definition."  *Id*. at 31.  Because the Court has dismissed all the claims in the

27   complaint, however, it need not and does not decide Twitter's alternative motion to strike.  The

28   Court denies Twitter's request to strike as moot.

United States District Court
Northern District of California

15

1     Twitter is entitled to raise this alternative argument in response to any amended complaint, but Twitter should be aware that the Court disfavors striking class allegations in lieu of or prior to a fully briefed motion for class certification brought after discovery has been completed. *See Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008) ("Motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for the arguments [the defendant] advances herein."); *see e.g.*, *Falkenberg v. Alere Home Monitoring, Inc.*, No. 13-cv-00341-JST, 2015 WL 800378, at \*5 (N.D. Cal. Feb. 23, 2015).

## CONCLUSION

For the foregoing reasons, Twitter's motion is granted.  Plaintiffs' complaint is dismissed with leave to amend because Twitter has not shown that amendment would prejudice Twitter, is sought in bad faith, would produce an undue delay, or would be futile.  *See AmerisourceBergen Corp v. Dialyst West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  Plaintiffs may file an amended complaint within twenty-one days of this order solely to cure the deficiencies identified by this order.  Failure to file a timely amended complaint will result in dismissal with prejudice.

**IT IS SO ORDERED.**

Dated:  May 8, 2023



_____
JON S. TIGAR
United States District Judge