SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiffs Carolina Bernal Strifling,*
*Willow Wren Turkal, and Sydney Frederick-Osborne,*
*on behalf of themselves and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CAROLINA BERNAL STRIFLING, WILLOW WREN TURKAL, and SYDNEY FREDERICK-OSBORNE on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., and  X CORP.,<br><br>Defendants | Case No. 22-cv-07739-JST<br><br>**AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**<br><br>1. DISCRIMINATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.*<br>2. DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, Gov. Code § 12900, *et seq.*<br>3. DISCRIMINATION IN VIOLATION OF THE ADEA, 29 U.S.C. § 621, *et seq.*<br>4. DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, Gov. Code § 12900, *et seq.* |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     **INTRODUCTION**

1.      Plaintiffs Carolina Bernal Strifling, Willow Wren Turkal, and Sydney Frederick-Osborne file this Class and Collective Action Complaint against Twitter, Inc. and X Corp. (collectively "Twitter"), on their own behalf and on behalf of other female Twitter employees across the country who have been discharged or constructively discharged from their jobs during the chaotic months since multi-billionaire Elon Musk purchased the company.

2.      Plaintiffs bring claims of discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.*, and (for employees who worked out of California) the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.*, challenging the company's termination, or constructive termination, of female employees since Elon Musk's acquisition of the company.

3.      Plaintiff Frederick-Osborne also files this Class and Collective Action Complaint against Twitter on her own behalf and on behalf of other Twitter employees age fifty (50) or older across the country who have been discharged or constructively discharged from their jobs during the chaotic months since multi-billionaire Elon Musk purchased the company.

4.      Plaintiff Frederick-Osborne brings claims of discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), and (for employees who worked out of California) the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.*, challenging the company's termination or constructive termination of employees age fifty (50) or older since Elon Musk's acquisition of the company.

5.      As described further below, shortly after Elon Musk completed his purchase of Twitter, he immediately began laying off more than half of its workforce.

6.      The mass termination of employees at Twitter has impacted female employees to a much greater extent than male employees – and to a highly statistically significant degree. Moreover, Elon Musk has made a number of publicly discriminatory remarks about females, further confirming that the mass termination's greater impact on female employees resulted from

discrimination.  Musk also quickly implemented new policies at Twitter that were intended to, and the effect of, forcing more women to leave the company.

7.      Likewise, the mass termination of employees at Twitter has impacted employees age fifty (50) or older to a greater extent than employees under the age of fifty (50) – and to a statistically significant degree.  Moreover, Elon Musk has made publicly discriminatory remarks about older people, so it is not surprising that the managers working under his direction laid off a higher proportion of older employees.  Musk also quickly implemented new unreasonable work demands and policies at Twitter, which were intended to, and had the effect of, forcing out older employees.

8.      Plaintiffs file this action on their own behalf and on behalf of similarly situated individuals, bringing claims of sex and age discrimination.

## II.    **PARTIES**

9.      Plaintiff Carolina Bernal Strifling is an adult resident of Miami, Florida, where she worked for Twitter from June 2015 until November 2022.  Ms. Strifling was employed by Twitter as a Senior Client Partner Lead. Throughout her employment with Twitter, Ms. Strifling's performance met the Company's expectations.

10.     Plaintiff Willow Wren Turkal is an adult resident of San Jose, California, where she worked for Twitter from June 2021 until November 2022.  Ms. Turkal was employed by Twitter as a Staff Site Reliability Engineer. Throughout her employment with Twitter, Ms. Turkal's performance met the Company's expectations.

11.     Plaintiff Sydney Frederick-Osborne is an adult resident of San Francisco, California, where she worked for Twitter from June 2022 until November 2022.  Ms. Frederick-Osborne was employed by Twitter as a Staff Software Engineer. Throughout her employment with Twitter, Ms. Frederick-Osborne's performance met the Company's expectations.

12.     Plaintiffs bring this lawsuit as a Rule 23 class action on behalf of all similarly situated female Twitter employees across the United States whose jobs have been affected by the company's layoffs, terminations, and constructive discharges based on the heightened and unreasonable demands placed on the company's workforce since Elon Musk acquired the company.

13.     Plaintiff Frederick-Osborne also brings this lawsuit as a collective action under the ADEA on behalf of all Twitter employees across the United States age fifty (50) or older who have lost their jobs since Elon Musk acquired the company, and as a Rule 23 class action for those employees who worked in California.

14.     Defendant Twitter, Inc. is a Delaware corporation, headquartered in San Francisco, California.

15.     Defendant X Corp. is a Nevada corporation, headquartered in San Francisco, California.

16.     In or about March 2023, Twitter merged with X Corp., and as a result Twitter and X Corp. are a single entity. X Corp. has successor liability for Twitter's unlawful acts.  Twitter and X Corp. are referred to herein as "Twitter".

III.   **JURISDICTION**

17.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

18.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims, because those claims derive from a common nucleus of operative facts with Plaintiffs' federal claims.

19.     This Court has personal jurisdiction over Twitter, as it is headquartered in this District and conducts substantial business operations in this District.

## IV.    STATEMENT OF FACTS

20.     Twitter is a social media company that used to employ thousands of people across the United States.

21.     In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company.

22.     Following Elon Musk's purchase of Twitter in late October 2022, Musk immediately began a mass layoff that affected well more than half of Twitter's workforce.  See Kate Conger, Ryan Mac, and Mike Isaac, Confusion and Frustration Reign as Elon Musk Cuts Half of Twitter's Staff, NEW YORK TIMES (November 4, 2022), https://www.nytimes.com/2022/11/04/technology/elon-musk-twitter-layoffs.html; Kate Conger, Ryan Mac, and Mike Isaac, In Latest Round of Job Cuts, Twitter is said to Layoff at Least 200 Employees, NEW YORK TIMES (February 26, 2023), https://www.nytimes.com/2023/02/26/technology/twitter-layoffs.html; Ryan Morrison, Twitter 'lays off 10% of its global workforce' in Elon Musk's latest job cuts, TECHMONITOR (February 27, 2023, updated March 9, 2023) ("The Company's headcount is down 75%."), https://techmonitor.ai/policy/digital-economy/twitter-job-cuts-elon-musk.

23.     The decisions regarding which employees would be laid off were made under extremely hurried circumstances, with little if any regard given to employees' job performance, qualifications, experience, and abilities.  Indeed, decisions regarding laying off thousands of employees were made in a period of just days after Musk's acquisition of the company.

24.     Most laid off employees were notified on November 4, 2022 (although many of these employees were aware they had been laid off the night before, when their access to Twitter's systems was cut off).

25.     Reportedly, the layoff decisions were made quickly by a small group of managers, under close supervision by Musk.  Some of these managers were brought in from other

AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

companies owned by Musk (such as Tesla), who did not have much, if any, knowledge about Twitter's operations.  <u>See</u> Lora Kolodny, <u>Elon Musk has pulled more than 50 Tesla employees into his Twitter takeover</u>, CNBC (November 1, 2022), <u style="color:blue">Elon Musk has pulled more than 50 Tesla employees into Twitter (cnbc.com)</u>.

26.     Widely circulated pictures of Twitter employees before and after the layoff raised observations about the stark contrast in the number of women who appeared to be employed at the company before and after Musk's acquisition.  Rachna Manojkumar Dhanrajani, <u>Curious case of Twitter's missing women: Before and after pictures shock the internet</u>, Business Today (November 21, 2022), <u style="color:blue">Curious case of Twitter's missing women: Before and after pictures of Twitter office shock the internet - BusinessToday</u>; Kanishka Sarkar, <u>Where have all the women gone from Elon Musk's Twitter? 'Before & after' office photos shock internet</u>, CNBC (November 21, 2022), <u style="color:blue">Where Have All The Women Gone From Elon Musk'S Twitter? 'Before & After' Office Photos Shock Internet (cnbctv18.com)</u>.

27.     The data from these layoffs bear out these observations.

28.     According to a spreadsheet showing which Twitter employees in the United States were retained and which were laid off on November 4, 2022, approximately 2,621 out of 5,134 employees were notified that day they were being laid off.[1]

29.     Prior to the layoffs that day, Twitter employed approximately 2,234 female employees and 2,900 male employees in the United States.  Of those employees, approximately 1,271 females and 1,350 males were notified that day they were being laid off.

---

[1]     The figures throughout this complaint are described as "approximate" because employees for whom their gender was not immediately clear were not included in these calculations.

AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

30.     Thus, 57% of female employees were laid off on November 4, 2022, while 47% of male employees were laid off.

31.     Not only is this a large percentage difference, but it is also extremely statistically significant.

32.     According to Dr. Mark Killingsworth, a professor in the Department of Economics at Rutgers University,[2] a chi square statistical analysis reveals that this distribution in layoffs by sex is 7.3491 standard deviations away from a normal distribution.  In other words, the odds that this disparity between women and men being laid off is due only to chance is .00000000000001 (or, put another way, 9.977 out of 100 trillion).

33.     Further, the disparity between women and men being laid off cannot be explained based upon a justification that Musk intended to retain more employees in engineering-related roles.

34.     According to the spreadsheet, prior to the layoffs that day, Twitter employed approximately 863 female and 1,834 male employees in engineering-related roles in the United States.  Of those employees, approximately 507 females and 826 males were notified that day

_____

[2]     A federal court has described Dr. Killingsworth's qualifications as follows:

Dr. Killingsworth is a labor economist with more than 40 years of experience and has a substantial record as an expert witness in federal and state litigation. He is the author of *Labor Supply* and *The Economics of Comparable Worth*, and has also authored numerous publications in the areas of comparable worth, pay equity, employment discrimination, and wage differentials. Also, Dr. Killingsworth has testified in front of United States Congressional Committees and the General Assembly of Pennsylvania. In addition, he has been a consultant to United States District Judge Robert L. Carter, the Canadian Department of Justice, and the United States Departments of Justice and Labor. Dr. Killingsworth graduated from the University of Michigan and received M.Phil. and D.Phil. degrees from the University of Oxford, where he was a Rhodes Scholar.

Artunduaga v. Uni. Of Chicago Med. Ctr., 2016 WL 7384432, at *2-3 (N.D. Ill. Dec. 21, 2016) (citing cases).

AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

they were being laid off.  Thus, 59% of females in engineering-related roles were laid off on November 4, 2022, while 45% of male employees in engineering-related were laid off.

35.     This disparity is also extremely statistically significant.  According to Dr. Killingsworth, a chi square test reveals that this distribution in layoffs by sex is 7.6380 standard deviations away from a normal distribution.  The odds that this disparity between women and men in engineering-related roles being laid off is due only to chance is .00000000000001 (or, put another way, 1.103 out of 100 trillion).

36.     There is also a great disparity in the layoff rates between women and men in non-engineering roles.  Prior to the layoffs that day, Twitter employed approximately 1,371 female and 1,066 male employees in non-engineering-related roles in the United States.  Of those employees, approximately 764 females and 524 males were notified that day they were being laid off.  Thus, 56% of females in non-engineering-related roles were laid off on November 4, 2022, while 49% of male employees in non-engineering-related were laid off.  A chi square test performed by Dr. Killingsworth revealed that this distribution in layoffs by sex is 4.0309 standard deviations away from a normal distribution.  The odds that this disparity between women and men in non-engineering-related roles being laid off is due only to chance is .00001 (or, put another way, 2.778 out of 100 thousand).

37.     These results are summarized in the following chart:

| | | | Laid off | Not laid off | Total | % laid off | Standard deviations from normal | Probability of this distribution being based on chance |
|---|---|---|---|---|---|---|---|---|
| ALL EMPLOYEES | | Female | 1271 | 963 | 2234 | 0.57 | 7.3491 | $9.977 \times 10^{-14}$ |
| | | Male | 1350 | 1550 | 2900 | 0.47 | | (9.977 chances out of 100 trillion) |
| | | | | | | | | |
| | | TOTAL | 2621 | 2513 | 5134 | | | |
| EMPLOYEES IN ENGINEERING-RELATED POSITIONS | | Female | 630 | 373 | 1003 | 0.63 | 7.638 | $1.103 \times 10^{-14}$ |
| | | Male | 1037 | 1113 | 2150 | 0.48 | | (1.103 chances out of 100 trillion) |
| EMPLOYEES IN NON-ENGINEERING-RELATED POSITIONS | | Female | 545 | 517 | 1062 | 0.51 | 4.0309 | $2.778 \times 10^{-5}$ |
| | | Male | 312 | 436 | 748 | 0.42 | | (2.778 chances out of 100 thousand) |

AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

38.    Thus, it is clear that women were far more likely than men to be laid off from Twitter, and those differences are highly statistically significant.

39.    Older employees (those age 50 and over) were also statistically more likely to be chosen for layoff on November 4, 2022, than younger employees.

40.    In addition to laying off a higher proportion of women than men, and a higher proportion of employees age fifty (50) and older, in the initial layoffs at Twitter in early November, Elon Musk also implemented a number of policies at the company that have had a disproportionate impact on women and that also sent the message that older employees were no longer welcomed at Twitter.

41.    These policies included expectations that employees would work an unreasonable number of hours and that employees would be required to work out of physical offices (despite the fact that Twitter had freely allowed remote work throughout the pandemic and even before that).

42.    Following Musk's acquisition of the company, employees were reported to work 12 hour shifts, 7 days a week.  Some employees were told: "The expectation is literally to work 24/7 to get this out."  Some employees slept in Twitter offices while being required to work around the clock.  Grace Dean, BUSINESS INSIDER, Twitter staff have been told to work 84-hour weeks and managers slept at the office over the weekend as they scramble to meet Elon Musk's Tight deadlines, reports say, (Nov. 1, 2022), https://www.businessinsider.com/elon-musk-twitter-staff-layoffs-long-hours-shifts-work-jobs-2022-11.

43.    These demands occurred while the company was in the process of mass layoffs, thus signaling to employees that these extraordinary efforts were required in order to keep their jobs.

44.     Elon Musk would certainly have known that these policy changes and expectations would have a disproportionate impact on women, as well force older employees out of the company.

45.     On November 16, 2022, Musk sent the following email to remaining Twitter employees:

> Going forward, to build a breakthrough Twitter 2.0 and succeed in an increasingly competitive world, we will need to be extremely hardcore.  This will mean working long hours at high intensity.  Only exceptional performance will constitute a passing grade.
>
> Twitter will also be much more engineering-driven.  Design and product management will still be very important and report to me, but those writing great code will constitute the majority of our team and have the greatest sway.  At its heart, Twitter is a software and servers company, so I think this makes sense.
>
> If you are sure that you want to be part of the new Twitter, please click yes on the link below:
>
> [LINK]
>
> Anyone who has not done so by 5pm ET tomorrow (Thursday) will receive three months of severance.
>
> Whatever decision you make, thank you for your efforts to make Twitter successful.
>
> Elon

46.     The ultimatum was intended to, and did, result in further layoffs.  The ultimatum resulted in more women, including Ms. Frederick-Osborne, leaving the company than men. Indeed, approximately 36% of remaining women left the company as a result of this ultimatum, while approximately 28% of men did.

47.     The undertone of the policies and message from Twitter was also that it was prioritizing younger employees and was not welcoming to older employees.

48.     Following Musk's ultimatum, Ms. Frederick-Osborne, who was in her late 50s at the time, felt she was no longer welcome at Twitter, given her sex and age.  She felt that Musk's

policies and messages seemed directed at maintaining a workforce that was largely young and male.  As such, she did not click yes on the ultimatum link that Musk sent employees on November 16, 2022.

49.     The next day, Ms. Frederick-Osborne was laid off.

50.     The fact that more women than men were laid off and forced out of the company through constructive discharge since Musk's acquisition is not surprising given Musk's history of making sexist, demeaning, and hostile comments against women. Such comments show his discriminatory animus against women, and it is understandable that women would feel less welcome in the workplace under his leadership.  As Twitter's new owner and CEO, who oversaw and closely managed the employees who were making layoff decisions and implementing his policies, Musk's discriminatory animus is imputed to Twitter.

51.     Examples of Musk's discriminatory and demeaning comments about women include his posting of tweets on Twitter in which he joked about naming a school using the acronym "TITS" and making other jokes about women's breasts.  See Chandra Steele, Elon Musk is a Misogynist and It Matters, PCMag (December 13, 2021), Elon Musk Is a Misogynist and It Matters | PCMag (quoting Musk's tweet: "Am thinking of starting new university: Texas Institute of Technology & Science"); Jon Christian, Elon Musk Deletes Sexist Tweets, The Byte (October 31, 2021), Elon Musk Deletes Sexist Tweets (futurism.com); Stock Joker on Twitter: "@ZJAyres @PhilKoopman Now deleted, but only D cups need apply https://t.co/40NBcDTonb" / Twitter); Ananya Bhattacharya, In one tweet, Elon Musk captures the everyday sexism faced by women in STEM, Quarz (November 1, 2021), Elon Musk's tweet captures everyday sexism faced by women in STEM (qz.com).

52.     Shortly before acquiring Twitter, Musk, who has been vocal about promoting women having a lot of babies (presumably disseminating the message that is more important than keeping Thier jobs), tweeted: "Being a Mom is just as important as any career."  Twitter

(August 17, 2022), https://twitter.com/elonmusk/status/1559823434028400640.  Within weeks of announcing the layoffs, Musk tweeted "Testosterone rocks ngl".  Twitter (December 4, 2022), https://twitter.com/elonmusk/status/1599345615443746817

53.     More recently, Musk had the "w" on the sign of the corporate headquarters painted white so that the company's name appeared to be "Titter." See Twitter (April 9, 2023), https://twitter.com/elonmusk/status/1645266104351178752?cxt=HHwWgIC-7cGzlNUtAAAA.

54.     Similarly, the fact that older employees were laid off in greater proportion than younger employees, and many older employees were forced out of the company since Musk's acquisition, is not surprising given Musk's history of making ageist comments. Such comments show his discriminatory animus against older individuals, and it is understandable that older employees would feel less welcome in the workplace under his leadership.  As Twitter's new owner and CEO, who oversaw and closely managed the employees who were making layoff decisions and implementing his policies, Musk's discriminatory animus is imputed to Twitter.

55.     For example, in a 2022 interview with the CEO of the publishing company Axel Springer, Musk commented:

> I don't think we should try to have people live for a really long time. That it would cause asphyxiation of society because the truth is, most people don't change their mind, …they just die. So, if they don't die, we will be stuck with old ideas and society wouldn't advance . . . [a]nd it is just impossible to stay in touch with the people if you are many generations older than them.

https://www.foxbusiness.com/lifestyle/lonely-elon-musk-humans-shouldnt-live-longer-asphyxiate-society.

## V.   EXHAUSTION OF ADMINSTRATIVE REMEDIES

56.   Plaintiff Strifling has filed an administrative charge of sex discrimination under Title VII with the Equal Employment Opportunity Commission.  She has received a Right to Sue letter to pursue this claim in court.

57.   Plaintiff Turkal has filed an administrative charge of sex discrimination under Title VII with the Equal Employment Opportunity Commission and under the California Fair Employment and Housing Act with the California Civil Rights Department.  She has received a Right to Sue letter to pursue this claim in court.

58.   Plaintiff Frederick-Osborne has filed an administrative charge of sex discrimination under Title VII and age discrimination under the ADEA with the Equal Employment Opportunity Commission and under the California Fair Employment and Housing Act with the California Civil Rights Department.  She has received a Right to Sue letter to pursue these claims in court.

### COUNT I

**Title VII,**
**42 U.S.C. § 2000e,** *et seq.*

Plaintiffs and other female employees have been entitled to the protections of Title VII, 42 U.S.C. § 2000e, *et seq.*, which prohibits discrimination on the basis of sex. Twitter's conduct in conducting mass layoffs that affected a higher proportion of women than men, as well as other policies that led to more women leaving the company after Musk's acquisition of Twitter, constitutes unlawful discrimination against Plaintiffs and other similarly situated female Twitter employees on the basis of sex in violation of Title VII.

AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1

## COUNT II

2

### California Fair Employment and Housing Act,
### Gov. Code § 12900, *et seq.*
### (Sex Discrimination)

3

4      Plaintiffs and other female employees have been entitled to the protections of the

5   California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.* Twitter's

6   conduct in conducting mass layoffs that affected a higher proportion of women than men, as well

7   as other policies that led to more women leaving the company after Musk's acquisition of

8   Twitter, constitutes unlawful discrimination against Plaintiffs and other similarly situated female

9   Twitter employees who worked in California on the basis of sex in violation of the FEHA.

10

11

## COUNT III

12

### Age Discrimination in Employment Act,
### 29 U.S.C. § 621

13

14      Plaintiff Frederick-Osborne and other older employees are entitled to the protections of

15   the ADEA, 29 U.S.C. § 621, which prohibits discrimination on the basis of age. Twitter's

16   conduct in conducting mass layoffs that affected a higher proportion of older employees (age

17   fifty (50) and over), as well as other policies that led to more older employees leaving the

18   company after Musk's acquisition of Twitter, constitutes unlawful discrimination against

19   Plaintiff and other similarly situated Twitter employees on the basis of age in violation of the

20   ADEA.

21

22

## COUNT IV

23

### California Fair Employment and Housing Act,
### Gov. Code § 12900, *et seq.*
### (Age Discrimination)

24      Plaintiff Frederick-Osborne and other employees age fifty (50) and older have been

25   entitled to the protections of the California Fair Employment and Housing Act ("FEHA"), Gov.

26   Code § 12900, *et seq.* Twitter's conduct in conducting mass layoffs that affected a higher

27

28
AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

proportion of older employees (age fifty (50) and over), as well as other policies that led to more older employees leaving the company after Musk's acquisition of Twitter, constitutes unlawful discrimination against Plaintiff Frederick-Osborne and other similarly situated Twitter employees who worked in California on the basis of age in violation of the FEHA.

## **JURY DEMAND**

Plaintiffs request a trial by jury on the claims asserted here.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

a.  Declare and find that Defendants are liable to Plaintiffs and other similarly situated female employees under Title VII, 42 U.S.C. § 2000e, *et seq.*, and, with respect to employees who have worked out of California, the Fair Employment and Housing Act, Gov. Code § 12900, *et seq.*;

b.  Declare and find that Defendants are liable to Plaintiff Frederick-Osborne and other similarly situated older employees whose rights are protected under the ADEA, 29 U.S.C. § 621, and, with respect to employees who have worked out of California, the Fair Employment and Housing Act, Gov. Code § 12900, *et seq.*;

c.  Certify this case as a class action under Title VII and the Fair Employment and Housing Act;

d.  Certify this case as a collective action under the ADEA;

e.  Reinstate female and older employees who wish to return to their jobs;

f.  Award compensatory and any other appropriate damages, including emotional distress and punitive damages under Title VII and the Fair Employment and Housing Act;

g.  Award liquidated damages under the ADEA;

h.  Award pre- and post-judgment interest;

i.  Award reasonable attorneys' fees, costs, and expenses; and

j.  Award any other relief to which Plaintiffs and other similarly situated employees may be entitled.

Respectfully submitted,

CAROLINA BERNAL STRIFLING, WILLOW WREN TURKAL, and SYDNEY FREDERICK-OSBORNE, on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; tfowler@llrlaw.com

Dated:        May 26, 2023

**CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on Defendants' counsel via the CM/ECF system on May 26, 2023.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

16
AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT