# Exhibit A

SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiffs Dmitry Borodaenko and Hana Thier,*
*on behalf of themselves and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| DMITRY BORODAENKO and HANA THIER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., AND X CORP.,<br><br>Defendants. | Case No. 3:22-cv-07226-AMO<br><br>**PLAINTIFFS' MOTION TO CONSOLIDATE CASES**<br><br>BEFORE THE HON. ARACELI MARTÍNEZ-OLGUÍN<br><br>Date: July 20, 2023<br>Time: 2:00 PM<br>Courtroom: 10 |

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 20, 2023, at 2:00 PM, in Courtroom 10, 450 Golden Gate Ave., San Francisco, California, before the Honorable Araceli Martínez-Olguín, Plaintiffs will, and hereby do, move for an order granting this Motion to Consolidate Cases pursuant to Federal Rule of Civil Procedure 42(a).

There are now pending in this federal district three class action discrimination cases against Twitter, Inc. and X Corp. (collectively, "Twitter") that all involve common questions of law or fact ripe for consolidation under Federal Rule of Civil Procedure 42(a). In addition to the above-captioned, first-filed case, these include *Strifling et al v. Twitter, Inc. et al*, Case No. 22-cv-07739-JST (N.D. Cal.), and *Zeman v. Twitter Inc. et al.*, Case No. 23-cv-01786-SI (N.D. Cal.). The undersigned counsel represent all plaintiffs in these actions, and the same counsel represent the defendants in all three actions. Because judicial convenience, consistency, and fairness would be greatly aided by consolidating these three cases — within which common questions of law and fact against the same defendants for substantially the same discriminatory actions permeate — Plaintiffs respectfully move this Court to order the consolidation of these actions pursuant to Federal Rule of Civil Procedure 42(a).[1]

---

[1] In the alternative, Plaintiffs respectfully request this Court reconsider their earlier Administrative Motion to Relate these cases, based upon new circumstances since that motion was filed.

# TABLE OF CONTENTS

I.      INTRODUCTION AND BACKGROUND ......................................................... 1

II.     CONSOLIDATION IS APPROPRIATE ........................................................ 6

III.    CONCLUSION ..................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Atonio v. Wards Cove Packing Co.*,
  810 F.2d 1477 (9th Cir. 1987) ............................................................. 4

*Bolbol v. City of Daly City*,
  754 F. Supp. 2d 1095 (N.D. Cal. 2010) ................................................ 8

*Dependable Component Supply Corp. v. Murata Manufacturing Co., Ltd.*,
  2018 WL 3388548 (N.D. Cal. Apr. 27, 2018) ....................................... 9

*Dunson v. Cordis Corporation*,
  854 F.3d 551 (9th Cir. 2017) ............................................................. 11

*Dusky v. Bellasaire Investments*,
  2007 WL 4403985 (C.D. Cal. Dec. 4, 2007) ........................................ 6

*Hall v. Hall*,
  138 S. Ct. 1118 (2018) ........................................................................ 9

*Huene v. United States*,
  743 F.2d 703 (9th Cir. 1984) ............................................................... 7

*In re Adams Apple, Inc.*,
  829 F.2d 1484 (9th Cir. 1987) ............................................................. 6

*In re Cent. Aluminum Co. Securities Litig.*,
  2009 WL 2905962 (N.D. Cal. Sept. 8, 2009) ............................ 8, 9, 10

*In re Equity Funding of Amer. Sec. Litig.*,
  416 F. Supp. 161 (C.D. Cal. 1976) ...................................................... 8

*In re Facebook Privacy Litigation*,
  2010 WL 5387616 (N.D. Cal. Dec. 21, 2010) .............................. 7, 10

*Inv'rs Research Co. v. U.S. Dist. Ct. for Cent. Dist. of California*,
  877 F.2d 777 (9th Cir. 1989) ............................................................... 7

*Johnson v. Manhattan Ry. Co.*,
  289 U.S. 479 (1933) ............................................................................ 9

*Kampe v. Volta Inc.*,
  2022 WL 19975281 (N.D. Cal. Nov. 25, 2022) ................................... 9

*Medina v. Mealing*,
  2006 WL 8443382 (N.D. Cal. Feb. 2, 2006) .................................... 8, 9

*Mendoza v. Amalgamated Transit Union Int'l*,
    30 F.4th 879 (9th Cir. 2022) ................................................................. 2

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
    2014 WL 2604991 (N.D. Cal. June 10, 2014) ................................... 8

*Mulligan v. Impax Laboratories, Inc.*,
    2013 WL 3354420 (N.D. Cal. July 2, 2013) ..................................... 9

*Paxonet Commun., Inc. v. TranSwitch Corp.*,
    303 F. Supp. 2d 1027 (N.D. Cal. 2003) ........................................... 9

*Power Integrations, Inc. v. Chan-Woong Park*,
    2019 WL 119969 (N.D. Cal. Jan. 7, 2019) ............................. 6, 9, 10

*Segar v. Smith*,
    738 F.2d 1249 (D.C. Cir. 1984) ....................................................... 4

*Solannex, Inc. v. MiaSole, Inc.*,
    2012 WL 1894268 (N.D. Cal. May 23, 2012) ................................. 7

*Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*,
    720 F. Supp. 805 (N.D. Cal. 1989) ................................................. 7

*Strifling et al v. Twitter, Inc. et al*,
    Case No. 22-cv-07739-JST (N.D. Cal.) ................................... passim

*Tollen v. Geron Corporation*,
    2020 WL 2494570 (N.D. Cal. May 14, 2020) ................................. 6

*United Mine Workers of America v. Gibbs*,
    383 U.S. 715 (1966) ........................................................................ 6

*Zeman v. Twitter Inc. et al.*,
    Case No. 23-cv-01786-SI (N.D. Cal.) ...................................... passim

*Zhu v. UCBH Holdings, Inc.*,
    682 F. Supp. 2d 1049 (N.D. Cal. 2010) ........................................... 7

**Statutes**

Age Discrimination in Employment Act of 1967 ("ADEA"),
    29 U.S.C. § 621 ............................................................................... 2

Americans With Disabilities Act ("ADA"),
    42 U.S.C. §§ 12101, *et seq.* .......................................................... 1

California Fair Employment and Housing Act ("FEHA"),
    Gov. Code § 12940 ..................................................................... 1, 2

California Family Rights Act,
    Gov. Code §12945.2 ........................................................................................... 2

Family and Medical Leave Act ("FMLA"),
    29 U.S.C. §2601, *et seq.* ..................................................................................... 2

New York State Human Rights Law ("NYSHRL"),
    NY Exec § 296 ...................................................................................................... 2

Title VII,
    42 U.S.C. § 2000e *et seq.* .................................................................................... 1

**Rules**

Fed. R. Civ. P. 42 ........................................................................................ 6, 7, 9, 10

## I.    INTRODUCTION AND BACKGROUND

Plaintiffs in this case as well as two other cases — *Strifling et al v. Twitter, Inc. et al*, Case No. 22-cv-07739-JST (N.D. Cal.), and *Zeman v. Twitter Inc. et al.*, Case No. 23-cv-01786-SI (N.D. Cal.) — have filed class actions against Twitter for engaging in unlawful discrimination in the chaotic aftermath of Elon Musk's takeover of the company that resulted in their termination, constructive discharge, or being laid off. All of these suits have been filed as class actions challenging employment separations that occurred during the same time period, all plaintiffs are represented by the same undersigned counsel, and all suits name Twitter, Inc. and X Corp. as the sole defendants, who are also represented by the same counsel in each case.

Not only do all three cases concern the same company, time period, and decisional processes resulting in Plaintiffs' unlawfully discriminatory terminations, constructive discharges, or being laid off; they now also have substantial overlap in the legal claims they assert.

In this case, *Borodaenko*, the named plaintiffs allege that Twitter has engaged in unlawful discrimination on the basis of disability in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* and (for employees who worked out of California) the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12940. The *Borodaenko* plaintiffs also assert that Twitter has engaged in unlawful discrimination on the basis of sex against female employees in violation of Title VII, 42 U.S.C. § 2000e *et seq.*.

Likewise, the named plaintiffs in the *Strifling* case allege unlawful discrimination against female employees in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and (for employees who worked out of California) the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.*. Thus, the *Strifling* and the *Borodaenko* cases both assert claims that Twitter unlawfully engaged in sex discrimination against female employees in violation of Title VII on behalf of putative classes consisting of Twitter's female employees who were terminated, constructively discharged, or laid off following Musk's takeover of the company. They also commonly allege violations of California's FEHA. The *Strifling* plaintiffs further allege that Twitter engaged in unlawful age discrimination during this same period through its termination,

constructive discharge, and laying off of employees age fifty (50) or older in violation of under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, and (for employees who worked out of California) the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.*

By the same token, the named plaintiff in the *Zeman* case also alleges discrimination on the basis of age, on behalf of employees age fifty (50) or older for their unlawful terminations, constructive discharges, or layoffs during the same period of time and within the same context as the other claims. The *Zeman* plaintiffs, like their counterparts in *Strifling*, bring their claims pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, in addition to claims (for employees who worked out of New York) under the New York State Human Rights Law ("NYSHRL"), NY Exec § 296, challenging the company's termination of older employees since Elon Musk's acquisition of the company.

When this Court denied Plaintiffs' earlier Administrative Motion to Relate Cases, these cases stood in a different posture. At that time, they each alleged a different form of discrimination (disability, sex, or age). Now, however, the discrimination allegations are overlapping among the cases, as plaintiffs have been added who belong to more than one protected class and have brought claims based on more than one type of discrimination. Thus, this case has been amended to add a sex discrimination claim and to eliminate claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et seq.* and the California Family Rights Act, Gov. Code §12945.2. The *Strifling* case has been amended to include age discrimination claims.[2] Thus, as it currently stands, the *Borodaenko* case asserts both disability

---

[2]    These amendments were necessary to address court orders and to present additional facts in support of Plaintiffs' claims. Were a plaintiff such as Ms. Thier to add her sex discrimination claim in the *Strifling* case, or Ms. Frederick-Osborn to add her age discrimination claim in the *Zeman* case, Twitter certainly would have objected on the basis that doing so constitutes "claim-splitting." *See generally Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022) (summarizing claim-splitting doctrine).

Moreover, the addition of Ms. Thier to this case was necessary to address the Court's concern that Mr. Borodaenko did not have standing to press the issue stated in this complaint that Elon Musk's ultimatum issued on November 16, 2022 (in which employees were required to

and sex discrimination, the *Strifling* case asserts both sex and age discrimination, and the *Zeman* case asserts age discrimination.

It is, of course, unsurprising that some individuals would fall into more than one protected class and therefore have distinct but interrelated discrimination claims. Indeed, as these cases have progressed on their individual tracks, their similarities have been brought into sharper focus by these subsequent amendments — all aimed at capturing the full panoply of injuries suffered by their respective Plaintiffs attributable to Twitter's discriminatory conduct — and resultantly, Plaintiffs now move to consolidate these cases (or, in the alternative, once again to relate them).

As Plaintiffs have alleged, Elon Musk purchased Twitter in late October 2022, and he immediately began shearing Twitter's workforce through mass layoffs, terminations, and constructive discharges of significantly more than half of the company's employees. These actions disparately affected disabled, female, and older employees—all of which are groups Musk has openly disparaged by way of widely-publicized bigoted, demeaning, and hostile comments.

Many of the employees who have lost their jobs since Musk's purchase of Twitter are disabled. Prior to Musk's takeover, Twitter's employees were permitted to work remotely. Yet shortly after Musk completed his purchase of the company, he declared that remote work would no longer be allowed and that all remaining employees would be required to work in-person out of a company office, save for rare "exceptional" employees that Musk himself would have to personally approve. Musk further declared in an email that, in order to remain in Twitter's employ, employees would have to "work[] long hours at high intensity" and that "[o]nly

_____

commit to being "hardcore" and working "long hours at high intensity") was discriminatory against disabled employees, since Mr. Borodaenko was terminated prior to the issuance of that ultimatum. And the addition of Ms. Frederick-Osborn to the *Strifling* case was necessary to address that Court's concern that the named plaintiffs (both of whom were informed of their layoff on November 4, 2022) did not have standing to press the issue that the November 16, 2022, ultimatum was discriminatory against female employees. Both Ms. Thier and Ms. Frederick-Osborn did not click "yes" in response to the ultimatum and so were laid off the next day.

PLAINTIFFS' MOTION TO CONSOLIDATE CASES; CASE NO. 3:22-CV-07226-AMO

exceptional performance will constitute a passing grade" as the company strived to become "extremely hardcore." Any employees who did not agree to this mandate by 5PM the following day via a hyperlinked online form were laid off the next day.

Many disabled employees were able to perform their jobs adequately with the reasonable accommodation of working remotely instead of from a physical Twitter office. Plaintiffs allege that Musk's ultimatum requiring in-person work (during a global pandemic, no less) and making vague statements about the new intensity demanded of employees made it impossible or not viable for many disabled employees to commit to continuing in their roles under these conditions. At the same time, a clear inference can be drawn that the managers tasked with making employment decisions would be influenced by the messaging from Musk that disadvantaged disabled employees. Mr. Borodaenko's case presents a paradigmatic example: When he raised concerns that his disability precluded him from safely returning to in-person work, he was immediately terminated. Thus, Plaintiffs allege, Twitter's practices following Musk's takeover constituted unlawful discrimination against employees with disabilities.

In substantially similar ways, Plaintiffs assert the mass terminations, constructive discharges, and layoffs of employees at Twitter following Musk's takeover have also impacted female employees to a greater extent than male employees. Not only did the managers under Musk's close supervision lay off a statistically significantly greater proportion of female employees than male employees on November 4, 2022 (as set forth in the *Strifling* complaint, ¶ 29–32), as a result of Musk's November 16, 2022, ultimatum, 36% of Twitter's remaining female employees left the company compared to just 28% of male employees, itself a statistically significant disparity (*Strifling* Compl. ¶ 46). The Ninth Circuit has held that "[a]n illicit motive may be inferred in a class-wide discrimination claim from a sufficient showing of disparity between the class members and comparably qualified members of the majority group." *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1480 (9th Cir. 1987) (citing *Segar v. Smith*, 738 F.2d 1249, 1265-66 (D.C. Cir. 1984)).

Twitter's discriminatory motive is further elucidated by a plethora of misogynistic statements made by Musk that include his proclamation "Testosterone rocks," his joke about naming a school using the acronym "TITS," and his decision to paint the "W" on Twitter's headquarters so that it read "Titter." *Strifling* Compl. ¶ 50–53. These statements, too, help explain why female employees no longer felt welcome at the company and why the managers working under Musk's direction (and themselves hoping to survive the tumult) laid off a higher proportion of female employees than male employees.

Since Musk's takeover, Twitter has implemented additional policies with the effect of causing more women than men to leave the company through terminations, constructive discharges, and layoffs. These include demands to work unreasonable hours (including encouraging employees to work 12-hour-days for 7 days a week, sleeping in the office, and working out of physical offices) that are likely to have a disparate impact on women, who are statistically more often caregivers for children and other family members and therefore less able to comply with such demands.

Such policies are also more likely to have a disparate impact on disabled and older employees. Indeed, as set forth in the *Zeman* and *Strifling* complaints, many of these same practices resulted in the termination, constructive discharge, or laying off of employees age fifty (50) or older. As described in the *Zeman* complaint, older employees were more likely to be dismissed during the initial wave of mass layoffs than their younger counterparts. *Zeman* Compl. ¶ 29–32. Twitter's subsequent practices created a culture hostile to older workers that encouraged their departures. *Strifling* Compl. ¶ 54. These allegations are unsurprising: the undertone of Musk's aforementioned ultimatum, messaging, and new policies was that the company was prioritizing younger employees and that older employees were no longer welcome. This message was not just clear to employees forced to decide whether or not to click "yes" to Musk's ultimatum; it was also heard by managers — working in close concert with Musk — who were charged with making layoff decisions. And, when read in conjunction with Musk's widely-publicized ageist statements about how "try[ing] to have people live for a really long

time….would cause asphyxiation of society," how "it is just impossible to stay in touch with the people if you are many generations older than them," and how if older people "don't die, we will be stuck with old ideas and society wouldn't advance," the open animus Musk has expressed for older employees — like the animus he has expressed towards women and persons with disabilities — sent a message to employees and managers alike that older employees were no longer welcome at Twitter.

## II.     CONSOLIDATION IS APPROPRIATE

Federal Rule of Civil Procedure 42 provides:

> **(a) Consolidation.** If actions before the court involve a common question of law or fact, the court may:
> **(1)** join for hearing or trial any or all matters at issue in the actions;
> **(2)** consolidate the actions; or
> **(3)** issue any other orders to avoid unnecessary cost or delay.
> **(b) Separate Trials.** For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42. The Supreme Court has explained, "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966) (citing, *inter alia*, Fed. R. Civ. P. 42). "The complaints do not need to be identical for the purposes of consolidation." *Tollen v. Geron Corporation*, 2020 WL 2494570, at *1 (N.D. Cal. May 14, 2020). For an action to be consolidated pursuant to Rule 42(a), it need only "involve *a* common question of law *or* fact," Fed. R. Civ. P. 42(a) (emphasis added). "The Court need find only one issue of law or fact in common to permit consolidation." *Power Integrations, Inc. v. Chan-Woong Park*, 2019 WL 119969, at *2 (N.D. Cal. Jan. 7, 2019) (first citing Rule 42, then citing *Dusky v. Bellasaire Investments*, 2007 WL 4403985, at *2 (C.D. Cal. Dec. 4, 2007)). Consolidation can be ordered on the motion of a party or *sua sponte*. *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987).

As the Ninth Circuit has explained, "The district court has broad discretion under this rule to consolidate cases pending in the same district," even where the cases are assigned to different judges within the same federal judicial district. *Inv'rs Research Co. v. U.S. Dist. Ct. for Cent. Dist. of California*, 877 F.2d 777, 777 (9th Cir. 1989). When cases are pending before different judges, a motion to consolidate pursuant to Rule 42 is properly presented to "the assigned judge in the lower-numbered case." *Solannex, Inc. v. MiaSole, Inc.*, 2012 WL 1894268, at *1, n.12 (N.D. Cal. May 23, 2012).[3]

"The district court, in exercising its broad discretion to order consolidation of actions presenting a common issue of law or fact under Rule 42(a), weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984), *on reh'g*, 753 F.2d 1081 (9th Cir. 1984). "In determining whether or not to consolidate cases, the Court should 'weigh the interest of judicial convenience against the potential for delay, confusion and prejudice.'" *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010) (quoting *Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*, 720 F. Supp. 805, 806-807 (N.D. Cal. 1989)). And, at least in the securities context (though readily applicable to broader class actions), "Courts have recognized that securities class actions are particularly suited to consolidation to help expedite pretrial proceedings, reduce case duplication, avoid the involvement of parties and witnesses in multiple proceedings, and minimize the expenditure of time and money by everyone involved." *In re*

---

[3]    *See also In re Facebook Privacy Litigation*, 2010 WL 5387616, at *2 (N.D. Cal. Dec. 21, 2010). There, the court provided an outline of the proper course of action when ordering cases consolidated:

> The Court consolidates these Actions—CV 10-02389 and CV 10-05301—into one action. The Clerk of Court shall consolidate these actions such that the earliest filed action, CV 10-02389, is the lead case. All future filings shall be in CV 10–02389 and bear the caption: '*In re Facebook Privacy Litigation.*' Since the later action is now consumed in first filed action, the Clerk shall administratively close CV 10-05301. All future related cases shall be automatically consolidated and administratively closed.

*Id.*

*Cent. Aluminum Co. Securities Litig.*, 2009 WL 2905962, at *2 (N.D. Cal. Sept. 8, 2009) (citing *In re Equity Funding of Amer. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976)).

Here, consolidation is manifestly appropriate as common questions of fact and law pervade these three cases, and their consolidation would not cause — but indeed, would minimize — inconvenience, delay, expense, confusion, or prejudice.[4]

First, like scores of other cases regularly consolidated in this court, the cases at bar "involve common questions of law and fact, as well as overlapping parties, claims and putative classes." *Medina v. Mealing*, 2006 WL 8443382, at *2 (N.D. Cal. Feb. 2, 2006). Indeed, all three cases concern class action claims by commonly represented plaintiffs for the same exact course of action (terminating, constructively discharging, and/or laying off Plaintiffs) against the same exact defendants for the same exact tumultuous time period.[5] And significantly, each of these

---

[4]      Twitter has already acknowledged in parallel proceedings the benefits of consolidation. In arbitration proceedings before JAMS (for those employees who are bound by arbitration clauses that include class action waivers) concerning the same claims as the plaintiffs in these three cases (in addition to other claims), Twitter has urged JAMS to consolidate discovery across these separate proceedings, arguing that:

> Given the identical and/or overlapping legal claims and factual allegations in these thousands of pending matters, a coordinated, universal discovery plan is imperative to litigate these matters efficiently, effectively, and fairly. Thoughtful coordination on the front-end across all pending matters will result in speedier resolutions, while also preventing prejudice, undue burden and waste of resources and expense for the parties and JAMS.

Letter from Sari M. Alamuddin, Counsel for Defendants, to Sheri F. Eisner, Senior Vice President and General Counsel, JAMS (May 31, 2023) (attached as Exhibit 1 to Liss-Riordan Declaration).

[5]      *See, e.g.*, *Bolbol v. City of Daly City*, 754 F. Supp. 2d 1095, 1118-19 (N.D. Cal. 2010) ("Here, each action asserts substantially the same claims against the same defendants and raises substantially the same questions of law and fact. Thus, all of the prerequisites for consolidation under rule 42(a) are present, and the court orders that the two actions be consolidated."); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *3 (N.D. Cal. June 10, 2014) ("The Court GRANTS the motion because all three cases arise from the same conduct by Defendants, and bring the same causes of action against the same Defendants…. The actions present identical factual and legal issues because they each arise out of the same alleged misstatements").

three cases—which "are in the same procedural stage"[6]—concern putative classes that overlap putative classes in the other cases, further supporting consolidation.[7] In fact, these cases are more similar in many aspects than a myriad of cases this Court has ordered consolidated in the past.[8]

Yet even setting aside that all three cases contain at least some overlapping claims on behalf of overlapping putative classes alleging Twitter's same course of conduct violated the same statutes, the fact that a few of the claims in these cases assert unique statutory violations does not preclude consolidation for several important reasons. For starters, that all of the claims arise from the same factual patterns more than satisfies the requirement that the cases share "a common question of law *or fact*." Fed. R. Civ. P. 42(a) (emphasis added). The Supreme Court has made clear that Rule 42 is written to reflect the traditional, pre-Rule notion that "consolidation is permitted as a matter of convenience and economy in administration," *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933), and should be understood "as enabling more efficient case management while preserving the distinct identities of the cases and the rights of the separate parties in them," *Hall v. Hall*, 138 S. Ct. 1118, 1125 (2018). Thus, Rule 42 was written to allow for consolidation of cases with common factual patterns even when the legal claims asserted vary slightly. This is borne out in this court's caselaw. In *In re Century Aluminum Co.*, 2009 WL 2905962 at *2, the court confronted a motion to consolidate that was

---

[6]    *Dependable Component Supply Corp. v. Murata Manufacturing Co., Ltd.*, 2018 WL 3388548, at *1 (N.D. Cal. Apr. 27, 2018).

[7]    *See*, *e.g.*, *Mulligan v. Impax Laboratories, Inc.*, 2013 WL 3354420, at *2-3 (N.D. Cal. July 2, 2013) ("[B]oth putative classes involve all persons who purchased or otherwise acquired Impax's common stock during the relevant class period. These cases thus present questions of law and fact that overlap almost completely."); *Kampe v. Volta Inc.*, 2022 WL 19975281, at *2 (N.D. Cal. Nov. 25, 2022) ("The Related Actions are both putative class actions brought on behalf of [the same class of persons]….The complaints also largely rely on the same statements and omissions….The Court therefore concludes that judicial convenience and a just, efficient resolution of the parties' claims would be best served by consolidating the Related Actions.").

[8]    *See*, *e.g.*, *Medina*, 2006 WL 8443382, at *2 (different time periods covered by each case); *Mulligan*, 2013 WL 3354420, at *3 (same); *Power Integrations*, 2019 WL 119969, at *2-3 (same); *Paxonet Commun., Inc. v. TranSwitch Corp.*, 303 F. Supp. 2d 1027, 1029 (N.D. Cal. 2003) (suits challenging related, but different, patents).

opposed on the grounds that the cases presented different legal claims. There, the court explained:

> The Court is not persuaded by [these] arguments, and finds that consolidation of all four cases is in the interest of efficiency. All four cases share common questions of fact, and each makes claims centering on Century's restatement of cash flows in March 2009. While there are some legal differences between the Securities Act and Exchange Act claims—such as whether defendants acted with scienter—the similarities are far greater because the claims in all cases revolve around whether Century materially misrepresented its financial condition. Accordingly, the Court GRANTS the motions to consolidate and consolidates all four cases.

*Id.* Similarly, in *Power Integrations*, 2019 WL 119969 at *2, the court explained:

> While the instant action (Case No. 16-cv-02366) focuses on breach of contract and conversion; and Park II (Case No. 16-cv-02367) focuses on tortious interference with contractual relations and prospective economic relations, among other claims, both cases are based on conduct that arose out of a prior employer-employee relationship between the parties…. The Court need find only one issue of law or fact in common to permit consolidation. *See* Fed. R. Civ. P. 42(a). Here, there are several.

Thus, this Court has been keen to order consolidation, even where there are some divergent legal claims among the cases, when the factual patterns are similar. In so doing, the Court has recognized that where "each case involves the same alleged activity by [a defendant], discovery issues will be substantially duplicative," and thus "these similarities and the lack of any apparent inconvenience, delay or expense that would result from consolidating the cases" renders consolidation appropriate. *In re Facebook Privacy Litigation*, 2010 WL 5387616, at *1.

The same holds true here: Because all three cases concern substantially the same factual patterns as well as similar (if not identical) claims of unlawful discrimination, consolidation would strongly aid in promoting judicial economy through saving considerable time, effort, and expense. Conversely, were consolidation to be denied, nearly all of the same evidence and arguments would need to be introduced three separate times in three separate proceedings. This would not only be a tremendous waste of time and expense, inconvenience witnesses, and delay resolution of these claims; it would also present a significant risk that parallel, inconsistent rulings would prejudice the fairness of the parties. As the Ninth Circuit has urged,

10

"Consolidating the cases for pretrial proceedings could, on its own, avoid the risk of inconsistent adjudications by eliminating the prospect of different judges rendering conflicting rulings on motions for summary judgment or motions in limine concerning the admissibility of key evidence." *Dunson v. Cordis Corporation*, 854 F.3d 551, 556 (9th Cir. 2017). It is difficult to imagine a set of cases where this concern is more palpable than the one at bar given the stark similarity of the parties' claims.

Because consolidation would significantly advance judicial economy; save considerable time and expense; and reduce inconvenience, delay, confusion, and the potential for prejudice, Plaintiffs' Motion to Consolidate Cases (or in the alternative, relate these cases) should be granted.

## III. CONCLUSION

For all these reasons, Plaintiffs respectfully request that the Court consolidate the *Borodaenko*, *Strifling*, and *Zeman* cases pursuant to Fed. R. Civ. P. 42, or in the alternative relate them pursuant to Local Rule 3-12.

Dated: June 6, 2023

Respectfully submitted,

DMITRY BORODAENKO and HANA THIER, on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ *Shannon Liss-Riordan*_____
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; tfowler@llrlaw.com

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendants Twitter, Inc. and X Corp. via the CM/ECF system on June 6, 2023.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiffs Dmitry Borodaenko and Hana Thier,*
*on behalf of themselves and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| DMITRY BORODAENKO and HANA THIER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., AND X CORP.,<br><br>Defendants. | Case No. 3:22-cv-07226-AMO<br><br>**DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF PLAINTIFFS' MOTION TO CONSOLIDATE CASES**<br><br>BEFORE THE HON. ARACELI MARTÍNEZ-OLGUÍN |

DECLARATION OF SHANNON LISS-RIORDAN IN SUPPORT OF MOTION TO CONSOLIDATE CASES

**DECLARATION OF SHANNON LISS-RIORDAN**

1.       I am a partner in the law firm of Lichten & Liss-Riordan, P.C., counsel of record for Plaintiffs Dmitry Borodaenko and Hana Thier in the above-captioned matter. I submit this declaration in support of Plaintiff's Motion to Consolidate Cases.

2.       Attached hereto as Exhibit 1 is a letter submitted by counsel for Defendant Twitter, Inc. in relation to arbitrations my firm is pursuing against Twitter with JAMS.

I declare under penalty of perjury of the laws of California and the United States that the foregoing is true and correct.

Executed on this date, 6th of June, 2023 at Boston, Massachusetts.


 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan

# Exhibit 1

# Morgan Lewis

**Sari M. Alamuddin**
Partner
+1.312.324.1158
sari.alamuddin@morganlewis.com

May 31, 2023

**SERVICE VIA EMAIL**

Sheri F. Eisner
Senior Vice President, General Counsel
JAMS

**Re:    TWITTER, INC.'S REQUEST FOR UNIVERSAL DISCOVERY PROTOCOL**

Dear Ms. Eisner,

Pursuant to Rule 6 of the JAMS Employment Arbitration Rules and Procedures ("Rules"), Respondent X Corp. as successor in interest to Respondent Twitter, Inc. ("Twitter[1]") submits this Request for a Universal Discovery Protocol in connection with approximately 2,000 substantially similar (and in many cases, identical) arbitration demands.

Given the identical and/or overlapping legal claims and factual allegations in these thousands of pending matters, a coordinated, universal discovery plan is imperative to litigate these matters efficiently, effectively, and fairly.  Thoughtful coordination on the front-end across all pending matters will result in speedier resolutions, while also preventing prejudice, undue burden and waste of resources and expense for the parties and JAMS.  Indeed, a coordinated, universal plan is the only practical way to resolve such an enormous number of similar arbitration matters. Twitter's proposal does not prejudice or otherwise limit any individual claimant's ability to pursue their claims; rather, the concepts in Twitter's discovery proposal, as outlined more fully below, provide every single individual claimant with more discovery than they are entitled to under JAMS' rules.

For these reasons, Twitter requests JAMS' assistance, consistent with its Rules, to implement a coordinated discovery protocol across all similar matters against Twitter (and all Respondents).  Indeed, Twitter has already reached an agreement on a universal discovery protocol with the Bloom/Dixon firms, who collectively represent dozens of claimants in the pending cases.  *See* **Exhibit A**, *Universal Discovery Plan Between Twitter and Bloom/Dixon, 5.22.23*.  This

---

[1] On March 15, 2023, Respondent Twitter, Inc. was merged into X Corp. and ceased to exist.  X Corp. is Twitter, Inc's successor in interest and, as such, succeeded to all of Twitter, Inc's assets, liabilities, rights and obligations.  Moreover, for purposes of this letter, "Twitter" includes any other respondent named in a demand that is the subject of this request.

**Morgan, Lewis & Bockius LLP**

110 North Wacker Drive
Chicago, IL  60606-1511
United States

☎ +1.312.324.1000
🖷 +1.312.324.1001

Sheri F. Eisner
May 31, 2023
Page 2

agreement contains the general framework and parameters of discovery that Twitter proposes should apply to all similar arbitrations.

I.   **Background**

      On April 25, 2022, X Holdings I, Inc. and X Holdings II, Inc. entered into an Agreement and Plan of Merger with Twitter ("Merger Agreement").  The merger ultimately closed on October 27, 2022.  After the close, Twitter reorganized the business to improve its financial health and to become more profitable.  As part of this ongoing reorganization, Twitter made the difficult decision to downsize its workforce and realign its operations.  Those who were involuntarily terminated were given the opportunity to receive severance pay in exchange for signing a release agreement.

      Since the deal closed last Fall, numerous former employees have filed significant and widespread litigation surrounding Twitter's decisions.  In addition to nine (9) pending civil lawsuits alleging individual, class action and collective action claims (as well as California Private Attorneys General Act representative action claims), in federal and state courts in California and federal court in Delaware, **approximately 2,000 former Twitter employees have filed individual arbitration demands with JAMS (and also AAA[2])**.  Every demand is rooted in the same core fact – a post-merger separation.

II.   **The Arbitrations Involve the Same Parties and Substantially Overlap on the Facts and Witnesses**

      All claimants across the approximately 2,000 JAMS arbitrations generally allege that Twitter made written and oral representations to them about the alleged severance benefits to which they would be entitled if they were laid off post-merger.  The claimants allege that these representations constitute enforceable contracts that Twitter has breached.[3]  All claimants will rely on substantially the same (and in scores of cases, precisely the same) evidence to pursue their claims against Twitter.

---

[2] Hundreds of demands have also been filed with AAA, by several of the same law firms who are identified in this letter.

[3] On these general allegations, the claimants have asserted claims against Twitter for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraud, violation of the federal and California WARN Acts, failure to pay all wages and benefits in violation of numerous different state laws, wrongful termination in violation of public policy, discrimination in violation of the Americans with Disabilities Act ("ADA"), discrimination in violation of the California Fair Employment and Housing Act, discrimination in violation of Title VII, retaliation, violation of the Family and Medical Leave Act ("FMLA"), and violation of the California Family Rights Act ("CFRA"), among other things.

Sheri F. Eisner
May 31, 2023
Page 3

The high-level summary below of the demands and the four[4] law firms that have collectively filed nearly all the demands demonstrate the clear need for a coordinated discovery plan:

- To date, Twitter has received 1,986 demands for arbitration.
- More than 97% of the demands include claims for breach of contract and promissory estoppel.
- More than 97% of the demands include a WARN Act claim (demands reference both Federal and state WARN Acts).
- Seven-hundred and sixty-two (762) demands contain a discrimination claim.

### Lichten & Liss-Riordan

- To date, this firm has filed 1,848 demands on behalf of former Twitter employees, which represents well over 90% of all claimants at issue. Of these:
  - 1,829 demands contain the following claims: breach of contract, promissory estoppel, violations of CA and federal WARN Acts, and failure to pay all wages due;
  - 605 demands contain gender discrimination claims;
  - 170 demands contain disability discrimination and family leave discrimination claims;
- Not only do these claimants bring the same causes of action stemming from the same set of facts, but their allegations are also **entirely identical**.
- Indeed, each demand contains the same or similar generic language in the JAMS form, and then attaches one or more of four class action complaints that Lichten & Liss-Riordan has already filed in federal court.[5]

### Kamerman, Uncyk, Soniker & Klein, P.C.

- To date, this firm has filed 66 demands on behalf of former Twitter employees.
- Every demand contains claims alleging promissory estoppel, federal WARN, fraud, and a California failure to pay wages claim.
- All but four demands contain a discrimination claim, with 35 based on sex and 31 based on race.

---

[4] A few other law firms have filed one demand against Twitter. These firms are not included in the general summary in the body of this letter, but the demands contain the same breach of contract claims.

[5] *See, e.g.*, "Nature of Dispute" section from Demand for *Pan, Jessica v. Twitter, Inc.*, Ref # 1100115270 ("Claimant Jessica Pan was laid off from her job at Twitter. She brings claims against Twitter related to breaches of contract and promissory estoppel, including claims related to her severance pay, as set forth in the class action complaint Cornet et al v. Twitter, Inc., No. 22-cv-6857 (N.D. Cal.) (attached as Exhibit A). She also brings claims challenging her layoff as sex discrimination under Title VII and the California Fair Housing and Employment Act, as set forth in the class action complaint Strifling et al v., Twitter, Inc. No. 22-cv-7739 (N.D. Cal.) (attached as Exhibit B).")

Sheri F. Eisner
May 31, 2023
Page 4

### Outten & Golden LLP

- To date, this firm has filed 22 demands on behalf of former Twitter employees.
- Every demand contains claims alleging breach of contract, promissory estoppel, unpaid expenses, and failure to pay wages under state law.
- Every demand also contains **identical** allegations.

### The Bloom Firm and Dixon, Diab & Chambers LLP

- To date, these firms, jointly, have filed 49 demands on behalf of former Twitter employees.
- Every demand contains claims alleging breach of contract, breach of implied contract, promissory estoppel, intentional infliction of emotional distress, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage.
- All but two of the demands contain a fraud claim.
- Twenty-seven (27) of the demands contain claims alleging a California WARN and failure to pay wages under California law.

### III.     Twitter Proposes a Universal Discovery Plan

Twitter prepared a proposed Universal Discovery Plan ("UDP"), which it previously exchanged with the Lichten & Liss-Riordan firm and the Bloom/Dixon firms. Those firms represent the most claimants, and they are the only ones with whom preliminary conferences have already occurred. Twitter's proposal, consistent with the spirit and purpose of Rule 6, is intended to promote coordination, order, and efficiency for discovery purposes throughout these arbitrations. Twitter does not seek to limit the ability of any individual claimant to fairly prosecute their claims; Twitter simply seeks to implement a reasonable, agreed-upon discovery plan that avoids unnecessary duplication of effort, undue burden upon witnesses, and excessive expense for **all** parties, including JAMS. Indeed, taking the time to collectively, with JAMS' support, develop a universal discovery protocol will ultimately lead to more efficient and speedy resolutions of these matters – which should be a shared goal.

The Lichten & Liss-Riordan firm has rejected the concept of a universal discovery plan. Instead, they are seeking to schedule cases on a case-by-case basis with hearing dates as soon as September 2023. In one of their matters, the arbitrator has scheduled a hearing for January 10-12, 2024. That decision and its implications for the rest of these related matters warrants JAMS' immediate consideration of Twitter's request.

The Bloom/Dixon firms, on the other hand, have negotiated and now executed an agreed upon UDP with Twitter. **See Exhibit A**. In their matters, the arbitrators have agreed with the parties' sensible approach, i.e., to reach an agreement on discovery across all their similar matters and set a full schedule and hearing date **after** the parties exchange initial disclosures and have a better sense of what additional discovery will be sought and the reasonable timeframe for it to be completed.

Two obvious consequences of moving forward without coordination and agreement across matters would be extensive delay in the arbitrations and inconsistent and even conflicting discovery obligations. The purpose of arbitration is to simplify the proceedings and obtain a

Sheri F. Eisner
May 31, 2023
Page 5

speedier resolution. But the disputes and corresponding delay and inconsistency that they cause would be unavoidable without a universal plan. For example, absent a universal plan, the parties and the arbitrators in each individual arbitration would need to separately address:

- *ESI*. This aspect of the discovery process will be extensive and complicated, and the negotiations would each take a substantial amount of time and effort on their own. To be expected to do it at least four times, with four different protocols (e.g., different custodians, search terms, etc.), and potentially thousands of times if certain claimants continue to insist on case-by-case discovery, is unnecessary and highly inefficient, risks imposing conflicting obligations on Twitter, and would cause extensive delays in the discovery process across all matters.

- *Depositions.* Twitter will seek coordination across the matters and various law firms because for most, if not all, witnesses, the testimony would be equally applicable across all arbitrations (or a large subset of them). These disputes will have to be briefed and resolved by potentially several hundred (or more) arbitrators. An obvious example is Elon Musk. <u>Without conceding that Mr. Musk should be subject to deposition in the first place</u>, whatever testimony Mr. Musk has to offer will be equally applicable to all other matters, in whole or in part, and it would be wholly unreasonable to permit repeated depositions of him or other individuals across the numerous arbitrations. Indeed, even if Twitter were to make separate agreements with each firm to depose only an individual one time and share the testimony across all *their own* matters, it would still mean the same individual could be deposed a minimum of four times, because at least three other firms would seek their deposition as well. The testimony should be used across all similar actions against Twitter, and therefore will require coordination among all the parties and law firms involved.

- *Live Testimony*. Like depositions, without a universal agreement, Twitter would seek protection from individual arbitrators to ensure that any witness who would provide the same testimony that is relevant across all (or a subset) of cases would only be expected to testify live one time.

JAMS should use its authority under Rule 6, at a point where no substantive litigation has occurred in any of the matters, to require each of the parties and their respective law firms to develop a universal discovery protocol that promotes the coordination, order, and efficiency that will be essential to administering and litigating 2,000 substantially similar matters.

## IV.    <u>Discussion</u>

It is a fundamental tenet of American jurisprudence that litigation should be administered in a manner that allows the parties to secure a "just, speedy, and inexpensive determination" of legal proceedings. *See, e.g.*, *Dietz v. Bouldin*, 579 U.S. 40, 45, 136 S. Ct. 1885, 1891, 195 L. Ed. 2d 161 (2016) (citing Fed. R. Civ. P. 1) (noting that the "paramount command" of Rule 1 is "the just, speedy, and inexpensive resolution of disputes").

Consistent with this fundamental tenet, the JAMS Employment Arbitration Rules and Procedures contemplate that JAMS may consolidate separate arbitrations where such arbitrations present "common issues of fact or law[.]" *See generally* Rule 6(e). Consolidation is appropriate

Sheri F. Eisner
May 31, 2023
Page 6

where, among other circumstances, (i) a party files more than one arbitration with JAMS; and (ii) where a demand or demands for arbitration is or are submitted naming parties already involved in another arbitration or arbitrations pending under the JAMS Rules. Rule 6(e)(i)–(ii). "When rendering its decision, JAMS will take into account all circumstances, including the links between the cases and the progress already made in the existing Arbitrations." Rule 6(e).

JAMS President Kimberly Taylor recently underscored the importance of coordinated discovery efforts when adjudicating mass arbitrations involving the same law firms or lawyers against the same companies at the same time, to ensure "an efficient, fair and neutral proceeding that leads to a final arbitration award that will be upheld in court." *See* Mar. 3, 2023, *Insight from the President: JAMS Policy Regarding Mass Arbitration Filings*. Allowing these approximately 2,000 arbitrations to proceed without coordination of discovery would be the very opposite of "efficient, fair and neutral," leading to a mess of lengthy delays and conflicting discovery rulings.

Here, Twitter does not seek full consolidation of all employee arbitrations, but rather, more modestly, only coordination of discovery, a lesser form of relief within the scope of Rule 6. See Rule 6(e)(ii) (permitting consolidation of "proceedings").

The consolidation that JAMS' rules contemplate in mass arbitrations tracks closely the rules promulgated by Congress and used by courts in multidistrict litigation to coordinate mass tort actions in federal courts. Therefore, it is appropriate to look to those rules for guidance when administering and managing mass arbitrations. *See, e.g.*, 28 U.S.C.A. § 1407. Under Section 1407, "civil actions involving one or more common questions of fact . . . may be transferred to any district for coordinated or consolidated proceedings." Consolidated discovery is appropriate in multidistrict litigation when it "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* Among other things, such "[c]entralization . . . is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings [], and conserve the resources of the parties, their counsel and the judiciary." *In re Tri-State Water Rights Litig.*, 481 F. Supp. 2d 1351, 1352 (J.P.M.L. 2007).

Similarly, with respect to the approximately 2,000 mass arbitrations that these four law firms have filed against Twitter, implementing a universal discovery protocol is reasonable and appropriate—indeed, necessary—to eliminate duplicative discovery, prevent inconsistent pre-hearing rulings, and conserve the resources of the parties, their counsel, JAMS, and its arbitrators. These arbitrations require a consolidated discovery protocol because of the substantial overlap of facts (which will frequently be identical) and law across all claimants, and the sheer volume of demands that claimants and their lawyers have filed against Twitter. Under JAMS Employment Arbitration, Rule 6, JAMS can and should coordinate discovery across all of these arbitrations. Twitter has proposed reasonable and fair protocols to apply across the matters. ***See generally*, Exhibit A**.

## V.  **Conclusion**

We have arrived at an inflection point for these mass arbitrations. In the absence of an agreed-upon universal discovery protocol, adjudicating these approximately 2,000 arbitrations will be wholly impractical, there will be countless duplicative and unnecessary disputes, as well as the potential for inconsistent and even conflicting rulings, and the parties will waste enormous amounts of time, resources (including JAMS') and effort across the arbitrations. Accordingly,

Sheri F. Eisner
May 31, 2023
Page 7

Twitter respectfully asks that JAMS exercise its authority and discretion under Rule 6, and direct and assist the parties to agree on and implement a universal discovery protocol.[6]

Sincerely,

/s/

Sari M. Alamuddin

SMA
c:  Dixon Diab & Chambers LLP
    Lichten & Liss-Riordan, P.C.
    Kamerman, Uncyk, Soniker & Klein, P.C.
    Outten & Golden LLP

---

[6] If the parties cannot agree on every detail in a proposed plan, the Discovery Panel, as proposed in Exhibit A, can resolve any disputes and approve a final discovery protocol to apply across the arbitrations.

Exhibit A

## TWITTER ARBITRATIONS – UNIVERSAL DISCOVERY PLAN

**Purpose**: to limit unnecessary burden and expense for the parties and JAMS, and to ensure coordination, order, and efficiency for the discovery process across claims filed by Dixon Diab & Chambers ("matters").

These matters require a consolidated discovery plan given the substantial overlap of facts (which are, in many cases, identical) and law across all claimants and the volume of demands.

**Procedure**: negotiate a universal discovery plan ("discovery plan") and jointly present to JAMS for implementation across all pending matters subject to the agreement. We intend that the plan will apply equally to all AAA arbitrations.

**Discovery Administration**: under JAMS Employment Arbitration, Rule 6,[1] JAMS can and should coordinate these arbitrations for the purposes of discovery only. Such coordination would benefit the parties and JAMS, and result in a more consistent and efficient discovery process, including the resolution of possible discovery disputes.

- <u>Establish a Discovery Panel</u> - propose to JAMS that it identify a three-arbitrator panel who will be solely responsible for all discovery matters across the arbitrations.

  - We can ask JAMS to provide a new list of possible arbitrators, and Claimants' counsel can select one, Respondents' counsel can select one, and the two selected arbitrators can choose the third arbitrator.

- <u>Discovery Panel Proposed Authority and Responsibilities</u>

  - Review and approve a universal discovery plan to apply across all matters, including forms of discovery and limitations on discovery.
  - Rule on all discovery disputes raised by the parties.
  - Authorize the issuance of subpoenas to third-parties
  - Parties can raise discovery disputes with the panel to be ruled on once, and that decision will apply across all covered matters.[2]
  - Approve a universal Confidentiality Order.
  - Approve a Universal ESI Order.

**Exclusions, Limitations**:. The parties agree any JAMS and/or AAA rule or protocol which requires a party to exchange and supplement documents and information, without a formal request by the other, shall apply in all matters and shall not be excluded or limited by this discovery plan unless otherwise stated.

---

[1] https://www.jamsadr.com/rules-employment-arbitration/english#Rule-6;

[2] In advance of raising the discovery dispute with the Discovery Panel, the parties shall meet and confer within 14 days of the dispute being raised. If the issue is not resolved, the parties may, within 7 days of a meet and confer, jointly submit a letter not to exceed 5 single-spaced pages, including footnotes, at Times New Roman size 12 Font, to the Discovery Panel. Either party can request a teleconference on the dispute. The Discovery Panel has the discretion to rule on the papers alone. All decisions must be per a written, reasoned opinion.

- <u>JAMS Rule 17(a) and (c): Exchange of Information</u> - notwithstanding anything to the contrary in this discovery plan, the parties shall comply with the requirements specified in JAMS Employment Arbitration Rules & Procedures ("JAMS Rules"), Rule 17(a) and (c) regarding Exchange of Information and obligations to supplement, except that the parties agree that the deadline in which the exchange of information under Rule 17 must be made shall be 60 days from the initial management conference unless the parties mutually agree otherwise.

- <u>AAA Initial Discovery Protocols</u> – notwithstanding anything to the contrary in this discovery plan, in matters administered by AAA, the parties shall comply with the requirements specified in the AAA's Initial Discovery Protocols For Employment Arbitration Cases ("Initial Discovery"), Part 2 regarding Initial Discovery except that the parties agree the deadline by which Initial Discovery must be exchanged shall be 60-days from the initial management conference unless the parties mutually agree otherwise.

- <u>Discrimination Claims</u> – the parties will meet and confer on any additional discovery needed to address any discrimination claims; the discovery plan should continue to apply to all other claims.

**Document Requests**

The parties may modify these rules by agreement. Absent an agreement, these rules may only be modified upon a showing of good cause, to be raised with and decided by the Discovery Panel.

- <u>Universal RFPs and Productions</u> – the parties will have 20 universal RFPs. Responses and objections and related productions will be made once and apply across all matters.

- <u>Individualized RFPs and Productions</u> – the parties will have 7 additional RFPs that apply to an individual claimant's claims; responses and objections and related productions will be made directly between the parties to that specific arbitration. This discovery will be limited to the individual matter unless the parties agree otherwise.

**Interrogatories**

The parties may modify these rules by agreement. Absent an agreement, these rules may only be modified upon a showing of good cause, to be raised with and decided by the Discovery Panel.

- <u>Universal ROGs</u> - the parties will have 15 universal ROGs. Responses and objections will be made once and apply across all matters.

- <u>Individualized ROGs</u> - the parties will have 10 additional ROGs that apply to an individual claimant's claims; responses and objections will be made directly between the parties to that specific arbitration. This discovery will be limited to the individual matter unless the parties agree otherwise.

**Written Discovery Response Deadlines**

- 30 days from service for Universal Discovery (excluding ESI, which is addressed below), unless extensions otherwise agreed to or obtained.

- 30 days from service for Individualized Discovery (excluding ESI, which is addressed below), unless extensions otherwise agreed to or obtained.

**Depositions[3]**

- Universal Rules

  - A deponent shall testify only once.
  - Depositions shall be a maximum of 7 hours.
  - Deposition testimony can be used across all matters subject to the Universal Discovery Plan.
  - The parties may modify these rules by agreement. Absent an agreement, these rules may only be modified upon a showing of good cause, to be raised with and decided by the Discovery Panel.

- Fact Witness Depositions – Claimants and Respondents subject to the Universal Discovery Plan may each take up to 4 fact depositions.

- 30(b)(6) Deposition – Claimants subject to the Universal Discovery Plan may, collectively, serve one 30(b)(6) deposition notice.

- Claimant Depositions – In addition to the 4 fact depositions set forth above, Respondents may depose the Claimant in each individual arbitration.

**Experts** – Claimants and Respondents subject to the Universal Discovery Plan may each designate up to two (2) experts, collectively. Depositions of these designated experts will not count against the deposition allowances identified above. Deposition testimony and expert reports from these designated experts can be used across all matters governed by the Universal Discovery Plan.

**Universal ESI Order** – the parties will meet and confer to develop and agree to a Universal ESI Order. This order would be presented to the Discovery Panel for approval. ESI produced in accordance with the Universal ESI Order may be used in all arbitrations.

- We could consider setting a deadline—e.g., 60 days—by which an ESI Order must be jointly presented to the Discovery Panel (joint submission could include areas of dispute for the Discovery Panel to resolve).

**Universal Confidentiality Order** - the parties will meet and confer to develop and agree to a Universal Confidentiality Order. This order would be presented to the Discovery Panel for approval.

---

[3] Under Rule 17(b), parties are entitled to one deposition as a matter of right. Any additional depositions, as well as the duration of depositions, would have to be by agreement or approved by the arbitrator.

- Respondent counsel will provide to Claimants' counsel for consideration a proposed Universal Confidentiality Order by June 2, 2023.

**Trial/hearing Testimony** - A witness shall testify only once live at a hearing. That testimony will be recorded and can be used thereafter in subsequent hearings.

- By agreement of all parties to a specific arbitration, or by order of the Discovery Arbitrator Panel upon a showing of good cause, a witness may testify live more than once.

**Additional Parties to Universal Discovery Plan** – at any time, and by agreement of counsel to the parties, a Claimant may become a covered party under the Universal Discovery Plan by signing (or having their counsel sign for them) the agreement.

**Reservation of Rights/Modifications to the Universal Discovery Plan**

Upon a showing of good cause, the parties reserve the right to seek modifications to this plan by raising the proposed modification(s) with the Discovery Panel, including but not limited to coordination of ESI and deposition testimony with other arbitrations. Further, the parties acknowledge that this plan may be subject to modification at JAMS' discretion, pursuant to its authority under Rule 6, without any approval from the Discovery Panel.

Sari Alamuddin
*Counsel for Respondent*

Date: 5/22/23

Deborah Dixon
*Counsel for Claimants*

Date: 5/22/2023____

SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:      (617) 994-5801

*Attorneys for Plaintiffs Dmitry Borodaenko and Hana Thier,*
*on behalf of themselves and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| DMITRY BORODAENKO and HANA THIER, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>TWITTER, INC., AND X CORP.,<br><br>　　　　　Defendants. | Case No. 3:22-cv-07226-AMO<br><br>**[PROPOSED] ORDER GRANTING MOTION TO CONSOLIDATE CASES**<br><br>BEFORE THE HON. ARACELI MARTÍNEZ-OLGUÍN |

The Motion to Consolidate Cases is **GRANTED**.

After consideration of the briefs and argument of counsel, the Court grants the Motion to Consolidate Cases. The Court consolidates these Actions — *Borodaenko et al v. Twitter, Inc. et al*, Case No. 4:22-cv-07226-AMO (N.D. Cal.), *Strifling et al v. Twitter, Inc. et al*, Case No. 22-cv-07739-JST (N.D. Cal.), and *Zeman v. Twitter Inc. et al.*, Case No. 23-cv-01786-SI (N.D. Cal.) — into one action.

The Clerk of Court shall consolidate these actions such that the earliest filed action, Case No. 4:22-cv-07226-AMO, is the lead case. All future filings shall be in Case No. 4:22-cv-07226-AMO and bear the caption: "*In re Twitter Employment Discrimination Litigation*." Since the later actions are now consumed in first-filed action, the Clerk shall administratively close Case No. 22-cv-07739-JST and Case No. 23-cv-01786-SI. All future related cases shall be automatically consolidated and administratively closed.

IT IS SO ORDERED.

Date: _____          _____

HON. ARACELI MARTÍNEZ-OLGUÍN

[PROPOSED] ORDER GRANTING MOTION TO CONSOLIDATE CASES; CASE NO. 3:22-CV-07226-AMO