LICHTEN & LISS-RIORDAN, P.C.
Shannon Liss-Riordan, Bar No. 310719
sliss@llrlaw.com
Thomas Fowler (*pro hac vice* forthcoming)
tfowler@llrlaw.com
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel: +1.617.994.5800
Fax: +1.617.994.5801

Attorneys for Plaintiffss
CAROLINA BERNAL STRIFLING and
WILLOW WREN TURKAL, on behalf of
THEMSELVES AND ALL OTHERS SIMILARLY
SITUATED

MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:     +1.415.442.1000
Fax:     +1.415.442.1001

Attorneys for Defendant
TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINA BERNAL STRIFLING and WILLOW WREN TURKAL, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TWITTER, INC., and  X CORP., <br><br> Defendants | Case No. 4:22-cv-07739-JST <br><br> **JOINT CASE MANAGEMENT STATEMENT** <br><br> Date: January 30, 2024 <br> Time: 2:00 p.m. <br> Courtroom: 6 <br> Judge: Hon Jon. S. Tigar |

1    Pursuant to the Notice Setting Case Management Conference for January 30, 2024 (Dkt.

2 58); District Judge Jon S. Tigar's Standing Order for Civil Cases; the Standing Order for All

3 Judges of the Northern District of California; Federal Rule of Civil Procedure 26(f); and the

4 Northern District Civil Local Rules 16-9, Plaintiffs CAROLINA BERNAL STRIFLING and

5 WILLOW WREN TURKAL ("Plaintiffs") and Defendant X Corp. on its own behalf and as

6 successor in interest to Twitter ("Defendant" or "Twitter") (collectively, the "Parties") submit the

7 following Joint Case Management Statement.

8    **1.    <u>JURISDICTION AND SERVICE</u>**

9    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)

10 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and

11 costs and involves a dispute between citizens of different states.  This Court also has subject

12 matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because the (i) aggregate number of putative

13 class members is 100 or greater; (ii) diversity of citizenship exists between Plaintiffs and

14 Defendant; and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate,

15 $5 million, exclusive of interest and costs.

16    This Court also has jurisdiction under 29 U.S.C. section 1331 over the claims arising

17 under Title VII of the Civil Rights Act of 1964 ("Title VII").  Furthermore, this Court has

18 supplemental jurisdiction under 28 U.S.C. section 1367 over the remaining and related claims

19 under the Fair Employment and Housing Act ("FEHA").

20    All parties in the matter have been served.

21    **2.    <u>FACTS</u>**

22    ***Plaintiffs' statement:***

23    Plaintiffs contend that Twitter has engaged in unlawful discrimination on the basis of sex

24 in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*,

25 and (for employees who worked in California) the California Fair Employment and Housing Act

26 ("FEHA"), Cal. Gov. Code § 12900, *et seq.*

27    As Plaintiffs have alleged, Elon Musk recently purchased Twitter in late October 2022,

28 and immediately began laying off more than half of its workforce. The decisions regarding which

JOINT CASE MANAGEMENT
STATEMENT

employees would be laid off were made under extremely hurried circumstances, and for thousands of employees, in a period just in a few days. In selecting employees for layoff, little attention (if any) was given to employees' job performance, qualifications, experience, and abilities. Most of the employees whom Twitter laid off were notified of their layoff on November 4, 2022. Plaintiffs have alleged that the layoff decisions were made quickly by a small group of managers under close supervision by Musk. Some of these managers were brought in from other companies owned by Musk (such as Tesla), who did not have much, if any, knowledge about Twitter's operations.

Plaintiff Strifling was employed by Twitter as a Senior Client Partner Lead. Plaintiff Turkal was employed by Twitter as a Staff Site Reliability Engineer. Throughout their employment with Twitter, Plaintiffs' performance met Twitter's expectations. Nevertheless, they were laid off.

Plaintiffs allege that Twitter's mass layoff affected women significantly more than men. In the midst of the layoff, the media reported on widely circulated pictures of Twitter employees before and after the layoff, raising observations about the stark contrast in the number of women who appeared to be employed at the company before and after Musk's acquisition. Spreadsheets showing which Twitter employees in the United States were retained and which were laid off on November 4, 2022, reveal that Twitter laid off approximately 57% of its female employees, while only 47% of its male employees were laid off. Dr. Mark Killingsworth, a professor in the Department of Economics at Rutgers University, performed a chi square analysis on this data and determined that the odds that this disparity between women and men being laid off was due only to chance is .00000000000001 (or, put another way, the odds were about 9.977 out of 100 trillion).

Likewise, Plaintiffs allege that this disparity cannot be explained based on a justification that Musk intended to retain more employees in engineering-related roles. Twitter's spreadsheet showed that the sex-based disparity was even starker for engineers - 59% of females in engineering-related roles were laid off on November 4, 2022, compared to 45% of males. Dr. Killingsworth determined that this disparity was also significantly significant and that the odds

JOINT CASE MANAGEMENT
STATEMENT

that this disparity being due only to chance was .00000000000001 (or, put another way, 1.103 chances out of 100 trillion). Similarly, Plaintiffs allege that there is also a great disparity in the layoff rates between women and men in non-engineering roles. The spreadsheet showing the layoffs reveals that 56% of females in non-engineering-related roles were laid off on November 4, 2022, while only 49% of males in non-engineering-related roles were laid off. According to Dr. Killingsworth, the odds that this disparity was due only to chance was .00001 (or, put another way, 2.778 chances out of 100 thousand).

The Ninth Circuit has held that "[a]n illicit motive may be inferred in a class-wide discrimination claim from a sufficient showing of disparity between the class members and comparably qualified members of the majority group." Atonio v. Wards Cove Packing Co., 810 F.2d 1477, 1480 (9th Cir. 1987) (citing Segar v. Smith, 738 F.2d 1249, 1265–66 (D.C. Cir. 1984)).

In addition to the statistical disparities that Plaintiffs have cited in their complaint, Plaintiffs have also alleged that Twitter's discriminatory conduct in the layoffs is unsurprising in light of the sexist, demeaning, and hostile comments that Elon Musk has made against women. Such comments show his discriminatory animus against women, and it is understandable that women would feel less welcome in the workplace under his leadership. As Twitter's new owner and CEO, who oversaw and closely managed the employees who were making layoff decisions and implementing his policies, Musk's discriminatory animus is imputed to Twitter.

For example, it was widely publicized that Musk joked about naming a school using the acronym "TITS"; he also joked about women's breasts on Twitter, tweeted "Testosterone rocks ng", and made clear his belief that it was more important that women have a lot of babies rather than pursuing careers. Likewise, shortly before acquiring Twitter, Musk tweeted: "Being Mom is just as important as any career." Musk has been vocal about promoting women having a lot of babies and was presumably disseminating the message that having babies is more important than keeping their jobs. In April 2023, Musk had the "w" on the sign of the corporate headquarters painted white so that company's name appeared to be "Titter."

JOINT CASE MANAGEMENT
STATEMENT

1     The stark disparities in the number of women laid off compared to the number of men laid

2     off, when viewed in light of the overt animus toward women displayed by Twitter's CEO and

3     lead decisionmaker Elon Musk, indicates that Twitter engaged in unlawful sex discrimination.

4           ***Defendant's Statement:***

5           Plaintiffs allege disparate impact and disparate treatment claims on behalf of a sprawling

6     nationwide class of former female Twitter employees who separated from Twitter in connection

7     with reductions in force ("RIFs").  Plaintiffs' theories are pure speculation.  The Second Amended

8     Compliant ("SAC")  does not isolate and identify a specific employment practice to challenge with

9     a disparate impact claim.  Nor does it plausibly allege causation.  It offers only bottom-line statistics

10    about the number of women laid-off in RIFs; it provides no anecdotal evidence or specific factual

11    allegations other than that an unidentified "small group of managers" made RIF decisions "under

12    extremely hurried circumstances, with little if any regard given to employees' job performance,

13    qualifications, experience, and abilities."  SAC. ¶¶ 16, 20.  Plaintiffs' Complaint thus fails to state

14    a claim for disparate treatment or disparate impact discrimination. Plaintiffs also lack standing to

15    pursue discrimination claims on behalf of employees who were allegedly subject to constructive

16    discharges because Plaintiffs were laid off in the November 4 reduction in force.  In addition,

17    Plaintiffs failed to exhaust their administrative remedies prior to filing their original complaint.

18          Twitter is an equal opportunity employer that does not discriminate on the basis of sex or

19    any other category protected by law.  Twitter denies that it discriminated against Plaintiffs or others

20    on the basis of sex.

21          **3.      LEGAL ISSUES**

22          ***Plaintiffs' Statement:***

23          The primary legal issues presented by Plaintiffs' lawsuit are: (1) whether Twitter violated

24    Title VII, and for employees in California, the FEHA, by implementing mass layoff in a manner

25    that disproportionately impacted women; and (2) whether Plaintiffs' claims may be certified as a

26    class action under FRCP 23.

27          ***Defendant's Statement:***

28

JOINT CASE MANAGEMENT
STATEMENT

1.  Whether Plaintiffs have pleaded a plausible claim for relief or a plausible class claim under Rule 12;

2.  Whether Plaintiffs' putative claims are suitable for resolution on a class basis under Rule 23;

3.  Whether Twitter's yet-to-be-pleaded affirmative defenses would defeat or limit any purported liability;

4.  Whether Plaintiffs and the putative class members are entitled to front- or back- pay, benefits, other economic or compensatory damages, or other equitable or monetary relief;

5.  Whether Plaintiffs' allegations related to disparate impact have merit;

6.  Whether Plaintiffs' allegations related to disparate treatment have merit; and

7.  Whether Plaintiffs and the putative class members are entitled to fees, costs, or other forms of relief.

### 4.   MOTIONS

1) Twitter filed a Rule 12 motion to dismiss and strike the class claims in response to the Complaint on January 26, 2023 (Dkt. 20).  The Court granted the motion to dismiss on May 8, 2023, with leave for Plaintiffs to amend (Dkt. 38).

2) Twitter filed a motion to strike Plaintiffs' Amended Class and Collective Action Complaint on June 16, 2023 (Dkt. 46). The Court granted the motion to strike on January 4, 2024 (Dkt. 57).

3) Plaintiffs filed their SAC on January 19, 2024.  ECF 61.  By stipulated order of the Court, Twitter's deadline to respond to the SAC is February 9, 2024 (i.e., 21 days after service of the SAC).  *See* ECF 43.   Twitter intends to file a motion to dismiss or strike in response the Second Amended Complaint.

### 5.   AMENDMENT OF PLEADINGS

***Plaintiffs' Statement:***

Plaintiffs filed their First Amended Class and Collective Action Complaint on May 26, 2023 (Dkt. 41). Plaintiffs filed their Second Amended Class Action Complaint on January 19, 2024 (Dkt. 60).  Plaintiffs reserve the right to seek leave to further amend their complaint should

JOINT CASE MANAGEMENT STATEMENT

the circumstances warrant it.

**Defendant's Statement:**

Defendant will timely respond to Plaintiff's amended complaint by the February 9, 2024 deadline.

**6.    EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have complied with their evidence preservation obligations.

**7.    DISCLOSURES**

The parties have yet to exchange their initial disclosures. Pursuant to Fed. R. Civ. P. 26(a)(1)(C), the parties have agreed to exchange initial disclosures within fourteen (14) days of Twitter's answer to Plaintiffs' Second Amended Complaint.

**8.    DISCOVERY**

**a.    Discovery Taken to Date and Scope of Anticipated Discovery**

**Plaintiffs' Statement:**

Plaintiffs propose that discovery shall begin following the upcoming Case Management Conference.  Plaintiffs propose that the discovery period shall continue until 60 days after the close of the class action opt-out period, should the Court certify this case as a class action.  If the Court declines to certify this case as a class action, Plaintiffs propose that the discovery period close 60 days after the Court's denial of Plaintiffs' request for class certification.

Plaintiffs oppose Twitter's request to bifurcate discovery into class certification and merits discovery.  It would be difficult to distinguish between the two and would likely raise unnecessary disputes about what discovery would be encompassed by the first stage.  Plaintiffs oppose, however, discovery of putative class members, absent agreement by the parties. Plaintiffs intend to conduct written discovery and take depositions.

**Defendant's Statement:**

If this case proceeds to discovery, the Parties should conduct discovery in two phases with the first phase focusing on discovery needed for a class certification motion and a second phase if any, focusing on additional merits issues.

JOINT CASE MANAGEMENT
STATEMENT

Twitter anticipates taking discovery on all issues raised by Plaintiffs in their then-operative complaint.  Twitter anticipates serving written discovery and deposing Plaintiffs, any individual who files a declaration in support of or on behalf of Plaintiffs' and their claims, and a portion of the putative class members.  Twitter does not believe the Court should modify any limits on discovery in the Federal Rules of Civil Procedure at this time.  If the case proceeds to discovery, Twitter anticipates the Parties will stipulate to the Northern District of California's standard protective order governing discovery.

Twitter proposes that the Court set deadlines related to discovery after it rules on any motion to certify a class.

        **b.**      <u>**Stipulated E-Discovery Order**</u>

The Parties have not entered into a stipulated e-discovery order.  The Parties agree to enter a protective order consistent with the Northern District of California's Model Protective Order, and which also incorporates the Parties' agreement that information and evidence produced in any lawsuit or arbitration hearing between individuals represented by Plaintiff's counsel and Defendant may be used in any other matter between Defendant and an individual represented by Plaintiff's counsel.

The Parties do not believe it is necessary to modify any limitations imposed by the Federal Rules of Civil Procedure or the Local Rules at this time.

        **c.**      <u>**Discovery Disputes**</u>

The Parties will work in good faith to resolve any discovery disputes amicably but will bring those disputes to the Court's attention if they cannot be resolved.

        **9.**      <u>**CLASS ACTIONS**</u>

All attorneys of record have reviewed the Procedural Guidance for Class Action Settlements for the Northern District of California.

***Plaintiffs' Statement:***

Plaintiffs intend to move for class certification, following some initial discovery. Plaintiffs may move for class certification within 120 days of the beginning of discovery.

As required by Civil L.R. 16-9(a), Plaintiffs state that a class is maintainable under Fed. R. Civ. P. 23(a) and 23(b)(3).  They will seek to certify classes consisting of all female Twitter who were notified of their layoffs on November 3 or 4, 2022.

The pertinent facts are set forth in the current complaint.  Plaintiffs expect to develop and support these facts through discovery.  Briefly, Plaintiffs state that they expect to satisfy Rule 23(a), based on numerosity (there are hundreds of female employees who were laid off by Twitter on November 4, 2022); commonality (the claims of these employees will raise numerous common questions of fact and law); typicality (the named Plaintiffs will have claims typical of the class); and adequacy (the named Plaintiffs and their counsel will fairly and adequately represent the class).

Plaintiffs expect to satisfy the requirements under Rule 23(b) based on similar facts, since it will clearly be superior to maintain a class action, for efficiency purposes, rather than require each of these class members to bring their own individual action, and the common questions of law and fact will predominate over any individual questions.

**Defendant's Statement:**

Defendant asserts that Plaintiff's claims are not suitable for certification under Rule 23 and intends to oppose class certification.

**10.   RELATED CASES**

Plaintiffs represented by the same counsel have filed similar cases alleging discrimination against Twitter with respect to its layoffs following Musk's acquisition of the company.  Those cases allege discrimination on the basis of sex, race, age, and disability.  *See  Zeman v. Twitter, Inc.,*  No. 23-cv-01786-SI (N.D. Cal., 2023); *Weinberg v. Twitter, Inc,* No. 3:23-cv-04016 (N.D.Cal. 2023); *Frederick-Osborn v. Twitter, Inc.*, No. 4:24-cv-00125 (N.D. Cal 2024); and *Borodaenko v. Twitter, Inc.*, No. 3:22-cv-07726 (N.D. Cal, 2022). The Court in *Borodaenko* denied Plaintiffs' motion to relate *Borodaenko* with *Strifling* and *Zeman. Id.* at Dkt. 70.

**11.   RELIEF SOUGHT**

**Plaintiffs' Statement:**

As set forth in the Second Amended Complaint (Dkt. 60), Plaintiffs seek damages for

1    Twitter's violations of Title VII and (for the employees who worked out of California) the FEHA,

2    including back pay, front pay, lost benefits, bonuses and equity, emotional distress damages,

3    punitive damages, interest, and any other recoverable damages; attorneys' fees and costs; and any

4    and all other relief to which Plaintiffs and the putative class may be entitled.

5            ***Defendant's Statement:***

6            Twitter denies that Plaintiffs and any putative class member is entitled to relief.

7    **12.    SETTLEMENT AND ADR**

8            The Parties have complied with ADR L.R. 3.5.  The Parties engaged in mediation with a

9    private mediator on December 1, 2023, which was not successful.

10   **13.    OTHER REFERENCES**

11          The Parties do not believe that this case is suitable for reference to binding arbitration, a

12   special master, or the Judicial Panel on Multidistrict Litigation.

13   **14.    NARROWING OF ISSUES**

14          ***Plaintiffs' Statement:***

15           Plaintiffs do not believe any issues can be narrowed by agreement at this time.

16          ***Defendant's Statement:***

17          Twitter believes the issues in this case will be narrowed through its forthcoming Motion to

18   Dismiss or Strike, any future amended complaint, and any subsequent motions to dismiss or

19   strike.

20   **15.    EXPEDITED TRIAL PROCEDURE**

21          The Parties do not believe this is the type of case that can be handled under the Expedited

22   Trial Procedure of General Order 64, Attachments B and D.

23   **16.    SCHEDULING**

24          ***Plaintiffs' Statement:***

25          As described above, Plaintiffs propose that discovery begin immediately following the

26   upcoming Case Management Conference and continue until 60 days after either the close of the

27   opt-out period (should the Court certify this case as a class action) or the Court's denial of class

28

JOINT CASE MANAGEMENT
STATEMENT

certification.  Plaintiffs would plan to move for class certification within 120 days of the opening of discovery.

**Defendant's Statement:**

Defendant requests that the Court defer setting deadlines until all pleading motions, including Defendant's forthcoming Rule 12 motion, are resolved.

**17.    TRIAL**

**Plaintiffs' Statement:**

Plaintiffs request that a trial be set in this matter for early 2025.

**Defendant's Statement:**

Defendant contends that it would be premature to schedule any trial date prior to resolution of Plaintiff's anticipated motion for class certification because the length and complexity of any trial will necessarily depend upon whether the case is tried as an individual action or class action. Defendant proposes that the Court set a further case management conference following its ruling on class certification at which a trial date will be set.

In the event that the Court declines Defendant's requested approach and intends to set a trial date at the case management conference, then Defendant requests that trial be set no earlier than September 2025, in order to allow sufficient time for discovery, the resolution of any summary judgment motion(s), the resolution of Plaintiff's motion for class certification, expert discovery and trial preparation.

**18.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

**Plaintiffs' Statement:**

Plaintiffs filed their Certificate of Interested Entities on March 29, 2023 (Dkt. 35).

**Defendant's Statement:**

Defendant filed its Corporate Disclosure Statement on March 29, 2023.  (Dkt. 34).

**19.    PROFESSIONAL CONDUCT**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

JOINT CASE MANAGEMENT
STATEMENT

**20.**    <u>Such Other Matters as May Facilitate the Just, Speedy and Inexpensive Disposition of This Matter</u>

At this time, the Parties have not identified any other matters that may facilitate the just, speedy and inexpensive disposition of this matter.

Dated: January 23, 2024                                     LICHTEN & LISS-RIORDAN, P.C.


                                                            By    */s/ Shannon Liss-Riordan*
                                                                Shannon Liss-Riordan
                                                                Thomas Fowler
                                                                Attorneys for Plaintiffs
                                                                CAROLINA BERNAL STRIFLING and
                                                                WILLOW WREN TURKAL, on behalf of
                                                                THEMSELVES AND ALL OTHERS
                                                                SIMILARLY SITUATED

Dated: January 23, 2024                                     MORGAN, LEWIS & BOCKIUS LLP


                                                            By    */s/ Eric Meckley*
                                                                Eric Meckley
                                                                Brian D. Berry
                                                                Attorneys for Defendant
                                                                TWITTER, INC.

JOINT CASE MANAGEMENT
STATEMENT

**FILER'S ATTESTATION**

Pursuant to Local Rule 5-1(h)(3) regarding signatures, I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the document's content, and have authorized the filing.

Dated: January 23, 2024                    MORGAN, LEWIS & BOCKIUS LLP


By   */s/ Eric Meckley*
Eric Meckley
Brian D. Berry
Attorneys for Defendant
TWITTER, INC.