MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
Roshni C. Kapoor, Bar No. 310612
roshni.kapoor@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
Kassia Stephenson, Bar No. 336175
kassia.stephenson@morganlewis.com
1400 Page Mill Road
Palo Alto, CA 94304
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

Attorneys for Defendants
X CORP. f/k/a TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINA BERNAL STRIFLING and WILLOW WREN TURKAL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., and X CORP.,<br><br>Defendants | Case No. 4:22-cv-07739-JST<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  March 21, 2024<br>Time: 2:00 p.m.<br>Judge: Hon. Jon. S. Tigar |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-cv-07739- JST

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 21, 2024 at 2:00 p.m. or as soon thereafter as may be heard in Courtroom 6 on the Second Floor of the United States Courthouse, located at 1301 Clay Street, Oakland, California 94612, Defendant X Corp., successor in interest to Defendant Twitter, Inc. (collectively "X") will, and hereby does, move this Court pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6) for an order dismissing the Second Amended Complaint (the "Complaint") for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted, on the following grounds:

1. Plaintiffs' first and second causes of action for discrimination in violation of Title VII, 42 U.S.C. §§ 2000e, et seq. and the California Fair Employment and Housing Act, Gov. Code §§ 12900, et seq. fail to state a claim because Plaintiffs do not plausibly allege that they exhausted their administrative remedies.

2. Plaintiffs' second cause of action for discrimination in violation of the California Fair Employment and Housing Act, Gov. Code §§ 12900, et seq. because this Court lacks jurisdiction over the claim because Plaintiffs have not exhausted their administrative remedies.

3. Plaintiffs' first and second causes of action for discrimination in violation of Title VII, 42 U.S.C. §§ 2000e, et seq. and the California Fair Employment and Housing Act, Gov. Code §§ 12900, et seq. fail to state a claim because Plaintiffs do not allege facts sufficient to support a plausible disparate treatment claim.

4. Plaintiffs' first and second causes of action for discrimination in violation of Title VII, 42 U.S.C. §§ 2000e, et seq. and the California Fair Employment and Housing Act, Gov. Code §§ 12900, et seq. fail to state a claim because Plaintiffs do not allege facts sufficient to support a plausible disparate impact claim.

5. Plaintiffs' first second cause of action for discrimination in violation of Title VII, 42 U.S.C. §§ 2000e, et seq. and the California Fair Employment and Housing Act, Gov. Code §§ 12900, et seq. fail to allege facts plausibly suggesting that Plaintiffs have standing to pursue their claims.

/ / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-cv-07739- JST

6.      Plaintiffs' first second cause of action for discrimination in violation of Title VII, 42 U.S.C. §§ 2000e, et seq. and the California Fair Employment and Housing Act, Gov. Code §§ 12900, et seq. fail to allege facts plausibly suggesting that Plaintiffs have standing to pursue claims for alleged injuries arising from discharges or constructive discharges other than those injuries they experienced, if any, through the November 4 reduction in force.

7.      Plaintiffs' second cause of action for discrimination in violation of the California Fair Employment and Housing Act, Gov. Code §§ 12900, et seq. fails to state a claim on behalf of Plaintiff Carolina Strifling because the Complaint does not allege facts plausibly suggesting that she has standing to invoke the protections of California law.

The Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, Request for Judicial Notice, the pleadings on file herein, and such arguments and admissible evidence as may be presented at the time of hearing.

Dated: February 9, 2024                          MORGAN, LEWIS & BOCKIUS LLP


By   /s/ *Brian D. Berry*
Eric Meckley
Brian D. Berry
Roshni C. Kapoor
Ashlee N. Cherry
Kassia Stephenson

Attorneys for Defendant
X CORP. f/k/a TWITTER, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-cv-07739- JST

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL HISTORY ................................................................................... 2

        A.      This Court's Order Dismissing the Original Complaint. ........................ 2

                1.      Strifling Cannot Assert a FEHA Claim. ...................................... 2

                2.      Plaintiffs Lack Standing for the Post-RIF Policy. ....................... 3

                3.      Plaintiffs Failed to Exhaust Administrative Remedies. ............... 3

                4.      Plaintiffs Failed to Plausibly Plead Sex Discrimination Under
                        Either Disparate Treatment or Disparate Impact Theory of Liability. ........ 3

                        a.      Plaintiffs Failed to Plausibly Allege Disparate Treatment. ............. 3

                        b.      Plaintiffs Failed to Plausibly Allege Disparate Impact. ................. 4

        B.      This Court's Order Striking the First Amended Complaint. .................... 5

III.    THE FACTUAL ALLEGATIONS IN THE SAC ................................................. 5

        A.      The Plaintiffs. ......................................................................................... 5

        B.      The November 4 Reduction in Force. ..................................................... 6

        C.      The Allegations Regarding Discriminatory Animus. .............................. 7

        D.      The Putative Class of All Discharges "Since" Acquisition. .................... 8

IV.     LEGAL STANDARD ........................................................................................... 8

V.      ARGUMENT ...................................................................................................... 10

        A.      Plaintiffs' Title VII and FEHA Claims Fail for Failure to Exhaust. ...... 10

                1.      Plaintiffs Fail to Adequately Plead Exhaustion. ....................... 10

                2.      Plaintiffs Cannot Cure Their Exhaustion Defect By Amendment. ........... 11

                        a.      Plaintiffs' Failure to Exhaust Prior to Commencing Suit
                                Deprives This Court of Jurisdiction over Their FEHA
                                Claim. ............................................................................... 11

                        b.      Plaintiffs' Failure to Exhaust Prior to Commencing Suit
                                Warrants Dismissal of Their Title VII Claim. .................... 13

        B.      Plaintiffs Fail to Plausibly Allege Sex Discrimination. ........................ 14

                1.      Plaintiffs Fail to Plausibly Plead Disparate Treatment. ............. 14

                        a.      The SAC Does Not Allege Facts to Plausibly Suggest
                                Intentional Discrimination Based on Sex. .......................... 15

                        b.      Plaintiffs Fail to Allege Pattern or Practice of
                                Discrimination. .................................................................. 17

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-cv-07739- JST

|  |  | 2. | Plaintiffs Fail to Plausibly Plead Disparate Impact................................... 20 |
|  | C. | Strifling Fails to State a FEHA Claim. .............................................................. 21 |
|  | D. | Plaintiffs Fail to Allege Standing for Their Claims or "Other" Discharges. ........ 22 |
| VI. | CONCLUSION .............................................................................................................. 23 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achal v. Gate Gourmet, Inc.*,
  114 F. Supp. 3d 781 (N.D. Cal. 2015) ................................................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 9

*Baptiste v. LIDS*,
  17 F. Supp. 3d 932 (N.D. Cal. 2014) ..................................................................... 17

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................. 9

*Berndt v. Cal. Dep't of Corr.*,
  No. C 03-3174 PJH, 2012 WL 1712350 (N.D. Cal. May 15, 2012) ....................... 14

*Brinker v. Axos Bank*,
  No. 22-CV-386-MMA (DDL), 2023 WL 4535529 (S.D. Cal. July 13, 2023) ................ 11, 12

*California v. U.S. Dep't of Homeland Sec.*,
  476 F. Supp. 3d 994 (N.D. Cal. 2020) .............................................................. 14, 20

*Cornwell v. Electra Cent. Credit Union*,
  439 F.3d 1018 (9th Cir. 2006) ................................................................................ 15

*EEOC v. Farmer Bros. Co.*,
  31 F.3d 891 (9th Cir. 1994) .................................................................................... 10

*Felix v. State Comp. Ins. Fund*,
  No. SACV 07-0061AGMLGX, 2007 WL 3034444 (C.D. Cal. Oct. 3, 2007) ...................... 12

*Fort Bend County v. Davis*,
  139 S. Ct. 1843 (2019) ............................................................................................ 13

*Fresquez v. County of Stanislaus*,
  2014 WL 1922560 (E.D. Cal. May 14, 2014) ......................................................... 16

*Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*,
  694 F.2d 531 (9th Cir. 1982) ............................................................................ 19, 20

*Hallmon v. Stanislaus Cnty. Hum. Res. Dep't*,
  No. 119CV01623DADEPG, 2022 WL 1204705 (E.D. Cal. Apr. 22, 2022) ...................... 11

*Harris v. County of Orange*,
    682 F.3d 1126 (9th Cir. 2012)........................................................................ 10

*Hazelwood Sch. Dist. v. United States*,
    433 U.S. 299 (1977)....................................................................................... 19

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977)................................................................................ *passim*

*Kennedy v. Bank of Am., N.A.*,
    2012 WL 1458196 *4 (N.D. Cal. Apr. 26, 2012) ........................................ 21

*Kimber v. Del Toro*,
    No. 3:21-CV-1487-BTM-BLM, 2024 WL 171386 (S.D. Cal. Jan. 16, 2024)........ 10, 11

*Kobayashi v. McMullin*,
    2022 WL 3137958 (C.D. Cal. May 31, 2022), *R&R adopted as modified*, 2022
    WL 3226169 (C.D. Cal. Aug. 8, 2022)........................................................... 21

*Kobbervig v. M.A.C. Cosms., Inc.*,
    No. CV 17-6543 DSF (EX), 2018 WL 6177259 (C.D. Cal. Mar. 26, 2018) ......... 12

*Loza v. Intel Americas, Inc.*,
    2020 WL 7625480 (N.D. Cal. Dec. 22, 2020) ................................................ 22

*Maldonado v. BJI Emps. Servs., Inc.*,
    No. SACV-22-01153-CJC, 2023 WL 8188468 (C.D. Cal. July 7, 2023)............ 17

*Marchioli v. Pre-Employ.com, Inc.*,
    2017 WL 8186761 (C.D. Cal. June 30, 2017) ................................................ 21

*Martin v. Lockheed Missiles & Space Co.*,
    29 Cal. App. 4th 1718 (1994).......................................................................... 11

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)................................................................................. 14, 15

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008)........................................................................... 9

*Mish v. TForce Freight, Inc.*,
    2021 WL 4592124 (N.D. Cal. Oct. 6, 2021)..................................................... 9

*Mitchell v. City of Santa Rosa*,
    No. C 08-02698 SI, 2008 WL 4534050 (N.D. Cal. Oct. 7, 2008) ................... 12

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009)............................................................................ 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-cv-07739- JST

*Napear v. Bonneville Int'l Corp.*,
   No. 2:21-CV-01956-DAD-DB, 2023 WL 3025258 (E.D. Cal. Apr. 20, 2023)...................... 17

*Obrey v. Johnson*,
   400 F.3d 691 (9th Cir. 2005)................................................................................. 18

*Oinonen v. TRX, Inc.*,
   2010 WL 396112 (N.D. Tex. Feb. 3, 2010).............................................................. 18

*Paparella v. Plume Design, Inc.*,
   2022 WL 2915706 (N.D. Cal. July 25, 2022)........................................................... 21

*Pottenger v. Potlack Corp.*,
   329 F.3d 740 (9th Cir. 2003)................................................................................. 23

*Rivera v. U.S. Postal Serv.*,
   830 F.2d 1037 (9th Cir. 1987)............................................................................... 13

*Sanders-Hollis v. Health & Hum. Servs. Agency*,
   No. 2:19-CV-00092-KJM-DB, 2020 WL 3642563 (E.D. Cal. July 6, 2020)...................... 10

*Schechner v. CBS Broad., Inc.*,
   2010 WL 2794374 (N.D. Cal. July 15, 2010)........................................................... 19

*Sheppard v. David Evans & Assoc.*,
   694 F.3d 1045 (9th Cir. 2012)............................................................................... 14

*Sperling v. Hoffmann-La Roche, Inc.*,
   924 F. Supp. 1346 (D.N.J. 1996)............................................................................ 18

*Spokeo, Inc. v. Robbins*,
   578 U.S. 330 (2016)................................................................................... 22, 23

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996)................................................................................... 9

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011)................................................................................. 9

*Stout v. Potter*,
   276 F.3d 1118 (9th Cir. 2002)............................................................................... 20

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002)............................................................................................ 14

*Taylor v. Adams & Assocs., Inc.*,
   817 F. App'x 510 (9th Cir. 2020) ........................................................................... 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-cv-07739- JST

*Thompson v. Permanente Med. Grp., Inc.*,
    No. C-12-1301 EMC, 2012 WL 4746924 (N.D. Cal. Oct. 3, 2012).......................................12

*Tolbert v. United States*,
    916 F.2d 245 (5th Cir. 1990)................................................................................................13

*Vasquez v. County of Los Angeles*,
    349 F.3d 634 (9th Cir. 2003)................................................................................................15

*Vizcaino v. Areas USA, Inc.*,
    2015 WL 13573816 (C.D. Cal. Apr. 17, 2015) ....................................................................16

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981)..................................................................................................9

*Williams v. Hous. Auth. of L.A.*,
    121 Cal. App. 4th 708 (2004)................................................................................................11

*Wynes v. Kaiser Permanente, Hosps.*,
    936 F. Supp. 2d 1171 (E.D. Cal. 2013).................................................................................14

*Zamora v. Penske Truck Leasing Co., L.P.*,
    2021 WL 809403 (C.D. Cal. Mar. 3, 2021) ...........................................................................9

**Statutes**

42 U.S.C. § 2000e-5(f)(1) .............................................................................................. 1, 10

42 U.S.C. §§ 2000e, et seq. ........................................................................................... *passim*

Cal. Gov. Code § 12960............................................................................................................ 10

California Fair Employment and Housing Act, Gov. Code §§ 12900, et seq................................. 1

**Other Authorities**

Rule 8 ....................................................................................................................................... 11

Rule 12(b)(6)........................................................................................................................... 8, 9

U.S. Constitution Article III..................................................................................................... 22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  I.     **INTRODUCTION**

2         Plaintiffs, two former employees of Defendant X Corp., successor in interest to Defendant

3  Twitter, Inc. (collectively "X"), have filed an amended complaint that attempts to adequately

4  allege that X discriminated against them and other female employees when it implemented a

5  reduction in force ("RIF") on November 4, 2022.  The Court should dismiss Plaintiffs' Second

6  Amended Complaint ("SAC") for substantially the same reasons it previously dismissed the

7  original Complaint.

8         First, Plaintiffs have failed to adequately allege that they have administratively exhausted

9  their remedies.  Judicial notice of Plaintiffs' earlier-filed right-to-sue notices demonstrates that

10 Plaintiffs failed to administratively exhaust their remedies *prior* to filing this lawsuit.  That failure

11 requires dismissal of Plaintiffs' Fair Employment and Housing ("FEHA") claim for lack of

12 jurisdiction.  This Court also should not excuse Plaintiffs' failure to comply with their mandatory

13 exhaustion requirement under Title VII of the Civil Rights Act of 1964 ("Title VII").

14        Second, the Court should dismiss the SAC for failure to state a plausible claim of

15 discrimination under Title VII or FEHA.  Despite the Court's earlier order dismissing the original

16 Complaint, which emphasized that the complaint was "devoid" of "basic information," Plaintiffs

17 have added only a few words to their SAC.  Plaintiffs' SAC remains so sparse that Plaintiffs have

18 failed to allege that they experienced the RIF, or any other adverse employment action.  Without

19 an allegation of an adverse action, Plaintiffs cannot plausibly plead discrimination and lack

20 standing to pursue their discrimination claims.  This alone warrants dismissal of the SAC.

21        Plaintiffs' discrimination claims also fail because, as the Court previously held, Plaintiffs

22 "fail to allege a plausible link between their layoff during the RIF and the fact that they are

23 women."  ECF No 38 at 7.  Plaintiffs purport to have data that reflects the gender demographics

24 of the employees who were subject to the RIF.  But they allege internally inconsistent, and

25 therefore implausible, data and statistical disparities.  Plaintiffs otherwise rest their claims on a

26 few tweets from Elon Musk that have no tie to the RIF or any employment policy or practice at

27 X.

28        Even viewed together in the best possible light, these allegations are far from plausibly

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

1  pleading a claim of discrimination.  Under a theory of disparate treatment, Plaintiffs fail to state a

2  claim because their allegations do not plausibly suggest that the decisionmakers for the RIF

3  selections intentionally discriminated against Plaintiffs and other employees based on their sex.

4  Plaintiffs also fail to state a discrimination claim under the alternative disparate impact theory of

5  liability because their allegations do not plausibly suggest a significant disparity between men and

6  women, given the inconsistent data and statistics, nor do they plausibly plead causation between

7  the RIF process and any alleged gender disparity.

8        Other infirmities continue to plague the SAC.  Although this Court instructed Plaintiffs to

9  correct their pleading to clarify that only Plaintiff Willow Turkal—the only California Plaintiff—

10  brings a FEHA claim, the SAC continues to purport that "Plaintiffs" (plural) assert a FEHA

11  violation.  Additionally, the SAC continues to make allegations on behalf of employees who were

12  purportedly subject to "constructive discharge" in the months since Musk acquired X, even

13  though Plaintiffs lack standing to assert a claim for a constructive discharge they did not suffer.

14        The Court should again dismiss Plaintiffs' complaint.

15  **II.**  **PROCEDURAL HISTORY**

16        **A.**  **This Court's Order Dismissing the Original Complaint.**

17        On December 7, 2022 Plaintiffs filed a Class Action Complaint (the "Complaint")

18  alleging that X discriminated against them and other female employees when it implemented a

19  RIF on November 4, 2022.  ECF No. 1 ¶ 18.  Plaintiffs also alleged that X again discriminated

20  against female employees under new alleged "policies" that required them to "work long hours at

21  high intensity" at the office rather than at home ("Post-RIF Policy").  *Id.* ¶ 44.  Plaintiffs Carolina

22  Strifling and Willow Turkal asserted sex discrimination claims under Title VII and California's

23  FEHA, and a derivative claim for declaratory judgment.

24        On May 8, 2023, this Court granted X's motion to dismiss Plaintiffs' Complaint.  ECF

25  Nos 20, 38.  In doing so, this Court made several key findings.

26        **1.**  **Strifling Cannot Assert a FEHA Claim.**

27        This Court held (and Plaintiffs conceded) that Strifling—a Florida employee—could not

28  pursue a FEHA claim and that "Plaintiffs should, on amendment, correct their complaint to reflect

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

that Turkal alone brings a FEHA claim."  ECF No. 38 ("Dismissal Order") at n. 2.

### 2.      Plaintiffs Lack Standing for the Post-RIF Policy.

Plaintiffs lacked standing to challenge the Post-RIF Policy alleged in the original Complaint because "Plaintiffs were not subject to the Post-RIF Policy" since "they were no longer working at [X] when it was enacted."  Dismissal Order at nn.5, 9.

### 3.      Plaintiffs Failed to Exhaust Administrative Remedies.

Plaintiffs had not filed charges with the Equal Employment Opportunity Commission ("EEOC") and California Civil Rights Department ("CRD")[1] prior to filing their original Complaint.  Dismissal Order at 5; *see also id.* n.3 (declining to consider Plaintiffs' notices of charges filed, without leave of court, after [X]'s reply).  The Court "decline[d] to excuse Plaintiffs' failure to exhaust their administrative remedies because they have not demonstrated that compliance with the requirement would irreparably harm the putative class."  *Id.* at 5.

### 4.      Plaintiffs Failed to Plausibly Plead Sex Discrimination Under Either Disparate Treatment or Disparate Impact Theory of Liability.

This Court concluded that, even if Plaintiffs had exhausted their administrative remedies, the claims in the original Complaint failed to state a plausible claim for relief under either a disparate treatment or disparate impact theory of liability.

### a.      Plaintiffs Failed to Plausibly Allege Disparate Treatment.

In their original Complaint, Plaintiffs "fail[ed] to allege a plausible link between their layoff during the RIF and the fact that they are women."  Dismissal Order at 7.  First, the complaint was "devoid of basic information: they do not describe their positions prior to the RIF or allege that they were performing satisfactorily in those positions."  *Id.*  The Court held that Plaintiffs must "allege facts" to make out a plausible claim.  *Id.*  Without "basic" information about Plaintiffs and their male counterparts, or their own job duties, or other similar information typically relied on in pleadings, Plaintiffs were "unable to allege that similarly situated men were not laid off during the RIF."  *Id.*

---

[1] The CRD is formerly known as the Department of Fair Employment and Housing ("DFEH"). For consistency, we refer to CRD throughout this brief even where the agency was known as the DFEH at the time in question.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

1    Second, Plaintiffs' disparate treatment fared no better when viewed through the lens of a

2    pattern or practice theory of disparate treatment.  As a threshold matter, the RIF was a "discrete

3    act[] insufficient to support the allegation that discriminatory conduct was 'a routine and regular

4    part' of [X]'s workplace," as required to assert a pattern or practice of discrimination.  *Id.* at 9

5    (adding that Plaintiffs "do not allege that discrimination was widespread throughout [X]").

6    Additionally, even if the RIF could constitute a "pattern or practice," Plaintiffs'

7    "remaining allegations, namely their statistics and Musk's comments, failed to support that X

8    knew that granting discretion to the managers would result in that discretion being used in a

9    discriminatory manner*.*"  *Id.* at 9.  This Court held that, although Plaintiffs alleged a significant

10   statistical disparity, the usefulness of statistics "depends on all of the surrounding facts and

11   circumstances*.*"  *Id.* at 9–10.  Plaintiffs failed to provide those "facts and circumstances"

12   necessary to build a plausible claim because they lacked "basic" factual allegations such as their

13   "positions at [X], whether they were performing satisfactorily, the treatment of similarly situated

14   men, and the identity of the managers" who made layoff decisions.  *Id.* at 10.

15   Plaintiffs' reliance on Musk's statements on the X platform ("tweets") did "not cure this

16   deficiency*.*"  *Id.*  Musk's comments were "not tied directly to the RIF" given that they predated

17   Musk's acquisition of X and Musk was not the decisionmaker in selecting employees for RIF

18   (those decisions were made by a "group of managers").  *Id.*

19   **b.      Plaintiffs Failed to Plausibly Allege Disparate Impact.**

20   This Court also concluded that Plaintiffs' barebones allegations could not sustain their

21   discrimination claims under a disparate impact theory.  Plaintiffs had failed to plausibly allege

22   causation because "the managers' ability to exercise their discretion caused the gender disparity

23   in the layoffs overall, and critically, Plaintiffs' own layoffs*.*"  *Id.* at 14.  Plaintiffs' reliance on

24   statistics was insufficient because, once again, "Plaintiffs fail to allege basic facts that would

25   situate them within the statistics.  Plaintiffs allege almost nothing about themselves—including

26   their positions prior [to] the RIF or their qualifications and performance history—that place the

27   statistics in context*.*"  *Id.* at 14–15.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

**B.     This Court's Order Striking the First Amended Complaint.**

Following the Court's Order dismissing the original Complaint, Plaintiffs filed their First Amended Complaint ("FAC") adding a new plaintiff (Sydney Frederick-Osborne) and asserting new age discrimination claims under the ADEA and FEHA on behalf of the new plaintiff and a putative class of former employees aged 50 and older.  ECF No. 41.  X moved to strike the new plaintiff and the new third and fourth causes of action for age discrimination.  ECF No. 46.

This Court granted X's motion and struck Frederick-Osborne, claims three and four, and the corresponding allegations of age discrimination.  ECF No. 57.  In short, the Court concluded that the FAC "plainly exceeds the scope of this Court's dismissal order, which reads, '*Plaintiffs* may file an amended complaint . . . *solely* to cure the deficiencies identified by this order.'"  ECF No. 57 at 2.

**III.     THE FACTUAL ALLEGATIONS IN THE SAC**

Plaintiffs filed their Second Amended Complaint (SAC) on January 19, 2024 alleging two counts of sex discrimination in violation of Title VII and FEHA.  ECF No. 60 (SAC); *see* 42 U.S.C. § 2000e-2(a)(1) (prohibiting termination of an employee's employment "because of . . . sex"); Cal. Gov. Code § 12940 (same).

**A.     The Plaintiffs.**

According to the SAC, Plaintiff Strifling is a female resident of Miami, Florida, where she worked at X as a "Senior Client Partner Lead" from June 2015 until November 2022.  SAC ¶ 6.  Plaintiff Turkal is a female resident of San Jose, California, where she worked for X as a "Staff Site Reliability Engineer" from June 2021 until November 2022.  *Id.* ¶ 7.  Plaintiffs assert that their "performance met the Company's expectations" throughout their employment.  *Id.* ¶¶ 6, 7.

The SAC does not allege any details about the date or reason for Plaintiffs' termination of employment in November 2022—not even whether it was voluntary, for cause, a part of the RIF, or a purported "constructive discharge."  *See id.* ¶ 1 (seeking to represent females who were "discharged or constructively discharged").

Nor does the SAC allege anything else about Plaintiffs.  For example, it does not allege Plaintiffs' job responsibilities or that Plaintiffs' job performance was equal to (or better than) the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

1   males who were not selected for layoff.

2         **B.**     **The November 4 Reduction in Force.**

The SAC and the original Complaint include nearly identical allegations about the November 4 RIF.  Specifically, per the SAC, in April 2022, an announcement was made that Musk would be purchasing the company.  SAC ¶ 16.  After Musk completed the purchase in October 2022, X "began a mass layoff that affected well more than half of [X]'s workforce."  *Id.* ¶ 17.  "Most laid off employees were notified on November 4," and "many" others became aware the night before.  *Id.* ¶ 19.

Decisions about which employees to select for the RIF were made "by a small group of managers under close supervision by Musk," including by managers from Tesla and other companies owned by Musk who allegedly "did not have much, if any, knowledge about [X]'s operations."  SAC ¶ 20.  These decisions "were made under extremely hurried circumstances, with little if any regard to employees' job performance, qualifications, experience, and abilities." *Id.* ¶ 18.

The SAC alleges data about the layoffs from one "spreadsheet" that purportedly shows "which [X] employees in the United States were retained and which were laid off."  SAC ¶ 23. The SAC says nothing about the origin or creator of the spreadsheet, nor does it provide any other factual allegation that suggests that the spreadsheet is genuine or accurate.  Nonetheless, "[a]ccording to the spreadsheet," Plaintiffs allege that X laid off 2,621 of its 5,134 U.S. employees in the November 4 RIF.  *Id.* ¶ 23.  X laid off 1,271 of 2,234 (57%) females, and 1,350 of 2,900 (47%) males.  *Id.* ¶¶ 24, 25.  A labor economist allegedly performed a chi-squared test that shows this demographic distribution is 7.3491 standard deviations from the expected or normal distribution.  *Id.* ¶¶ 37.

The SAC also reports layoffs by sex categorized by "engineering-related roles" and "non-engineering-related-roles," although there are no details as to what criteria were used to categorize a role as one or the other.  While the general female/male employee RIF data and statistics in the SAC are identical to those alleged in the original Complaint, the data about layoffs in engineering-related roles and non-engineering-related roles is significantly different.  Plaintiffs

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

1   provide no allegations as to why, or how, that could be the case.  The SAC alleges that 507 of 863

2   (59%) females, and 826 of 1,834 (45%) of males were laid off in engineering-related roles, a

3   distribution that is 7.6380 standard deviations from the expected distribution.  *Id.* ¶¶ 29, 30.  But

4   per the original Complaint, X laid off 630 of 1,003 (63%) females and 1,037 of 2,150 (48%)

5   males in engineering-related roles.  ECF No. 1 ¶ 36.  Although the numbers vary by hundreds of

6   employees, Plaintiffs alleged in their original Complaint that this distribution was precisely the

7   same number of standard deviations from the norm as it is in their SAC (i.e., 7.6380), which

8   cannot be accurate.  ECF No. 1 ¶ 36.

9          Similarly, for non-engineering-related roles, the SAC reports that X laid off 764 of 1,371

10   (56%) females and 524 of 1,066 (49%) males, which the SAC says is 4.0309 standard deviations

11   from the expected distribution.  SAC ¶ 31.  But according to the original Complaint, X laid off

12   545 of 1,062 (51%) females and 312 of 748 (42%) males, which also fell precisely 4.0309

13   standard deviations away from a normal distribution.  ECF No. 1 ¶ 37.  Again, this cannot be

14   accurate.

15          The SAC also includes a "chart" that "summarize[s]" the data and statistical analyses, but

16   the numbers in the chart do not match the SAC allegations about engineering and non-

17   engineering roles—rather, the "chart" reflects the numbers reported in the original Complaint.

18   SAC ¶¶ 29–32; ECF No. 1 ¶ 38 (chart).

19          The SAC (like the original Complaint) also includes a link to a news article containing

20   purported "before and after" photos of a few dozen employees in a conference room that

21   allegedly illustrates the disproportionate decline in the number of female employees at X.  SAC ¶

22   21; ECF No. 1 ¶ 27.

23   **C.     The Allegations Regarding Discriminatory Animus.**

24          The SAC contains nearly the same allegations about Musk's purported discriminatory

25   animus that "resulted" in the discriminatory RIF.  SAC ¶ 4.  Plaintiffs cite to Musk's tweets from

26   many months before he acquired X as reflecting gender animus for the RIF: (a) naming a school

27   with the acronym "TITS" and "making other jokes about women's breasts;" (b) that

28   "[t]estosterone rocks;" and (c) praising motherhood "as important as any career."  SAC ¶¶ 34-36;

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

*see also* ECF No. 1 ¶¶ 23-25.

In their SAC, Plaintiffs now add one act that took place after Musk acquired X:  that Musk painted white the "w" on the "Twitter" office sign "so that the company's name appeared to be 'Titter.'"  SAC ¶ 37.

Plaintiffs do not allege any gender-based animus directed specifically toward them or any other X employee, or any alleged comments by Musk or any X manager tied to the RIF.  Nor do Plaintiffs allege that any of the unidentified decisionmakers harbored any gender animus toward them or other women.  Instead, they assert for the first time in the SAC the conclusion that as X's "new owner and CEO, who oversaw and closely managed the employees who were making layoff decisions and implementing his policies, Musk's discriminatory animus is imputed to [X]."  SAC ¶ 34.

### D.    The Putative Class of All Discharges "Since" Acquisition.

Plaintiffs' putative class—which is not formally defined—includes female employees who were terminated, including those constructively terminated, in the RIF or at any time "since" Musk acquired X.  SAC ¶ 1 (alleging Plaintiffs sue "on behalf of other female [X] employees across the country who have been discharged or constructively discharged from their jobs during the chaotic months since" Musk's X acquisition); *see also id.* ¶ 2 (alleging Title VII and FEHA claims challenging "termination of female employees since Elon Musk's acquisition"); *id.* ¶ 8 (alleging class of "all similarly situated female [X] employees . . . whose jobs have been affected by the company's layoffs since Elon Musk acquired" X); *id.* ¶ 34 (alleging more women than men "were laid off and forced out of the company through constructive discharge since Musk's acquisition"); *id.* at 9 (using the plural "mass layoffs" in Counts I and II).

Nowhere in the SAC is there an allegation about the period that constitutes the "months since" Musk's purchase or the employment actions that are encompassed in the term "discharge"—which, by its plain meaning, includes more than the November 4 RIF—and "constructive[] discharge."

### IV.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint's

MORGAN, LEWIS & BOCKIUS LLP ATTORNEYS AT LAW SAN FRANCISCO

allegations.  A court must dismiss a claim unless the complaint articulates "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6).  The "plausibility standard is not akin to a 'probability requirement,' but rather, it asks for more than a sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556-57).  A complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) ("[B]are assertions . . . amounting to nothing more than a 'formulaic recitation of the elements'" of a claim "are not entitled to an assumption of truth") (quoting *Iqbal*, 556 U.S. at 681). Therefore, the Court may not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (holding that "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim").

The Court considers whether the pleading's "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," such that "it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Dismissal is required when a complaint lacks a cognizable legal theory or fails to allege facts sufficient to support a cognizable legal theory.  *Twombly*, 550 U.S. at 555; *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); Fed. R. Civ. P. 12(b)(6).

In a putative class action, the plausibility standard under *Twombly* applies not only to the named plaintiff's individual claims but also to the class claims.  *See, e.g., Mish v. TForce Freight, Inc.*, 2021 WL 4592124, at *8 (N.D. Cal. Oct. 6, 2021) (dismissing class claims under *Twombly* standard); *Zamora v. Penske Truck Leasing Co., L.P.*, 2021 WL 809403, at *3 (C.D. Cal. Mar. 3, 2021) (dismissing class claims because "Plaintiffs do not assert any factual support for their class allegations . . . Plaintiffs cannot point to a fish in the surf to force Defendant on a deep-sea charter

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

1  [of class discovery]”).

2  **V.**    **ARGUMENT**

3     **A.    Plaintiffs' Title VII and FEHA Claims Fail for Failure to Exhaust.**

4        Prior to filing a lawsuit alleging violations of Title VII or FEHA, plaintiffs must first

5  exhaust their administrative remedies by filing an administrative complaint with the appropriate

6  administrative agency and obtaining a right-to-sue notice.  42 U.S.C. § 2000e-5(f)(1); Cal. Gov.

7  Code § 12960; *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994) (explaining that a

8  plaintiff is "required to exhaust her EEOC administrative remedies before seeking federal

9  adjudication of her claims"); *Harris v. County of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012)

10  ("A plaintiff asserting claims of discrimination pursuant to the FEHA must exhaust the statute's

11  administrative remedies before filing a lawsuit.").

12            **1.    Plaintiffs Fail to Adequately Plead Exhaustion.**

13        This Court should dismiss the SAC because Plaintiffs fail to adequately plead that they

14  have exhausted their claims.  The SAC includes only the conclusory allegation that Plaintiffs have

15  "filed an administrative charge of sex discrimination," which Strifling filed under Title VII with

16  the EEOC and Turkal filed under FEHA with the CRD, and that they each "received a Right to

17  Sue letter."  SAC ¶¶ 38, 39.  Plaintiffs do not attach their charges or their right-to-sue letters, or

18  detail whom Plaintiffs filed their charges against, the allegations in the charges, the filing or right-

19  to-sue dates, or that the charges and lawsuit were filed within the statutorily prescribed time

20  periods.

21        Plaintiffs' cursory allegations are insufficient to plead compliance with their

22  administrative exhaustion requirements.  *See, e.g.*, *Kimber v. Del Toro*, No. 3:21-CV-1487-BTM-

23  BLM, 2024 WL 171386, at *5 (S.D. Cal. Jan. 16, 2024) (dismissing Title VII claim because

24  plaintiff "only made a general reference to the administrative process" in his complaint, which

25  was "insufficient to show compliance with the specific process" of timely administrative

26  exhaustion); *Sanders-Hollis v. Health & Hum. Servs. Agency*, No. 2:19-CV-00092-KJM-DB,

27  2020 WL 3642563, at *1 (E.D. Cal. July 6, 2020) (dismissing Title VII and FEHA claims where

28  complaint "contains only the bare allegation that plaintiff 'has received Right to Sue letters . . .

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

and has thus exhausted all necessary administrative remedies'" because such "conclusory allegations provide the court no means of evaluating" whether prerequisites have been met and fail to meet Rule 8 pleading requirements); *Hallmon v. Stanislaus Cnty. Hum. Res. Dep't*, No. 119CV01623DADEPG, 2022 WL 1204705, at *4 (E.D. Cal. Apr. 22, 2022) (holding that even though Title VII is a procedural requirement, plaintiff "must allege compliance with that requirement . . . in order to state a claim on which relief may be granted" and dismissing claim where plaintiff failed to allege dates of her charge and right-to-sue letter).[2]

### 2.   Plaintiffs Cannot Cure Their Exhaustion Defect By Amendment.

Plaintiffs' right-to-sue letters (filed at ECF No. 30)[3] establish that Plaintiffs cannot cure their defective allegations about administrative exhaustion because they failed to file their charge before commencing this lawsuit—they filed their charges on February 22, 2023, nearly three months after filing the original Complaint on December 7, 2022.  *See* ECF Nos. 1, 30. Consequently, this Court lacks jurisdiction to hear Plaintiffs' FEHA claim and must dismiss that claim without leave to amend.  It also should dismiss Plaintiffs' Title VII claim for failure to comply with its mandatory exhaustion requirement.

### a.   Plaintiffs' Failure to Exhaust Prior to Commencing Suit Deprives This Court of Jurisdiction over Their FEHA Claim.

It is "well understood that" administrative exhaustion under FEHA "is a jurisdictional prerequisite to resort to the court."  *Brinker v. Axos Bank*, No. 22-CV-386-MMA (DDL), 2023 WL 4535529, at *12 (S.D. Cal. July 13, 2023); *see also, e.g.*, *Williams v. Hous. Auth. of L.A.*, 121 Cal. App. 4th 708, 722 (2004) ("[T]he exhaustion of an administrative remedy has been held ***jurisdictional*** in California." (emphasis in original)); *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1724 (1994) ("We have recognized, in the context of the Fair Employment

---

[2] Plaintiffs' earlier filing of their right-to-sue letters in connection with X's motion to dismiss the original Complaint (ECF No. 30) does not satisfy Plaintiffs' pleading requirements.  *See Kimber*, 2024 WL 171386, at *5 (dismissing claim for failure to plead exhaustion where EEOC papers were attached to reply brief because "Plaintiff cannot rely on documents outside of the Third Amended Complaint to satisfy pleading requirements").

[3] *See* X's contemporaneously filed Request for Judicial Notice of Plaintiffs' right-to-sue letters filed at ECF No. 30.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

1    and Housing Act, that the failure to exhaust an administrative remedy is a jurisdictional, not a

2    procedural, defect." (alterations omitted)); *Thompson v. Permanente Med. Grp., Inc.*, No. C-12-

3    1301 EMC, 2012 WL 4746924, at *2 (N.D. Cal. Oct. 3, 2012) ("As a general and well-settled

4    rule, a jurisdictional prerequisite to bringing a civil action under FEHA is exhausting the

5    administrative remedies" (alterations omitted)).

6        Because Plaintiffs failed to file their CRD charge prior to commencing this lawsuit, this

7    Court lacks jurisdiction over the FEHA claim and must dismiss the claim without leave to amend.

8    Courts agree that, because FEHA's administrative exhaustion requirement is jurisdictional,

9    dismissal is required—Plaintiffs' after-the-fact right-to-sue letter from the CRD is insufficient.

10   For example, in *Kobbervig*, the plaintiffs filed their charge with the CRD "three months after

11   commencing this action in state court," similar to Plaintiffs here.  *Kobbervig v. M.A.C. Cosms.,*

12   *Inc.*, No. CV 17-6543 DSF (EX), 2018 WL 6177259, at *3 (C.D. Cal. Mar. 26, 2018).  Although

13   the plaintiffs had filed their charge before the operative third amended complaint in that case, the

14   court concluded that it "has no jurisdiction over these claims" and dismissed the FEHA claims,

15   and denied leave to amend "because to assert these claims, Plaintiffs must file a new lawsuit."  *Id.*

16       Similarly, in *Mitchell v. City of Santa Rosa*, this Court granted defendant's motion to

17   dismiss a FEHA gender discrimination claim because the plaintiff received a right-to-sue letter "a

18   few weeks after he filed his lawsuit."  No. C 08-02698 SI, 2008 WL 4534050, at *5 (N.D. Cal.

19   Oct. 7, 2008).  This Court ruled that a plaintiff "must exhaust his administrative remedies and

20   receive a right-to-sue letter ***before*** filing a lawsuit, otherwise, the Court lacks jurisdiction" and the

21   plaintiff "must re-file his claim."  *Id.* (emphasis in original); *see also Felix v. State Comp. Ins.*

22   *Fund*, No. SACV 07-0061AGMLGX, 2007 WL 3034444, at *6–7 (C.D. Cal. Oct. 3, 2007)

23   (holding that because disability discrimination charge was filed with CRD "after the filing of this

24   lawsuit, it cannot serve to exhaust Plaintiff's administrative remedies for this suit," and if the

25   plaintiff "wishes to pursue this claim, she must bring it in a new lawsuit"); *Brinker*, 2023 WL

26   4535529, at *12 (dismissing FEHA claims without leave to amend because it was apparent

27   plaintiff could not cure defect because she had failed to administratively exhaust and time to do

28   so had expired).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

1

**b.    Plaintiffs' Failure to Exhaust Prior to Commencing Suit Warrants Dismissal of Their Title VII Claim.**

2

Title VII's administrative exhaustion requirement is procedural, rather than jurisdictional,

3

but dismissal is nonetheless appropriate here to give meaning to the administrative requirement.

4

*Fort Bend County v. Davis*, 139 S. Ct. 1843, 1851 (2019) (holding Title VII's administrative

5

exhaustion requirement is a "mandatory claim-processing rule" but not jurisdictional).

6

*Tolbert v. United States* is instructive on this point.  916 F.2d 245 (5th Cir. 1990).  In

7

*Tolbert*, the plaintiff filed an appeal with the EEOC and subsequently filed a lawsuit in federal

8

court ten days later, prior to the EEOC issuing a decision on the appeal and prior to the expiration

9

of the 180-day deadline for the EEOC to issue a decision.  *Id.* at 247.  The defendants filed a

10

motion for summary judgment arguing, in part, that the plaintiff had failed to exhaust her

11

administrative remedies.  *Id.*  The EEOC issued its decision on the plaintiff's appeal prior to the

12

hearing on defendants' motion.  *Id.*  The court nonetheless held that "the defect was not cured"

13

"when the EEOC issued its decision before [the plaintiff's] claim was dismissed by the district

14

court."  *Id.* at 249.  The court stated:

15

16

> To hold otherwise would allow a plaintiff to file an action and begin civil proceedings—discovery, motions to dismiss and for summary judgment, and so on—before completing the course of administrative review.  A plaintiff could thereby largely circumvent the rule that she must exhaust her administrative remedies.

17

18

19

*Id.*  The court further held that "[s]uch a strict construction . . . is necessary if the aims of the

20

exhaustion requirement are to be served."  *Id.*; *see also Rivera v. U.S. Postal Serv.*, 830 F.2d

21

1037, 1039 (9th Cir. 1987) (holding that an employee "was not free to file in the district court

22

until the EEOC ruled" on his appeal despite the employee withdrawing his appeal prior to its

23

adjudication and filing suit after his withdrawal).

24

Notably, while many courts have permitted a plaintiff to cure their failure to

25

administratively exhaust their Title VII claim by obtaining a right-to-sue letter after the filing of

26

the lawsuit, it is not so simple here.  Most, if not all, instances where courts have permitted

27

plaintiffs to cure their exhaustion defects after filing suit have been where the plaintiffs had filed

28

EEOC charges before filing their and simply received the right-to-sue letter afterward.  In

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

contrast, Plaintiffs here waited two months after commencing this lawsuit (and after X moved to dismiss) to initiate any charge with the EEOC, plainly ignoring the mandatory claim-processing rule. *See Berndt v. Cal. Dep't of Corr.*, No. C 03-3174 PJH, 2012 WL 1712350, at *2 (N.D. Cal. May 15, 2012) (discussing "this critical distinction" between filing a charge prior to court complaint and satisfying administrative exhaustion requirement with subsequent issuance of right-to-sue and the "inquiry actually present before the court, (i.e., whether an EEOC charge filed subsequent to the filing of a complaint may satisfy exhaustion requirements)").

### B. Plaintiffs Fail to Plausibly Allege Sex Discrimination.

Plaintiffs' Title VII and FEHA sex discrimination claims can be based on disparate treatment or disparate impact. *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 n.1 (9th Cir. 2012). Disparate treatment exists when the employer "treats some people less favorably than others because of a protected characteristic." *Id.* (alterations omitted).[4] Disparate impact, by contrast, is demonstrated when "employment practices that are facially neutral in their treatment of different groups . . . in fact fall more harshly on one group than another." *Id.; see also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 (1977) (same).

The SAC fails to plausibly plead discrimination under either theory of liability. The SAC reads substantially the same as the original Complaint and does not cure the critical deficiency that this Court identified in its Dismissal Order: that Plaintiffs fail to allege "basic information" that establishes a "plausible link between their layoff during the RIF and their sex." Dismissal Order at 11; *see also id.* at 15 (holding that Plaintiffs fail to allege "basic facts").

#### 1. Plaintiffs Fail to Plausibly Plead Disparate Treatment.

On a motion to dismiss, a plaintiff is "not required to plead a prima facie case of discrimination." *Sheppard*, 694 F.3d at 1050 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508–11 (2002)). Nonetheless, evidentiary frameworks like *McDonnell Douglas* and *Teamsters* are a "useful touchstone to evaluate whether a claim survives a motion to dismiss." *California v. U.S. Dep't of Homeland Sec.*, 476 F. Supp. 3d 994, 1024 (N.D. Cal. 2020); *see also Achal v. Gate*

---

[4] "Discrimination under FEHA and Title VII is proven using the same factors." *Wynes v. Kaiser Permanente, Hosps.*, 936 F. Supp. 2d 1171, 1192 (E.D. Cal. 2013).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

1  *Gourmet, Inc.*, 114 F. Supp. 3d 781, 796–97 (N.D. Cal. 2015) (holding courts "look to those

2  [prima facie] elements to analyze a motion to dismiss, so as to decide, in light of judicial

3  experience and common sense, whether the challenged complaint contains sufficient factual

4  matter . . . to state a claim for relief that is plausible on its face").

5          **a.       The SAC Does Not Allege Facts to Plausibly
                       Suggest Intentional Discrimination Based on Sex.**

6

7          The SAC, like the original Complaint, is "devoid of basic information" from which one

8  could plausibly infer sex discrimination.[5]  Dismissal Order at n.6.  A prima facie case of disparate

9  treatment consists of a showing that (1) plaintiff belongs to a class of protected persons, (2)

10  plaintiff performed her job satisfactorily, (3) plaintiff suffered an adverse employment action, and

11  (4) plaintiff's employer treated the plaintiff differently than a similarly situated employee who

12  does not belong to the same protected class as the plaintiff.  *Cornwell v. Electra Cent. Credit

13  Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S.

14  792, 802 (1973)).

15          As a threshold matter, Plaintiffs' disparate treatment claim is doomed because they fail to

16  allege that they suffered an adverse employment action.  Plaintiffs state that they worked at X

17  "until November 2022" but do not identify the reasons, circumstances, or timing of their

18  separation.  SAC ¶¶ 6–7.[6]  But even if Plaintiffs have plausibly pled an adverse action (which

19  they have not), the SAC fails to plausibly allege disparate treatment because Plaintiffs offer no

20  factual allegations linking their layoffs to their sex.  This was true of the original Complaint as

21  well, which this Court dismissed as "devoid of basic information" such as "[Plaintiffs'] positions"

22  or that they "were performing satisfactorily."  Dismissal Order at 7.  In response, Plaintiffs made

23  ---

24  [5] A plaintiff may also demonstrate disparate treatment through "direct" evidence, which is
    "evidence which, if believed, proves the fact of discriminatory animus without inference or

25  presumption."  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).  Plaintiffs
    have not alleged any direct evidence of sex discrimination in the SAC.

26  [6] This allegation also fails to comply with the Court's express instruction to "allege the date that
    they were laid off" in an amended complaint.  SAC ¶¶ 6–7; Dismissal Order at n.1 (stating that

27  "Plaintiffs do not explicitly state whether they themselves were laid off during the November 4,
    2022 RIF, although the parties appear to accept this fact as true" and instructing "Plaintiffs should

28  allege the date that they were laid off if they amend their complaint").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

1  the bare minimum of amendments:  they added their respective job titles—Senior Client Partner

2  Lead and Staff Site Reliability Engineer—and stated that their "performance met the Company's

3  expectations" throughout employment.  SAC ¶¶ 6–7.

4          This does not move the needle on plausibility.  Plaintiffs' statement that their

5  "performance met the Company's expectations" is too generic to accept as true and constitute

6  circumstantial evidence of causation. SAC ¶¶ 6–7.  *See, e.g., Vizcaino v. Areas USA, Inc*., 2015

7  WL 13573816, at *4 (C.D. Cal. Apr. 17, 2015) (dismissing discrimination claim because plaintiff

8  "merely includes conclusory allegations . . . that he was performing his job competently, without

9  offering any facts in support of that conclusion"); *Fresquez v. County of Stanislaus,* 2014 WL

10  1922560, at *5 (E.D. Cal. May 14, 2014) (dismissing discrimination claim because plaintiff's

11  "threadbare assertion that she was competent to perform her duties" was insufficient to state

12  claim).

13          Second, and more importantly, even if the Court were to credit Plaintiffs' conclusory

14  allegation as a properly alleged fact, which it should not, Plaintiffs' trivial amendments do

15  nothing to remedy the central flaw in their SAC: that Plaintiffs have not "allege[d] facts—

16  whether that includes allegations of their job performance—to establish a plausible link between

17  discriminatory conduct and the fact that the plaintiff is of a protected class."  Dismissal Order at

18  n.6.  For example, the SAC does not allege anything about the comparative qualifications,

19  experience, job performance, or abilities of any male employees in substantially similar positions.

20  *Id.* at 7–8 (noting Plaintiffs were "unable to allege that similarly situated men were not laid off").

21  Nor does the SAC allege anything about the identity, gender, or other information about the

22  "small group of managers" who made RIF selections that would reasonably suggest they harbored

23  discriminatory animus toward Plaintiffs or female employees.  *See id.* at 8 (noting Plaintiffs'

24  failure to "identify the 'small group of managers'" making layoff decisions).  The SAC does not

25  even plausibly allege that the small group of managers, who allegedly knew little about X and

26  "hurried[ly]" made thousands of layoff decisions, ever possessed knowledge of the gender of

27  [X]'s employees when selecting employees for the RIF.  *See, e.g.*, *Taylor v. Adams & Assocs.,*

28  *Inc.*, 817 F. App'x 510, 511 (9th Cir. 2020) (affirming dismissal of disability claim where

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

complaint "lacked plausible allegations that defendant . . . had knowledge of her disabilities").

Plaintiffs' allegations about Musk's tweets pre-acquisition also do not save their claims. The tweets do not reasonably suggest that sex-based animus motivated Plaintiffs' discharge or anyone else's discharge in the November 4 RIF.  One reason the tweets are insufficient is that they pre-dated Musk's Twitter acquisition by several months.  SAC ¶¶ 35–36; Dismissal Order at 10 (finding statements "were not tied directly to the RIF, as Musk made them prior to his acquisition").  Plaintiffs attempt to rectify this by alleging a post-acquisition act:  Musk used white paint to obscure the "w" on the "Twitter" sign in April 2023.  SAC ¶ 37.  But this ambiguous act, also months apart from the RIF, does not support an inference of sex-based animus.  *See, e.g.*, *Baptiste v. LIDS*, 17 F. Supp. 3d 932, 951–52 (N.D. Cal. 2014) (recognizing comments like "lazy" and "thief" were "race-neutral").  Another reason these allegations fail to create a plausible inference of sex discrimination is that they are all attributed to Musk, but Plaintiffs do not allege that it was Musk who discriminated against them or made discriminatory RIF selections.  Rather, Plaintiffs allege that other (unnamed) managers made the decisions while purportedly working under Musk's supervision.  SAC ¶ 20; Dismissal Order at 10; *see also, e.g.*, *Maldonado v. BJI Emps. Servs., Inc.*, No. SACV-22-01153-CJC (JDEx), 2023 WL 8188468, at *6 (C.D. Cal. July 7, 2023) (collecting cases holding that comments "unrelated to the decisional process are insufficient" to demonstrate that employer used unlawful criteria); *Napear v. Bonneville Int'l Corp.*, No. 2:21-CV-01956-DAD-DB, 2023 WL 3025258, at *7 (E.D. Cal. Apr. 20, 2023) (dismissing discrimination claims where Caucasian plaintiff, who alleged that defendant made "public statement" about "Black Lives Matter" and "respect for 'the black community,'" failed to allege "any facts connecting" his protected status to the "decision to terminate him" or any "comments or actions suggesting that race or gender played any role" in his termination).

### b.    Plaintiffs Fail to Allege Pattern or Practice of Discrimination.

A plaintiff also can demonstrate disparate treatment through a "pattern or practice" of discrimination under *Teamsters*.  Under this theory, a plaintiff's prima facie case requires showing that discrimination was "the company's standard operating procedure" and "repeated,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

1  routine, or of a generalized nature," rather than "the mere occurrence of isolated or accidental or

2  sporadic discriminatory acts." *Teamsters*, 431 U.S. at 336 & n.16; *see also Obrey v. Johnson*, 400

3  F.3d 691, 694 (9th Cir. 2005) (citing *Teamsters*).  A pattern or practice allegation is typically

4  shown by evidence of significant statistical disparities coupled with anecdotal evidence that bring

5  "the cold numbers convincingly to life."  *Teamsters*, 431 U.S. at 338-39.

6       Even assuming for purposes of this motion only that Plaintiffs' alleged statistics are

7  accurate, the SAC fails to plausibly plead a pattern or practice of sex discrimination for two

8  reasons.  First, "Plaintiffs do not allege that discrimination was widespread throughout Twitter."

9  Dismissal Order at 9.  They allege only a singular RIF event that was the product of a "small

10  group" of decisionmakers "quickly" making decisions "in a period of just a few days."  SAC ¶¶

11  18–20.  The RIF constitutes an isolated, "discrete act[]" and does not plausibly suggest "that

12  discriminatory conduct was 'a routine and regular part' of [X]'s workplace."  Dismissal Order at

13  9; *see also Oinonen v. TRX, Inc.*, 2010 WL 396112, at *4 (N.D. Tex. Feb. 3, 2010) (granting

14  defendant's motion to dismiss because "plaintiffs have provided only statistics and conclusory

15  allegations" about a single layoff, and such a "one-shot event cannot constitute a pattern or

16  practice of discrimination"); *Sperling v. Hoffmann-La Roche, Inc.*, 924 F. Supp. 1346 (D.N.J.

17  1996) (holding claim "does not fall within the framework of a pattern-or-practice case" because

18  the alleged "standard operating procedure was only used once, i.e., the Guidelines were used only

19  during [the RIF]").[7]

20       Second, even if the RIF could be the basis for a pattern or practice claim, Plaintiffs' claim

21  fails because they have not plausibly alleged that X knew that the RIF procedure—granting

22  discretion to the small group of managers—would result in discriminatory layoff selections, as

23  required to demonstrate discriminatory motive or animus.  Dismissal Order at 9.  Although the

24

---

25  [7] Plaintiffs also fail to plead a "standard operating procedure" of discrimination because they
   ascribe discriminatory animus only to Musk, no one else, and do not allege that Musk made any
26  employment decisions at X.  Plaintiffs allege only that he was owner/CEO and that he
   "supervis[ed]" the group managers who made the RIF decisions.  SAC ¶¶ 20, 34–37.  Such
27  allegations about Musk are insufficient to allege that discrimination was "routine and regular"
   throughout X.  Dismissal Order at 9 (questioning "whether conduct solely attributed to Musk can
28  be imputed to [X]").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

SAC relies nearly entirely on RIF statistics, statistics alone are insufficient to support Plaintiffs' claim of disparate treatment.[8]  Taking a "purely statistical" approach to a disparate treatment claim "would almost completely blur the distinction between 'impact' and 'intent,' and thus eliminate the legal difference between disparate impact and disparate treatment lawsuits."  *Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*, 694 F.2d 531, 552 (9th Cir. 1982) (explaining that "[r]egardless of how devastating or reliable the statistics may look, the issue remains in [disparate treatment] cases whether a particular isolated historical event was discriminatory . . . . The question whether the facts proved are sufficient to permit a legal inference of discriminatory intent cannot properly be reduced into a mere battle of statistics"); *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 312 (1977) (quoting *Teamsters*, 431 U.S. at 340 for "admonish[ment]" that statistics "come in infinite variety" and their "usefulness depends on all of the surrounding facts and circumstances"); *see also Schechner v. CBS Broad., Inc*., 2010 WL 2794374, at *7 (N.D. Cal. July 15, 2010) (collecting cases).

Yet the SAC contains virtually no anecdotal allegations that might bolster the statistical allegations.  As discussed above, there is nothing to plausibly suggest that any disproportionate layoff of women compared to men was driven by discriminatory intent.  *See* Dismissal Order at 10 ("Absent the 'facts and circumstances'" allegations that are "commonly relied upon at the pleading stage," Plaintiffs failed to allege disparate treatment under pattern or practice theory). The SAC does not allege any gender-based animus directed toward Plaintiffs or any other X employee.  Nor does it identify the managers who made the RIF decisions, state the genders of those managers, or allege that any of these unidentified managers harbored any gender animus toward Plaintiffs or other women.  SAC ¶¶ 18-20.  The SAC offers nothing but a few tweets from Musk that do not establish sex-based animus nor have any nexus to the RIF, to Plaintiffs, or to any other decision or policy at X.  *Id.* ¶¶ 35-37.  Without substantial anecdotal allegations that plausibly suggest that gender animus informed X's decisions, Plaintiffs' pattern or practice claim

---

[8] Plaintiffs' alleged statistics also fail to support their disparate treatment claim because the statistics are internally inconsistent and lack plausibility.  *See supra* § III.B (SAC allegations regarding RIF); *infra* § V.B.2 (failure to plausibly plead significant disparate impact on females).

1  fails because there is nothing to "bring the cold numbers convincingly to life." *Teamsters*, 431

2  U.S. at 336; *see also Gay*, 694 F.2d at 552-53 (holding "legal inference of discriminatory intent

3  cannot properly be reduced into a mere battle of statistics"); Dismissal Order at 10-11 (holding

4  allegations about Musk's statements "do not cure this deficiency" in Plaintiffs' failure to

5  plausibly allege disparate treatment because the statements "were not tied directly to the RIF" and

6  were made by Musk, who was not the one allegedly "ma[king] the layoff decisions").

### 2.   Plaintiffs Fail to Plausibly Plead Disparate Impact.

8         Disparate impact claims "involve employment practices that are facially neutral in their

9  treatment of different groups but that in fact fall more harshly on one group than another."

10 *Teamsters*, 431 U.S. at 335.  Under Title VII and FEHA, "[a] plaintiff establishes a prima facie

11 case of disparate impact by showing a significant disparate impact on a protected class caused by

12 a specific, identified, employment practice or selection criterion."  *Stout v. Potter*, 276 F.3d 1118,

13 1121 (9th Cir. 2002).  While Plaintiffs are not required to establish a prima facie case through

14 their pleadings, the elements are a "useful touchstone to evaluate whether a claim survives a

15 motion to dismiss."  *U.S. Dep't of Homeland Sec.*, 476 F. Supp. 3d at 1024.

16        Plaintiffs' discrimination claim fails under a disparate impact theory because they fail to

17 plausibly allege the existence of a significant impact on women and the element of causation.

18 First, Plaintiffs fail to plausibly allege a significant impact on women because Plaintiffs'

19 purported data and statistics are internally inconsistent and self-contradictory.  For example,

20 Plaintiffs allege that Twitter laid off 507 of 863 females in engineering-related roles, and 826 of

21 1,834 males in those roles, resulting in a 7.6380 standard deviations.  SAC ¶ 29.  But elsewhere in

22 the SAC (and in the original Complaint), Plaintiffs allege numbers that differ by approximately

23 25%, or hundreds of employees:  630 (not 507) of 1003 (not 863) females laid off and 1037 (not

24 826) of 2,150 (not 1,834) males laid off in engineering-related roles, which purportedly resulted

25 in precisely the same number of standard deviations (7.6380) after a chi-squared test.  SAC ¶¶ 29,

26 32; ECF No. 1 ¶ 35.  Plaintiffs offer no explanation for these numerical discrepancies in historical

27 data purportedly drawn from a static spreadsheet.  *See* SAC ¶ 23 & n.1 (basis of data).  In the

28 absence of any explanatory factual allegations, these contradictions call into question the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

1    accuracy, reliability, and veracity of these statistics and render Plaintiffs' allegations of

2    significant statistical disparity implausible.  *See, e.g., Kennedy v. Bank of Am., N.A.*, 2012 WL

3    1458196 *4 (N.D. Cal. Apr. 26, 2012) ("While the Court does not determine the truth of the

4    allegations on a motion to dismiss, the Court need not accept allegations that are contradicted by

5    other allegations in the complaint."); *Marchioli v. Pre-Employ.com, Inc*., 2017 WL 8186761, *19,

6    2017 (C.D. Cal. June 30, 2017) ("Contradictory allegations such as these are inherently

7    implausible, and would not survive a motion to dismiss."); *Kobayashi v. McMullin*, 2022 WL

8    3137958, at *38 (C.D. Cal. May 31, 2022), *R&R adopted as modified*, 2022 WL 3226169 (C.D.

9    Cal. Aug. 8, 2022) (noting allegations were "internally inconsistent" and thus "d[id] not suffice to

10   state a claim.")

11        Second, even if Plaintiffs have plausibly pled a significant impact on women, Plaintiffs

12   have not introduced any facts that plausibly suggest that such disparity was caused by the specific

13   employment practice Plaintiffs allege:  the RIF process wherein a small group of managers used

14   their discretion to make thousands of layoff decisions.  Dismissal Order at 14.  While Plaintiffs'

15   statistics are essential to any disparate impact analysis, Plaintiffs' claims fail given those "basic

16   facts" are missing from the SAC that would "situate [Plaintiffs] within the statistics" and suggest

17   causation.  *Id.* at 15 (stating also that Plaintiffs "allege almost nothing about themselves . . . that

18   place the statistics in context").

19        **C.     Strifling Fails to State a FEHA Claim.**

20        In its Dismissal Order, this Court held—and Plaintiffs have conceded—that Strifling, a

21   Florida employee, could not pursue a FEHA claim.  Dismissal Order at n.2 (citing Plaintiffs'

22   concession at ECF No. 27 at 32).  Because the original Complaint alleged that "Plaintiffs," in the

23   plural, sought relief under FEHA, this Court instructed Plaintiffs to, upon amendment, "correct

24   their complaint to reflect that Turkal alone brings a FEHA claim."  *Id*.[9]

---

[9] State statutes are "presumed not to have extraterritorial effect," and out-of-state residents, such
as Strifling who allegedly resides in Florida (SAC ¶ 6), must "plead at a minimum that [she] was
either employed in California or that the discriminatory conduct occurred in California for the
claim to fall within FEHA's scope."  *Paparella v. Plume Design, Inc.*, 2022 WL 2915706, at *3
(N.D. Cal. July 25, 2022).  The SAC alleges neither that Strifling worked nor otherwise
experienced employment discrimination in California.  Her allegation that X is headquartered in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

1  Plaintiffs have not complied.  Count II of the SAC states, as did the original Complaint,

2  that "Plaintiffs and other female employees" allege sex discrimination under Title VII.  This

3  Court should dismiss Strifling's FEHA claim with prejudice.[10]  Likewise, any FEHA claims on

4  behalf of non-California residents must be dismissed for failure to state a claim.

5  **D.  Plaintiffs Fail to Allege Standing for Their Claims or "Other" Discharges.**

6  Plaintiffs allege their Title VII and FEHA claims on behalf of themselves and a putative

7  class of all "other female [X] employees across the country who have been discharged or

8  constructively discharged from their jobs during the chaotic months since" Musk's acquisition.

9  SAC ¶ 1.[11]  The SAC does not provide any clarity as to the identity of these "other" female

10  employees, the nature of the discharges or constructive discharges, or the temporal scope of this

11  nebulous putative class.

12  Plaintiffs have not adequately alleged standing to pursue their claims, whether on their

13  own behalf or on behalf of a putative class.  Standing is "rooted" in Article III of the U.S.

14  Constitution and "limits the category of litigants empowered to maintain a lawsuit in federal

15  court" to those who have "suffered an injury in fact," meaning an actual or imminent invasion of

16  a legally protected interest that is "concrete and particularized."  *Spokeo, Inc. v. Robbins*, 578

17  U.S. 330, 338–39 (2016).  An injury is "particularized" only if it affects the plaintiff "in a

18  personal and individual way."  *Id.* at 339.  In other words, a plaintiff may assert a claim that arises

19  only from her own injuries—not from purported injuries "suffered by other, unidentified

20

21  San Francisco does not establish that discriminatory conduct occurred in California.  *See, e.g.*,
   *Loza v. Intel Americas, Inc.*, 2020 WL 7625480, at *4 (N.D. Cal. Dec. 22, 2020) (granting motion

22  to dismiss FEHA claim where there were no substantive allegations showing tortious conduct
   relating to plaintiff's termination occurred in California).

23  [10] Additionally, Strifling has failed to allege that she administratively exhausted any FEHA claim
   by timely filing a charge with the CRD.  SAC ¶ 38.  As explained *supra* § V.A.2.a, failure to

24  timely exhaust is a jurisdictional defect under FEHA and requires dismissal.

25  [11] *See also* SAC ¶ 2 (alleging Title VII and FEHA claims based on "termination of female
   employees since Elon Musk's acquisition"); *id.* ¶ 8 (alleging class of "all similarly situated

26  female Twitter employees . . . whose jobs have been affected by the company's layoffs since Elon
   Musk acquired" Twitter); *id.* ¶ 34 (alleging more women than men "were laid off and forced out

27  of the company through constructive discharge since Musk's acquisition"); *id.* at 9 (using the
   plural "mass layoffs" in Counts I and II).  The SAC contains no other details about the

28  terminations and constructive terminations purportedly included in the putative class.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22                    DEFENDANTS' NOTICE OF MOTION AND
                     MOTION TO DISMISS THE SAC
                     CASE NO. 4:22-CV-07739-JST

members" of a purported class.  *Id.* at 338 n.6; *see also Pottenger v. Potlack Corp.*, 329 F.3d 740, 750 (9th Cir. 2003) (affirming summary judgment on disparate impact claim because the plaintiff was not subject to the RIF he challenged).

Since Plaintiffs have not alleged that they were injured by being discharged or in any other way[12]—despite this Court's express instruction to include such allegations—Plaintiffs have not adequately pled standing for their own claims.  SAC ¶¶ 6–7; Dismissal Order at n.1 (stating "Plaintiffs do not explicitly state whether they themselves were laid off during the November 4, 2022 RIF, although the parties appear to accept this fact as true" and that "Plaintiffs should allege the date that they were laid off if they amend their complaint").

Even if Plaintiffs were to amend the SAC to satisfactorily allege that they were subject to the November 4 RIF, their standing is limited to that RIF and does not reach the other "discharge[s] or constructive discharge[s]" in the many "months since" Musk's acquisition. Insofar as this Court permits Plaintiffs leave to amend, this Court should instruct Plaintiffs to amend their complaint accordingly.  *See* Dismissal Order at nn.5, 9 (holding Plaintiffs could not challenge Post-RIF Policy because "Plaintiffs were not subject to the Post-RIF Policy" since "they were no longer working at [X] when it was enacted"); *see also* ECF No. 57 at 1 (reiterating that dismissal order held Plaintiffs "lacked standing" to challenge a company policy implemented after they were no longer employed).

## VI.    <u>CONCLUSION</u>

For the reasons stated above, X respectfully requests an order dismissing the SAC in its entirety for lack of jurisdiction over Plaintiffs' FEHA claim and for failure to state a claim for relief under Title VII and FEHA.

/ / /

/ / /

/ / /

/ / /

---

[12] As summarized *supra* § III.A, Plaintiffs offer zero details about their own separation other than it was in "November 2022."  SAC ¶¶ 6–7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST

1    Dated: February 9, 2024                    MORGAN, LEWIS & BOCKIUS LLP

2

3                                          By   /s/ Brian D. Berry
                                               Eric Meckley
4                                              Brian D. Berry
                                               Roshni C. Kapoor
5                                              Ashlee N. Cherry
                                               Kassia Stephenson
6
                                               Attorneys for Defendants
7                                              X CORP. f/k/a TWITTER, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

DEFENDANTS' NOTICE OF MOTION AND
MOTION TO DISMISS THE SAC
CASE NO. 4:22-CV-07739-JST