SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:      (617) 994-5801

*Attorneys for Plaintiffs Carolina Bernal Strifling*
*and Willow Wren Turkal, on behalf of themselves*
*and all others similarly situated*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| CAROLINA BERNAL STRIFLING and WILLOW WREN TURKAL, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TWITTER, INC. <br><br> Defendant | Case No. 4:22-cv-07739-JST <br><br> **PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** <br><br> Date:     March 21, 2024 <br> Time:     2:00 PM, PST <br> Judge:   Hon. Jon S. Tigar |

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 1

II.  PROCEDURAL AND FACTUAL BACKGROUND .................................................. 4

III. ARGUMENT ....................................................................................................... 6

   A.   Legal Standard for Motion to Dismiss Under Rule 12(b)(6) ................................. 6

   B.   Plaintiffs Have Exhausted Their Administrative Requirements Under Title
        VII and FEHA .................................................................................................. 7

        1.   Plaintiffs Adequately Pled Exhaustion ....................................................... 7

        2.   Plaintiffs Have Cured Any Failure to Exhaust Prior to
             Commencing Suit ..................................................................................... 9

   C.   Plaintiffs Have Stated a Claim for Discrimination Under Title VII and
        FEHA ............................................................................................................. 12

        1.   Plaintiffs Have Pleaded Facts Sufficient to Support a Plausible
             Claim of Intentional Discrimination ......................................................... 12

        2.   Plaintiffs Are Not Required to Plead a Pattern or Practice of
             Discrimination But, Regardless, They Have Adequately Pleaded
             Such a Pattern ........................................................................................ 17

        3.   Plaintiffs Have Pleaded Facts Sufficient to Support a Plausible
             Disparate Impact Claim ........................................................................... 19

   D.   Twitter's Argument Regarding Standing Should Be Rejected ............................. 21

IV.  CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

Abdullah v. U.S. Sec. Associates, Inc.,
    2011 WL 121733702 (C.D. Cal. Jan. 11, 2011) ............................................................. 23

Allen v. INC Research,
    2018 WL 11351568 (C.D. Cal. Nov. 29, 2018) ............................................................. 12

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ......................................................................................................... 7

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ...................................................................................................... 6, 7

Berndt v. Cal Dep't of Corr.,
    2012 WL 1712350 (N.D. Cal. May 15, 2012) ............................................................... 10

Best v. California Dep't of Corr.,
    21 F. App'x. 553 (9th Cir. 2001) ................................................................................... 13

Borja-Valdes v. City & Cnty. of San Francisco,
    2015 WL 5522287 (N.D. Cal. Sept. 18, 2015) ............................................................. 14

Brinker v. Axos Bank,
    2023 WL 4535529 (S.D. Cal. July 13, 2023) ............................................................... 12

Brown v. City of New York,
    2017 WL 1102677 (E.D.N.Y. Mar. 23, 2017) ............................................................. 20

Buchanan v. Tata Consultancy Services, Ltd.,
    2017 WL 6611653 (N.D. Cal. Dec. 27, 2017) ......................................................... 17, 18

Coleman v. Quaker Oats Co.,
    232 F.3d 1271 (9th Cir. 2000) ....................................................................................... 18

Cooper v. Cate,
    2011 WL 5554321 (E.D. Cal. Nov. 15, 2011) ............................................................. 16

Costa v. Desert Palace, Inc.,
    299 F.3d 838 (9th Cir. 2002) ......................................................................................... 17

Debro v. Contra Costa Cmty. Coll. Dist.,
    2021 WL 5585592 (N.D. Cal. Nov. 30, 2021) ............................................................. 13

Diem v. City and County of San Francisco,
    686 F. Supp. 806, (N.D. Cal. 1988) ........................................................................... 1, 9

Doheny v. Int'l Bus. Machines, Corp.,
    2024 WL 382142 (S.D.N.Y. Feb. 1, 2024) .................................................................. 18

Douglass-Woodruff v. Nevada, ex rel. its Dept. of Mental/Health,
    23 F. App'x. 758 (9th Cir. 2001) ................................................................................... 9

Drevaleva v. Dep't of Veterans Affs.,
    835 F. App'x. 221 (9th Cir. 2020) ............................................................................... 17

Egbukichi v. Wells Fargo Bank, NA,
    2017 WL 1199737 (D. Or. Mar. 29, 2017) .................................................................. 16

Galvan v. Bexar Cty.,
    785 F.2d 1298 (5th Cir. 1986) ..................................................................................... 10

Gamble v. Kaiser Foundation Health Plan, Inc.,
    348 F. Supp. 3d 1003 (N.D. Cal. 2018) ................................................................... 3, 21

Glass v. UBS Fin. Servs., Inc.,
    331 F. App'x. 452 (9th Cir. 2009) ............................................................................... 23

Grant v. Comp USA, Inc.,
    109 Cal. App. 4th 637 (2003) ...................................................................................... 11

Greenly v. Sara Lee Corp.,
    2006 WL 3716769 (E.D. Cal. Dec. 15, 2006) ............................................................. 12

Hallmon v. Stanislaus County Human Resource Dept.,
    2022 WL 1204705 (E.D. Cal. Apr. 22, 2022) ............................................................... 8

Hamm v. Nielsen,
    2019 WL 6499209 (C.D. Cal. July 30, 2019) ............................................................. 15

Haney v. United Airlines, Inc.,
    2016 WL 80554 (N.D. Cal. Jan. 7, 2016) ................................................................... 13

Haro v. Therm-X of California, Inc.,
    2015 WL 5121251 (N.D. Cal. Aug. 28, 2015) ............................................................ 15

Hemmings v. Tidyman's Inc.,
    285 F.3d 1174 (9th Cir. 2002) ..................................................................................... 19

Hilber v. International Lining Technology,
    2012 WL 3542421 (N.D. Cal. July 24, 2012) ............................................................. 15

Holland v. Union Pac. RR Co.,
    154 Cal. App. 4th 940 (2007) ........................................................................... 11

In re Wal-Mart Stores, Inc. Wage and Hour Litig.,
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ............................................................. 22

In re Wells Fargo Home Mortg. Overtime Pay Litig.,
    527 F. Supp. 2d 1053 (N.D. Cal. 2007) ........................................................... 23

International Broth. of Teamsters v. United States,
    431 U.S. 324 (1977) ............................................................................... 2, 17, 18

Jenkins v. New York City Transit Auth.,
    646 F. Supp. 2d 464 (S.D.N.Y. 2009) .............................................................. 20

Jensen v. Knowles,
    621 F. Supp. 2d 921 (E.D. Cal. 2008) .............................................................. 10

Katz v. Regents of the Univ. of California,
    229 F.3d 831 (9th Cir. 2000) ............................................................................ 19

Keiffer v. Bechtel Corp.,
    65 Cal. App. 4th 893 (1998) ............................................................................. 11

Keys v. Humana, Inc.,
    684 F.3d 605 (6th Cir. 2012) ............................................................................ 18

Kim v. Konad USA Distribution, Inc.,
    226 Cal. App. 4th 1336 (2014) ......................................................................... 11

Kimber v. Del Toro,
    2024 WL 171386 (S.D. Cal. Jan. 16, 2024) ....................................................... 8

King v. National General Insurance Co.,
    2021 WL 2400899 (N.D. Cal. June 11, 2021) .................................................... 3

League of United Latin Am. Citizens v. Wheeler,
    899 F.3d 814 (9th Cir. 2018) ............................................................................ 12

Lee v. Hertz Corp.,
    330 F.R.D. 557 (N.D. Cal. 2019) ...................................................................... 19

Leland v. City & Cnty. of San Francisco,
    576 F. Supp. 2d 1079 (N.D. Cal. 2008) ........................................................... 13

Lindsey v. Claremont Middle Sch.,
    2012 WL 5988548 (N.D. Cal. Nov. 29, 2012) .................................................. 13

Lopez v. Pacific Maritime Association,
    2009 WL 10680881 (C.D. Cal. April 3, 2009) ........................................................ 3

Loza v. Intel Americas, Inc.,
    2020 WL 7625480 (N.D. Cal. Dec. 22, 2020) ...................................................... 15

Lyons v. England,
    307 F.3d 1092 (9th Cir. 2002) ...................................................................... 2, 12

Marziano v. Cty. of Marin,
    2010 WL 3895528 (N.D. Cal. Oct. 4, 2010) ........................................................ 15

Mata v. Ill. State Police,
    2001 WL 292804 (N.D. Ill. Mar. 22, 2001) ......................................................... 20

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) ........................................................................ 2, 12, 13, 17

McGinest v. GTE Service Corp.,
    360 F.3d 1103 (9th Cir. 2004) .......................................................................... 12

Menoken v. McGettigan,
    273 F. Supp. 3d 188 (D.D.C. 2017) ................................................................... 20

Menoken v. Pon,
    2018 WL 2383278 (D.C. Cir. May 9, 2018) ........................................................ 21

Mi Pueblo San Jose, Inc. v. City of Oakland,
    2006 WL 2850016 (N.D. Cal. Oct. 4, 2006) ........................................................ 15

Morales v. Laborers' Union 304,
    2012 U.S. Dist. LEXIS 2234 (N.D. Cal. Jan. 9, 2012) ............................................. 6

Moussouris v. Microsoft Corp.,
    2016 WL 6037978 (W.D. Wash. Oct. 14, 2016) .................................................. 19

Navarro v. Block,
    250 F.3d 729 (9th Cir. 2001) ............................................................................. 7

O'Donnell v. U.S. Bancorp Equip. Fin., Inc.,
    2010 WL 2198203 (N.D. Cal. May 28, 2010) ................................................... 7, 14

Ogola v. Chevron Corp.,
    2014 WL 4145408 (N.D. Cal. Aug. 21, 2014) ....................................................... 4

Pedreiera v. Ky. Baptist Homes for Children, Inc.,
    579 F.3d 722 (6th Cir. 2009) ........................................................................... 17

Rivera v. U.S. Postal Serv.,
    830 F.2d 1037 (9th Cir. 1987) ................................................................ 10, 11

Sablan v. A.B. Won Pat Int'l Airport Auth., Guam,
    2010 WL 5148202 (D. Guam Dec. 9, 2010) .......................................... 7

Sacramento County Sheriffs' Assn. v. County of Sacramento,
    220 Cal. App. 3d 280 (1990) .................................................................. 11

Sanchez-Velazquez v. Autonomous Municipality of Carolina,
    2012 WL 6552789 (D.P.R. Dec. 14, 2012) ............................................ 10

Sanders-Hollis v. Health and Human Services Agency,
    2020 WL 3642563 (E.D. Cal. July 6, 2020) ......................................... 8, 9

Santiago-Rodriguez v. Puerto Rico,
    546 F. Supp. 3d 155 (D.P.R. 2021) ........................................................ 10

Segar v. Smith,
    738 F. 2d 1249 (D.C. Cir. 1984) ............................................................ 18

Sengupta v. Morrison-Knudsen Co.,
    804 F.2d 1072 (9th Cir. 1986) ............................................................... 19

Serrano v. Cintas Corp.,
    699 F.3d 884 (6th Cir. 2012) ................................................................. 17

Sheppard v. David Evans & Assoc.,
    694 F.3d 1045 (9th Cir. 2012) ........................................................... 13, 14

Swierkiewicz v. Sorema N.A.,
    534 U.S. 506 (2002) ............................................................................... 17

Thomas v. San Francisco Hous. Auth.,
    2017 WL 878064 (N.D. Cal. Mar. 6, 2017) ........................................... 19

Tolbert v. U.S.,
    916 F.2d 245 (5th Cir. 1990) ................................................................. 10

Travers v. Flight Servs. & Sys., Inc.,
    737 F.3d 144 (1st Cir. 2013) ................................................................. 16

United States v. Maricopa Cnty., Ariz.,
    915 F. Supp. 2d 1073 (D. Ariz. 2012) .................................................... 20

Vinole v. Countrywide Home Loan, Inc.,
    571 F.3d 935 (9th Cir. 2009) ................................................................. 3

Wilburn v. Dial Corp.,
    724 F. Supp. 530 (W.D. Tenn. 1989)...................................................................... 10

Williams v. Washington Metro. Area Transit Auth.,
    721 F.2d 1412 (D.C. Cir. 1983) ............................................................................. 10

Williams v. Wolf,
    2020 WL 1245369 (N.D. Cal. Mar. 16, 2020)........................................................ 15

Wilson v. Timec Servs. Co., Inc.,
    2023 WL 5753617 (E.D. Cal. Sept. 6, 2023) ......................................................... 19

Wofford v. Safeway Stores, Inc.,
    78 F.R.D. 460 (N.D. Cal. 1978).............................................................................. 24

Wood v. City of San Diego,
    678 F.3d 1075 (9th Cir. 2012) ............................................................................... 13

Wrighten v. Metropolitan Hospitals, Inc.,
    726 F.2d 1346 (9th Cir. 1984) ............................................................................... 10

Wyatt v. Terhune,
    315 F.3d 1108 (9th Cir. 2003) ............................................................................... 10

Zeman v. Twitter, Inc.,
    2023 WL 5599609 (N.D. Cal. Aug. 29, 2023) ................................................... 3, 21

**Statutes**

42 U.S.C. § 2000e, *et seq.*............................................................................................... 1

California Fair Employment and Housing Act ("FEHA"),
    Cal. Gov. Code § 12900, *et seq.* .................................................................... passim

**Rules**

Fed. R. Civ. P. 12........................................................................................... 3, 14, 15

Fed. R. Civ. P. 8............................................................................................... 6, 14

## I.    INTRODUCTION

This case was brought by Plaintiffs Carolina Strifling and Willow Wren Turkal on behalf of female Twitter employees who were laid off in the wake of the purchase of the company by multi-billionaire Elon Musk. See Class Action Complaint (Dkt. 1). Plaintiffs allege that Twitter has engaged in unlawful discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and (for employees who worked in California) the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12900, *et seq.*[1]

In its Motion to Dismiss the Second Amended Complaint (Dkt. 64), Twitter once again argues that the Court should dismiss Plaintiffs' discrimination claims because Plaintiffs failed to exhaust their administrative remedies by declining to wait for the Equal Employment Opportunity Commission ("EEOC") and/or the California Civil Rights Division ("CRD") to issue a notice of right to sue before filing their individual and class claims in court. This argument should be rejected outright. Courts have universally acknowledged that a plaintiff who has failed to exhaust his or her administrative remedies prior to filing suit may cure by via amendment or refiling after receipt of a right-to-sue letter. There is no question that this is standard practice in Title VII claims. See, e.g., Diem v. City and County of San Francisco, 686 F. Supp. 806, 810 (N.D. Cal. 1988) ("Issuance of a right to sue letter subsequent to filing of a Title VII lawsuit and before trial cures any such procedural defects, unless defendants show that premature filing of the case precluded the administrative agency from performing its functions or prejudiced defendants.") (internal citation omitted). It is admittedly less clear whether a plaintiff who has failed to administratively exhaust a FEHA claim before filing a complaint may cure with a subsequent receipt of notice of right to sue because California state and federal courts are split on whether administrative exhaustion is a jurisdictional or procedural prerequisite for FEHA

---

[1]    As Twitter notes, Plaintiff Strifling worked for Twitter in Florida. (SAC ¶ 6, Dkt. 61.) As such, the FEHA claim is brought by Plaintiff Turkal, who worked in California. (SAC ¶ 7, Dkt. 61.)

claims. However, given this uncertainty, the Court should not simply dismiss the FEHA claims for failure to exhaust prior to filing the Complaint.

Twitter also argues that Plaintiffs have failed to state a plausible claim for sex discrimination under either a disparate treatment or disparate impact theory. Specifically, Twitter contends that Plaintiffs fail to state a claim for disparate treatment under the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), framework for numerous reasons, including because they have not adequately alleged that they were performing their jobs satisfactorily, that male comparators were not laid off, or that Elon Musk's disparaging comments and actions were sufficiently connected to the layoffs that disproportionately impacted women. Twitter also argues that Plaintiffs have not met their burden of pleading disparate treatment because they have not alleged a pattern or practice of discrimination under the International Broth. of Teamsters v. United States, 431 U.S. 324 (1977), framework, even though there is no requirement that Plaintiffs do so. Finally, Twitter contends that Plaintiffs' disparate impact claims fail due to alleged inconsistencies in Plaintiffs' statistical data and because Plaintiffs have not adequately alleged causation. These arguments are without merit.

As discussed at length below, Plaintiffs have provided extensive detail plausibly alleging sex discrimination in Twitter's mass layoffs, that amply satisfy the pleading requirements of a disparate treatment claim, including allegations of significant statistical disparities by sex of Twitter's layoffs, undertaken by an expert economist and statistician. Plaintiffs have bolstered their allegations by citing public statements by Musk, which evidence his discriminatory animus toward women in the workplace and which color the actions taken by Twitter when it laid off a significantly higher proportion of women than it did men. These allegations easily suffice to state a claim of disparate treatment. At this stage, Plaintiffs are required only to plead sufficient facts to raise an "inference of unlawful discrimination," which they have. Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002). The question of what evidentiary framework they will ultimately utilize to prove their claim – the pattern or practice framework set forth in Teamsters or the burden-shifting framework set forth in McDonnell Douglas– is a question for a later date.

Likewise, Plaintiffs have met all the requirements for pleading a prima facie disparate impact claim. Specifically, they have identified a facially neutral employment practice – a mass layoff directed by Musk and a small group of managers in whom he had vested significant discretion – that had a significantly disproportionate impact on women. Lopez v. Pacific Maritime Association, 2009 WL 10680881, at *5 (C.D. Cal. April 3, 2009). Contrary to Twitter's insistence, these allegations are sufficient to plausibly allege a disparate impact claim. See, e.g., Zeman v. Twitter, Inc., 2023 WL 5599609, at *6 (N.D. Cal. Aug. 29, 2023) (allegations that Twitter had a policy of delegating employment decisions to subjective discretion of managers and that such policy had a disparate impact on women in the context of conducting a RIF, were "enough to survive the [sic] at the pleadings stage"); Gamble v. Kaiser Foundation Health Plan, Inc., 348 F. Supp. 3d 1003, 1023 (N.D. Cal. 2018) (finding allegations of subjective policy for making various employment decisions, including hiring, compensation, promotions, and discipline to be sufficient for disparate impact race discrimination claim).

Finally, Twitter argues that Plaintiffs have not plausibly alleged standing to bring discrimination claims on behalf of themselves or other class members and that the class action allegations should be stricken. This argument is premature and unsupported by law. These arguments should likewise be rejected. The notion that Plaintiffs, who have clearly alleged that they were discharged in November 2022, when Musk began laying off Twitter employees en masse, have not adequately alleged that they were subject to a discriminatory layoff makes no sense. Further, Twitter's attempt to limit the scope of Plaintiffs' class claims at the motion to dismiss stage is premature. Courts in the Ninth Circuit have taken an "overwhelmingly negative" view of motions challenging the sufficiency of class allegations at the Rule 12 stage. King v. National General Insurance Co., 2021 WL 2400899, at *15 (N.D. Cal. June 11, 2021). As the Ninth Circuit has explained, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable." Vinole v. Countrywide Home Loan, Inc., 571 F.3d 935, 942 (9th Cir. 2009) (internal quotation omitted). Thus, courts only dismiss or strike class action allegations at the

3

Rule 12 stage where they are "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." Ogola v. Chevron Corp., 2014 WL 4145408, at *2 (N.D. Cal. Aug. 21, 2014). Such is not the case here. Plaintiffs have plausibly alleged that Twitter is liable to its female employees who were laid off on a classwide basis, and Twitter cannot misuse Rule 12 to launch a preemptive effort to defeat class certification.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs filed this class action lawsuit on December 7, 2022, asserting class claims for discrimination on the basis of sex in violation of Title VII and, for employees who worked in California, FEHA. (Compl., Counts I-II, Dkt. 1.) Plaintiffs each filed an administrative charge of sex discrimination under Title VII with the EEOC and under the FEHA with the CRD on December 7, 2022 and received right to sue letters on February 22, 2023. (SAC ¶¶ 38-39, Dkt. 61; Dkts. 27.01-02, 30.)

On May 8, 2023, the Court granted Twitter's Motion to Dismiss the Class Action Complaint (the "Complaint") with leave to amend. (Dkt. 38 at 16.) Plaintiffs then filed a First Amended Complaint ("FAC"), adding a new plaintiff as well as individual and class age discrimination claims under the Title VII and FEHA, on May 26, 2023. (Dkt. 41.) On January 4, 2024, the Court granted Twitter's Motion to Strike the new plaintiff, the age discrimination claims, and the allegations corresponding to those claims. (Dkt. 57 at 5.) Plaintiffs filed their Second Amended Complaint ("SAC") on January 19, 2024. (Dkt. 61.)

As alleged in the SAC, Plaintiffs were employees of Twitter until they were laid off in November 2022. (SAC ¶¶ 6-7, Dkt. 61.) Plaintiff Carolina Bernal Strifling was a Senior Client Partner Lead at Twitter from June 2015 until November 2022, and her performance over the course of her tenure met the company's expectations. (SAC ¶ 6, Dkt. 61.) Plaintiff Willow Wren Turkal was a Staff Site Reliability Engineer at Twitter from June 2021 until November 2022, and her performance over the course of her tenure met the company's expectations. (SAC ¶ 7, Dkt. 61.) Elon Musk purchased Twitter in late October 2022 and immediately began laying off more

than half of its workforce, including Plaintiffs. (SAC ¶¶ 2-3, 6-8, 16-17, Dkt. 61.) The decisions regarding which employees would be laid off were made under extremely hurried circumstances, and for thousands of employees, in a period just in a few days. (SAC ¶ 18, Dkt. 61.) In selecting employees for layoff, little attention (if any) was given to employees' job performance, qualifications, experience, and abilities. (SAC ¶ 18, Dkt. 61.) Most of the employees whom Twitter laid off were notified of their layoff on November 4, 2022. (SAC ¶ 19, Dkt. 61.) Plaintiffs have alleged that the layoff decisions were made quickly by a small group of managers under close supervision by Musk. (SAC ¶ 20, Dkt. 61.) Some of these managers were brought in from other companies owned by Musk (such as Tesla), who did not have much, if any, knowledge about Twitter's operations. (SAC ¶ 20, Dkt. 61.)

Plaintiffs allege that Twitter's mass layoff affected women significantly more than men. (SAC ¶¶ 21-33, Dkt. 61.) In the midst of the layoff, the media reported on widely circulated pictures of Twitter employees before and after the layoff, raising observations about the stark contrast in the number of women who appeared to be employed at the company before and after Musk's acquisition. (SAC ¶ 21, Dkt. 61.) Spreadsheets showing which Twitter employees in the United States were retained and which were laid off on November 4, 2022, reveal that Twitter laid off approximately 57% of its female employees, while only 47% of its male employees were laid off. (SAC ¶¶ 23-25, Dkt. 61.) Dr. Mark Killingsworth, a professor in the Department of Economics at Rutgers University, performed a chi square analysis on this data and determined that the odds that this disparity between women and men being laid off was due only to chance is .00000000000001 (or, put another way, the odds were about 9.977 out of 100 trillion). (SAC ¶ 27, Dkt. 61.)

Likewise, Plaintiffs allege that this disparity cannot be explained based on a justification that Musk intended to retain more employees in engineering-related roles. (SAC ¶ 28, Dkt. 61.) Twitter's spreadsheet showed that the sex-based disparity was even starker for engineers - 59% of females in engineering-related roles were laid off on November 4, 2022, compared to 45% of males. (SAC ¶ 29, Dkt. 61.) Dr. Killingsworth determined that this disparity was also

significantly significant and that the odds that this disparity being due only to chance was .00000000000001 (or, put another way, 1.103 chances out of 100 trillion). (SAC ¶ 30, Dkt. 61.) Similarly, Plaintiffs allege that there is also a great disparity in the layoff rates between women and men in non-engineering roles. (SAC ¶ 31, Dkt. 61.) The spreadsheet showing the layoffs reveals that 56% of females in non-engineering-related roles were laid off on November 4, 2022, while only 49% of males in non-engineering-related roles were laid off. (SAC ¶ 31, Dkt. 61.) According to Dr. Killingsworth, the odds that this disparity was due only to chance was .00001 (or, put another way, 2.778 chances out of 100 thousand). (SAC ¶ 31, Dkt. 61.)

Plaintiffs have alleged further that Twitter's discriminatory conduct in the layoffs is unsurprising in light of the sexist, demeaning, and hostile comments that Elon Musk has made against women, and that Musk's discriminatory animus is imputed to Twitter as the company's owner and CEO. (SAC ¶ 34, Dkt. 61.) For example, it was widely publicized that Musk joked about naming a school using the acronym "TITS"; he also joked about women's breasts on Twitter, tweeted "Testosterone rocks ng", and made clear his belief that it was more important that women have a lot of babies rather than pursuing careers. (SAC ¶¶ 35-37, Dkt. 61.)

## III.   ARGUMENT

### A.   Legal Standard for Motion to Dismiss Under Rule 12(b)(6)

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (internal citations omitted); see also Fed R. Civ. P. 8(a)(2) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claims is and the grounds upon which it rests."). Thus, Plaintiff need only "state a claim to relief that is plausible on its face" in order to survive a motion to dismiss." Twombly, 550 U.S. at 555. "A claim that is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants liable for the misconduct alleged." Morales v. Laborers' Union 304, 2012 U.S. Dist. LEXIS 2234, *3 (N.D. Cal. Jan. 9, 2012).

Courts follow "a two-step process for determining whether a motion to dismiss should be granted." <u>Sablan v. A.B. Won Pat Int'l Airport Auth., Guam</u>, 2010 WL 5148202, at *2 (D. Guam Dec. 9, 2010). At the first step, the court parses out legal conclusions from factual statements. <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664 (2009)). "[T]he second step is to take any remaining well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 664)). At the motion to dismiss stage, the court must assume "that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 555. "[I]t would be improper to dismiss a complaint 'for failing to allege certain additional facts that [Plaintiff] would need at the trial stage to support his claim in the absence of direct evidence of discrimination." <u>O'Donnell v. U.S. Bancorp Equip. Fin., Inc.</u>, 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010) (quoting <u>Twombly</u>, 550 U.S. at 569-70). Rather, "[d]ismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).

**B.    Plaintiffs Have Exhausted Their Administrative Requirements Under Title VII and FEHA**

**1.    Plaintiffs Adequately Pled Exhaustion**

Twitter begins its attack on Plaintiffs' SAC by inventing a new pleading standard for Plaintiffs alleging that they have fulfilled Title VII and/or FEHA's charge filing requirements. According to Twitter, Plaintiffs have failed to meet this pleading standard because the SAC alleges only that they filed administrative charges of discrimination under Title VII and FEHA with the appropriate administrative agencies and does not "attach their charges, or detail whom Plaintiffs filed their charges against, the allegations in the charges, the filing or right-to-sue dates, or that the charges and lawsuit were filed within the statutorily prescribed time periods." (Dkt. 64 at 10.)

Putting aside the fact that it is obvious based on the SAC that Plaintiffs have brought charges alleging sex discrimination against Twitter under Title VII and FEHA, and that their

charges and right-to-sue letters (which list all relevant dates) have already been filed with the Court, Twitter's cited authorities do not support its argument that Plaintiffs bear so great a burden. In Kimber v. Del Toro, the pro se plaintiff failed to make *any* allegations of administrative exhaustion beyond "a general reference to the administrative process" in his third amended complaint. 2024 WL 171386, at *5 (S.D. Cal. Jan. 16, 2024) ("Here, Plaintiff spelled out allegations of administrative exhaustion and attached an EEOC decision regarding this matter in his Reply to Defendant's Reply. … However, Plaintiff failed to include the detailed allegations or any documentation of this exhaustion in his Third Amended Complaint."). Similarly, in Hallmon v. Stanislaus County Human Resource Dept., the first amended complaint "neither allege[d] that plaintiff has exhausted her administrative remedies nor has attached to it plaintiff's right-to-sue letter." 2022 WL 1204705, at *4 (E.D. Cal. Apr. 22, 2022).[2] Finally, in Sanders-Hollis v. Health and Human Services Agency, the first amended complaint was so "devoid of factual allegations that plaintiff did in fact exhaust her administrative remedies" that it apparently failed to even state that the plaintiff filed an administrative charge. 2020 WL 3642563, at *1 (E.D. Cal. July 6, 2020). By contrast, here Plaintiffs have clearly alleged that they each independently exhausted their administrative remedies by filing charges with the appropriate administrative agencies and receiving right-to-sue letters from the same. These allegations should suffice to put the Court and Twitter on notice that Plaintiffs have fulfilled the charge filing requirements.[3] See, e.g., Douglass-Woodruff v. Nevada, ex rel. its Dept. of Mental/Health,

---

[2]      To the extent the Court agrees with Kimber and Hallmon that it cannot reference Plaintiffs' earlier-filed charges and right-to-sue letters, which, as Twitter itself acknowledges, this Court has already taken judicial notice of (Dkt. 64 at 10, 11 n.3), Plaintiffs submit that nothing in those cases suggest that a plaintiff *must* attach a charge and/or right-to-sue letter to the complaint in order to satisfactorily plead the administrative exhaustion requirement. In fact, Hallmon clarifies that it is not necessary to attach the underlying administrative charge. See 2022 WL 1204705 at *5 n.6 ("Attaching the underlying administrative charge is not required to sufficiently plead exhaustion of administrative remedies, as cases cited by defendant in their motion demonstrate.") (internal citations omitted).

[3]      If the Court disagrees and finds that Plaintiffs have failed to adequately plead administrative exhaustion, it should grant Plaintiffs leave to amend given the ease with which

23 F. App'x. 758, 759 (9th Cir. 2001) (noting that plaintiff's "pleading could be saved by an amendment that alleges that she exhausted her administrative remedies with the EEOC" where she failed to allege *at all* that she complied with Title VII's charge filing requirement and obtained a right-to-sue letter).

### 2. Plaintiffs Have Cured Any Failure to Exhaust Prior to Commencing Suit

The heart of Twitter's administrative exhaustion argument is that Plaintiffs' receipt of right-to-sue letters prior to filing the SAC does not cure their failure to exhaust prior to filing the Complaint.[4] With respect to Plaintiffs' Title VII claims, Twitter contends that, although "Title VII's administrative exhaustion requirement is procedural, rather than jurisdictional," the Court should nonetheless exercise its discretion to dismiss Plaintiffs' Title VII claims because doing so would "give meaning" to Title VII's administrative exhaustion requirement.

This is not a serious argument. As Twitter is forced to acknowledge, the standard practice when a plaintiff fails to administratively exhaust prior to filing the initial complaint is to permit the plaintiff to cure via amendment or refiling after receipt of the right-to-sue letter. See Diem, 686 F. Supp. at 810 ("Issuance of a right to sue letter subsequent to filing of a Title VII lawsuit and before trial cures any such procedural defects, unless defendants show that premature filing of the case precluded the administrative agency from performing its functions or prejudiced defendants.") (citing Wrighten v. Metropolitan Hospitals, Inc., 726 F.2d 1346, 1351 (9th Cir.

---

those defects can be cured. See Sanders-Hollis, 2020 WL 3642563 at *2 ("Despite the first amended complaint's lack of detail, plaintiff's opposition indicates she can cure the ills described above. See Opp'n at 5 ('Plaintiff can easily plead these facts, parties, individuals, the contents and dates of the DFEH/EEOC charges and subsequent events, the contents of dates of the DFEH/EEOC right to sue letters, and any other factual detail required.'). Accordingly, plaintiff is granted one final opportunity to amend.").

[4]     Twitter's motion to dismiss erroneously states that Plaintiffs "filed their charges on February 22, 2023, nearly three months after filing the original Complaint on December 7, 2022." (Dkt. 64 at 20.) In fact, Plaintiffs filed their charges on December 7, 2022, shortly before they filed the original Complaint, and received notices of right to sue on February 22, 2023. (Dkts. 27.01-02, 30.)

1984)); <u>see also</u> <u>Jensen v. Knowles</u>, 621 F. Supp. 2d 921 (E.D. Cal. 2008) ("If a court finds that a plaintiff has failed to exhaust [nonjudicial remedies], 'the proper remedy is dismissal of the claim without prejudice.'") (quoting <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003)); <u>Wilburn v. Dial Corp.</u>, 724 F. Supp. 530, 536 (W.D. Tenn. 1989) ("[W]here a Title VII plaintiff files his action first and then subsequently receives a right to sue notice while that action is pending, the requirement of a right to sue letter is satisfied.") (citing <u>Williams v. Washington Metro. Area Transit Auth.</u>, 721 F.2d 1412, 1418 n.12 (D.C. Cir. 1983); <u>Galvan v. Bexar Cty.</u>, 785 F.2d 1298, 1305-06 (5th Cir. 1986)); <u>Santiago-Rodriguez v. Puerto Rico</u>, 546 F. Supp. 3d 155, 161-62 (D.P.R. 2021) (granting plaintiff's motion to amend complaint after initially failing to exhaust administrative remedies) (citing <u>Sanchez-Velazquez v. Autonomous Municipality of Carolina</u>, 2012 WL 6552789, *4 (D.P.R. Dec. 14, 2012) (denying defendant's motion to dismiss plaintiff's Title VII claim for failure to exhaust administrative requirement where "the filing of the Third Amended Complaint after having received the right-to-sue letter from the U.S. Department of Justice cured any defect that the first and second amended complaint may have had")). Whether the plaintiff filed the charge prior to or after the initial complaint makes no difference, and Twitter's irrelevant citation to <u>Berndt v. Cal Dep't of Corr.</u>, 2012 WL 1712350, at *2 (N.D. Cal. May 15, 2012), does not suggest anything to the contrary. The "critical distinction" that the Court acknowledged in <u>Berndt</u> was that the plaintiffs filed their EEOC charges "more than eight years after the filing of the original complaint" following briefing and argument on their motion for certification of a Rule 23(b)(2) class. <u>Id.</u> at *1-2. That case is distinguishable on its face.

So, too, are <u>Tolbert v. U.S.</u>, 916 F.2d 245 (5th Cir. 1990) and <u>Rivera v. U.S. Postal Serv.</u>, 830 F.2d 1037 (9th Cir. 1987). Both of those cases involved a plaintiff's failure to wait out the EEOC's internal *appeal* process before filing suit in court, and thus bear no resemblance to the procedural posture of this case. <u>See</u> <u>Tolbert</u>, 916 F.2d at 248 ("The question is whether, having chosen to pursue administrative review of the Postal Service's decision, Tolbert must exhaust that remedy, or whether she can abandon it in mid-course, and pursue a civil action instead.")

Rivera, 830 F.2d at 1038 ("The view has been taken that once a party appeals to a statutory agency, board, or commission, the appeal must be 'exhausted.' To withdraw is to abandon one's claim, to fail to exhaust one's remedies.").

Twitter also contends Plaintiffs' FEHA claims *must* be dismissed because administrative exhaustion under FEHA is a jurisdictional prerequisite that cannot be cured by a subsequent filing of a charge or receipt of right-to-sue letter. But many California state appellate courts have held that FEHA's administrative exhaustion requirement is "'jurisdictional' in the sense only that a court's failure to apply the rule is judicial error and can be corrected by issuance of a writ of prohibition[,]" and does not implicate the court's fundamental subject matter jurisdiction. Kim v. Konad USA Distribution, Inc., 226 Cal. App. 4th 1336, 1347 (2014) ("[T]he administrative exhaustion requirement does not implicate the court's subject matter jurisdiction."); see also Holland v. Union Pac. RR Co., 154 Cal. App. 4th 940, 946 (2007) (Holding, in FEHA case, that "[t]he exhaustion of an administrative remedy is a *procedural prerequisite* to an action at law, and the failure to exhaust it does not divest a trial court of *subject matter jurisdiction*."); Grant v. Comp USA, Inc., 109 Cal. App. 4th 637, 644–45 (2003) (acknowledging split between federal and state courts in California as to "whether the failure to exhaust FEHA or EEOC … remedies is truly jurisdictional in the sense of depriving a trial court of fundamental or subject matter jurisdiction, or whether it should be viewed merely in the nature of a condition precedent or an affirmative defense that can be waived if it is not asserted by the defendant") (internal citations omitted); Keiffer v. Bechtel Corp., 65 Cal. App. 4th 893, 897–30 (1998) ("[D]escribing FEHA's administrative requirements as 'jurisdictional' does not resolve the question of whether those requirements implicate the trial court's fundamental, subject matter jurisdiction."); Sacramento County Sheriffs' Assn. v. County of Sacramento, 220 Cal. App. 3d 280, 286 (1990) ("It may well be true that the exhaustion doctrine does not implicate fundamental, subject matter jurisdiction and is rather a procedural prerequisite.").

Several federal courts have likewise held that FEHA's exhaustion requirement is not a jurisdictional prerequisite. See Allen v. INC Research, 2018 WL 11351568, at *3 (C.D. Cal. Nov.

29, 2018) ("Defendant has not demonstrated that the exhaustion requirements of FEHA, the ADA or Title VII are *jurisdictional* in the sense that they deprive the Court of *subject matter jurisdiction*.") (citing League of United Latin Am. Citizens v. Wheeler, 899 F.3d 814, 821-22 (9th Cir. 2018) ("'[T]hreshold requirements claimants must complete, or exhaust, before filing a lawsuit' are typically 'treated as nonjurisdictional.'") (citations omitted)); Greenly v. Sara Lee Corp., 2006 WL 3716769, at *8 (E.D. Cal. Dec. 15, 2006) ("The Supreme Court has firmly established, however, that the requirement of a 'right-to-sue' letter is not a jurisdictional prerequisite, but merely a condition precedent that is subject to wavier, estoppel, and equitable tolling.") (internal citations omitted). As the court in Brinker v. Axos Bank noted, the Ninth Circuit has yet to definitively weigh in on whether administrative exhaustion of a FEHA claim is jurisdictional or procedural. 2023 WL 4535529, at *12 (S.D. Cal. July 13, 2023) ("The Ninth Circuit has not spoken on this issue. It has, however, along with other circuits, suggested that a premature suit can be cured by a subsequent receipt of a right to sue letter—but at a minimum, only where the requirement is not jurisdictional, such as is the case with Title VII."). Given the inconsistent state and federal authority on this issue, the Court should not simply dismiss Plaintiffs' FEHA claim at this stage.

### C.   Plaintiffs Have Stated a Claim for Discrimination Under Title VII and FEHA

#### 1.   Plaintiffs Have Pleaded Facts Sufficient to Support a Plausible Claim of Intentional Discrimination

The Ninth Circuit has held that to establish a case of disparate treatment, "a plaintiff must provide evidence that 'give[s] rise to an inference of unlawful discrimination.'" Lyons, 307 F.3d at 1112 (internal citations omitted). A plaintiff may establish disparate treatment either through direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, see McGinest v. GTE Service Corp., 360 F.3d 1103, 1121-22 (9th Cir. 2004), or "through circumstantial evidence, following the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)," Lyons, 307 F.3d at 1112. A plaintiff establishes a prima facie case of disparate treatment under McDonnell Douglas by showing that:

"(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably." Best v. California Dep't of Corr., 21 F. App'x. 553, 558 (9th Cir. 2001). The same standard applies to sex discrimination claims arising under the FEHA. See, e.g., Debro v. Contra Costa Cmty. Coll. Dist., 2021 WL 5585592, at *3 (N.D. Cal. Nov. 30, 2021); Leland v. City & Cnty. of San Francisco, 576 F. Supp. 2d 1079, 1094 (N.D. Cal. 2008) ("The McDonnell Douglas burden-shifting framework is also applicable to claims of discrimination pursuant to California law under FEHA.").

To state a disparate treatment claim, a plaintiff is only required to plead enough facts to plausibly allege that "an employer has treated [her] less favorably than others because of a protected trait." Wood v. City of San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012). A plaintiff "need not plead a McDonnell Douglas prima facie case . . . to survive a motion to dismiss." Haney v. United Airlines, Inc., 2016 WL 80554, at *3 (N.D. Cal. Jan. 7, 2016). All that is required are factual allegations sufficient to show that the plaintiff's legal claims "have substantive plausibility." Id. However, "even though [a plaintiff] does not need to establish *prima facie* cases for his or her claims at [the pleading stage], the court will look to the required elements to determine whether the facts that are alleged state plausible claims for relief." Lindsey v. Claremont Middle Sch., 2012 WL 5988548, at *2 n.3 (N.D. Cal. Nov. 29, 2012). "[W]here a plaintiff pleads a plausible prima facie case of discrimination, the plaintiff's complaint will be sufficient to survive a motion to dismiss." Sheppard v. David Evans & Assoc., 694 F.3d 1045, 1050 (9th Cir. 2012).

Here, Plaintiffs have pleaded all facts necessary to establish the four elements of a prima facie case of disparate treatment under Title VII and FEHA. First, Plaintiffs have alleged that they were discriminated against by Twitter on the basis of their sex, meaning that they as women were members of a protected class. (SAC ¶ 4, Dkt. 61.) Second, Plaintiffs have identified their former positions at Twitter and pleaded that their job performance met Twitter's expectations throughout their employment. (SAC ¶¶ 6-7, Dkt. 61.) Third, Plaintiffs have alleged that they and

more than 1,200 other women (in both engineering-related roles like Plaintiff Turkal and in non-engineering-related roles like Plaintiff Stirling) suffered an adverse employment action in the form of a lay off from Twitter on or around November 4, 2022. (SAC ¶¶ 24-31, Dkt. 61.)

Plaintiffs have also presented supporting factual allegations that "raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." O'Donnell, 2010 WL 2198203 at *3. They have alleged that Twitter's initial round of layoffs was executed under hurried circumstances, with little (if any) attention paid to job performance, resulting in a disproportionate share of women being terminated. (SAC ¶¶ 18-32, Dkt. 61). Indeed, Plaintiffs set forth a statistical analysis based on a spreadsheet from Twitter tracking its layoffs; that analysis showed the layoffs impacted women at a highly disproportionate rate to men, a disparity that is extremely statistically significant. (SAC ¶¶ 22-32, Dkt. 61.) And they alleged that Twitter's discriminatory treatment of female workers was not surprising considering Musk's numerous sexist public comments, which evince his discriminatory animus and are imputed to the company he purchased and led. (SAC ¶¶ 34-37, Dkt. 61.). Plaintiffs have clearly "pleaded enough facts to state a claim for relief that is plausible on its face." Borja-Valdes v. City & Cnty. of San Francisco, 2015 WL 5522287, at *3 (N.D. Cal. Sept. 18, 2015).

Nevertheless, Twitter argues once again that Plaintiffs' allegations do not suffice to meet the Rule 12(b)(6) pleading standard. Twitter contends that Plaintiffs have failed to allege they were performing their jobs satisfactorily and failed to allege facts indicating Twitter treated them and other female employees differently than they did male employees. As described above, these arguments are belied by the SAC, which contains such allegations. Twitter suggests that Plaintiffs' allegations regarding their job performance are inadequate, but the Ninth Circuit has confirmed that a plaintiff need not present detailed allegations regarding job performance to state a prima facie discrimination claim in a complaint. Sheppard, 694 F.3d at 1049–50 (concluding that plaintiff's "two-and-one-half page complaint, while brief, nonetheless satisfies Rule 8(a)(2)'s pleading standard" and that plaintiff plausibly stated a claim of age discrimination under the ADEA where she "alleges that she was over forty and 'received consistently good

performance reviews'"); <u>see also</u> <u>Loza v. Intel Americas, Inc.</u>, 2020 WL 7625480, at *3 (N.D. Cal. Dec. 22, 2020) (denying motion to dismiss ADEA claim where plaintiff alleged he "was a hard-working employee who diligently performed and excelled" at his job); <u>Hamm v. Nielsen</u>, 2019 WL 6499209, at *12 (C.D. Cal. July 30, 2019) (plaintiff "clearly pleaded" element of prima facie ADEA claim by alleging that "his job performance was always 'outstanding'"); <u>Haro v. Therm-X of California, Inc.</u>, 2015 WL 5121251, at *4 (N.D. Cal. Aug. 28, 2015) (plaintiff's allegation that he "performed his job satisfactorily" sufficient to state prima facie discrimination claim even if allegation "is somewhat conclusory"). Indeed, Twitter's argument that Plaintiffs' allegations that their "performance met the Company's expectations" are too generic to meet the pleading standard is undercut by the cases that this Court's cited in its previous order (Dkt. 38 at 8). <u>See</u> <u>Hilber v. International Lining Technology</u>, 2012 WL 3542421, at *5 (N.D. Cal. July 24, 2012) (plaintiff's claim that he "was not told of any problems with his job performance" was sufficient to properly plead claim for disparate treatment); <u>Williams v. Wolf</u>, 2020 WL 1245369, at *10 (N.D. Cal. Mar. 16, 2020) (plaintiffs' allegations "that her work performance was as good or better than that of her peers … supports a sufficient plausible inference" of discrimination).

Twitter then points to other anecdotal evidence that might ultimately be relevant to proving the claims, including demographic and professional information about male employees who were *not* laid off and the managers who made the RIF selections, but these arguments "disregard[] the proce[]dural posture of the case: plaintiffs need not prove every assertion to bring suit or to survive a Rule 12(b)(6) motion to dismiss." <u>Mi Pueblo San Jose, Inc. v. City of Oakland</u>, 2006 WL 2850016, at *4 (N.D. Cal. Oct. 4, 2006). Indeed, while Twitter faults Plaintiffs for purportedly failing to provide sufficiently detailed descriptions of similarly situated male employees who were not laid off, courts in this Circuit have made clear that this kind of factual detail is unnecessary at this stage. <u>See</u>, <u>e.g.</u>, <u>Marziano v. Cty. of Marin</u>, 2010 WL 3895528, at *9 (N.D. Cal. Oct. 4, 2010) (confirming that "a general statement that similarly situated employees were treated more favorably . . . with respect to a specific employment action" is enough to survive a motion to dismiss); <u>Cooper v. Cate</u>, 2011 WL 5554321, at *11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(E.D. Cal. Nov. 15, 2011) (denying a motion to dismiss in an age discrimination case where plaintiff alleged only that the defendant "treated employees with [plaintiff's] rank and classification who were substantially younger than she more favorably that it treated her, including but not limited to, not redirecting them to out of class positions"); Egbukichi v. Wells Fargo Bank, NA, 2017 WL 1199737, at *4 (D. Or. Mar. 29, 2017) ("The Court also rejects Defendant's argument that Plaintiffs must specifically identify the purported similarly qualified white applicants at this stage of the litigation. Although potentially important at summary judgment or trial, the Court finds such specificity is not required in the complaint at the pleading stage.").

Finally, Twitter asks this Court to disregard Musk's discriminatory comments, arguing that these "tweets do not reasonably suggest that sex-based animus motivated Plaintiffs' discharge or anyone else's discharge in the November 4 RIF" and that Plaintiffs have not directly alleged "that it was Musk who discriminated against them or made discriminatory RIF selections." (Dkt. 64 at 17.) But courts have recognized that "strongly held and repeatedly voiced wishes of the king, so to speak, likely became well known to those courtiers who might rid him of a bothersome underling." Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 147 (1st Cir. 2013) (reversing summary judgment on retaliation claim). As the new owner and CEO of Twitter, Musk "set[] the tone and mission for his subordinates, many of whom presumably consider it an important part of their jobs to figure out and deliver what the CEO wants." Travers, 737 F.3d at 147. It is certainly plausible that Musk's discriminatory animus influenced the hurried layoff decisions made by his subordinates operating under his direct supervision. Regardless, this allegation cannot be dismissed at the pleading stage: Musk's alleged discriminatory animus, and the extent to which it influenced the November 4, 2022, RIF, are fact issues to be developed during discovery and resolved at summary judgment or trial. Id. at 148.

### 2. Plaintiffs Are Not Required to Plead a Pattern or Practice of Discrimination But, Regardless, They Have Adequately Pleaded Such a Pattern

Twitter also argues that Plaintiffs' disparate treatment claims fail because they did not allege that Twitter engaged in a "pattern or practice" or discrimination. Twitter is correct that "[c]lass action plaintiffs may bring a claim for disparate treatment by alleging that the employer's conduct was part of a 'pattern or practice' of discriminatory treatment toward members of a protected class." Buchanan v. Tata Consultancy Services, Ltd., 2017 WL 6611653, at *11 (N.D. Cal. Dec. 27, 2017) (quoting Teamsters, 431 U.S. at 325). However, there is no requirement that a plaintiff allege a pattern or practice to survive a motion to dismiss. Plaintiffs are not *required* to plead their intent to pursue a disparate treatment claim under the Teamsters pattern or practice framework or the McDonnell Douglas framework in the SAC. See Drevaleva v. Dep't of Veterans Affs., 835 F. App'x. 221, 223 (9th Cir. 2020) ("Federal Rule of Civil Procedure 8(a), not the McDonnell Douglas framework, provides the appropriate pleading standard for reviewing a Rule 12(b)(6) motion in an employment discrimination action."); Serrano v. Cintas Corp., 699 F.3d 884, 897 (6th Cir. 2012) ("Swierkiewicz compels the conclusion that a plaintiff is not required to plead whether she intends to employ the McDonnell Douglas or the Teamsters burden-shifting evidentiary framework.") (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508–12 (2002)). Indeed, plaintiffs are "not required to commit to one methodology of evidentiary proof to substantiate [an inference of discrimination] in their complaint." Serrano, 699 F.3d at 898 (citing Swierkiewicz, 534 U.S. at 511–12). Requiring otherwise would be "premature" at the pleading stage. Pedreira v. Ky. Baptist Homes for Children, Inc., 579 F.3d 722, 728 (6th Cir. 2009); see also Costa v. Desert Palace, Inc., 299 F.3d 838, 851 (9th Cir. 2002), aff'd, 539 U.S. 90 (2003) ("[N]o special pleading or proof hurdles may be imposed on Title VII plaintiffs.").

Nevertheless, Plaintiffs have adequately alleged a pattern or practice of discriminatory conduct by Twitter. To prevail on a pattern or practice claim, plaintiffs must ultimately prove "that intentional discrimination was the defendant's 'standard operating procedure' as opposed to

an 'unusual practice.'" <u>Buchanan</u>, 2017 WL 6611653 at *12 (quoting <u>Teamsters</u>, 431 U.S. at 336). "To carry their burden, plaintiffs must produce evidence giving rise to a sufficient 'inference that employment decisions were based on an unlawful discriminatory criterion.'" <u>Id.</u> (quoting <u>Segar v. Smith</u>, 738 F. 2d 1249, 1267 (D.C. Cir. 1984)). "Plaintiffs can establish this inference through circumstantial evidence such as statistical disparities, documents, and testimony from protected class members." <u>Id.</u> Even at the later stage of summary judgment, "the proof necessary to establish a *prima facie* case of employment discrimination [under a pattern or practice theory] is 'minimal.'" <u>Id.</u> (quoting <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1281 (9th Cir. 2000)); <u>see</u> <u>also</u> <u>Doheny v. Int'l Bus. Machines, Corp.</u>, 2024 WL 382142, at *7 (S.D.N.Y. Feb. 1, 2024) ("For a pattern-or-practice claim under the ADEA to survive a Rule 12(b)(6) motion, a plaintiff must plead facts plausibly supporting a minimal inference that [intentional age] discrimination was the company's standard operating procedure.") (cleaned up).

Plaintiffs allege that, following Musk's purchase and takeover of Twitter, the company immediately undertook a round of layoffs disproportionately affecting female workers and then continued to lay women off disproportionately over the ensuing months. Plaintiffs have buttressed these allegations with evidence of significant statistical disparities in the gender composition of Twitter's pre- and post-RIF workforce, as well as anecdotal evidence regarding the discriminatory animus of Elon Musk, who oversaw the challenged employment practice. (SAC ¶¶ 20, 22-40, Dkt. 61.) At this stage, these allegations should suffice to meet Plaintiffs' low burden of stating a plausible claim that Twitter, in the aftermath of Musk's purchase of the company, engaged in a pattern and practice of discrimination. <u>Compare</u> <u>Keys v. Humana, Inc.</u>, 684 F.3d 605 (6th Cir. 2012) (concluding that plaintiff plausibly alleged pattern or practice claim where complaint "details several specific events . . . where [plaintiff] alleges she was treated differently than her Caucasian management counterparts; it identifies the key supervisors and other relevant persons by race and either name or company title; and it alleges that [plaintiff] and other African Americans received specific adverse employment actions notwithstanding satisfactory employment performances"); <u>with</u> <u>Sengupta v. Morrison-Knudsen Co.</u>, 804 F.2d

1072, 1076 (9th Cir. 1986) (finding no pattern or practice of discrimination where data established that same percentage of minority and non-minority employees were laid off).

### 3. Plaintiffs Have Pleaded Facts Sufficient to Support a Plausible Disparate Impact Claim

"[T]o prevail on a disparate impact claim . . . a plaintiff must prove that a challenged employment policy or practice, while facially neutral, has a disparate impact on certain employees 'because of their membership in a protected group.'" Katz v. Regents of the Univ. of California, 229 F.3d 831, 835 (9th Cir. 2000) (explaining standard applied to ADEA and FEHA claims); see also Thomas v. San Francisco Hous. Auth., 2017 WL 878064, at *4 (N.D. Cal. Mar. 6, 2017) (applying same standard in Title VII context). A plaintiff establishes a prima facie disparate impact claim if they "(1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact." Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1190 (9th Cir. 2002). While "[p]laintiffs need not prove the prima facie elements to survive a motion to dismiss, [they] must plead the general elements to make a claim facially plausible." Lee v. Hertz Corp., 330 F.R.D. 557, 561 (N.D. Cal. 2019); see also Wilson v. Timec Servs. Co., Inc., 2023 WL 5753617, at *2 (E.D. Cal. Sept. 6, 2023) ("To state a disparate impact claim, plaintiffs must plausibly allege that an employment disparity exists with respect to the protected group."). As with disparate treatment claims, the burden on plaintiffs at the pleading stage is "not onerous," and "[t]he plaintiff must only make allegations sufficient to raise an inference or presumption of discrimination." Moussouris v. Microsoft Corp., 2016 WL 6037978, at *3 (W.D. Wash. Oct. 14, 2016).

Here, Plaintiffs have plainly met their burden insofar as they have plausibly alleged each element of a prima facie disparate impact case, even though they do not need to do so. As the Court recognized in its order dismissing the initial Complaint, Plaintiffs have sufficiently alleged the existence of a facially neutral employment practice: a mass layoff occurring on or about November 4, 2022, that was directed by a small group of managers and that did not consider

objective criteria such as performance, qualifications, or experience. (Dkt. 38 at 12-14.) Twitter does not appear to dispute this. Plaintiffs have also alleged that this practice caused a significant disparate impact on female employees, who were disproportionately laid off. (SAC ¶¶ 21-33, Dkt. 61.) As detailed above, Plaintiffs have alleged supporting factual allegations, including a preliminary statistical analysis and evidence of Musk's discriminatory animus, which amply support an inference of a causal relationship. (SAC ¶¶ 21-37, Dkt. 61.)

In response, Twitter first argues that Plaintiffs have failed to plausibly allege the existence of a disparate impact on women because of some clerical errors in the SAC resulting in inconsistencies between the layoff data plead in the text of the SAC (Dkt. 61 ¶ 29) and the data contained in the summary chart (Dkt. 61 ¶ 32) and the original Complaint (Dkt. 1). While Plaintiffs may have inadvertently neglected to update the summary chart for the SAC, that is certainly not cause for dismissal. At the motion to dismiss stage, Plaintiffs need not allege any statistical data *at all*. United States v. Maricopa Cnty., Ariz., 915 F. Supp. 2d 1073, 1078 (D. Ariz. 2012). Indeed, "[a]t the motion to dismiss stage, 'there is no reason [a plaintiff] would have this kind of statistical evidence yet,'" because discovery has not yet commenced. Id. (quoting Mata v. Ill. State Police, 2001 WL 292804, at *4 (N.D. Ill. Mar. 22, 2001)); see also Jenkins v. New York City Transit Auth., 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009) ("To the extent the defendants' argument is that a plaintiff must provide statistical support for a disparate impact claim in order to survive a motion to dismiss, that argument is incorrect. It would be inappropriate to require a plaintiff to produce statistics to support her disparate impact claim before the plaintiff has had the benefit of discovery."). Thus, regardless of the clerical errors that Twitter has identified, Plaintiffs have far exceeded their burden at this stage by providing the Court with a preliminary statistical analysis of the impact of the challenged employment practice. See, e.g., Brown v. City of New York, 2017 WL 1102677, at *6 (E.D.N.Y. Mar. 23, 2017) ("[S]tatistics that may ultimately prove insufficient can nevertheless support a plausible inference of disparate impact on a motion to dismiss."); Menoken v. McGettigan, 273 F. Supp. 3d 188, 199 (D.D.C. 2017), aff'd sub nom. Menoken v. Pon, 2018 WL 2383278 (D.C. Cir. May

9, 2018) (denying motion to dismiss disparate impact claim where allegations were "barely sufficient to create an inference of causation" and explaining that "[the p]laintiff will now have to . . . come forward with the necessary statistical evidence").

Twitter also argues that Plaintiffs have failed to sufficiently plead that the challenged employment practice *caused* the identified disparity. But it is simply incorrect that Plaintiffs did not plead allegations that go beyond the mere existence of the mass layoff and the statistical effect that that layoff had. For example, Plaintiffs allege that "[t]he decisions regarding which employees would be laid off were made under extremely hurried circumstances, with little if any regard given to employees' job performance, qualification, experience, and ability," and that "the layoff decisions were made quickly by a small group of managers, under close supervision of Musk." (SAC ¶¶ 18, 20, Dkt. 61.) As other courts have found, these allegations should suffice at this stage to state a plausible claim of disparate impact discrimination. See, e.g., Zeman, 2023 WL 5599609 at *6 (allegations that Twitter had a policy of delegating employment decisions to subjective discretion of managers and that such policy had a disparate impact on women in the context of conducting a RIF, were "enough to survive the [sic] at the pleadings stage"); Gamble, 348 F. Supp. 3d at 1023 (finding allegations of subjective policy for making various employment decisions, including hiring, compensation, promotions, and discipline to be sufficient for disparate impact race discrimination claim).

### D. Twitter's Argument Regarding Standing Should Be Rejected

In its motion to dismiss the original Complaint, Twitter argued that Plaintiffs' class claims should be struck "[b]ecause Plaintiffs could not have been injured by the Post-RIF Policies [and therefore] lack standing to assert a disparate impact claim arising from the alleged injuries of others who were subject to those policies." (Dkt. 20 at 18.) The Court denied Twitter's request to strike as moot, but indicated that it was disinclined to entertain a motion to strike "class allegations in lieu of or prior to a fully briefed motion for class certification brought after discovery has been completed." (Dkt. 38 at 16.) Now, having been so cautioned by the

Court, Twitter restyles its request to strike the class allegations as an argument about Plaintiffs' standing to represent the putative class members.[5] The Court should not be so deceived.

Once again, Twitter urges the Court to take a myopic view of the layoffs at Twitter, carving up Plaintiffs' allegations into distinct adverse actions (i.e., the initial November 4 RIF vs. Twitter's continued rolling layoffs in the ensuing months), rather than looking at the big picture. However, Plaintiffs' allegations are that the "mass layoff" that Musk implemented following his purchase of Twitter in October 2022 encompassed not just the November 4 RIF, but several other mass terminations until at least March 2023 that resulted in a loss of more than half of Twitter's total workforce and that disproportionately targeted women. (SAC ¶¶ 17-19, 21-33, Dkt. 61.) The fact that Plaintiffs were laid off on November 4, 2022, does not prohibit them from alleging that the mass layoff **as a whole** was discriminatory.

As before, Twitter's argument is really an inappropriate attempt to limit the scope of Plaintiffs' class claims at the motion to dismiss stage (i.e., contending that Plaintiffs cannot represent class members who were exited from Twitter after November 4). As the Court correctly recognized, such attacks on class claims are strongly disfavored prior to discovery and a motion for class certification. See, e.g., In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d 609, 615-16 (N.D. Cal. 2007) ("[D]ismissal of class allegations at the pleading stage should be done rarely and [] the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery"). Courts have gone so far as to decline to address class allegations at the Rule 12 stage, even when the class allegations "are suspicious and may in fact be improper," because "plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery . . . ." In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d at 615–16.

---

[5]     Twitter also argues that Plaintiffs have not adequately pled standing to challenge *their own* discharge. (Dkt. 64 at 32.) This is nonsense. Plaintiffs have clearly alleged that they were discharged in November 2022, at the time Musk began laying off Twitter employees en masse. (SAC ¶¶ 6-7, 17-20, Dkt. 61.)

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

That Twitter has characterized this as an issue of standing should not change the Court's analysis. Twitter does not cite any case law suggesting that an individual whose employment is terminated in a mass layoff does not have standing to represent other individuals with effective separation dates that post-date her own, where they allege the terminations were part of the same mass layoff.[6] It is doubtful that such case law exists, as it would make no sense in circumstances such as those at issue here, where an employer conducts a mass layoff with rolling terminations over a period of days, weeks, or months that affect a large portion of its workforce. Indeed, in Rule 23 class actions, California federal courts have unequivocally held that named plaintiffs can represent absent class members with respect to ongoing injuries that those class members have suffered long after the named plaintiffs ceased being employed by the defendant without raising Article III standing issues. See, e.g., Abdullah v. U.S. Sec. Associates, Inc., 2011 WL 121733702, at *2 (C.D. Cal. Jan. 11, 2011), aff'd, 731 F.3d 952 (9th Cir. 2013) ("Notwithstanding Plaintiffs' status as former employees … Plaintiffs and the putative class's current employee members are all equally interested in obtaining compensation for the assertedly unlawful practices set forth in the Second Amended Complaint, and Plaintiffs are adequate representatives."); Glass v. UBS Fin. Servs., Inc., 331 F. App'x. 452, 455 (9th Cir. 2009) (rejecting argument that "because the named plaintiffs are all former employees of defendants, they cannot fairly and adequately represent a class that includes both current and former UBS employees" and noting that "both the former and current employees are equally interested in obtaining compensation for the assertedly unlawful practices set forth in the complaint."); In re Wells Fargo Home Mortg. Overtime Pay Litig., 527 F. Supp. 2d 1053, 1064 (N.D. Cal. 2007) (finding named plaintiffs adequate class representatives although they were former employees

---

[6]     Pottenger v. Potlatch Corp., 329 F.3d 740 (9th Cir. 2003), which Twitter cites for the proposition that a plaintiff cannot assert a claim arising from injuries suffered by other class members, was not a class action case. That case concerned an executive's individual claim challenging a termination for cause, which was entirely separate and apart from an ongoing RIF effecting rank-and-file employees. Id. at 750 ("Pottenger was a high-level executive, while the RIF targeted rank-and-file employees.").

and could challenge current employment practices); <u>Wofford v. Safeway Stores, Inc.</u>, 78 F.R.D. 460, 489 (N.D. Cal. 1978) ("[T]here is ample support for the position that former employees may represent present employees …") (internal citations omitted). Here, Plaintiffs were discharged at the beginning of a period of rolling layoffs affecting thousands of employees, and they have standing to represent a class of those employees who have similarly suffered loss of employment during that time.

At bottom, at this stage, Plaintiffs' class action claims are amply sufficient, and it would be premature to dismiss them at this stage for a purported failure to allege standing.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Twitter's Motion to Dismiss the Second Amended Complaint.

Respectfully submitted,

CAROLINA BERNAL STRIFLING and WILLOW WREN TURKAL, on behalf of themselves and all others similarly situated,

By their attorneys,

  /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; tfowler@llrlaw.com

Dated:        February 23, 2024

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendant Twitter, Inc. via the CM/ECF system on February 23, 2024.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

PLAINTIFFS' OPPOSITION TO TWITTER'S MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT