UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINA BERNAL STRIFLING, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TWITTER INC., et al., <br><br> Defendants. | Case No. 22-cv-07739-JST <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: ECF No. 64 |

Before the Court is Defendant X Corp.'s[1] ("X") motion to dismiss. ECF No. 64. The Court will grant the motion.

## I.  BACKGROUND

In October 2022 Elon Musk acquired X, formerly known as Twitter. ECF No. 61 ¶ 17. Soon after the acquisition, X initiated a Reduction-in-Force ("RIF") that affected approximately 2,621 of its 5,134 employees, most of whom were notified of their layoff on November 4, 2022. *Id.* ¶¶ 17, 19, 23. Plaintiffs allege these layoff decisions were made quickly by a small group of managers under Musk's close supervision. *Id.* ¶ 20.

Plaintiffs are two former X employees. *Id.* ¶¶ 6, 7. Plaintiff Carolina Bernal Strifling, a resident of Miami, Florida, worked at X as a Senior Client Partner Lead from June 2015 until November 2022. *Id.* ¶ 6. Plaintiff Willow Wren Turkal, a resident of San Jose, California, worked for X as a Staff Site Reliability Engineer from June 2021 until November 2022. *Id.* ¶ 7. Plaintiffs allege the November 2022 RIF disproportionately affected women employees. *Id.* ¶ 24.

On December 7, 2022, Plaintiffs filed this action on behalf of themselves and other female

---

[1] X Corp. is the successor in interest to Defendant Twitter, Inc.

X employees whose jobs were affected by the "layoffs, terminations, and constructive discharges since Elon Musk acquired the company." ECF No. 1 at 12. Plaintiffs brought claims under Title VII of the Civil Rights Act of 1964 ("Title VII") for sex-based discrimination. ECF No. 1. In addition, Turkal brought a claim under the California Fair Employment and Housing Act ("FEHA") Cal. Gov. Code § 12900. On December 8, 2022, Plaintiffs filed complaints with the Equal Employment Opportunity Commission ("EEOC"), and Turkal filed a complaint with the California Civil Rights Department ("CRD"). Plaintiffs received their right-to-sue letters on February 22, 2023. ECF No. 65 Ex. A.[2] On May 8, 2023, the Court granted X's motion to dismiss Plaintiffs' claims, finding Plaintiffs had both failed to exhaust their administrative remedies and failed to state claims for sex discrimination. ECF No. 38. Plaintiffs amended their complaint realleging their Title VII and FEHA claims. ECF No. 61. X now moves to dismiss the amended complaint. ECF No. 64.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. §1331 and §1367.

## III. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[2] X requests the Court take judicial notice of Plaintiffs' right-to-sue notices from the EEOC and CRD. ECF No. 65. Because these are official records whose accuracy is not in dispute, the Court grants this request. *See Dornell v. City of San Mateo*, 19 F.Supp.3d 900, 904 n.3 (N.D. Cal. 2013).

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' … it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). A plaintiff may "plead[] facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records, LLC v. Doe 3*, 603 F.3d 110, 120 (2d Cir. 2010)).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

To bring a claim under Title VII, a plaintiff is required to first "exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge" and obtain a right-to-sue notice before filing suit in federal court. *BKB v. Maui Police Dep't.*, 276 F.3d 1091, 1099 (9th Cir. 2002). A plaintiff who brings a claim under FEHA must do the same with the CRD. *Harris v. Cnty. of Orange,* 682 F.3d 1126, 1135 (9th Cir. 2012). However, the Ninth Circuit recognizes equitable exceptions to the administrative exhaustion requirement "where the remedies are inadequate, inefficacious, or futile, where pursuit of them would irreparably injure the plaintiff, or where the administrative proceedings themselves are void." *United Farm Workers of Am., AFL-CIO v. Ariz. Agric. Emp't Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1987); *see SJBC, LLC v. Horwedel*, 201 Cal. App. 4th 339, 346 (2011). Thus, filing a timely complaint with the EEOC "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines,*

3

*Inc.*, 455 U.S. 385, 393 (1982).

X first argues that Plaintiffs' Title VII and FEHA claims should be dismissed because they have failed to adequately allege exhaustion. ECF No. 64 at 19–20. Plaintiffs in their complaint allege they have filed an administrative charge of sex discrimination under Title VII with the EEOC and received a right-to-sue letter. ECF No. 61 ¶¶ 38, 39. Additionally, Plaintiff Turkal alleges she's filed an administrative charge of sex discrimination under FEHA with the CRD and received a right-to-sue letter.[3] *Id.* ¶ 39. X contends that without attaching their charges or their right-to-sue letter, or detailing whom they "filed their charges against, the allegations in the charges, the filing or right-to-sue dates, or that the charges and lawsuit were filed within the statutorily prescribed time periods" Plaintiffs' allegations are insufficient to plead compliance with their administrative exhaustion requirements. ECF No. 64 at 19. As Plaintiffs point out, however, their right-to-sue letters are already in the record and have been judicially noticed. "[T]here would be little if any practical value in requiring [Plaintiffs] to amend [their] complaint to allege the existence of a document that already appears in the record." *Harris v. Thomas*, 15-cv-02410-JCS, 2015 WL 7015412, at *4 (N.D. Cal. Nov. 12, 2015).

X also argues that Plaintiffs Title VII and FEHA claims should be dismissed for failure to exhaust because Plaintiffs filled their charges and obtained their right-to-sue letters after filing suit. ECF No. 64 20–23. Plaintiffs respond that their eventual receipt of the right-to-sue letters has cured any defect. ECF No. 67 at 17–20.

With respect to Title VII, the Ninth Circuit has found that the subsequent issuance of a right-to-sue letter satisfies the exhaustion requirement so long as there is "not evidence showing the premature filing precluded the state from performing its administrative duties or that the defendant was prejudiced by such filing." *Edward v. Occidental Chem. Corp.*, 892 F.2d 1442,

---

[3] Plaintiffs concede that Turkal, not Strifling, is permitted to bring a FEHA claim, ECF No. 27 at 32, however, the complaint still states that X's actions "constitute[] unlawful discrimination against *Plaintiffs* and other similarly situated female [X] employees who worked in California on the basis of sex in violation of the FEHA." ECF No. 61 at 9 (emphasis added). Because the Court is dismissing all of Plaintiffs' claims, X's request to dismiss Strifling's FEHA claim is moot. However, Plaintiffs should, on amendment, correct their complaint to reflect that Turkal alone brings a FEHA claim.

1445 n.1 (9th Cir. 1990) (citing *Wrighten v. Metro. Hosp., Inc.*, 726 F.2d 1346, 1351 (9th Cir. 1984)). There is no such evidence in this case. However, X argues this case is distinguishable from other cases where courts have found subsequent receipt of a right-to-sue notice satisfies exhaustion, because in those cases the plaintiff filed their charges with the EEOC prior to filing suit. ECF No. 64 at 22–23. Here, on the other hand, X claims Plaintiffs waited two months after commencing their federal suit before filing charges with the EEOC. *Id.* The records, however, indicate Plaintiffs filed their charges contemporaneously with their federal suit. ECF Nos. 27–1, 27–2. Plaintiffs have now received their right-to-sue letter from the EEOC. ECF No. 65 Ex. A. Without any evidence showing their "premature filing precluded the state from performing its administrative duties or that the defendant was prejudiced by such filing" this satisfies Title VII's exhaustion requirement. *Edward*, 892 F.2d at 1445 n.1.

The law is less clear, however, on whether the post-filing receipt of a right-to-sue letter from the CRD can satisfy FEHA's exhaustion requirement. Some district courts have found that it does not and have therefore dismissed the FEHA claims. *See e.g. Kobbervig v. M.A.C. Cosmetics, Inc.*, CV 17-6543 DSF (EX), 2018 WL 6177259, at *3 (C.D. Cal. Mar. 26, 2018); *Mitchell v. City of Santa Rosa*, No. C 08-02698 SI, 2008 WL 4534050, at *5 (N.D. Cal. Oct. 7, 2008); *Felix v. State Comp. Ins. Fund*, No. SACV 67-0061 AG (MLGx), 2007 WL 3034444, at *6–7 (C.D. Cal. Oct. 3, 2007). Others have found that like Title VII, a premature FEHA claim can be cured through a subsequent receipt of a right-to-sue letter. *Greenly v. Sara Lee Corp.*, No. CIV. S-06-1775 WBS EFB, 2006 WL 3716769, at *8 (E.D. Cal. Dec. 15, 2006).

Courts that have found a subsequent right-to-sue letter cannot cure a premature FEHA suit, often have relied on the distinction that unlike with Title VII, California courts consider FEHA's exhaustion requirement to be jurisdictional. *See e.g. Mitchell*, 2008 WL 4534050, at *5 (citing *Miller v. United Airlines, Inc.*, 174 Cal. App. 3d 878 (1985)). Accordingly, they have found that when an individual files a FEHA claim prior to obtaining a right-to-sue notice, the court lacks jurisdiction and must therefore dismiss the action and have plaintiff refile their claim. *Id.*

However, subsequent California decisions have clarified that although the "[e]xhaustion of *administrative* remedies is a 'jurisdictional prerequisite to resort to the courts,'" *Johnson v. City of*

5

*Loma Linda*, 24 Cal. 4th 61, 70 (2000) (emphasis in original) (quoting *Albelleira v. Dist. Court of Appeal*, 17 Cal. 2d 280, 293 (1941)), "'jurisdictional prerequisite' does not mean subject matter jurisdiction in the context of exhaustion of administrative remedies." *Kim v. Konad USA Distrib., Inc.,* 226 Cal. App. 4th 1336, 1347 (2014). Thus, as with Title VII, California courts have also adopted equitable exceptions to the administrative exhaustion requirement. *Holland v. Union Pac. R.R. Co.*, 154 Cal. App. 4th 940, 946 (2007). Given this, the Court finds no reason why Plaintiffs' subsequent right-to-sue notices should not satisfy the FEHA exhaustion requirement as "dismissing the complaint at this stage of the litigation and requiring plaintiff to commence a new action would be a pointless exercise in formalism." *Diem v. City and Cnty. of S.F.*, 686 F. Supp. 806, 810 (N.D. Cal. 1988) (quotation marks and citation omitted).

### B.     Disparate Treatment

A plaintiff may bring a Title VII or FEHA claim on a theory of disparate treatment. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006); *McCaskey v. Cal. State Auto. Assn.*, 189 Cal. App. 4th 947, 979 (2010). Disparate treatment occurs "where an employer 'treat[s] [a] particular person less favorably than others because of' a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 985-86 (1988)). To state a disparate treatment claim, a plaintiff must allege that "the defendant had a discriminatory intent or motive" in taking some employment-related action against them. *Watson*, 487 U.S. at 986. Thus, "[i]t is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group." *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*, 770 F.2d 1401, 1405 (9th Cir. 1985)). "While a plaintiff need not plead facts constituting all elements of a prima facie employment discrimination case in order to survive a Rule 12(b)(6) motion to dismiss, courts nevertheless look to those elements to analyze a motion to dismiss, so as to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 796–97 (N.D. Cal.

6

1    2015).

2           The Court previously found that Plaintiffs failed to allege a disparate treatment claim.
3    Plaintiffs in their amended complaint add allegations about their positions at X and that their
4    "performance met the Company's expectations." ECF No. 61 ¶¶ 6, 7.  While these additional
5    allegations cure some of the deficiencies identified by the Court, they still fail to allege a plausible
6    claim of disparate treatment.  First, as the Court previously noted, Plaintiffs fail to allege that they
7    suffered an adverse employment action.  ECF No. 38 at 1, n.1.  While Plaintiffs allege they
8    worked for X until November 2022 and detail the layoffs that occurred that month, they never
9    allege they were subject to these layoffs.  *See Haro v. Therm-X of California*, No. 15-cv-02123-
10   JCS, 2015 WL 5121251, at *4 (N.D. Cal. Aug. 28, 2015) (finding plaintiff failed to allege a
11   discrimination claim when the complaint contained "no allegations as to what sort of discipline"
12   they experienced).  Second, assuming Plaintiffs were terminated, they still have not included
13   enough factual allegations to plausibly infer they were laid off due to their sex.  For example, the
14   amended complaint does not allege anything about the comparative qualifications, experience, job
15   performance, or abilities of any male employees who were not laid off to suggest that similarly
16   situated men were treated more favorably.  *See Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138
17   (9th Cir. 2019) (affirming dismissal of sex discrimination claim because there were no
18   "nonconclusory allegations that the male students were treated any differently than similarly
19   situated female students based on sex").

20          Plaintiffs point to *Zeman v. Twitter, Inc. et al.*, 23-cv-01786-SI, 2024 WL 1707237, at *3
21   (N.D. Cal. Apr. 18, 2024), where the court found the plaintiff plausibly alleged a claim for
22   disparate treatment based on age, to argue their allegations are sufficient to state a disparate
23   treatment claim.  ECF No. 73 at 2.  In *Zeman*, however, plaintiff specifically alleged that he was
24   subject to the layoffs and that he "performed as well as if not better … than employees under the
25   age of 50 who were not laid off."  *Zeman*, 2024 WL 1707237, at * 3.  Plaintiffs fail to make such
26   allegations here.

27          For the reasons explained in the Court's prior order, the allegations of statements made by
28   X's CEO Elon Musk and statistics fail to save their claims or plausibly allege that X engaged in a

1    pattern or practice of discrimination. ECF No. 38 at 8–11. Plaintiffs' new allegation that Musk
2    used white paint to obscure the "w" on the "Twitter" sign in April 2023 is likewise insufficient, as
3    this act was not tied to the RIF. *See Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir.
4    1990) (stray remarks unrelated to the decisional process are insufficient to establish
5    discrimination). Plaintiffs, relying on *Travers v. Flight Services & Systems, Inc.*, 737 F.3d 144
6    (1st Cir. 2013), argue that is plausible to infer based on Musk's conduct that his "discriminatory
7    animus influenced the hurried layoff decisions" as "Musk 'set the tone and mission of his
8    subordinates, many of whom presumably consider it an important part of their jobs to figure out
9    and deliver what the CEO wants.'" ECF No. 67 (quoting *Travers*, 737 F.3d at 147). *Travers* is
10   readily distinguishable. In *Travers*, the CEO had made repeated statements to the plaintiff's
11   former supervisor that he wanted to get rid of plaintiff after he had filed suit against the company
12   for failure to pay the federal minimum wage. *Travers*, 737 F.3d at 145. Defendants in that case
13   argued a reasonable jury could not find a causal connection between the CEO's retaliatory animus
14   and plaintiff's termination, as it was plaintiff's new supervisor who fired him and there was no
15   evidence she was aware of the CEO's views. *Id.* at 146. The First Circuit disagreed, finding that
16   although the "retaliatory animus resided at the apex of the organizational hierarchy" because "[i]t
17   repeatedly took the form of express directives to [plaintiff's] supervisor […] [a] rational juror
18   could conclude that such strongly held and repeatedly voiced wishes of the king, so to speak,
19   likely became well known to those courtiers who might rid him of a bothersome underling." *Id.* at
20   147. The court explicitly noted that these were not stray remarks, as they focused on a specific
21   employee and directed the precise action to be taken. *Id.* Accordingly, it was not unreasonable to
22   infer that the CEO's explicit directive to "get rid" of plaintiff spread to other managers who would
23   be unlikely to frustrate his objective. *Id.* Contrastingly, Musk's stray remarks, unrelated to the
24   employment decision at issue, do not support the plausible inference that discriminatory animus
25   influenced the manager's layoff decisions. Accordingly, Plaintiffs have failed to state a claim for
26   disparate treatment.

27       **C.**    **Disparate Impact**

28       A plaintiff may also bring a Title VII or FEHA claim on the theory that a facially neutral

employment practice created a disparate impact upon a protected class. *Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002); *Mahler v. Judicial Council of Cal.*, 67 Cal. App. 5th 82, 112 (2021). In order to state a disparate impact claim, a plaintiff must allege the existence of "a specific, identified, employment practice or selection criterion." *Stout,* 276 F.3d at 1121. Plaintiff must also allege that the identified employment practice caused "a significant disparate impact on a protected class." *Id.* Such allegations largely include "statistical evidence of a kind and degree sufficient to show that the practice in question has caused" the disparate impact. *Watson*, 487 U.S. at 994.

The Court previously found Plaintiffs sufficiently alleged "the existence of a facially neutral employment practice: [X's] delegation of layoff decisions to a small group of mangers, which largely did not consider objective criteria – such as 'job performance, qualifications, experience, and abilities' – in making its decision." ECF No. 38 at 13 (quoting ECF No. 1 ¶¶ 19, 21). However, the Court found Plaintiffs did "not sufficiently allege[] that the mangers' ability to exercise their discretion caused the gender disparity in the layoffs overall, and critically, Plaintiffs' own layoffs" and therefore failed to allege causation. *Id.* at 14. X contends that Plaintiffs have again failed to adequately allege causation. ECF No. 64 at 29–30.

First, X argues that Plaintiffs have failed to plausibly allege the existence of a significant disparate impact on women because Plaintiffs' data and statistics are internally inconsistent and self-contradictory. *Id*. Plaintiffs allege that X laid off 507 of its 863 female employees in engineering-related roles, and 826 of its 1,834 male employees in those roles. ECF No. 61 ¶ 29. The complaint, however, contains a chart with different numbers. *Id.* ¶ 32. Plaintiffs in opposition clarify that the wrong chart was included due to a clerical error. ECF No. 67 at 28. The Court declines to dismiss Plaintiffs' claim on this basis, as both sets of numbers provide a significant statistical disparity. On amendment, however, Plaintiffs should ensure their statistical allegations are consistent.

Second, X contends that even if Plaintiffs have pleaded a significant disparate impact on women, they have still failed to adequately allege causation. ECF No. 64 at 30. The Court earlier found Plaintiffs did "not sufficiently allege[] that the mangers' ability to exercise their discretion

9

caused the gender disparity in the layoffs overall, and critically, Plaintiffs' own layoffs." ECF No. 38 at 14. Specifically, the Court found that "Plaintiffs fail[ed] to allege basic facts that would situate them within the statistics." ECF No. 38. Plaintiffs in their amended complaint address some of these deficiencies including their positions at X and that their performance was satisfactory. ECF No. 61 ¶¶ 6, 7. However, without allegations that they were subject to the RIF they "have not sufficiently alleged that the mangers' ability to exercise their discretion caused the gender disparity in the offices overall, and critically, Plaintiffs *own layoffs*." ECF No. 38 at 14 (emphasis added); *see Pottenger v. Potlatch Corp.*, 329 F.3d 740, 750 ("To bring a disparate impact claim, [Plaintiff] must show that he was subject to the particular employment practice with the alleged disparate impact.")[4] Accordingly, Plaintiffs also fail to allege a claim for disparate impact.

## CONCLUSION

For the foregoing reasons, X's motion is granted. Plaintiffs' complaint is dismissed with leave to amend. *See AmerisourceBergen Corp. v. Dialysist W., Inc.,* 465 F.3d 946, 951 (9th Cir. 2006) (leave to amend should be freely given unless it would prejudice the opposing party, is sought in bad faith, produces an undue delay on litigation, or is futile). Plaintiffs may file an amended complaint within twenty-one days of this order solely to cure the deficiencies identified by this order. Failure to file a timely amended complaint will result in dismissal with prejudice.

**IT IS SO ORDERED.**

Dated: August 26, 2024



JON S. TIGAR
United States District Judge

---

[4] As X correctly observes, without allegations that Plaintiffs themselves were subject to the RIF, they lack standing to challenge the policy. *Renati v. Wal-Mart Stores, Inc.*, 19-cv-02525-CRB, 2019 WL 5536206, at *3 (N.D. Cal. Oct. 25, 2019) (Plaintiffs "lack standing to challenge policies that did not cause their injury.")