SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice*)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:    (617) 994-5800
Facsimile:    (617) 994-5801

*Attorneys for Plaintiffs Carolina Bernal Strifling and Willow Wren Turkal,*
*on behalf of themselves and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CAROLINA BERNAL STRIFLING, and WILLOW WREN TURKAL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TWITTER, INC., and X CORP.,<br><br>Defendants | Case No. 4:22-cv-07739-JST<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>1. DISCRIMINATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.*<br>2. DISCRIMINATION IN VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT, Gov. Code § 12900, *et seq.* |

## I.    INTRODUCTION

1.    Plaintiffs Carolina Bernal Strifling and Willow Wren Turkal file this Class and Collective Action Complaint against Twitter, Inc. and X Corp. (collectively "Twitter"), on their own behalf and on behalf of other female Twitter employees across the country who have been

1
THIRD AMENDED CLASS ACTION COMPLAINT

discharged or constructively discharged from their jobs during the chaotic months since multi-billionaire Elon Musk purchased the company.

2. Plaintiffs bring claims of discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.*, and (for employees who worked out of California) the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.*, challenging the company's termination of female employees since Elon Musk's acquisition of the company.

3. As described further below, shortly after Elon Musk completed his purchase of Twitter, he immediately began laying off more than half of its workforce.

4. The mass termination of employees at Twitter has impacted female employees to a much greater extent than male employees – and to a highly statistically significant degree. Moreover, Elon Musk has made a number of publicly discriminatory remarks about females, further confirming that the mass termination's greater impact on female employees resulted from discrimination.

5. Plaintiffs file this action on their own behalf and on behalf of similarly situated individuals, bringing claims of sex discrimination.

## II.   PARTIES

6. Plaintiff Carolina Bernal Strifling is an adult resident of Miami, Florida, where she worked for Twitter from June 2015 until November 2022. Ms. Strifling was employed by Twitter as a Senior Client Partner Lead. Throughout her employment with Twitter, Ms. Strifling's performance met the Company's expectations.

7. Plaintiff Willow Wren Turkal is an adult resident of San Jose, California, where she worked for Twitter from June 2021 until November 2022. Ms. Turkal was employed by Twitter as a Staff Site Reliability Engineer. Throughout her employment with Twitter, Ms. Turkal's performance met the Company's expectations.

8. Plaintiffs bring this lawsuit as a Rule 23 class action on behalf of all similarly situated female Twitter employees across the United States whose jobs have been affected by the company's layoffs since Elon Musk acquired the company.

9. Defendant Twitter, Inc. is a Delaware corporation, headquartered in San Francisco, California.

10. Defendant X Corp. is a Nevada corporation, headquartered in San Francisco, California.

11. In or about March 2023, Twitter merged with X Corp., and as a result Twitter and X Corp. are a single entity. X Corp. has successor liability for Twitter's unlawful acts. Twitter and X Corp. are referred to herein as "Twitter".

## III. JURISDICTION

12. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

13. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims, because those claims derive from a common nucleus of operative facts with Plaintiffs' federal claims.

14. This Court has personal jurisdiction over Twitter, as it is headquartered in this District and conducts substantial business operations in this District.

## IV. STATEMENT OF FACTS

15. Twitter is a social media company that used to employ thousands of people across the United States.

16. In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company.

17. Following Elon Musk's purchase of Twitter in late October 2022, Musk immediately began a mass layoff that affected well more than half of Twitter's workforce. See

3
THIRD AMENDED CLASS ACTION COMPLAINT

Kate Conger, Ryan Mac, and Mike Isaac, Confusion and Frustration Reign as Elon Musk Cuts Half of Twitter's Staff, NEW YORK TIMES (November 4, 2022), https://www.nytimes.com/2022/11/04/technology/elon-musk-twitter-layoffs.html; Kate Conger, Ryan Mac, and Mike Isaac, In Latest Round of Job Cuts, Twitter is said to Layoff at Least 200 Employees, NEW YORK TIMES (February 26, 2023), https://www.nytimes.com/2023/02/26/technology/twitter-layoffs.html; Ryan Morrison, Twitter 'lays off 10% of its global workforce' in Elon Musk's latest job cuts, TECHMONITOR (February 27, 2023, updated March 9, 2023) ("The Company's headcount is down 75%."), https://techmonitor.ai/policy/digital-economy/twitter-job-cuts-elon-musk.

18. The decisions regarding which employees would be laid off were made under extremely hurried circumstances, with little if any regard given to employees' job performance, qualifications, experience, and abilities. Indeed, decisions regarding laying off thousands of employees were made in a period of just days after Musk's acquisition of the company.

19. Most laid off employees were notified on November 4, 2022 (although many of these employees were aware they had been laid off the night before, when their access to Twitter's systems was cut off).

20. Plaintiffs were both laid off on November 4, 2022. Plaintiffs were laid off even though they both performed as well as (if not better) than male employees who were not laid off.

21. Reportedly, the layoff decisions were made quickly by a small group of managers under close supervision by Musk. Some of these managers were brought in from other companies owned by Musk (such as Tesla), who did not have much, if any, knowledge about Twitter's operations. See Lora Kolodny, Elon Musk has pulled more than 50 Tesla employees into his Twitter takeover, CNBC (November 1, 2022), Elon Musk has pulled more than 50 Tesla employees into Twitter (cnbc.com).

22. Widely circulated pictures of Twitter employees before and after the layoff raised observations about the stark contrast in the number of women who appeared to be employed at the company before and after Musk's acquisition. Rachna Manojkumar Dhanrajani, Curious case of Twitter's missing women: Before and after pictures shock the internet, Business Today (November 21, 2022), Curious case of Twitter's missing women: Before and after pictures of Twitter office shock the internet - BusinessToday; Kanishka Sarkar, Where have all the women gone from Elon Musk's Twitter? 'Before & after' office photos shock internet, CNBC (November 21, 2022), Where Have All The Women Gone From Elon Musk'S Twitter? 'Before & After' Office Photos Shock Internet (cnbctv18.com).

23. The data from these layoffs bear out these observations.

24. According to a spreadsheet showing which Twitter employees in the United States were retained and which were laid off on November 4, 2022, approximately 2,561 out of 5,085 employees were notified that day they were being laid off.[1]

25. Prior to the layoffs that day, Twitter employed approximately 2,234 female employees and 2,761 male employees in the United States. Of those employees, approximately 1,305 females and 1,256 males were notified that day they were being laid off.

26. Thus, 56.15% of female employees were laid off on November 4, 2022, while 45.49% of male employees were laid off.

27. Not only is this a large percentage difference, but it is also extremely statistically significant.

28. According to Dr. Mark Killingsworth, a professor in the Department of Economics at Rutgers University,[2] a chi square statistical analysis reveals that this distribution in

---

[1] The figures throughout this complaint are described as "approximate" because 75 employees for whom their gender was not immediately clear were not included in these calculations.

5
THIRD AMENDED CLASS ACTION COMPLAINT

layoffs by sex is 7.5754 standard deviations away from a normal distribution. In other words, the odds that this disparity between women and men being laid off is due only to chance is less than 0.0001, or less than one in 10,000.

29. Further, the disparity between women and men being laid off cannot be explained based upon a justification that Musk intended to retain more employees in engineering-related roles.

30. According to the spreadsheet, prior to the layoffs that day, Twitter employed approximately 696 female and 1,605 male employees in engineering-related roles in the United States. Of those employees, approximately 430 females and 721 males were notified that day they were being laid off. Thus, 61.78% of females in engineering-related roles were laid off on November 4, 2022, while 44.93% of male employees in engineering-related were laid off.

31. This disparity is also extremely statistically significant. According to Dr. Killingsworth, a chi square test reveals that this distribution in layoffs by sex is 7.4295 standard deviations away from a normal distribution. The odds that this disparity between women and men in engineering-related roles being laid off is due only to chance is less than 0.0001 or less than one in 10,000.

---

[2]   A federal court has described Dr. Killingsworth's qualifications as follows:

> Dr. Killingsworth is a labor economist with more than 40 years of experience and has a substantial record as an expert witness in federal and state litigation. He is the author of *Labor Supply* and *The Economics of Comparable Worth*, and has also authored numerous publications in the areas of comparable worth, pay equity, employment discrimination, and wage differentials. Also, Dr. Killingsworth has testified in front of United States Congressional Committees and the General Assembly of Pennsylvania. In addition, he has been a consultant to United States District Judge Robert L. Carter, the Canadian Department of Justice, and the United States Departments of Justice and Labor. Dr. Killingsworth graduated from the University of Michigan and received M.Phil. and D.Phil. degrees from the University of Oxford, where he was a Rhodes Scholar.

Artunduaga v. Uni. Of Chicago Med. Ctr., 2016 WL 7384432, at *2-3 (N.D. Ill. Dec. 21, 2016) (citing cases).

32. There is also a great disparity in the layoff rates between women and men in non-engineering roles. Prior to the layoffs that day, Twitter employed approximately 1,628 female and 1,156 male employees in non-engineering-related roles in the United States. Of those employees, approximately 875 females and 535 males were notified that day they were being laid off. Thus, 53.75% of females in non-engineering-related roles were laid off on November 4, 2022, while 46.28% of male employees in non-engineering-related were laid off. A chi square test performed by Dr. Killingsworth revealed that this distribution in layoffs by sex is 3.8830 standard deviations away from a normal distribution. The odds that this disparity between women and men in non-engineering-related roles being laid off is due only to chance is less than 0.0001 or less than one in 10,000.

33. These results are summarized in the following charts:

```
Table 1:  Termination rates in the RIF of 11/04/2022, by sex

                          total            terminated
sex                       number      number      % of total

female                    2324         1305         56.15%

male                      2761         1256         45.49

total                     5085         2561         50.36


Statistical significance test:
    number of "standard deviations"              7.5754
    p ("prob-value")                            < 0.0001
```

```
Table 2:  Termination rates of Engineers
          in the RIF of 11/04/2022, by sex

                          total            terminated
sex                       number      number      % of total

female                    696          430          61.78%

male                      1605         721          44.92

total                     2301         1151         50.03


Statistical significance test:
    number of "standard deviations"              7.4295
    p ("prob-value")                            < 0.0001
```

```
Table 3:  Termination rates of non-Engineers
          in the RIF of 11/04/2022, by sex

                        total              terminated
sex                     number       number      % of total

female                   1628          875         53.75%

male                     1156          535         46.28

total                    2784         1410         50.65


Statistical significance test:
    number of "standard deviations"           3.8830
    p ("prob-value")                          0.0001
```

34.     Thus, it is clear that women were far more likely than men to be laid off from Twitter, and those differences are highly statistically significant.

35.     The fact that more women than men were laid off and forced out of the company through constructive discharge since Musk's acquisition is not surprising given Musk's history of making sexist, demeaning, and hostile comments against women. Such comments show his discriminatory animus against women, and it is understandable that women would feel less welcome in the workplace under his leadership.  As Twitter's new owner and CEO, who oversaw and closely managed the employees who were making layoff decisions and implementing his policies, Musk's discriminatory animus is imputed to Twitter.

36.     Examples of Musk's discriminatory and demeaning comments about women include his posting of tweets on Twitter in which he joked about naming a school using the acronym "TITS" and making other jokes about women's breasts.  See Chandra Steele, Elon Musk is a Misogynist and It Matters, PCMag (December 13, 2021), Elon Musk Is a Misogynist and It Matters | PCMag (quoting Musk's tweet: "Am thinking of starting new university: Texas Institute of Technology & Science"); Jon Christian, Elon Musk Deletes Sexist Tweets, The Byte (October 31, 2021), Elon Musk Deletes Sexist Tweets (futurism.com);  Stock Joker on Twitter: "@ZJAyres @PhilKoopman Now deleted, but only D cups need apply https://t.co/40NBcDTonb" / Twitter); Ananya Bhattacharya, In one tweet, Elon Musk captures

8
THIRD AMENDED CLASS ACTION COMPLAINT

the everyday sexism faced by women in STEM, Quarz (November 1, 2021), Elon Musk's tweet captures everyday sexism faced by women in STEM (qz.com).

37. Shortly before acquiring Twitter, Musk, who has been vocal about promoting women having a lot of babies (presumably disseminating the message that is more important than keeping Thier jobs), tweeted: "Being a Mom is just as important as any career."  Twitter (August 17, 2022), https://twitter.com/elonmusk/status/1559823434028400640.  Within weeks of announcing the layoffs, Musk tweeted "Testosterone rocks ngl".  Twitter (December 4, 2022), https://twitter.com/elonmusk/status/1599345615443746817

38. In April 2023, Musk had the "w" on the sign of the corporate headquarters painted white so that the company's name appeared to be "Titter." See Twitter (April 9, 2023), https://twitter.com/elonmusk/status/1645266104351178752?cxt=HHwWgIC-7cGzlNUtAAAA.

V. **EXHAUSTION OF ADMINSTRATIVE REMEDIES**

39. Plaintiff Strifling has filed an administrative charge of sex discrimination under Title VII with the Equal Employment Opportunity Commission.  She has received a Right to Sue letter to pursue this claim in court.

40. Plaintiff Turkal has filed an administrative charge of sex discrimination under Title VII with the Equal Employment Opportunity Commission and under the California Fair Employment and Housing Act with the California Civil Rights Department.  She has received a Right to Sue letter to pursue this claim in court.

**COUNT I**

**Title VII,
42 U.S.C. § 2000e,** *et seq.*

Plaintiffs and other female employees have been entitled to the protections of Title VII, 42 U.S.C. § 2000e, *et seq.*, which prohibits discrimination on the basis of sex. Twitter's conduct

in conducting mass layoffs that affected a higher proportion of women than men constitutes unlawful discrimination against Plaintiffs and other similarly situated female Twitter employees on the basis of sex in violation of Title VII.

## COUNT II

**California Fair Employment and Housing Act,
Gov. Code § 12900, *et seq.*
(Sex Discrimination)**

Plaintiffs and other female employees have been entitled to the protections of the California Fair Employment and Housing Act ("FEHA"), Gov. Code § 12900, *et seq.* Twitter's conduct in conducting mass layoffs that affected a higher proportion of women than men constitutes unlawful discrimination against Plaintiffs and other similarly situated female Twitter employees who worked in California on the basis of sex in violation of the FEHA.

## JURY DEMAND

Plaintiffs request a trial by jury on the claims asserted here.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

a. Declare and find that Defendants are liable to Plaintiffs and other similarly situated female employees under Title VII, 42 U.S.C. § 2000e, *et seq.*, and, with respect to employees who have worked out of California, the Fair Employment and Housing Act, Gov. Code § 12900, *et seq.*;

b. Certify this case as a class action under Title VII and the Fair Employment and Housing Act;

c. Reinstate female employees who wish to return to their jobs;

d. Award compensatory and any other appropriate damages, including emotional distress and punitive damages under Title VII and the Fair Employment and Housing Act;

e.  Award pre- and post-judgment interest;

f.  Award reasonable attorneys' fees, costs, and expenses; and

g.  Award any other relief to which Plaintiffs and other similarly situated employees may be entitled.

Respectfully submitted,

CAROLINA BERNAL STRIFLING and WILLOW WREN TURKAL, on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; tfowler@llrlaw.com

Dated:  September 16, 2024

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on Defendants' counsel via the CM/ECF system on September 16, 2024.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan